**REED SMITH LLP**
*Formed in the State of Delaware*
Peter D. Raymond, Esq. (admitted *pro hac vice*)
Sarah Levitan, Esq.
599 Lexington Avenue
New York, New York 10022
Tel: (212) 521-5400

Tracy Zurzolo Quinn, Esq.
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Tel: (609) 987-0050

*Attorneys for Plaintiff*
*Industria de Alimentos Zenú S.A.S.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INDUSTRIA DE ALIMENTOS ZENÚ S.A.S.<br><br>              Plaintiff,<br><br>v.<br><br>LATINFOOD U.S. CORP. d/b/a ZENÚ<br>PRODUCTS CO. and WILSON ZULUAGA,<br><br>              Defendants. | **AMENDED COMPLAINT**<br>**AND JURY DEMAND**<br><br>**No.  2:16-cv-06576 (KM)(MAH)** |

Plaintiff Industria de Alimentos Zenú S.A.S. ("Plaintiff"), with its principal place of

business at Carrera 52 No. 2-38, Medellín, Colombia, by its counsel Reed Smith LLP, brings this

action against defendants Latinfood U.S. Corp. d/b/a Zenú Products Co. ("Latinfood") with a

registered address at 134 Morewood Drive, Smithtown, New York  11787, and Wilson Zuluaga

(together with Latinfood, "Defendants"), believed to reside at 116 Franklin Avenue, Selden, NY

11784, for false association, false advertising, copyright and trade dress infringement, unfair

competition and trademark registration cancellation.  Plaintiff respectfully alleges as follows:

## NATURE OF ACTION

1.      The ZENÚ mark has been used for more than sixty years to identify meat, sausage, beans and other packaged food products in Colombia and elsewhere.  The mark is now owned by Plaintiff, Industria de Alimentos Zenú S.A.S., a Colombian company created by public deed No. 1953 and extended before a Notary Public in Colombia in August 2002.  Plaintiff acquired the ZENÚ mark, along with several others, through an assignment from its sister company, Industrias Alimenticias Noel S.A. ("Industrias Alimenticias") on December 27, 2002.  Industrias Alimenticias later became Inveralimenticias S.A. and merged into Inversiones Nacional de Chocolates S.A., which ultimately became Grupo Nutresa S.A. on April 5, 2011.

2.      At the time Plaintiff acquired the ZENÚ mark, Plaintiff also acquired the RANCHERA mark.  The RANCHERA mark has been used extensively in Colombia and elsewhere for more than 25 years, and is among the most well-known trademarks for sausages and meat products.

3.      For decades, ZENÚ- and RANCHERA-branded products have earned the goodwill of Colombians and other Latin Americans.  These products, with their familiar red and white logos, are among the most popular meat, sausage, beans and other pre-packaged foods in Colombia.

4.      Wilson Zuluaga, by and through his company Latinfood, has sought to improperly capitalize on the goodwill and popularity of Plaintiff's products with Colombian immigrants and others in the United States by misappropriating Plaintiff's trademarks, logos, trade dress and bold designs and using these on similar products sold by Latinfood in the United States.

5.      Rather than put in the hard work and effort to develop their own trademarks, logos, trade dress, packaging and label designs, Defendants have misappropriated those of

Plaintiff in an attempt to deceive, mislead and confuse the American public into believing that Defendants are affiliated with Plaintiff.

6.      Mr. Zuluaga's scheme has been underway since 2011 when he launched his company Latinfood and began selling products under the ZENÚ mark.  Shortly after, Defendants began selling products using the RANCHERA mark as well.  Plaintiff, a foreign corporation, did not become aware of Defendants' scheme until several years later.

7.      In furtherance of this scheme, Latinfood, by and through Mr. Zuluaga, has fraudulently registered the ZENÚ mark in the United States and unsuccessfully attempted to do the same with the RANCHERA mark, in an obvious ploy to mislead consumers into believing Defendants' products are the same ZENÚ and RANCHERA products that consumers are familiar with in Colombia.  Mr. Zuluaga has caused Latinfood to misappropriate Plaintiff's stylized ZENÚ and RANCHERA logos and duplicate Plaintiff's red and white ZENÚ trade dress, label design and packaging.  Indeed at one point, Defendants attempted to procure Plaintiff's own labels from Plaintiff's label provider in Medellín, Colombia.

8.      Moreover, Mr. Zuluaga continues to perpetuate the appearance of an affiliation between Latinfood and Plaintiff by promoting Latinfood as a successful importer of goods from Colombia, touting that his company holds an "exclusive distribution agreement" with a major Colombian manufacturer and encouraging Latinfood's sales representatives to promote their products with the same misleading marketing strategy.  In addition, Defendants have created a website to create the appearance of an affiliation with Plaintiff.

9.      Retailers have unknowingly bought into Defendants' scheme, and Defendants' fraudulent ZENÚ- and RANCHERA-marked products can be found on shelves along with other "imported" Latin American goods.  The unsuspecting public has been purchasing and consuming

these food products which, on information and belief, may be dangerous to their health and safety because the true origin of these products is unknown.

10.     Plaintiff has commenced this suit to reclaim control of the marks it has successfully worked to develop and make famous over the course of decades.

11.     Because Defendants fraudulently registered the ZENÚ mark in the United States, Plaintiff's own application for the ZENÚ mark has been blocked by the U.S. Patent and Trademark Office ("USPTO").  As a result, Plaintiff is prevented from using its mark which was developed over the course of sixty years, and from offering legitimate ZENÚ-marked products to the growing population that seeks them in the United States.

12.     Plaintiff has also filed an application with the USPTO for the RANCHERA mark, in part based upon its hope to bring its well-known sausage products to the United States. However, Defendants have been selling what, upon information and belief, are sub-par meat products bearing the RANCHERA mark, and thereby adversely affecting the future market for Plaintiff's RANCHERA products.

## THE PARTIES

### Plaintiff

13.     Plaintiff Industria de Alimentos Zenú S.A.S. ("Plaintiff") is a corporation organized under the laws of Colombia and with its principal place of business in Medellín, Colombia.  Plaintiff is a wholly-owned subsidiary of Grupo Nutresa S.A., the largest Colombian food corporation with annual global sales of approximately U.S. $3 billion.  Grupo Nutresa conducts business and sells products in the United States through United States-based subsidiaries.

**<u>Defendants</u>**

14.     Defendant Latinfood U.S. Corp. is a registered New York corporation with its principal place of business in New York, as designated on its products and in its trademark applications.  Latinfood transacts business in New Jersey, including by making significant sales within the state.  Moreover, Latinfood has a telephone number bearing the New Jersey (201) area code.

15.     Upon information and belief, Defendant Wilson Zuluaga is the owner and principal of Latinfood, as well as a member of its board of directors.   Mr. Zuluaga is a resident of New York but transacts business in New Jersey by virtue of Latinfood's sales within the state and his promotion of Latinfood's products within the state.

<u>JURISDICTION AND VENUE</u>

16.     Federal subject matter jurisdiction exists under 15 U.S.C. § 1121 and 28 U.S.C. §§1331 & 1338 for claims arising under the Inter-American Convention for Trade Mark and Commercial Protection, the Copyright Act and Section 43(a) of the Lanham Act.

17.     Federal subject matter jurisdiction also exists under 28 U.S.C. § 1332 in that the named parties to this action are of completely diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

18.     This Court has supplemental jurisdiction over Plaintiff's claim under N.J. Stat. 56:4-1 & 56:4-2 because this claim arises from a common nucleus of operative facts as Plaintiff's federal claims.

19.     This Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4 and N.J. R. 4:4-4(b)(1) because this action arises out of the business Defendants transact in the State of New Jersey and this District, and therefore, Defendants have purposefully availed themselves of this forum.  Moreover, the exercise of personal jurisdiction in this forum is

reasonable given: (i) the limited burden imposed upon Defendants in pursuing this action in New Jersey where many of Defendants' products are sold; (ii) New Jersey's interest in the subject matter, including unfair competition and deceptively marked goods being sold within New Jersey borders; (iii) Plaintiff's interest in obtaining relief in New Jersey; (iv) the efficient resolution of these controversies can be secured through the prosecution of these claims in New Jersey; and (v) New Jersey's shared interest with other states regarding the issues presented in this case, including protecting trademarks and trade names and prohibiting unfair competition in interstate commerce and protecting the health and safety of its consumers.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b) because this District has personal jurisdiction over Defendants and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

### A.     Plaintiff's Long-Standing and Well-Known Business

21.     Meat, sausage, and frozen and prepackaged food products branded with the famous ZENÚ and RANCHERA marks have been manufactured and sold in Colombia and elsewhere for more than sixty years.

22.     For several years, Plaintiff has obtained and packaged some of its products in the United States.  These products are then exported for sale in Colombia.

23.     Over the many years of sales, Plaintiff's ZENÚ and RANCHERA trademarks have become famous in Colombia and across Latin America.  Individuals residing in Colombia, individuals who have travelled to Colombia and individuals who have moved from Colombia to the United States are familiar with the ZENÚ and RANCHERA trademarks and Plaintiff's food products sold under the ZENÚ and RANCHERA marks.

i.      *Plaintiff's ZENÚ Packaging, Labeling and Design*

24.     Plaintiff's ZENÚ products are presented in an inherently distinctive trade dress which includes the ZENÚ mark in a red stylized font underlined by a brush-stroke type line against a white background.  The type of food contained within the packaging is often written diagonally underneath the ZENÚ mark.  Below this information is a picture of the product that is contained within the packaging.

25.     On its ZENÚ canned products, Plaintiff also includes a thick colorful band at the bottom of the label where additional information such as the weight or quantity of the product is conveyed in white type.

26.     Plaintiff has employed this trade dress across its ZENÚ products, including its canned goods and its meat products.  By virtue of Plaintiff's continuous and exclusive use of this trade dress over the course of many years, the general public has come to associate this packaging with Plaintiff's ZENÚ-marked products.  Examples of Plaintiff's products bearing the ZENÚ mark are set forth below and in the photographs attached hereto as Exhibit A.



27.     To protect the unique and well-known design of the ZENÚ labels, Plaintiff has registered numerous copyrights.  These include registrations for: "Zenu Chorizo Mediano," Registration No. VA 2-023-767 (Exhibit B); "Zenu Chorizo con Ternera," Registration No. VA 2-026-703 (Exhibit C); "Zenu Chorizo Pequeno," Registration No. VA 2-026-710 (Exhibit D);

and "Zenu Chile Con Carne de Res," Registration No. VA 2-026-672 (Exhibit E).  Each of these copyrighted works reflect the same ZENÚ labeling scheme.

28.     Knowledge of Plaintiff's ZENÚ mark, trade dress and consistent label design has grown more widespread as Plaintiff has advertised and promoted food products under the ZENÚ mark at trade shows around the world, including in the United States.  Plaintiff also maintains a website that is accessible by the public, including consumers in the United States, at www.zenu.com.co.

29.     The ZENÚ mark, labeling, trade dress and packaging theme are well-known with valuable goodwill belonging exclusively to Plaintiff.

### ii.     Plaintiff's RANCHERA Logo, Packaging and Design

30.     Likewise, Plaintiff's RANCHERA mark is presented in an inherently distinctive and artistic way.  The RANCHERA mark is always displayed in a red "western" or "rancher-inspired" font which is then outlined first in white and then in black.  The RANCHERA mark curves slightly upward in the middle of the word.

31.     Plaintiff consistently employs a rancher theme across its RANCHERA packaging. It's most well-known packaging is used across a variety of "Salchicha" and depicts a family around a campfire.  The family consists of a man, woman, boy and girl around a campfire in the foreground with a covered wagon in the background to the left.  The family is always seated with the man on the left, followed by the boy, then the woman and the girl:



32.     To protect the artistic design of the RANCHERA label, Plaintiff has obtained a registration for: "Ranchera," Registration No. VA 2-023-741 (Exhibit F).

33.     By virtue of Plaintiff's continuous and exclusive use of this trade dress over the course of many years, the general public has come to associate the RANCHERA name and rancher-themed packaging with Plaintiff's RANCHERA-marked products.  Further examples of Plaintiff's products bearing the RANCHERA mark are attached hereto as Exhibit G.

34.     Plaintiff broadly promotes its RANCHERA products on a website that is accessible by the public, including consumers in the United States, at www.ranchera.com.co.

35.     The RANCHERA mark, logo trade dress and packaging theme are well-known with valuable goodwill belonging exclusively to Plaintiff.

*iii.     Plaintiff's ZENÚ and RANCHERA Registrations*

36.     To protect its business, Plaintiff has registered several trademarks in Colombia connected to ZENÚ, RANCHERA and the line of products Plaintiff offers under those names. These include:

| MARK | REGISTRATION NO. | REGISTRATION DATE | GOODS |
|---|---|---|---|
| ZENÚ | 244440 | July 18, 2001 | Coffee tea, cocoa, sugar, rice, tapioca, sago, artificial coffee; flours and cereal preparations, bread, pastry and confectionery, edible ices; honey, golden syrup; yeasts, raising powder; salt, mustard; vinegar, sauces (condiments); spices; ice |
| ZENÚ | 118651 | August 24, 2002 | Meat, fish, poultry and game; meat extracts; fruits and preserved vegetables dry and cooked; jellies, marmalade fruit sauces; eggs, milk, and milk products; oils and edible fats |
| ZENÚ | 173308 | January 18, 2005 | Rice, tapioca, sago, artificial coffee; flours and cereal preparations, bread, pastry, and confectionery, edible ices; honey, treacle, yeast, baking-powder; salt, mustard; vinegar, sauces (condiments); spices; ice |
| ZENÚ | 67829 | May 28, 2009 | Meat, fish, poultry and game; meat extracts; fruits and preserved vegetables dry and cooked; jellies, marmalades, and fruit sauces; eggs, milk, and milk products; oils and edible fats |
| ZENÚ and Design | 435990 | June 3, 2011 | Meat, fish, poultry and game; meat extracts; fruits and preserved vegetables frozen, dry and cooked; jellies, jams, compotes; eggs, milk and milk products; oils and edible fats |

| RANCHERA | 104218 | May 14, 2009 | meat, fish, poultry and game; meat extracts and preparations; canned fruits and vegetables, dried and cooked; jellies and jams; eggs, milk and other dairy products; edible oils and fats; preserves and pickles |
|---|---|---|---|
| RANCHERA and Design | 243900 | October 9, 2001 | coffee, cocoa, sugar, rice, coffee substitutes; flour and preparations made from cereals, bread, pastry and confectionery, ices; honey, treacle; yeast, baking powder; salt, mustard; vinegar, sauces (condiments); spices |
| RANCHERA and Design | 207613 | May 29, 2007 | meat, fish, poultry and game; meat extracts; canned fruits and vegetables, dried and cooked; jellies, jams, eggs, milk and milk products; edible oils; salad dressings; canned goods |
| RANCHERA and Design | 437955 | December 28, 2011 | meat, fish, poultry and game; meat extracts; fruits and vegetables and canned vegetables, frozen, dried and cooked; jellies, jams, compotes; eggs, milk and milk products; edible oils and fat. |
| RANCHERA HAMBURGUESA PREASADA ZENÚ and Design | 455844 | August 28, 2012 | Meat, fish, poultry and game; meat extracts; preserved, frozen, dried and cooked fruits and vegetables; jellies, jams, compotes; eggs, edible oils and fats. |
| RANCHERA HOT ZENÚ and Design | 455846 | August 28, 2012 | Meat, fish, poultry and game; meat extracts; preserved, frozen, dried and cooked fruits and vegetables; jellies, jams, compotes; eggs, edible oils and fats. |

| RANCHERA MINI ZENÚ and Design | 455849 | August 28, 2012 | Meat, fish, poultry and game; meat extracts; preserved, frozen, dried and cooked fruits and vegetables; jellies, jams, compotes; eggs, edible oils and fats. |
|---|---|---|---|
| RANCHERA SANDUCHE ZENU and Design | 455820 | August 28, 2012 | Meat, fish, poultry and game; meat extracts; preserved, frozen, dried and cooked fruits and vegetables; jellies, jams, compotes;eggs, edible oils and fats. |
| RANCHERA SUPER ZENU and Design | 454073 | July 31, 2012 | Meat, fish, poultry and game; meat extracts; preserved, frozen, dried and cooked fruits and vegetables; jellies, jams, compotes;eggs, edible oils and fats. |

37.      Plaintiff's ownership of the ZENÚ mark is further established by International Registration No. 1204564, dated March 12, 2014 and registered with the World Intellectual Property Organization (WIPO).   The United States application to extend the International Registration has been filed at the USPTO for "meat, fish, poultry and game; meat extracts; canned, frozen, dried and cooked fruits and vegetables; jellies, jams, compotes; eggs; milk and dairy products; edible oils and fats."   The extension application has been assigned Serial No. 79/147,515 and has a filing date of March 12, 2014.

38.      In the past, Plaintiff has also owned several registrations at the USPTO connected to ZENÚ and RANCHERA, though they have since lapsed.   These included the following:

| MARK | REGISTRATION NO. | REGISTRATION DATE | GOODS |
|---|---|---|---|
| ZENÚ | 1,359,432 | September 10, 1985 | Canned meats. |

| ZENÚ | 1,404,280 | August 5, 1986 | Coffee, tea, cacao, sugar, rice, tapioca, sago succedaneous of coffee, flour, toast, crackers, biscuits, cookies, pizzas, bread, cakes, pies, pastries, candies, ice creams, honey, molasses syrup, yeast, baking power, salt, mustard, pepper, vinegar, sauces-excluding apple sauce and cranberry sauce, spices. |
|---|---|---|---|
| ZENÚ and Design | 1,733,331 | November 17, 1992 | Meat; fish; chicken, turkey, duck, goose, guinea fowl, squab, quail, grouse, pheasant, partridge, woodcock, snipe and plover; meat and fruit extracts; dried and boiled canned fruit; jams; marmalades; eggs, milk and other dairy products excluding ice cream, ice milk and frozen yogurt; edible oils and fats; pickled fruit and vegetables and salad dressings. |
| ZENÚ | 2,848,103 | June 1, 2004 | Processed food, namely, hispanic salami and sausage. |
| RANCHERA ZENU | 78,443,270 (serial number) | June 29, 2004 (filing date) | Sausages, Hams |

39.     Plaintiff also is the owner of an application Serial No. 86/459,824 at the USPTO for ZENÚ (Stylized), filed on November 20, 2014 for "meat, fish, poultry and game; meat extracts; canned, frozen, dried and cooked fruits and vegetables; jellies, jams, compotes; eggs; milk and dairy products; edible oils and fats."  This application was filed based on Section 44(e) of the Lanham Act.

40.     However, as set forth below, Plaintiff's application has been blocked by the infringing ZENÚ mark registered by Defendants (*see* ¶¶ 48-63 herein).

41.     Plaintiff has also filed an application Serial No. 87/235,819 at the USPTO for RANCHERA (stylized).  This application was filed on November 14, 2016 based on Sections 1(b) and 44(e) of the Lanham Act.  The application seeks the registration of the RANCHERA

mark for "meat, fish, poultry and game; meat extracts; ham, namely, turkey ham, pork ham, beef ham; sausages and hot dogs made of beef or chicken; ribs, namely, beef ribs, pork ribs; beef hamburgers, chicken hamburgers, turkey hamburgers."

**B.**     **Defendants' Scheme to Profit Off Of Plaintiff's Marks**

42.     Commencing in or about 2011, Mr. Zuluaga, through his company, Latinfood, launched a blatant scheme to obtain a free ride and capitalize upon the goodwill generated over the course of decades for Plaintiff's widely-recognized quality products and its famous ZENÚ mark.  Mr. Zuluaga then incorporated Plaintiff's famous RANCHERA mark into his scheme in or about 2012.  Thus, Latinfood, at Mr. Zuluaga's direction, began to sell food products in the United States similar to those sold by Plaintiff in Colombia and elsewhere, to use Plaintiff's ZENÚ and RANCHERA trademarks, the stylized logos, and to copy the trade dress and label designs employed by Plaintiff.

43.     Upon information and belief, Mr. Zuluaga launched Latinfood as the result of his observation that there was a demand for specialty products from Colombia in the tri-state area, which is home to a large population of Colombian-Americans. [1]

44.     U.S. consumers travelling to and from Colombia and Americans of Colombian origin are familiar with the ZENÚ and RANCHERA marks, and have brought ZENÚ and RANCHERA products into the United States.

45.     Recognizing this demand, Mr. Zuluaga created Latinfood and has promoted it as an importer of Colombian products.  Mr. Zuluaga has remarked that the company's goal is to "become the most reliable importer for food and specialty products from South and Central America."  In this vein, Defendants have touted that they possess "an exclusive distribution and

---

[1] According to the 2010 Census, over 100,000 Colombian-Americans live in New Jersey and nearly 150,000 live in New York.  The population of Latin Americans is even more sizeable.

importing rights agreement for the tri-state area" with a major product manufacturer in Colombia.

46.     Rather than create new trademarks, logos, trade dress and package designs, Mr. Zuluaga has pirated Plaintiff's famous trademarks, logos, trade dress and package designs.  He has built the Latinfood business upon deception, misleading the public into believing that Defendants' products bear an affiliation to Plaintiff's famous products from Colombia.

47.     Defendants have targeted consumers in the tri-state region, including through at least fifteen stores in New Jersey.  Defendants' deceptive products can also be found for sale in New York and Connecticut.

### i.     *Defendants Fraudulently Registered Plaintiff's ZENÚ Mark*

48.     Mr. Zuluaga, on his company's behalf, first submitted an application to register the ZENÚ mark on January 25, 2013.[2]  The application was for the standard ZENÚ mark without any claim to a particular font style, size or color.  Mr. Zuluaga signed the application as director of the company.

49.     In the application, Mr. Zuluaga asserted January 1, 2011 as a first use date and as the date of use in commerce.

50.     On September 17, 2013, the USPTO issued Registration No. 4,402,942 for the mark ZENÚ for "Bologna; Canned cooked meat; Canned fish; Chorizo; Hot dogs; Preserved meats and sausages; Processed meat; Sausages; Tuna fish" in Class 29.

51.     Defendants' ZENÚ mark is identical to Plaintiff's ZENÚ mark, and the food products that Defendants sell under the ZENÚ mark are the same as or closely related to the

---

[2] Though initially registered to Zenú Products Inc., another company controlled by Mr. Zuluaga, an alleged corrective *nunc pro tunc* assignment was filed with the USPTO, assigning the ZENÚ mark and registration therefor to Latinfood U.S. Corp. d/b/a ZENÚ Products, Co., effective August 21, 2013.  At all times, Mr. Zuluaga controlled the application and the contents within it.

ZENÚ-branded goods that Plaintiff sells in Colombia and for which Plaintiff has applied to register the ZENÚ mark in the U.S.

52.     Upon information and belief, Latinfood, at Mr. Zuluaga's direction, adopted the ZENÚ mark in order to co-opt the valuable goodwill associated with Plaintiff's mark and with the intent to deceive, mislead, and confuse the public into believing that there is a connection between Defendants' products and those of Plaintiff, and that Defendants' products are of the same character, quality and function as those of Plaintiff.  Thus, Defendants' application to the USPTO was submitted in bad faith.

53.     Moreover, Mr. Zuluaga secured the registration of the ZENÚ mark in the United States on behalf of his company through false attestations in their trademark applications.

54.     Critically, in connection with the application for Registration No. 4,402,942, it appears that the applicant, by and through Mr. Zuluaga, submitted specimens consisting of depictions of similar or identical packaging as that of Plaintiff.  The specimens submitted by Mr. Zuluaga feature similar or identical images, layouts, stylized lettering, logos, and coloring used by Plaintiff on packaging for its goods.  Upon information and belief, Mr. Zuluaga, acting on behalf of his company knew these specimens were in fact Plaintiff's products.  These specimens are annexed hereto as Exhibit H.

55.     Included amongst the specimens for Defendants' ZENÚ application is a label for RANCHERA Salchicha Premium which is indistinguishable from Plaintiff's own RANCHERA label.  The specimen features the image of a family consisting of a man, woman, boy and girl wearing the same clothes and seated in the same configuration around a campfire.  Defendants' specimen is identical to the old packaging that Plaintiff used to use which, in addition to including the family, included the ZENÚ mark in the lower right corner.  Plaintiff's current and

copyrighted RANCHERA packaging removed the ZENÚ logo but otherwise remained the same. The extent of the similarity can be seen below—Plaintiff's current RANCHERA-branded product is featured on the left, while the specimen Defendants submitted with their trademark application can be seen on the right.

Plaintiff's Product:                                    Defendants' Specimen:

       

56.     Defendants' ZENÚ application also included a specimen for ZENÚ Chorizo Mediano.  As with the RANCHERA specimen, this ZENÚ specimen is identical to Plaintiff's label and packaging for its ZENÚ-marked Chorizo Mediano, which it has copyrighted.

Plaintiff's Product:                                    Defendants' Specimen:

       

- 17 -

57.     Defendants' ZENÚ application also included a third specimen which is markedly similar, if not identical, to Plaintiff's label and copyrighted packaging for its ZENÚ Chorizo Pequeño:

Plaintiff's Product:                          Defendants' Specimen:

   

58.     Moreover, upon information and belief, the specimens submitted by Mr. Zuluaga on behalf of Latinfood are not examples of those in use by Defendants in the United States.   This is further fraudulent conduct by Defendants as trademark specimens must be representations of the products being sold by the registrant in U.S. commerce.   For comparison purposes, the products Defendants offer for sale are attached hereto as Exhibit I.   As can be seen in Exhibit I, the RANCHERA product offered by Latinfood for sale on its website, though thematically similar, differs from the specimen submitted in its trademark registration.

59.     In addition, Mr. Zuluaga swore, on behalf of his company in its trademark application, that it believed itself to be entitled to exclusive use of the ZENÚ mark in the United States.   However, prior to the alleged date of first use in Latinfood's application that matured into Registration No. 4,402,942, Plaintiff had properly registered each of its ZENÚ trademarks in Colombia.   Moreover, Plaintiff's ZENÚ mark had become well-known in the United States long

before the alleged date of first use in Defendants' trademark application that matured into Reg. No. 4,402,942.  Upon information and belief, Mr. Zuluaga and Latinfood were aware of these facts.

60.     Thus, upon information and belief, the sworn statement in the trademark application that Mr. Zuluaga's company believed itself to be entitled to exclusive use of the ZENÚ mark in the United States was materially false and made with intent to deceive the USPTO, which relied upon such sworn statements in awarding Defendants the registrations for the ZENÚ mark.

61.     Indeed, upon information and belief, Defendants applied to register the ZENÚ mark in the United States only after, and solely because, they knew of Plaintiff's ZENÚ mark and its goodwill.

62.     Defendants' fraudulent registration for ZENÚ, Registration No. 4,402,942, has been cited under Section 2(d) by the USPTO against each of Plaintiff's applications for ZENÚ (Serial Nos. 79/147,515 and 86/459,824) in Office Actions dated June 19, 2014 and March 13, 2015 respectively, and is therefore preventing Plaintiff from obtaining registrations for its ZENÚ mark for which it is the rightful owner.

63.     As a result, Plaintiff cannot offer its goods for sale in the United States under its own ZENÚ mark.

64.     Plaintiff did not oppose Defendants' registration application because, as a foreign corporation, it was unaware of Defendants' pirating of the ZENÚ mark in the United States until in or around October 2013, when a supplier contacted Plaintiff to alert it of Defendants' activity.

- 19 -

65.     Upon discovering Defendants' registration of the ZENÚ mark and after conducting an investigation into Defendants' business, Plaintiff commenced a proceeding before the Trademark Trial and Appeal Board seeking the cancellation of Defendants' ZENÚ mark. This proceeding is still pending.

66.     In further violation of Plaintiff's rights, Latinfood, by and through Mr. Zuluaga, recently applied for protection of the ZENÚ mark (Serial No. 87151048) for "dairy-based beverages; white cheese" in Class 29.  This application remains pending.

**ii.     *Defendants Copied Plaintiff's Stylized ZENÚ Logo, Copyrighted Packaging and Distinctive Trade Dress***

67.     Not only have Defendants taken Plaintiff's ZENÚ mark, but to fully capitalize on Plaintiff's goodwill and to willfully deceive the public, Mr. Zuluaga has caused Latinfood to mimic Plaintiff's packaging – including Plaintiff's stylized logo, copyrighted packaging and trade dress – to falsely suggest an affiliation with Plaintiff's business in Colombia.

68.     Prominently featured on each of Defendants' products is Plaintiff's ZENÚ mark in the identical stylized logo.  Moreover, Mr. Zuluaga has caused Latinfood to misappropriate and use Plaintiff's red and white ZENÚ trade dress in its packaging of its products, employing the exact same logo, diagonal labeling convention and colorful band at the base of its canned products.  Defendants have taken wholesale Plaintiff's design and created the same consistent overall look for their products.  *Compare* Exhibit A (Plaintiff's products) *with* Exhibit I (Defendants' products).  Examples of Defendants' infringing products include those shown below:



This packaging possesses the same overall look as the packaging for Plaintiff's products, shown below:



69.     Defendants' labels are also substantially similar to the ZENÚ labels which Plaintiffs have copyrighted.  *See* <u>Exhibits B-E</u>.

70.     This same trade dress can also be seen on Defendants' website www.zenu.us.com, which closely mimics both the domain name and trade dress presented on Plaintiff's website, www.zenu.com.co.

71.     The willful and knowing extent of Defendants' deceptive conduct is evidenced by the exact duplication of Plaintiff's ZENÚ mark, copyrighted packaging and trade dress by Defendants for their products.   Upon information and belief, the level of similarity is not coincidental.

72.     Indeed, any suggestion of coincidence is belied by Defendants' attempt to procure 400,000 of Plaintiff's labels from Plaintiff's own ZENÚ label provider in Medellín, Colombia. It was this provider that alerted Plaintiff to the suspicious order and brought Defendants' scheme to Plaintiff's attention.

      **iii.**    ***Defendants Failed Attempt to Register Plaintiff's RANCHERA Mark & Continued Utilization of the Name***

73.     Mr. Zuluaga, on his company's behalf, submitted an application to register the RANCHERA mark on February 18, 2014.[3]  The application was for the standard RANCHERA mark without any claim to a particular font style, size or color for "bologna; canned cooked meat; canned fish; chorizo; hot dogs; preserved meats and sausages; processed meat; sausages; tuna fish, not live."  Mr. Zuluaga signed the application as director of the company.

74.     Defendants' application was for a RANCHERA mark that is identical to Plaintiff's RANCHERA mark, and the food products that Defendants sought to sell under the RANCHERA mark are the same as or closely related to the RANCHERA-branded goods that Plaintiff sells in Colombia and for which Plaintiff has applied to register the RANCHERA mark in the U.S.

75.     In the RANCHERA application, Mr. Zuluaga asserted January 15, 2012 as a first use date and as the date of use in commerce.

76.     Defendants submitted specimens in support of their application.  One of these specimens, was the same fraudulent RANCHERA specimen that Defendants had submitted in connection with their ZENÚ application.  *See* <u>Exhibit H</u>.  As with the ZENÚ application, Mr. Zuluaga swore, on behalf of his company in its trademark application, that it believed itself to be entitled to exclusive use of the RANCHERA mark in the United States.  However, Plaintiff had

---

[3] Like the ZENÚ application, the RANCHERA application was filed in the name of the non-existing Zenú Products Inc.

properly registered each of its RANCHERA trademarks in Colombia prior to the February 2014 application date.  Upon information and belief, Mr. Zuluaga and Latinfood were aware of these facts.

77.     Thus, upon information and belief, the sworn statement in the trademark application that Mr. Zuluaga's company believed itself to be entitled to exclusive use of the RANCHERA mark in the United States was materially false and made with intent to deceive the USPTO.

78.     Indeed, upon information and belief, Defendants applied to register the RANCHERA mark in the United States in furtherance of their scheme to profit off of the goodwill Plaintiff has generated for the RANCHERA mark and to deceive, mislead, and confuse the public into believing that there is a connection between Defendants' products and those of Plaintiff.

79.     Though Defendants' RANCHERA application was ultimately denied due to a third party registration for RANCHERO (Reg. No. 3294606), upon information and belief, Defendants still market and sell products bearing the RANCHERA mark.

80.     The RANCHERA products now advertised by Defendants feature the same RANCHERA logo as Plaintiff's, and while not featuring the family around the campfire, their labels also adhere to a rancher theme.

      *iv.*     ***Defendants Deceive Consumers By Implying An Affiliation with  Plaintiff Through Other Means***

81.     In addition to the cosmetic similarities, the contents of the labels for Defendants' products falsely suggest an affiliation with Plaintiff's business in Colombia.  For instance, Defendants' labels falsely identify the company as "Zenu Products US Inc." (as

opposed to Latinfood) suggesting that the company is a United States-based affiliate of Plaintiff who is located in a foreign country.

82.     The labels also bear a "linea de exportacion," or translated from Spanish, "export line," designation suggesting that Latinfood products are produced outside of the United States, much like Plaintiff's products from Colombia would be.[4]  Moreover, Defendants' products are often featured in the import/foreign sections of the groceries in which they are sold and are sold alongside products from other Latin American companies.

83.     The placement of Defendants' products is hardly surprising because, upon information and belief, Latinfood sales representatives advise store owners that Latinfood has full rights to the distribution of ZENÚ- and RANCHERA-marked products.  Those who engage with the Latinfood sales representatives are led to believe they are buying products from the same source as Plaintiff's products from Colombia.

84.     In addition to being misleading, the suggestion that Defendants' products are imported is false as a majority of Defendants' goods are manufactured and labeled in the United States.  For example, Defendants employ at least one meat manufacturer located in Bronx, New York to produce products for Defendants under a private label.  However, the origins and source of Defendants' pirated products are not truthfully disclosed on Defendants' labels, thereby potentially threatening the health and safety of consumers.

85.     Defendants also directly mislead consumers to believe Defendants are associated with Plaintiff through their website www.zenu.us.com.  Not only is the domain name confusingly similar to Plaintiff's www.zenu.com.co, Defendants' website touts that their products are part of "una deliciosa tradición," or a delicious tradition, suggesting an affiliation

---

[4] Notably, Defendants' labels are predominantly in Spanish, again suggesting that the products are imported from a Spanish-speaking country.

with Plaintiff's sixty year old brand.  This website promotes both ZENÚ- and RANCHERA-marked products.  Notably absent from the website is any connection to Latinfood.

86.     Defendants operate a separate Latinfood site, www.latinfoodus.com, where they additionally promote the sale of both ZENÚ- and RANCHERA-marked products.

87.     In sum, Defendants use the ZENÚ and RANCHERA marks, trade dress and labels to misrepresent to consumers, including those familiar with Plaintiff's famous marks, that Defendants' products are from the same source as Plaintiff's goods sold under the ZENÚ and RANCHERA marks.  As a result, Defendants' use of the ZENÚ and RANCHERA marks are likely to cause confusion.

88.     Moreover, Defendants' sale of what Plaintiff believes to be sub-par and non-inspected products under their pirated trademark harms Plaintiff by altering consumers' estimation of ZENÚ- and RANCHERA-marked products in addition to potentially threatening the health and safety of consumers.

89.     Mr. Zuluaga's causing of Latinfood to use the ZENÚ and RANCHERA marks, their distribution of products under those marks, their duplication of Plaintiff's logos, trade dress and label designs, and  misleading contents of their products' labels all reflect a scheme by Mr. Zuluaga to free ride and trade on the goodwill of Plaintiff's business and to deceive the public into believing that Latinfood's products are Plaintiff's goods, are derived from the same source as Plaintiff's products, are of the same quality and character of Plaintiff's products, or in the least, are affiliated, sponsored, endorsed, approved or associated in some way with Plaintiff's products.

90.     Defendants' aforesaid actions have damaged, and unless enjoined will continue to damage, Plaintiff's reputation, foreclose and impair any future sales by Plaintiff of its ZENÚ-

marked products in the United States and impair the current and future sales of Plaintiff's

ZENÚ- and RANCHERA-marked products in Colombia and elsewhere around the world.

**FIRST CAUSE OF ACTION**
**False Association Pursuant to Section 43(a) of the Lanham Act,**
**15 U.S.C. § 1125(a)**
**(Against Defendants)**

91.      Plaintiff restates and re-alleges each and every foregoing paragraph of this

Amended Complaint as if fully set forth herein.

92.      Plaintiff has used the name ZENÚ for more than sixty years for its products.

ZENÚ is an arbitrary and distinctive mark for meat, sausage, beans and other packaged food

products and, consequently, is a valid and legally protectable trademark, trade name and house

mark.

93.      Plaintiff adopted the ZENÚ mark more than sixty years ago and properly

registered it in Colombia.

94.      Plaintiff's ZENÚ mark is well-known amongst Colombians, Colombian-

Americans, other South Americans and those that have travelled to Colombia.

95.      Mr. Zuluaga has caused Latinfood to use the identical mark to sell the same

class of products in a deliberate attempt to create confusion because consumers in the United

States will assume that Latinfood products are actually those of Plaintiff, the well-known

manufacturer of products under the ZENÚ mark.

96.      Mr. Zuluaga has caused Latinfood to place its products in markets that serve

customers that would know Plaintiff's ZENÚ mark.  Upon information and belief, Mr. Zuluaga

causes Latinfood to use the ZENÚ mark intending for the company to profit from consumers'

confusion and to capitalize on the goodwill generated by Plaintiff's mark.

97.     It is unlikely that any consumer would engage in a thorough investigation to uncover the true source of Defendants' products.

98.     Defendants' inferior products harm the goodwill Plaintiff has worked hard to generate and, in turn, impact Plaintiff's sales in Colombia and any future sales Plaintiff may seek to have in this District and in the United States.  Moreover, Plaintiff is foreclosed from selling its products in the United States as long as Defendants hold the registration for the ZENÚ mark.

99.     The foregoing acts of Defendants constitute a willful violation of Section 43(a) of the Lanham Act.

### SECOND CAUSE OF ACTION
### False Association Pursuant to Section 43(a) of the Lanham Act,
### 15 U.S.C. § 1125(a)
### (Against Defendants)

100.    Plaintiff restates and re-alleges each and every foregoing paragraph of this Amended Complaint as if fully set forth herein.

101.    Plaintiff has used the name RANCHERA for many years for its products. RANCHERA is an arbitrary and distinctive mark for meat and sausage, and, consequently, is a valid and legally protectable trademark, trade name and house mark.

102.    Plaintiff properly registered the RANCHERA mark in Colombia and has filed an application to register the RANCHERA mark with the USPTO.  The application has been assigned the Serial Number 87/235,819.

103.    Plaintiff's RANCHERA mark is well-known amongst Colombians, Colombian-Americans, other South Americans and those that have travelled to Colombia.

104.    Mr. Zuluaga has caused Latinfood to use the identical mark to sell the same class of products in a deliberate attempt to create confusion because consumers in the United

States will assume that Latinfood products are actually those of Plaintiff, the well-known manufacturer of products under the RANCHERA mark.

105.    Mr. Zuluaga has caused Latinfood to place its products in markets that serve customers that would know Plaintiff's RANCHERA mark.  Upon information and belief, Mr. Zuluaga causes Latinfood to use the RANCHERA mark intending for the company to profit from consumers' confusion and to capitalize on the goodwill generated by Plaintiff's mark.

106.    It is unlikely that any consumer would engage in a thorough investigation to uncover the true source of Defendants' products.

107.    Defendants' inferior products harm the goodwill Plaintiff has worked hard to generate and, in turn, impact Plaintiff's sales in Colombia and any future sales Plaintiff may seek to have in this District and in the United States.

108.    The foregoing acts of Defendants constitute a willful violation of Section 43(a) of the Lanham Act.

### THIRD CAUSE OF ACTION
### False Advertising Pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)
### (Against Defendants)

109.    Plaintiff restates and re-alleges each and every foregoing paragraph of this Amended Complaint as if fully set forth herein.

110.    Latinfood identifies itself as "Zenu Products US Inc." on its products, suggesting that the company is a United States-based affiliate of a foreign country.  Consumers would presume this to be an affiliate of Plaintiff.

111.    In addition, Defendants have obtained www.zenu.us.com as their web address, which is similar to Plaintiff's www.zenu.com.co, leading consumers to presume the website is

associated with Plaintiff.  Defendants do not include the name Latinfood anywhere on the website.

112.    Mr. Zuluaga has caused Latinfood to label its products as imported and has promoted the company as holding an exclusive distribution and importing rights agreement with a major product manufacturer from Colombia.  Each of these statements misleads consumers into believing that Latinfood's products are in fact those of Plaintiff or are affiliated in some way with Plaintiff when no such affiliation exists.

113.    Moreover, the importation labels are false in many instances.  Defendants have used manufacturers located in the United States for many of their products.   One such manufacturer is located in Bronx, New York.

114.    These falsely labeled goods travel in interstate commerce because they are sold across numerous states, including in New Jersey, and are not manufactured within the borders of the states in which they are sold.

115.    Defendants' misleading labels are likely to influence consumers' purchase choices because consumers will choose Latinfood products believing they are affiliated with the familiar products of Plaintiff.

116.    Defendants' inferior products and false labeling harm the goodwill Plaintiff has worked hard to generate and, in turn, impact Plaintiff's sales in Colombia and any future sales Plaintiff may seek to have in this District and in the United States.

117.    The foregoing acts of Defendants constitute a willful violation of Section 43(a) of the Lanham Act.

<u>FOURTH CAUSE OF ACTION</u>
<u>Trade Dress Infringement Pursuant to Section 43(a) of the Lanham Act,</u>
<u>15 U.S.C. § 1125(a)</u>
**(Against Defendants)**

118.     Plaintiff restates and re-alleges each and every foregoing paragraph of this Amended Complaint as if fully set forth herein.

119.     The labels Plaintiff has developed for its ZENÚ product line are not *de jure* functional.  It is possible for one to sell food products without a similarly designed label.

120.     Plaintiff's label is distinctive.  It features the ZENÚ mark in red stylized type, underlined by a brushstroke-type line at the top of the label for each of its products.  This red logo is against a white background and above a photograph of the food sold within the packaging.  The canned goods additionally feature a boldly colored band at the base of the label indicating the weight or quantity of the product contained therein.

121.     Plaintiff has been using these labels on its products for many years.

122.     Consumers have come to associate this trade dress with the products that Plaintiff sells under the ZENÚ mark.

123.     Mr. Zuluaga has caused Latinfood to use the identical trade dress to sell the same class of product in a deliberate attempt to create confusion because consumers in the United States will assume that Latinfood products are actually those of Plaintiff, the well-known manufacturer of meat and canned products using the ZENÚ trade dress.

124.     Mr. Zuluaga has intentionally caused Latinfood to duplicate Plaintiff's labels for Defendants' products, which they sell in markets that serve customers that would recognize Plaintiff's ZENÚ trade dress.  Defendants use Plaintiff's ZENÚ trade dress intending to profit from consumers' confusion and to capitalize on the goodwill associated with Plaintiff's product.

125.    The foregoing acts of Defendants constitute willful trade dress infringement of

Plaintiff's trade dress in violation of Section 43(a) of the Lanham Act.

## FIFTH CAUSE OF ACTION
### Copyright Infringement Pursuant to 17 U.S.C. § 501
#### (Against Defendants)

126.    Plaintiff restates and re-alleges each and every foregoing paragraph of this

Amended Complaint as if fully set forth herein.

127.    Plaintiff owns the copyright for "Zenu Chorizo Mediano," Registration No. VA 2-

023-767.

128.    The copyrighted work is a label for Plaintiff's "Chorizo Mediano" sold under the

ZENÚ mark.  The label was developed by Plaintiff and this label is original.  Plaintiff has been

using this label on its products for many years.

129.    The work is a square label which prominently features Plaintiff's stylized ZENÚ

logo in red centered at the top, against a white background.  Directly below the ZENÚ logo is a

lime wedge and in front of the lime wedge to the left, is a diagonally placed whole chorizo.  To

the right, are slices of chorizo.  The lime and chorizo are against a blue background.  In front of

the slices of chorizo is a blue brushstroke with "Chorizo Mediano" written in white type.

130.    Defendants have taken Plaintiff's "Zenu Chorizo Mediano" and presented it as

their own work as a specimen of use filed with the USPTO.  As can be seen below, Defendants

submitted an image that is indistinguishable from Plaintiff's copyrighted work and that the

ordinary observer would consider substantially similar.  Defendants' label possesses the same

overall look and feel as Plaintiff's copyrighted label:

Plaintiff's Registered Work:                    Defendants' Specimen of Use:

    

131.    Defendants' specimen is not only substantially similar but identical to the labels on Plaintiff's ZENÚ-marked products.  The level of similarity cannot be a coincidence.

132.    The foregoing acts constitute willful copyright infringement in violation of 17 U.S.C. § 501.

**SIXTH CAUSE OF ACTION**
**Copyright Infringement Pursuant to 17 U.S.C. § 501**
**(Against Defendants)**

133.  Plaintiff restates and re-alleges each and every foregoing paragraph of this Amended Complaint as if fully set forth herein.

134.    Plaintiff owns the copyright for "Zenu Chorizo Pequeno," Registration No. VA 2-026-710.

135.    The copyrighted work is a label for Plaintiff's "Chorizo Pequeño" sold under the ZENÚ mark.  The label was developed by Plaintiff and this label is original.  Plaintiff has been using this label on its products for many years.

136.    The work is a square label which prominently features Plaintiff's stylized ZENÚ logo in red centered at the top, against a white background.  Directly below the ZENÚ logo is a

bright green piece of lettuce and in front of the lettuce to the right, is a diagonally placed pyramid of five whole chorizo.   In front of the chorizo is a maroon brushstroke with "Chorizo Pequeño" written in white type.

137.    Defendants have taken Plaintiff's "Zenu Chorizo Pequeno" and presented it as their own work as a specimen of use filed with the USPTO.  As can be seen below, Defendants submitted an image that is indistinguishable from Plaintiff's copyrighted work and that the ordinary observer would consider substantially similar.  Defendants' label possesses the same overall look and feel as Plaintiff's copyrighted label:

Plaintiff's Registered Work:                    Defendants' Specimen of Use:

    

138. Defendants' specimen is not only substantially similar but identical to the labels on Plaintiff's ZENÚ-marked products.  The level of similarity cannot be a coincidence.

139.    The foregoing acts constitute willful copyright infringement in violation of 17 U.S.C. § 501.

## SEVENTH CAUSE OF ACTION
### Copyright Infringement Pursuant to 17 U.S.C. § 501
### (Against Defendants)

140.  Plaintiff restates and re-alleges each and every foregoing paragraph of this Amended Complaint as if fully set forth herein.

141.    Plaintiff owns the copyright for "Ranchera," Registration No. VA 2-023-741.

142.    The copyrighted work is a label for Plaintiff's "Salchicha Premium" sold under the RANCHERA mark.  The label was developed by Plaintiff and this label is original.  Plaintiff has been using this label on its products for many years.

143.    The work is a square label which prominently features the RANCHERA mark that Plaintiff has applied to register.  The specimen features the image of a family consisting of a man, woman, boy and girl around a campfire in the foreground with a covered wagon in the background to the left.

144.    Defendants have taken Plaintiff's "Ranchera" and presented it as their own work as a specimen of use filed with the USPTO.  As can be seen below, Defendants submitted an image that is indistinguishable from Plaintiff's copyrighted work and that the ordinary observer would consider substantially similar. Defendants' label possesses the same overall look and feel as Plaintiff's copyrighted label:

Plaintiff's Registered Work:                    Defendants' Specimen of Use:

   

145.   Defendants' specimen is not only substantially similar but identical to the labels on Plaintiff's RANCHERA-marked products.  The level of similarity cannot be a coincidence.

146.   The foregoing acts constitute willful copyright infringement in violation of 17 U.S.C. § 501.

**EIGHTH CAUSE OF ACTION**
**Copyright Infringement Pursuant to 17 U.S.C. § 501**
**(Against Defendants)**

147.   Plaintiff restates and re-alleges each and every foregoing paragraph of this Amended Complaint as if fully set forth herein.

148.   Plaintiff owns the copyright for "Zenu Chorizo con Ternera," Registration No. VA 2-026-703.

149.   The copyrighted work is a label for Plaintiff's "Chorizo con Ternera" sold under the ZENÚ mark.  The label was developed by Plaintiff and this label is original.  Plaintiff has been using this label on its products for many years.

150.   The work is a rectangular label which prominently features Plaintiff's stylized ZENÚ logo in red off-centered to the right at the top, against a white background.  To the left, slightly below are three chorizo, with grill marks stacked in a pyramid, in front of a piece of

lettuce.  To the right, below the ZENÚ logo is a yellow brushstroke with "Chorizo con Ternera" written on it.  Below this brushstroke is a lime wedge.

151.    Defendants also sell a "Chorizo con Ternera" under the ZENÚ mark.  The label for this product would be viewed as substantially similar by the ordinary observer to Plaintiff's registered "Zenu Chorizo con Ternera."  Like Plaintiff's registered work, Defendant's label prominently features the stylized ZENÚ logo in red off-centered to the right at the top.  To the left, slightly below are three chorizo, with grill marks stacked in a pyramid, in front of a piece of lettuce.  To the right, below the ZENÚ logo is a yellow brushstroke with "Chorizo con Ternera" written on it.

152.    The level of similarity between Plaintiff's registered "Zenu Chorizo con Ternera" and Defendants' chorizo con ternera label cannot be a coincidence.  Defendants' label possesses the same overall look and feel as Plaintiff's copyrighted label:

Plaintiff's Registered Work:                    Defendants' Product:




153.    Indeed, at one point, Defendants attempted to procure Plaintiff's own ZENÚ labels to affix to their pirated products.

154.    The foregoing acts constitute willful copyright infringement in violation of 17 U.S.C. § 501.

### NINTH CAUSE OF ACTION
### Copyright Infringement Pursuant to 17 U.S.C. § 501
### (Against Defendants)

155. Plaintiff restates and re-alleges each and every foregoing paragraph of this Amended Complaint as if fully set forth herein.

156. Plaintiff owns the copyright for "Zenu Chile Con Carne de Res," Registration No. VA 2-026-672.

157. The copyrighted work is a label for Plaintiff's "Chile con carne de res" sold under the ZENÚ mark.  The label was developed by Plaintiff and this label is original.  Plaintiff has been using this label on its products for many years.

158. The work is a white label which wraps around a can.  The label prominently features Plaintiff's stylized ZENÚ logo in red at the top of the label.  Below the ZENÚ logo is a yellow label setting forth the can's contents.  This label slightly overlaps with an image of food below.  This image contains a bowl of beans, tilted diagonally so that its contents can be seen. The color of the beans is similar to the color of the content label.  The bowl is on a wooden table with some orange and green peppers to the right.  Below the bowl, at the base of the label is a thick yellow band, matching the content label.

159. Defendants also sell beans under the ZENÚ mark.  In particular, the label for Defendants' pinto beans would be viewed as substantially similar by the ordinary observer to Plaintiff's registered "Zenu Chile con carne de res."   Like Plaintiff's registered work, Defendant's label prominently features the stylized ZENÚ logo in red at the top of the white wrap-around label.  The content label is directly below the ZENÚ mark and corresponds to the color of the beans contained within the can and featured on the label.  The beans are depicted below the content label in a bowl displayed at a downward angle so that the contents—the pinto

beans—can be viewed.  The bowl is set on a wooden table and features bright produce to the right of the bowl.  The base of Defendants' label also has a thick band matching the content label.

160.     The level of similarity between Plaintiff's registered "Zenu Chile con carne de res" and Defendants' pinto bean label cannot be a coincidence.  Defendants' label possesses the same overall look and feel as Plaintiff's copyrighted label:

Plaintiff's Registered Work:                    Defendants' Product:

   

161.     Indeed, at one point, Defendants attempted to procure Plaintiff's own ZENÚ labels to affix to their pirated products.

162.     The foregoing acts constitute willful copyright infringement in violation of 17 U.S.C. § 501.

**TENTH CAUSE OF ACTION**
**Copyright Infringement Pursuant to 17 U.S.C. § 501**
**(Against Defendants)**

163.     Plaintiff restates and re-alleges each and every foregoing paragraph of this Amended Complaint as if fully set forth herein.

164.     Plaintiff owns copyright for: "Zenu Chorizo Mediano," Registration No. VA 2-023-767 (Exhibit B); "Zenu Chorizo con Ternera," Registration No. VA 2-026-703 (Exhibit C);

"Zenu Chorizo Pequeno," Registration No. VA 2-026-710 (Exhibit D); and "Zenu Chile Con Carne de Res," Registration No. VA 2-026-672 (Exhibit E).

165.    The above are all labels used on Plaintiff's ZENÚ-marked products.  Each of these labels adheres to a theme which creates the same overall look for Plaintiff's ZENÚ-marked products.  The majority of Plaintiff's ZENÚ-marked products are all similarly labeled.  The labels on their products feature the same ZENÚ mark in red stylized type, underlined by a brushstroke-type line against a white background and above a photograph of the food sold within the packaging.  Plaintiff's ZENÚ-marked canned goods also feature a boldly colored band at the base of the label indicating the weight or quantity of the product contained therein.  *See* Exhibit A.

166.    Defendants have copied the overall appearance of Plaintiff's labels, including those that Plaintiff has copyrighted.  The level of similarity cannot be a coincidence.  Indeed, at one point, Defendants attempted to procure Plaintiff's own ZENÚ labels to affix to their pirated products.  *See* Exhibit I.

167.    The foregoing acts constitute willful copyright infringement in violation of 17 U.S.C. § 501.

**ELEVENTH CAUSE OF ACTION**
**Source Misrepresentation Pursuant to Section 14(3) of the Lanham Act,**
**15 U.S.C. § 1064**
**(Against Defendants)**

168.    Plaintiff restates and re-alleges each and every foregoing paragraph of this Amended Complaint as if fully set forth herein.

169.    Latinfood, by and through Mr. Zuluaga, knowingly made false statements in the declaration submitted with its §1(a) application for ZENÚ, and by and through the subsequent assignment of the §1(a) application, by claiming that Defendants were the owners of the mark

and had used the mark in commerce for all of the goods identified in Registration No. 4,402,942, when in fact Defendants are not the owner of the mark.

170.    The specimens of use submitted by Latinfood, by and through Mr. Zuluaga, in support of the application appear to be representations of the actual products sold and distributed by Plaintiff under both the ZENÚ and RANCHERA marks, which Mr. Zuluaga knew them to be, yet he submitted said specimens to the USPTO with the intent to deceive the USPTO into believing the specimens emanated from Latinfood.

171.    Latinfood, by and through Mr. Zuluaga, executed a declaration claiming the specimens it submitted in support of its application for the ZENÚ mark were indeed its own when, in fact, the specimens were not.  This constitutes a false statement of material fact and it directly led to the issuance of Registration No. 4,402,942.

172.    Latinfood, by and through Mr. Zuluaga, also submitted specimens in support of its application for the ZENÚ mark that do not accurately reflect the products Defendants are using in commerce.  For example, the products Defendants sell bearing the ZENÚ mark (*see* Exhibit I)  do not match the specimen (*see* Exhibit H).

173.    Latinfood, by and through Mr. Zuluaga,  also stated that they believed themselves to be entitled to exclusive use of the ZENÚ mark in the United States despite their knowledge that Plaintiff had properly registered each of its ZENÚ trademarks in Colombia prior to the alleged date of first use in Latinfood's application.  Moreover, Plaintiff's ZENÚ mark had become well-known in the United States long before the alleged date of first use in Defendants' trademark application that matured into Reg. No. 4,402,942.

174.     Defendants' declaration was a false representation of a material fact filed in connection with their application for the sole purpose of obtaining a registration to which they were otherwise not entitled.

175.     Registration No. 4,402,942 was issued on the basis of a knowing and intentional fraud by Mr. Zuluaga on behalf of Latinfood and should therefore be cancelled.

### TWELFTH CAUSE OF ACTION
### Trademark Cancellation Pursuant to Articles 7 and 8 of the Inter-American Convention for Trade Mark and Commercial Protection
### (Against Defendants)

176.     Plaintiff restates and re-alleges each and every foregoing paragraph of this Amended Complaint as if fully set forth herein.

177.     At all relevant times, the United States and Colombia have been and are contracting states to the Inter-American Convention for Trade Mark and Commercial Protection ("IAC"), 46 Stat. 2907.  The Convention was self-executing, and as such, the IAC is the law of the United States.  *See Bacardi Corp. v. Domenech*, 311 U.S. 150, 161 (1940).

178.     Article 7 of the IAC provides:

> Any owner of a mark protected in one of the Contracting States in accordance with its domestic law, who may know that some other person is using or applying to register or deposit an interfering mark in any other of the Contracting States, shall have the right to oppose such use, registration or deposit and shall have the right to employ all legal means, procedure or recourse provided in the country in which such interfering mark is being sought, and upon proof that the person who is using such mark or applying to register or deposit it, had knowledge of the existence and continuous use in any of the Contracting States of the mark on which opposition is based upon goods of the same class, the opposer may claim for himself the preferential right to use such mark in the country where the opposition is made or priority to register or deposit it in such country, upon compliance with the requirements established by the domestic legislation in such country and by this Convention.

179.     Article 8 of the IAC provides:

- 41 -

When the owner of a mark seeks the registration or deposit of the mark in a Contracting State other than that of origin of the mark and such registration or deposit is refused because of the previous registration or deposit of an interfering mark, he shall have the right to apply for and obtain the cancellation or annulment of the interfering mark upon proving, in accordance with the legal procedure of the country in which cancellation is sought, the stipulations in Paragraph (a) and those of either Paragraph (b) or (c) below:

a.    That he enjoyed legal protection for his mark in another of the Contracting States prior to the date of the application for the registration or deposit which he seeks to cancel; and

b.    That the claimant of the interfering mark, the cancellation of which is sought, had knowledge of the use, employment, registration or deposit in any of the Contracting States of the mark for the specific goods to which said interfering mark is applied, prior to adoption and use thereof or prior to the filing of the application or deposit of the mark which is sought to be canceled; or

c.    that the owner of the mark who seeks cancellation based on a prior right to the ownership and use of such mark, has traded or trades with or in the country in which cancellation is sought, and that goods designated by his mark have circulated and circulate in said country from a date prior to the filing of the application for registration or deposit for the mark, the cancellation which is claimed, or prior to the adoption and use of the same.

180.    Defendants have violated Articles 7 and 8 of the IAC by using and registering an identical ZENÚ mark for the same class of goods with knowledge of the prior existence of Plaintiff's mark and Plaintiff's use of the mark for the same goods.

181.    Defendants have further violated Article 7 of the IAC by using the identical RANCHERA mark for the same class of goods with knowledge of the prior existence of Plaintiff's mark and Plaintiff's use of the mark for the same goods.

182.    Plaintiff has suffered and will continue to suffer irreparable harm as a result of such violations, including harm to the goodwill that Plaintiff has developed for its products which, in turn, impacts Plaintiff's sales in Colombia and any future sales Plaintiff may seek to have in this District and in the United States.

183.    Accordingly, Latinfood's registration of the ZENÚ mark, by and through Mr.

Zuluaga, should be cancelled and their use of the RANCHERA mark should be enjoined.

### THIRTEENTH CAUSE OF ACTION
### Commercial Name Protection Pursuant to Articles 16, 17, 18 and 31 of the Inter-American
### Convention for Trade Mark and Commercial Protection
### (Against Defendants)

184.    Plaintiff restates and re-alleges each and every foregoing paragraph of this

Amended Complaint as if fully set forth herein.

185.    At all relevant times, the United States and Colombia have been and are

contracting states to the IAC.  The IAC is self-executing and as such, the IAC is the law of the

United States.

186.    Article 17 of the IAC entitles "any manufacturer, industrialist, merchant or

agriculturalist domiciled or established in any of the Contracting States" using a commercial

name to "oppose the adoption, use, registration or deposit of a trademark" that is confusingly

similar to the commercial name which has previously been in use in a contracting state.

187.    Article 18 of the IAC entitles "any manufacturer, industrialist, merchant or

agriculturalist domiciled or established in any of the Contracting States" using a commercial

name to enjoin the use of or obtain the cancellation of the registration of a trademark when the

trademark is deceptively similar to a commercial name that was previously in use and continues

to be in use for the same class of goods.

188.    In addition, Article 31 of the IAC empowers any "manufacturer, industrialist,

merchant or agriculturist, interested in the production, manufacture, or trade in the merchandise

or articles affected by any prohibited act or deed" under the IAC to "take and prosecute the

necessary actions and proceedings" before a court of a contracting state.

189.    Plaintiff is empowered under Article 31 to prosecute any violations of its rights under the IAC occurring in the United States.

190.    Article 16 of the IAC prohibits, in part, the use, registration or filing of a trade mark which takes a commercial name legally adopted or previously used in any contracting state for the same type of good.  Plaintiff may enforce Article 16 through Article 31.

191.    Defendants have violated Articles 16, 17 and 18 of the IAC by using and registering the ZENÚ mark for a class of goods with knowledge of Plaintiff's prior use of the identical mark for the same class of goods.  Defendants have also violated Articles 16, 17 and 18 of the IAC by using and registering the RANCHERA mark for a class of goods with knowledge of Plaintiff's prior use of the identical mark for the same class of goods.

192.    Plaintiff has suffered and will continue to suffer irreparable harm as a result of such violations, including harm to the goodwill that Plaintiff has developed for its products, which, in turn, impacts Plaintiff's sales in Colombia and any future sales Plaintiff may seek to have in this District and in the United States.

193.    Accordingly, Latinfood's registration of the ZENÚ mark, by and through Mr. Zuluaga, should be cancelled and their use of the RANCHERA mark should be enjoined.

### FOURTEENTH CAUSE OF ACTION
### Trademark Cancellation Pursuant to Article 12 of the Inter-American Convention for Trade Mark and Commercial Protection
### (Against Defendants)

194. Plaintiff restates and re-alleges each and every foregoing paragraph of this Amended Complaint as if fully set forth herein.

195. At all relevant times, the United States and Colombia have been and are contracting states to the IAC.  The IAC is self-executing and as such, the IAC is the law of the United States.

196.   Article 12 of the IAC grants the original owner of a mark the right to cancel the registration of that mark and obtain the registration for itself if "an agent, representative or customer of the owner" subsequently registers the mark in another contracting state without the original owner's knowledge.

197. Upon information and belief, Defendants are customers of Plaintiff, having purchased Plaintiff's ZENÚ-branded products in the past.  Defendants registered the ZENÚ mark in the United States long after Plaintiff had registered and used the ZENÚ mark in Colombia.

198. Accordingly, pursuant to Article 12 of the IAC, Plaintiff is entitled to cancel Defendants' registration and obtain the registration of the ZENÚ mark for itself.

**FIFTEENTH CAUSE OF ACTION**
**Unfair Competition Pursuant to N.J. Stat. 56:4-1 and 56:4-2**
**(Against Defendants)**

199.    Plaintiff restates and re-alleges each and every foregoing paragraph of this Amended Complaint as if fully set forth herein.

200.    Plaintiff has used the name ZENÚ for more than sixty years for its products. ZENÚ is an arbitrary and distinctive mark for meat, sausage, beans and other packaged food products and, consequently, is a valid and legally protectable trademark, trade name and house mark.

201.    Plaintiff adopted the ZENÚ mark more than sixty years ago and properly registered it in Colombia.

202.    Plaintiff's ZENÚ mark is well-known among Colombians, Colombian-Americans, other South Americans and those that have travelled to Colombia.

203.    Mr. Zuluaga has caused Latinfood to use the identical mark to sell the same class of product in a deliberate attempt to create confusion because consumers in the United States will assume that Latinfood's products are actually those of Plaintiff, the well-known manufacturer of products under the ZENÚ mark.

204.    Mr. Zuluaga has caused Latinfood to place its products in markets that serve customers who would know Plaintiff's ZENÚ mark.  Upon information and belief, Defendants use the ZENÚ mark intending to profit from consumers' confusion and to capitalize on the goodwill generated by Plaintiff's mark.

205.    Moreover, it is unlikely that any consumer would engage in a thorough investigation to uncover the true source of Latinfood products.

206.    Defendants' inferior products harm the goodwill Plaintiff has worked hard to generate and in turn, impact Plaintiff's sales in Colombia and any future sales Plaintiff may seek to have in this District and in the United States.  Moreover, Plaintiff is foreclosed from selling its products in the United States as long as Defendants hold the registration for the ZENÚ mark.

207.    The foregoing acts of Defendants constitute a willful violation of N.J. Stat. 56:4-1 and 56:4-2.

## SIXTEENTH CAUSE OF ACTION
### Unfair Competition Pursuant to N.J. Stat. 56:4-1 and 56:4-2
**(Against Defendants)**

208.    Plaintiff restates and re-alleges each and every foregoing paragraph of this Amended Complaint as if fully set forth herein.

209.    Plaintiff has used the name RANCHERA for many years for its products. RANCHERA is an arbitrary and distinctive mark for meat and sausage, and, consequently, is a valid and legally protectable trademark, trade name and house mark.

210.     Plaintiff properly registered the RANCHERA mark in Colombia and has filed an application to register the RANCHERA mark with the USPTO.  The application has been assigned the Serial Number 87/235,819.

211.     Plaintiff's RANCHERA mark is well-known amongst Colombians, Colombian-Americans, other South Americans and those that have travelled to Colombia.

212.     Mr. Zuluaga has caused Latinfood to use the identical mark to sell the same class of products in a deliberate attempt to create confusion because consumers in the United States will assume that Latinfood products are actually those of Plaintiff, the well-known manufacturer of products under the RANCHERA mark.

213.     Mr. Zuluaga has caused Latinfood to place its products in markets that serve customers that would know Plaintiff's RANCHERA mark.  Upon information and belief, Mr. Zuluaga causes Latinfood to use the RANCHERA mark intending for the company to profit from consumers' confusion and to capitalize on the goodwill generated by Plaintiff's mark.

214.     It is unlikely that any consumer would engage in a thorough investigation to uncover the true source of Defendants' products.

215.     Defendants' inferior products harm the goodwill Plaintiff has worked hard to generate and, in turn, impact Plaintiff's sales in Colombia and any future sales Plaintiff may seek to have in this District and in the United States.

216.     The foregoing acts of Defendants constitute a willful violation of N.J. Stat. 56:4-1 and 56:4-2.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.  For a preliminary and permanent injunction restraining and enjoining Defendants, their officers, agents, servants, employees, and those in active concert or participation with them from:

    a.  using on or in connection with any product or service or the manufacture, exportation, sale, offering for sale, distribution, advertising, promotion, labeling or packaging of any product or service, or from using for any commercial purpose whatsoever: (i) Plaintiff's ZENÚ mark; (ii) Plaintiff's RANCHERA mark; (iii) Plaintiff's current trade dress for its ZENÚ and RANCHERA products; (iv) any other trademark or trade dress which colorably imitates or is confusingly similar to Plaintiff's ZENÚ or RANCHERA marks or trade dress; and (v) any other false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the public or to deceive the public into the belief that Defendants' products are the same as Plaintiff's products;

    b.  from representing by any means whatsoever, directly or indirectly, that any products sold by Defendants are affiliated, sponsored, approved or endorsed by Plaintiff or that Plaintiff's and Defendants' products derive from a common source;

    c.   from representing by any means whatsoever, directly or indirectly, that any products sold by Defendants possess the same quality or characteristics as Plaintiff's products;

2.      For an order cancelling Defendants' registration in the ZENÚ mark and registering the ZENÚ mark to Plaintiff pursuant to the Inter-American Convention for Trade Mark and Commercial Protection and 15 U.S.C. § 1064;

3.      That Defendants be required to account for and remit to Plaintiff all gains, profits and advantages derived by them from their acts of false representation, false advertising, trade dress infringement, copyright infringement and unfair competition, to the full extent provided by 15 U.S.C. § 1117, 17 U.S.C. § 504, the Inter-American Convention and New Jersey statutory prohibition on unfair competition, and that those amounts be increased or trebled in view of the willfulness of Defendants' actions pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 504(c)(2) and N.J. Stat. 56:4-2;

4.      For an order requiring Defendants to deliver to Plaintiff for destruction all labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession bearing Plaintiff's ZENÚ or RANCHERA marks or trade dress, pursuant to 15 U.S.C. § 1118;

5.      For attorneys' fees and costs incurred herein because of the willfulness and outrageous nature of Defendants' actions, pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 505;

6.      For pre-judgment interest according to proof; and

7.      For such other relief as the Court deems just, proper and equitable.

## JURY DEMAND

Plaintiff demands trial by jury of all issues and all claims.

Dated:   New York, New York          **REED SMITH LLP**
        April 21, 2017

By:  *s/ Sarah Levitan*
      Peter D. Raymond, Esq. (admitted *pro hac*)
      Sarah Levitan, Esq.
      599 Lexington Avenue
      New York, New York 10022
      Tel: (212) 521-5400
      Fax: (212) 521-5450

      Tracy Zurzolo Quinn, Esq.
      Princeton Forrestal Village
      136 Main Street, Suite 250
      Princeton, NJ 08540
      Tel: (609) 987-0050
      Fax: (609) 951-0824

      *Attorneys for Plaintiff*
      *Industria de Alimentos Zenú S.A.S.*