UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| |
|---|
| **INDUSTRIA DE ALIMENTOS ZENÚ S.A.S.,**  Plaintiff, v.  **LATINFOOD U.S. CORP. d/b/a ZENÚ PRODUCTS CO., and WILSON ZULUAGA,**  Defendants. |

Civ. No. 16-6576 (KM)(MAH)

OPINION

## KEVIN MCNULTY, U.S.D.J.:

Plaintiff Industria de Alimentos Zenú, S.A.S ("Industria") brought a sixteen-count action against the defendants, Latinfood U.S. Corp doing business as Zenú Products Co. ("Latinfood"), and Wilson Zuluaga. Latinfood has asserted a counterclaim for tortious interference with prospective economic advantage against Industria and Cordialsa, Inc. ("Cordialsa").

Industria and Cordialsa now move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the most recent amended version of Latinfood's Counterclaim for failure to state a claim. For the reasons set forth below, that motion is denied.

1

## I. Background[1]

I previously considered this case in the context of Latinfood and Mr. Zuluaga's motion to dismiss Counts 1–4 and 11–16 of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *See Industria de Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*, No. CV 16-6576 (KM)(MAH), 2017 WL 6940696 (D.N.J. Dec. 29, 2017). Familiarity with that opinion, which relates the background of the litigation and the allegations of the complaint, is assumed.

Latinfood filed an answer generally denying those allegations and asserting a counterclaim for tortious interference with prospective economic advantage against Industria and Cordialsa. (Answer, Counterclaims ¶¶ 24-27). The current amended version of the counterclaim (cited as "Counterclaim", ECF no. 89 at 19–25) alleges as follows.

Industria is a corporation organized under the laws of Colombia and is a wholly-owned subsidiary of Grupo Nutresa S.A.[2] (Counterclaim ¶¶ 3, 12). Cordialsa is a corporation organized under the laws of Texas, and is also a wholly-owned subsidiary of Grupo Nutresa S.A. (*Id.* ¶¶ 4, 12). Cordialsa, which began its operations in 2004, is the "marketing arm and distribution company for Grupo Nutresa S.A." (*Id.* ¶ 12)

According to Latinfood, Cordialsa "uses different channels of distribution . . . to commercialize its products in the U.S.," including "supermarkets, convenience stores, club stores, mass merchandisers and dollar stores." (*Id.* ¶

---

[1] For the purposes of this 12(b)(6) motion to dismiss, I will assume the allegations in the Answer (where the counterclaims are made) are true. *See* Section III, *infra*.

[2] Industria's Amended Complaint (AC) similarly alleges that Industria is a wholly-owned subsidiary of Grupo Nutresa S.A., "the largest Colombian food corporation with annual global sales of approximately U.S. $3 billion." (AC ¶ 13). According to Industria, "Grupo Nutresa conducts business and sells products in the United States through United States-based subsidiaries." (*Id.*)

2

13). Cordialsa has warehouses in Houston, Texas; Laredo, Texas; and Los Angeles, California. (*Id.*) Latinfood alleges upon information and belief that Cordialsa sells its products in California, Nevada, Arizona, Texas, Florida, New York, New Jersey, Illinois, and Georgia. (*Id.* at ¶ 14).

On or around July 15, 2015, Mr. Zuluaga, on behalf of Latinfood, paid a regular visit to its customer Food Fair Supermarket in Paterson, New Jersey. (*Id.* ¶ 18). During that visit the store manager requested that Mr. Zuluaga remove all of Latinfood's Zenú-branded products from the store. (*Id.*) The manager informed Mr. Zuluaga that the area manager of Cordialsa, Alejandro Yepes, had told him that Latinfood's Zenú-branded products were "'fake.'" (*Id.*) The manager also stated that Yepes "intimidated" him "into removing the products from the store entirely." (*Id.*)

On that same date, Mr. Zuluaga allegedly spoke to Mr. Yepes in the parking lot of the supermarket. (*Id.* at ¶ 19). Yepes acknowledged that he had told the Food Fair Supermarket manager the Latinfood products were "'fake,'" and also "that he had requested [the products] be removed from the store shelves." (*Id.*) Yepes also stated that "he had been given direct orders from his manager, Luis Arango" not only to "identify points of sale of any Zenú-branded products," but also to tell those points of sale "that the products were 'fake.'" (*Id.*) Yepes stated that Arango had told him that the products "had to be removed immediately from the sales floor." (*Id.*)

Later that day, Latinfood sent a cease-and-desist letter to Arango and Cordialsa. The letter described the incident at Food Fair Supermarket, and demanded that "such malicious actions" stop and such "willfully false statements" cease. (*Id.* ¶ 20; a copy of the letter is at ECF no. 69-2.) Latinfood asserts that despite the letter, it "continued to receive several comments from various Latinfood customers that Industria and/or Cordialsa" had contacted them and informed them that Latinfood's Zenú-branded products were "'fake' and that the customers should immediately stop carrying the products." (*Id.* ¶ 21). Latinfood alleges that "Industria's and/or Cordialsa's false and malicious

3

comments" caused Latinfood's sales and volumes to decrease or even cease completely. (*Id.* ¶ 22). The counterclaim alleges that Industria and Cordialsa "seek to interfere with Latinfood's current and prospective customer relationships, and thereby deprive Latinfood of its economic advantage to which it is entitled." (*Id.* ¶ 23).

## II. Procedural History

On October 5, 2016, Industria filed its initial Complaint against Latinfood, doing business as "Zenú Products Co.", and Mr. Zuluaga. (Cplt.) It asserted eight claims against Latinfood and Mr. Zuluaga for infringmenet of trademarks and unfair competition.

On April 21, 2017, Industria filed an Amended Complaint asserting sixteen causes of action against Latinfood and Mr. Zuluaga.[3] (AC) Although the initial Complaint centered on the Zenú mark, the Amended Complaint added claims with respect to the Ranchera mark. Counts 1-4 and 11 arise under the Lanham Act. Counts 5-10 allege copyright infringement of specific copyrights owned by Industria. (*Id.* ¶¶ 126-67). Counts 12-14 allege violations of the IAC. (*Id.* ¶ 176-98) Counts 15 and 16 allege unfair competition in violation of the New Jersey Fair Trade Act, N.J. Stat. Ann. 56:4-1 *et seq.* (*Id.* ¶ 199-216).

On May 19, 2017, Latinfood and Mr. Zuluaga filed a Partial Answer to Industria's Amended Complaint (ECF no. 36), as well as a motion to dismiss Counts 1-4 and 11-16. (ECF no. 37) I denied that motion to dismiss by Order and Opinion filed December 29, 2017. (ECF nos. 81, 82)

On June 30, 2017, pursuant to stipulation, Latinfood and Zuluaga filed their Amended Partial Answer, with a Counterclaim asserted by Latinfood against Industria and Cordialsa.[4] ((ECF no. 44 at 22-25)[5]

---

[3] The Court filed a stipulation and Order allowing Industria to file the Amended Complaint. (ECF no. 33) In light of the filing of the Amended Complaint, this Court administratively terminated (ECF no. 34) a pending motion (ECF no. 14) to dismiss the original complaint.

[4] As against Industria, this is properly deemed a counterclaim. Cordialsa, however, is not a plaintiff. Technically, then, as to Cordialsa the "counterclaim" is actually a third-party complaint. The Clerk's Office docketed the submission as

4

On September 8, 2017, Latinfood and Mr. Zuluaga filed their Second Amended Partial Answer with Counterclaim. (ECF nos. 60, 62). The counterclaim of tortious interference with prospective economic advantage was asserteds by Latinfood against Industria and Cordialsa. (*Id.*)

On September 29, 2017, Industria and Cordialsa filed a renewed motion to dismiss the version of Latinfood's counterclaim contained in the Second Amended Partial Answer. (ECF no. 69). As Exhibit A to the motion, they attached a copy of the cease-and-desist letter sent from Mr. Zuluaga, on behalf of Latinfood, to Luis Arango. (ECF no. 69-2, Exh. A). Exhibit B is a copy of the counsel's responding letter, dated November 10, 2015. (ECF no. 69-2, Exh. B).

On October 30, 2017, Latinfood and Mr. Zuluaga filed papers in opposition to the motion to dismiss the then-current Counterclaim, attaching a declaration from Mr. Zuluaga. (ECF no. 77). On November 13, 2017, Industria and Cordialsa filed their reply. (ECF no. 78).

On January 29, 2018, Latinfood and Mr. Zuluaga filed a Third Amended Partial Answer with Counterclaim. (ECF no. 89). On February 9, 2018, the parties stipulated that the pending motion to dismiss the Counterclaim would be deemed to apply to the version in the Third Amended Partial Answer. (ECF no. 92). The matter is thus fully briefed and ripe for decision.

### III. Legal Standard

A motion to dismiss counterclaims is reviewed under the same standard as a motion to dismiss a complaint under Fed. R. Civ. P. 12(b)(6). *In re Gabapentin Patent Litig.*, 648 F. Supp. 2d 340, 346 (D.N.J. 2009) (citing *Organon Inc. v. Mylan Pharm.*, 293 F. Supp. 2d 453, 456–57 (D.N.J. 2003)).

---

"*Second Amended Partial* ANSWER to Complaint with JURY DEMAND *Causes of Action 5-10*, Amended THIRD PARTY COMPLAINT against Cordialsa USA, Inc., INDUSTRIA DE ALIMENTOS ZENU S.A.S. by WILSON ZULUAGA, LATINFOOD U.S. CORP." For ease of reference, I will continue to refer to the "Counterclaim" as such. The terminology makes no difference in substance.

5 Industria filed a motion for preliminary injunction, which was withdrawn by stipulation on October 23, 2017. (ECF nos. 49, 74). Industria and Cordialsa filed a motion to dismiss the Counterclaim, later withdrawn in response to its amendment. (ECF nos. 51, 65)

Under Rule 12(b)(6), a party may move for the dismissal of a claim, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the non-moving party. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

A counterclaimant's obligation to provide the grounds for entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 55 (2007). Thus, the counterclaimant's factual allegations must be sufficient to raise a counterclaimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the [counterclaimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

In considering a motion under Rule 12(b)(6), I am confined to the allegations contained within the counterclaims, with some narrow exceptions. Courts may consider "document[s] integral to or explicitly relied upon in the complaint," or any "undisputedly authentic document . . . attache[d] as an exhibit to a motion to dismiss if the [counterclaimant]'s claims are based on the document." *In re Asbestos Products Liab. Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d

6

Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory*, 114 F.3d at 1426); *Pension Ben. Guar. Corp.*, 998 F.2d at 1196).

### IV. Discussion

Under New Jersey law, a claimant alleging tortious interference with prospective economic advantage must show that (1) it had a reasonable expectation of economic advantage; (2) the interference was done intentionally and with malice; (3) the interference caused the loss of prospective gain; and (4) the injury caused damage. *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751 (1989). *See Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016).

In the Counterclaim, Latinfood[6] alleges first that it had a continuing economic relationship with its customers and "an expectation of prospective economic advantage from relationships to be established with new customers in the future." (Counterclaim ¶ 25). Second, it alleges that Industria and Cordialsa intentionally spread "false and malicious information, even though both companies are well aware of Latinfood's valid Zenú registration." (*Id.* ¶ 23). The alleged "false and malicious" information primarily consists of Industria and Cordialsa's alleged statements that Latinfood's Zenú products were "'fake'" and instructions to customers, particularly a Food Fair supermarket, that they should immediately stop carrying Latinfood's products. (*Id.* ¶ 21). Third, Latinfood asserts that similar statements by Cordialsa's field representatives in the northeast region of the United States induced other customers to cease

---

[6] In their initial submissions, Industria and Cordialsa argued that only Latinfood had standing to bring the counterclaim for tortious interference. (Pl. Br. 5-6). They maintained that Mr. Zuluaga had failed to establish his standing in a personal capacity and therefore any counterclaims asserted by him must be dismissed. (*Id.* at 5). Latinfood acknowledges, however, that it is the only counterplaintiff. (Def Br. 12). Latinfood's position is entirely consistent with the wording of the Counterclaim. I therefore disregard the standing argument as moot.

7

doing business with Latinfood. (*Id.* ¶ 26). Fourth, and finally, Latinfood alleges that "[a]s a direct and proximate result of [Industria and Cordialsa's] malicious inducement to potential and existing clients of Latinfood not to engage in any business activities with Latinfood, Latinfood suffered damages that will be established at trial." (*Id.* ¶ 27).

### A. Sufficiency of Allegations against Industria

The motion to dismiss the Counterclaim first focuses on the sufficiency of Latinfood's allegations that Industria participated in, or may be held liable for, the alleged tortious acts.

As noted above, the Counterclaim alleges generally that "Industria and Cordialsa" made malicious statements. Specifically, however, it alleges only statements by Cordialsa's area manager, Mr. Yepes. Industria argues that the allegations of the Counterclaim against itself (as opposed to Cordialsa) are conclusory and do not contain sufficient factual detail. It argues further that paragraphs 21 and 22 use the phrase "Industria and/or Cordialsa" in a manner that fails to specify the role of each. (*Id.*)

There are two potential routes to liability on the part of Industria, one direct and one indirect. First, Latinfood might allege and prove that Industria acted in concert with Cordialsa and participated directly in the alleged tortious interference. Second, it might attempt to pierce the corporate veil as to these sister corporations, and thus attribute Cordialsa's acts to Industria.

The Counterclaim, I find, plausibly asserts the first theory. Essentially it alleges that Grupo Nutresa, Industria, and Cordialsa are an integrated operation. In particular, Cordialsa is "the marketing arm and distribution company for Grupo Nutresa." (Counterclaim ¶ 13) And it alleges that a representative of Cordialsa intimidated a Food Fair manager from stocking Latinfood products that were "fake." In context, it is easily inferable that "fake" meant that the products were knockoffs masquerading as Industria's products. That Cordialsa would assert Industria's trademark rights plausibly supports an inference that it was acting in concert with Industria. That, of course, falls far short of conclusive proof, but it is a plausible enough allegation to require

8

discovery of the relevant facts, which would naturally be within the control of defendants.

The second theory, piercing the corporate veil, has two primary elements. "First, there must be such a unity of interest and ownership that the separate personalities of the corporation and the individual no long exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F.Supp.2d 668, 679 (D.N.J. 2009). Generally veil piercing presents a fact-intensive issue, requiring discovery. *See N. Am. Steel Connection, Inc. v. Watson Metal Products Corp.*, 2010 WL 3724518, at *10 (D.N.J. Sept.14, 2010) (citations omitted), *aff'd*, 515 F. App'x 176 (3d Cir. 2013).

Since the Counterclaim adequately pleads direct liability, I set aside the veil-piercing theory. The motion to dismiss on these grounds is denied.

### B. Element 1- Reasonable Expectation of Economic Advantage

The motion next focuses on the sufficiency of the allegations of the first element of the tort, *i.e.*, that Latinfood had a reasonable expectation of economic advantage. *See Printing Mart*, 116 N.J. at 751.

A plaintiff asserting a claim of tortious interference with prospective economic advantage "must allege facts that show some protectable right—a prospective economic or contractual relationship. Although the right need not equate with that found in an enforceable contract, there must be allegations of fact giving rise to some 'reasonable expectation of economic advantage.'" *MacDougall v. Weichert*, 144 N.J. 380, 404, 677 A.2d 162, 174 (1996) (citing *Printing Mart*, 116 N.J. at 751). *See Avaya Inc., RP*, 838 F.3d at 382 (quoting *Printing Mart*, 116 N.J. at 754, 755) (noting that "such prospective relations include 'the opportunity of selling or buying land or chattels or services, and any other relations leading to potentially profitable contracts'", and observing that "[c]ourts have found 'a reasonable expectation of economic gain in as slight an interest as prospective public sales.'") The New Jersey Supreme Court

9

straightforwardly stated that "[a] complaint must demonstrate that a plaintiff was in 'pursuit' of business." *Printing Mart*, 116 N.J. at 751; *see also id.* at 753-54; *Avaya Inc.*, 838 F.3d at 382.

Industria and Cordialsa protest that the "bulk" of Latinfood's claim rests on alleged statements to unidentified Latinfood customers. They cite *Eli Lilly & Co. v. Roussel Corp.*, which disfavors such anonymous allegations:

> [A] plaintiff asserting a tortious interference claim must allege facts that show an existing or prospective economic or contractual relationship; '[a] mere allegation of lost business does not suffice.' . . . The Complaint must 'allege facts that, if true, would give rise to a reasonable probability that particular anticipated contracts would have been entered into.' . . . Thus, 'the claimed loss of ... unknown customers cannot, standing alone, state a claim for tortious interference with prospective business relations.'

23 F. Supp. 2d 460, 494 (D.N.J. 1998) (quoting *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450, 1459 (E.D. Pa.1992)).

The Counterclaim, however, clearly alleges tortious statements and loss of business in relation to Food Fair Supermarket, an identified customer, on July 15, 2015. It alleges that Food Fair stopped ordering Latinfood's Zenú products as a result of the acts complained of. (Counterclaims ¶¶ 18-20, 26). Latinfood asserts that the Counterclaim's references to unidentified third parties were included only as fortifying examples of statements that the products were "fake" and needed to be removed from retailers' shelves, statements that were made even after the cease-and-desist letter. (*See* p. 3, *supra.*) Be that as it may, such additional allegations do not detract from the specific allegations as to Food Fair. I will not dismiss a sufficient allegation merely because it is accompanied by others that may not be sufficient.

In their reply, Industria and Cordialsa argue that the Counterclaim fails to allege that Food Fair Supermarket ceased doing business with Latinfood. The Counterclaim specifically alleges, however, that the store manager of Food Fair requested that Latinfood pick up and remove all of its Zenú products from

the store, and that Yepes "intimidated the manager into removing the products from the store entirely." (Counterclaim ¶ 18).[7] That is sufficient.

The motion to dismiss Latinfood's Counterclaim, insofar as it is based on failure to plead the element of reasonable expectation of economic advantage, is denied.

### C. Element 2- Malice

The motion next focuses on the second element of tortious interference with prospective economic advantage, *i.e.*, malice.

To set forth a cause of action, the plaintiff must allege that the defendant engaged in "the intentional doing of a wrongful act without justification or excuse." *Printing Mart-Morristown*, 116 N.J. at 756. Malice "is determined on an individualized basis, and the standard is flexible, viewing the defendant's actions in the context of the facts presented." *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 306 (2001). As explained by the New Jersey Supreme Court, "[o]ften it is stated that the relevant inquiry is whether the conduct was sanctioned by the 'rules of the game,' for where a plaintiff's loss of business is merely the incident of healthy competition, there is no compensable tort injury." *Id.* (citing *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 199 (App. Div.), *certif. denied*, 141 N.J. 99 (1995)). "The conduct must be both 'injurious and transgressive of generally accepted standards of common morality or of law,'" and "[t]he line clearly is drawn at conduct that is fraudulent, dishonest, or illegal and thereby interferes with a competitor's economic advantage." *Id.* at 306–07 (internal citations omitted).

Relying on *C.R. Bard, Inc. v. Wordtronics Corp.*, 235 N.J. Super. 168 (Law. Div. 1989), Industria and Cordialsa maintain that Latinfood has not pled malicious interference because the alleged statement that Latinfood's products

---

[7] The Counterclaim also makes more general allegations about "customers" which may or may not be intended to include Food Fair. It alleges that "[d]ue to Industria's and/or Cordialsa's false and malicious comments, Latinfood's sales and volumes purchased by the customers (which were told the false information) are significantly lower and/or ceased completely." (*Id.* ¶ 22). And it goes on to state that Cordialsa's statements induced "clients not to conduct business [with] Latinfood." (*Id.* ¶ 26).

11

were "'fake'"[8] was a truthful one. *See also East Penn Sanitation, Inc. v. Grinnell Haulers, Inc.*, 294 N.J. Super. 158, 180 (App. Div. 1996) (holding that a finding of malice could not be made based on "the communication of truthful information which ultimately promotes the State's public policy.") In their reply brief, they add that because their conduct was motivated by the legitimate desire to protect their global brand and consumers, malice cannot be found. (Def. Reply 5) (citing *Cargill Glob. Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 576 (D.N.J. 2010)).

I find the allegations sufficient. Cordialsa's statement that Latinfood's Zenú products were "'fake'" will easily bear the interpretation that they were being passed off as Industria's products *via* infringement of Industria's trademark. The issue of whether that statement is true lies at the heart of this lawsuit. To be sure, Industria and Cordialsa have their own story to tell; they say that they never infringed a valid trademark or misrepresented the origin of their products, and never engaged in any unacceptable business practice. But the Counterclaim adequately alleges that they did. Resolution of such factual issues must await summary judgment or trial.

Accordingly, the motion to dismiss Latinfood's Counterclaim, to the extent it rests on failure to plead malice, is denied.

---

[8] Industria and Cordialsa interpret the word "fake" as meaning that "[Latinfood]'s products were not the authentic products the stores presumed them to be, or that they did not derive from Industria." (Pl. Br. at 8)(citing ECF no. 69-2, Exh. B).

## V. Conclusion

For the reasons outlined above, Industria and Cordialsa's motion to dismiss Latinfood's Counterclaim is denied.

An appropriate order follows.

Dated: March 9, 2018

Kevin McNulty
United States District Judge

13