UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY


INDUSTRIA DE ALIMENTOS ZENU,    .
et al.,                         .
              Plaintiff,        .
                                . Case No. 16-cv-06576
VS.                             .
                                . Newark, New Jersey
LATIN FOOD U.S. CORPORATION,    . June 16, 2020
et al.,                         .
              Defendants.        .
-----------------------------    .


TRANSCRIPT OF HEARING
BEFORE THE HONORABLE MICHAEL A. HAMMER
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:
For the Plaintiff:           PETER D. RAYMOND, ESQ.,
                             Reed Smith LLP
                             Floor 22
                             599 Lexington Ave
                             New York, NY 10022-7650
                             (212) 521-5400

                             JEREMY A. BERMAN, ESQ.,
                             Reed Smith LLP
                             Floor 22
                             599 Lexington Ave
                             New York, NY 10022-7650

                             SAMUEL KADOSH, ESQ.,
                             Reed Smith LLP
                             Floor 22
                             599 Lexington Ave
                             New York, NY 10022-7650

Audio Operator:

Transcription Company:   KING TRANSCRIPTION SERVICES
                         3 South Corporate Drive
                         Suite 203
                         Riverdale, NJ 07457
                         (973) 237-6080


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

(APPEARANCES continued)

For the Defendants:          MARK J. INGBER, ESQ.,
                             Ingber Law Firm
                             Suite 203
                             30 W Mount Pleasant Ave
                             Livingston, NJ 07039-2931
                             (973) 921-0080

1          (Commencement of proceedings)

2

3          THE COURT:  Thank you.  All right, we're on

4     the record in Industria De Alimentos, et al. v. Latin

5     Foods, et al.  Civil Number 16-6576.  Can I have

6     appearances please beginning with Plaintiffs' counsel?

7          MR. RAYMOND:  Peter Raymond from Reed Smith

8     for plaintiff.  Accompanying me are Sam Kadosh and

9     Jeremy Berman also of Reed Smith.

10          THE COURT:  All right, and for the defense.

11          MR. INGBER:  Yes, Your Honor, for the

12     defendants Latin Foods and Wilson Zuluaga, (phonetic)

13     Mark Ingber.

14          THE COURT:  All right, I will say at the

15     outset counsel, I am -- I've consulted with Judge

16     McNulty about what is going on in this case and we are

17     very strongly inclined to appoint a special master to

18     address the myriad discovery disputes.  Including, but

19     certainly -- certainly not limited to the hard drive

20     issue and the potential issues that flow from that as

21     well as various other ongoing discovery issues.

22          As the records will clear reflect and counsel

23     surely are well aware, I have refereed, resolved or

24     presided over myriad discovery disputes in this matter

25     going back to 2018, if not before then.  And  much like

4

1   Sisyphus, I suppose, every time that boulder gets

2   pushed up the mountain it seems to roll back because

3   new discovery disputes pop up.

4          The most current iteration of that is

5   reflected in, among other filings:

6          Docket Entry 181 an 181 which are defendants'

7   submissions regarding discovery issues.

8          Docket Entry 183, which his plaintiffs'

9   letter.

10         Docket Entry 185, which is redundant with

11  Docket Entry 186, which is a terminated motion to

12  compel by the plaintiff, concerning the hard drive and

13  defendants' sales figures for 2011 and 2013.

14         Docket Entry 187, which at least in terms of

15  form is not redundant with Docket Entry 185 and 186,

16  but for some reason plaintiff felt compelled to repeat

17  a number of arguments regarding the discovery of the

18  defendants' sales information.

19         Docket Entry 188, which is defendants'

20  response to Docket Entries 185 and 187.

21         Docket Entry 193, which is plaintiffs' 2,355

22  -- sorry 54 page submission -- that's not a

23  misstatement concerning allegations that Wilson Zuluaga

24  lied under oath and seeking to depose Mr. Ingber.

25         Docket Entry 194, which is plaintiffs' status

5

1   report filed only three days later, just in case the

2   court managed to finish in that three days 2,354 page

3   submission, and still needed more information about the

4   plaintiffs' position.

5          And then, of course, the defendants' response

6   to Docket Entry 193.

7          Those are the issues before the Court.  I

8   don't need to tell counsel in this case that this is

9   certainly far from the only case before this Court.

10  And there is, having consulted with Judge McNulty, real

11  concerns about this Court's, with all of the other

12  matters in front of it, ability to address these issues

13  on an effective and timely basis.

14         Rule 53(a)(1)(C) authorizes the Court to

15  appoint a special discovery master where the Court has

16  concerns about whether the disputes before it can be

17  effectively and timely addressed.

18         Of course I also have to consider the fairness

19  of imposing the likely expenses on the parties and

20  avoiding its unreasonable expense or delay.  And of

21  course, under Rule 53, afford the parties notice, which

22  I'm doing now, and an opportunity to be heard.  Of

23  course under Rule 53 as well, the parties may offer

24  suggestions for the special discovery master.  The

25  Court is not bound by those suggestions, but certainly

6

 1   the parties can offer them, and the Court will consider

 2   them.

 3           So, that is a very serious consideration by

 4   the Court.  Like I said having discussed this matter in

 5   considerable detail with Judge McNulty.  I don't know

 6   that -- obviously, the parties did not know that the

 7   Court was going to raise this today, so I don't want to

 8   put the parties in an unfair position as to today

 9   objecting or consenting or otherwise taking a position

10   on the Court's consideration of appointing a special

11   discovery master.

12           If anyone does wish to be heard now, I'm happy

13   to hear you, otherwise what we will do is allow the

14   parties to file a short -- short, by the way I feel in

15   this case the need to maybe be a little more specific,

16   would be a five page or less submission within a week

17   from today as to each party's position on the

18   appointment of the special discovery master.

19           Having said that, if plaintiff wishes to be

20   heard at this point, I'd be happy to hear you.

21           MR. RAYMOND:  Your Honor, just very briefly,

22   we'll put in a letter.  But I guess, my position is we

23   don't -- I don't think we need this.  I mean the only

24   -- Your -- Your Honor has already ruled on most of the

25   discovery issues.  The -- you know, Your Honor ruled

 1  that there has to be a production of documents from the

 2  hard drive which is being done by Mr. Ingber.  Your

 3  Honor already ruled that we had the right to take Mr.

 4  Zuluaga's deposition after we get the hard drive

 5  report, which we plan to do.

 6       We did, because of certain statements that Mr.

 7  Ingber made in letters that we believe are inconsistent

 8  with what his client testified to, we asked to do his

 9  deposition.  But we would be prepared to waive that,

10  certainly for now, and simply take Mr. Zuluaga's

11  deposition and if he could clarify what the facts are

12  then that would be sufficient for us.

13       So, we were just hoping to have the documents

14  produced, do Mr. Zuluaga's deposition and then move on

15  to the -- you know the motions that we thought the

16  Court was going to schedule briefing on today.

17       So, we're not aware --

18       THE COURT:  Which motions exactly?

19       MR. RAYMOND:  -- of there being any other

20  discovery disputes that Your Honor hasn't already ruled

21  on.  So --

22       THE COURT:  What about the financial data, the

23  sales numbers for 2011 to 2013?

24       MR. RAYMOND:  Well, I believe that that was --

25  that what there was was produced already.

 1          THE COURT:  So, the sales numbers are not

 2   still in dispute?

 3          MR. RAYMOND:  Sam and Jeremy could one of you

 4   respond to that?  Didn't we get a response on that?

 5   the --

 6          MR. BERMAN:  Yes, this is Jeremy Berman --

 7   this is Jeremy Berman for the plaintiffs.  Defendants

 8   did produce all of the sales documents that they have

 9   in their possession, so that has been resolved.

10          THE COURT:  All right, well here -- I'm -- I

11   have to say I'm rather surprised, because the plaintiff

12   submission, Docket Entry 193, which was filed only a

13   week ago makes some pretty serious allegations,

14   obviously.  And it goes into considerable detail as to

15   the plaintiffs' theory of what happened.  And I'm

16   somewhat surprised to hear given that it's such a

17   simple reductive position by the plaintiff today.

18          So --

19          MR. RAYMOND:  Well, Your Honor --

20          THE COURT:  -- because one of the real

21   concerns -- hold on let me lay out my reaction first.

22          MR. RAYMOND:  Yes, sir, go ahead.

23          THE COURT:  One of the real concerns, among

24   other things, is frankly that letter was one on the

25   plaintiffs' theory and accusations.  And other than

1  seeking Mr. Ingber's deposition, was pretty short on

2  what remedy the plaintiff wanted.

3         Frankly, it left me scratching my head.  I

4  didn't know if you wanted still to make a spoliation

5  motion.  Although given that the hard drive actually is

6  intact, I'm not sure what the basis for spoliation

7  would be, I didn't know if it was a Rule 37 Sanctions

8  motion.  There's a reference that -- or a line in there

9  that says, basically defendant shouldn't be able to

10  drag all of this out at considerable delay and expense

11  without consequences.  Leaving me to wonder what those

12  consequences were.

13         So, let me sum up.  Exactly what does the

14  plaintiff want then at this point?

15         MR. RAYMOND:  Well, Your Honor, we simply want

16  to make what we've said all -- all along is spoliation

17  and sanctions motion, and a summary judgment motion.

18  The only discovery we want, since they now discovered

19  the hard drive, we want the documents on there, which

20  Mr. Ingber has agreed to produce once he's gone through

21  them and one a privilege review.  And we need to depose

22  Mr. Zuluaga since we've heard so many different stories

23  about, you know what -- what happened with this hard

24  drive and these documents and what we think are

25  clearly, you know, had to be lies one time or another

1    in these two depositions.  But that was all to be dealt

2    with in our spoliation and sanctions motion.

3            We just need to get the documents on the hard

4    drive, which we -- have been agreed to be produced.

5    And we need Mr. Zuluaga's deposition.  We could

6    probably do it without Mr. Zuluaga's deposition because

7    we've done it twice and we've taken his positions under

8    oath.  We just want to give him a chance to clarify, if

9    he had any clarification for -- he made very clear in

10   his first and second depositions there was one computer

11   and one hard drive.  And now Mr. Ingber has said in

12   letters that there were multiple hard drives.  But we

13   think that's completely inconsistent with the facts

14   that Mr. Zuluaga testified to.  So, we wanted to try to

15   clarify that in one final deposition.

16           But we're prepared, frankly, to go forward

17   with the motions on the record we have, if that's a

18   more efficient way to do it, because Mr. -- Mr.

19   Zuluaga's had two separate opportunities under oath to

20   explain what happened and we think that the hard drive

21   that was discovered and the analysis of that hard drive

22   from Pompeo (phonetic) clearly proves that Mr. Zuluaga,

23   you know, told untruths under oath in both those

24   depositions.

25           But we think -- you know, the evidence is

11

1   there to do that.  We just thought we'd give him one

2   more chance to try to explain it away.  But other than

3   that we're prepared to make our motions now.

4            THE COURT:  And the motions again are for

5   what?  Putting aside summary judgment.

6            MR. RAYMOND:  Well, spoliation and sanctions.

7   We believe that --

8            THE COURT:  Okay, what's the basis of the

9   spoliation argument if the hard drives are intact and

10  have been recovered?

11           MR. RAYMOND:  Well, there's two possibilities.

12  He -- he claims -- he said under oath that there was

13  only one hard drive and it crashed, and that therefore

14  he couldn't give us any documentation so we had to go

15  spend hundreds of thousands of dollars in legal fees to

16  try to recreate the record from third parties, which we

17  did once we had -- or we largely did.  Once we

18  concluded that after two years, Mr. Zuluaga then said,

19  oh well I discovered the hard drive.

20           THE COURT:  Right.

21           MR. RAYMOND:  And then -- and he's given us a

22  bunch of documents from it.  But now Mr. Ingber wrote

23  to the Court and said, well that really wasn't the hard

24  drive, that was some other hard drive, even though it

25  has all the documents from the case on it and it goes

1  right up until a week before the alleged crash.

2          So, clearly I -- I -- I think we have been

3  lied to repeatedly and that has cost our client

4  literally hundreds of thousands of dollars in

5  additional legal fees that shouldn't have -- they

6  shouldn't have had to occurred, because Mr. Zuluaga

7  should have pulled this hard drive out of his drawer

8  two years ago and given us all these documents then.

9  And then we wouldn't have had to go on this two-year --

10  detour finding all the -- finding the documents from

11  third-parties, which by the way are very hurtful to

12  their case.

13          So, you know, I won't go in now to my personal

14  view on this.  But I -- you know, I -- I think we've

15  been -- we've been lied to, repeatedly to try to hide

16  -- hide the ball and hide the -- the very damaging

17  evidence which we did manage to find.

18          So, I think there's some serious --

19          THE COURT:  But what I just heard there though

20  was a basis -- what I just heard was a basis for a

21  sanctions motion.  I still haven't heard a basis for a

22  spoliation motion.

23          But either way why would the Court -- given

24  the burden that the Court's under, why wouldn't --

25  shouldn't the Court refer, even the spoliation and

1  sanctions issues to a special discovery or a special

2  master to conduct any fact finding and any inquiry

3  appropriate and make a recommendation about what the

4  Court should do.  That's going to involve a tremendous

5  amount of time and effort.  And it's going to be a

6  major commitment for the Court.

7          Not to mention --

8          MR. RAYMOND:  Well --

9          THE COURT:  Hold on just to complete the

10 though.

11         MR. RAYMOND:  Yeah.

12         THE COURT:  Not to mention, I would predict

13 with near metaphysical certitude, that there are going

14 to be disputes about the production of the documents.

15 Pompeo identified almost 9,000 document hits and a

16 total of almost 11,000 -- or 11,427 documents that

17 touched upon court ordered search terms.  They've been

18 turned over to Mr. Ingber who is going to review the

19 data and provide the documents to plaintiff, with a log

20 identifying any documents defendants are withholding

21 and the basis for withholding such as relevance and

22 privilege within two weeks of completion.

23         I would -- I would predict, like I said, with

24 near complete confidence, that is absolutely engender

25 further disputes, be they privilege, be they relevant.

14

1    Why shouldn't the Court -- in the context of the -- and

2    look, let's be clear.  I've read the letter.  I'm not

3    going to sit here and tell you I've read all of the

4    exhibits, but I've read the letter.  To describe the

5    tone in that as vituperative would not be an

6    overstatement.  There are going to be disputes.

7              In light of the looming sanctions motion,

8    still not quite sure I get the spoliation motion, but

9    -- but I'll allow that perhaps there's some theory

10   under Rule 37 that I haven't thought of that plaintiff

11   did.  Why should the Court not appoint a special

12   master?

13             MR. RAYMOND:  Well, Your Honor, I guess my

14   thought is just that it isn't necessary.  We could make

15   the motion -- you know we think the facts are there,

16   that they've been developed in the several years of

17   litigation, --

18             THE COURT:  I'm sure you do.

19             MR. RAYMOND:  -- it's been very hard to get

20   it, but --

21             THE COURT:  I'm sure you do.  And having read

22   Mr. Ingber's letter I'm sure he does not agree.  So,

23   the Court may have to have hearings --

24             MR. RAYMOND:  Yeah, I mean Mr. Ingber's letter

25   -

1      THE COURT:  I'm sorry?

2      MR. RAYMOND:  I was just going to say, Mr.

3  Ingber's letter doesn't respond to the most -- the most

4  significant allegations in our letter, which is that

5  Mr. Zuluaga just simply lied at his deposition.  He

6  doesn't really deal with those issues at all by saying

7  there's some second hard -- some other hard drive.

8      I mean Mr. Zuluaga in both deposition, as

9  recently as last December, testified that there was one

10  hard drive and it crashed.  We now learned from Mr.

11  Ingber's letter that in fact prior to that deposition

12  Mr. Zuluaga had found the hard drive and had brought it

13  to the Best Buy.  So, I mean -- but all those facts are

14  out there now.

15      So, you know, we're -- we're prepared to make

16  the motions.  I mean we don't even really need the

17  depositions any more.  We would like to see the

18  documents that are going to be --  and I -- I -- I --

19  -- you know, I can't tell you that the won't be any

20  dispute over the documents and the privilege log,

21  because we haven't seen them yet.

22      But -- but since we already have from all of

23  the discovery, we had to take from third parties we

24  already have some pretty damning evidence about all

25  this.  You know we're -- we're prepared to make our

16

1  motion.  So, --

2          THE COURT:  So the Court -- but the Court can

3  appoint a special master even to consider the motions.

4          MR. RAYMOND:  No, I understand that Your

5  Honor.

6          THE COURT:  Under Rule 53 --

7          MR. RAYMOND:  We're not arguing with the

8  Court's right to do it.  I'm just -- I'm just

9  questioning whether it's really necessary at this

10 point.  But obviously that's not my position.  So --

11         THE COURT:  Let me hear from Mr. Ingber.

12 Because I have a 1 o'clock conference that I absolutely

13 cannot be last for.

14         Mr. Ingber what's your position if you wish to

15 be heard today.

16         MR. INGBER:  Yes, Your Honor, this is Mark

17 Ingber.  You know, frankly Your Honor I'm as astonished

18 as you are.  They make -- they make the most -- the --

19 the most serious of allegations in this June 9th

20 letter.  And now they're just willing to withdraw

21 everything.  You know, make believe it never happened

22 before and just move forward with -- with --

23         THE COURT:  Well, no -- no -- no -- no --

24 they're not -- to be clear, they're not proposing to

25 withdraw it.  Maybe at least as to taking your

1   deposition they are.  They're proposing, instead, to

2   basically bring it in the form of a motion.  Which is,

3   to be clear, is their right to do without making any

4   prediction, as to the merits or not of the motion, it's

5   their right to bring the motion.  But to be clear.  The

6   dispute is not going away.

7           MR. INGBER:  Your Honor, I don't know --

8   again, making accusations against an attorney and then

9   just dropping it is a very serious thing.  You know

10  where do I regain my reputation, Your Honor, you know

11  in -- in this situation.  There's been all these

12  horrific allegations referenced against me.  And now

13  they don't need to take my deposition.  Now they don't

14  need to take my client's deposition Your Honor.  Now,

15  they're just ready to move forward on some -- on their

16  continuous spoliation and -- and now sanctions I'm

17  hearing for the first time Your Honor.

18          They haven't named an expert yet.  You've been

19  asking them.  It's been four years and we still don't

20  even know if they're going to name an expert witness,

21  Your Honor.

22          There's all these things that they just throw

23  out there, they just make these accusations.  Clearly,

24  Your Honor, we disagree with everything that they said.

25  And I just see this -- I just see this -- like you said

18

1  Your Honor, there's no chance in the world that we're

2  not going to have an issue was to the documents that

3  we're withholding.  And then you'll receive another

4  letter from plaintiffs' counsel informing the Court.

5  This is just going to go on and on forever Your Honor.

6       They seem to be in a rush to move forward, but

7  they keep raising new issues Your Honor.  So, I don't

8  -- I mean to me a master, you know, maybe that would

9  help alleviate all -- all their anger and everything

10 that they feel in this case, so that we can move

11 forward.

12      THE COURT:  All right listen here's what I'll

13 do.  Go ahead if plaintiffs briefly respond --

14      MR. RAYMOND:  All I want to say Your Honor is

15 we've been trying to make this spoliation motion for

16 two years.  So, the last thing in the world we want is

17 further delay.  And that's really why we're opposed to

18 a special master.  We want to -- we want to get this

19 case to conclusion. That's all we've been trying -- if

20 you recall we wanted to make this spoliation motion

21 before discover even.

22      So, we haven't delayed this.  All -- you know,

23 we were ready to go, and then all of a sudden Mr.

24 Zuluaga says, oh look at this I found the hard drive,

25 after it was all done, we were all ready to go

1  forward.

2        So, we didn't raise this.  We then had to get,

3  you know, an expert to look at the hard drive, who

4  found that it never crashed, and it was always

5  available.  So, you know games have been -- I mean

6  games is a nice word here.  I mean terrible things --

7        THE COURT:  All right.  I got it.  I got it.

8  I got it.

9        MR. INGBER:  Your Honor one final comment?

10        THE COURT:  No -- no listen this is not

11  productive.  Let me make the following observations.

12        Plaintiff I think is incorrect in the premise

13  that by appointing a special master it's going to cause

14  undue delay.  Given the scope of the disputes here, the

15  very like -- the very strong likelihood of additional

16  discovery disputes, I respectfully disagree.  Not

17  appointing a special master is -- my concern is going

18  to cause dispute.  Because the Court -- again, this is

19  not the  Court's only matter and the disputes here are

20  significant, they very well could require additional

21  fact finding.

22        But in any event, because I wanted to give the

23  parties a fair opportunity to be heard.  I light of the

24  fact that the parties have put their positions on, does

25  either party still wish to submit a written

1    submission?

2            MR. RAYMOND:  Oh, Your Honor, plaintiff would

3    like to submit -- would like to make a written

4    submission on this issue, if the Court --

5            THE COURT:  That's fine.  All right, so I'll

6    allow both sides to make any submission limited to five

7    pages, double spaced, by the 23rd, okay.

8            MR. RAYMOND:  Very good Your Honor, we will do

9    that.

10           THE COURT:  Thank you counsel, we're

11   adjourned.

12           MR. INGBER:  Your Honor?

13           THE COURT:  Yes?

14           MR. INGBER:  Just one point again.  What about

15   the expert witness, Your Honor?

16           MR. RAYMOND:  Your Honor, we don't intend --

17   plaintiff does not intend to call an expert witness on

18   liability issue.

19           THE COURT:  What about damages?

20           MR. RAYMOND:  Well, we wanted to move for

21   summary judgment on liability.  So, that -- that was

22   our intention.  So we, I think -- I thought that we

23   agreed previously that we would hold off on damages

24   until after liability was determined.  But -- so I

25   don't know if we wanted a damages expert or not at this

1    point.  But we do not intend to call any liability

2    expert.  And I believe defendant said the same thing.

3    So --

4              THE COURT:  Uh huh.

5              MR. INGBER:  Again, Your Honor --

6                   (Indiscernible conversation)

7              THE COURT:  What?

8              MR. INGBER:  Your Honor?

9              THE COURT:  Yeah.

10             MR. INGBER:  I mean it's -- it's nice to hear

11   on the record that -- that they finally agree not to --

12   not to name a -- a liability expert.  You know, but

13   Your Honor frankly -- you know, it's your call as to

14   any damage expert.  It's now -- don't you think now is

15   the appropriate time for them to get off the pot and

16   say whether they're going to name one or not, instead

17   of you know having their cake and eat it too, waiting

18   until a decision on a summary judgment motion?

19             We're going to bring our own summary judgment

20   motion by the way.

21             THE COURT:  Fair enough.  I'm going to take

22   that advisement because I really have to get to my 1

23   o'clock counsel.  I look forward to your letters by

24   next week if you still want to submit them.  All right,

25   thank you.

1          MR. RAYMOND:  Thank you  Your Honor.

2

3               (Conclusion of proceedings)

1

2

3        I, JESSICA ROBINSON, Transcriptionist, do hereby

4    certify that the pages contained herein constitute a

5    full, true, and accurate transcript from the official

6    electronic recording of the proceedings had in the

7    above-entitled matter; that research was performed on

8    the spelling of proper names and utilizing the

9    information provided, but that in many cases the

10   spellings were educated guesses; that the transcript

11   was prepared by me or under my direction and was done

12   to the best of my skill and ability.

13       I further certify that I am in no way related to

14   any of the parties hereto nor am I in any way

15   interested in the outcome hereof.

16
17
18   /S/JessicaRobinson                06/18/20
19   Signature of Approved Transcriber         Date
20
21   Jessica Robinson, AOC #581
22
23   King Transcription Services
24   3 South Corporate Drive
25   Suite 203
26   Riverdale, NJ 07457
27   (973) 237-6080
28
29
30