# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| **INDUSTRIA DE ALIMENTOS** | : | |
| **ZENU S.A.S.,** | : | **Civil Action No. 16-6576 (KM) (MAH)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **OPINION** |
| | : | |
| **LATINFOOD U.S. CORP. d/b/a** | : | |
| **ZENÚ PRODUCTS CO., et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## I.  INTRODUCTION

This matter comes before the Court by way of three applications:  (1) a motion by Plaintiff Industria de Alimentos Zenú S.A.S. ("Plaintiff" or "Industria"), seeking sanctions for spoliation and discovery abuses allegedly committed by Defendants Wilson Zuluaga ("Zuluaga") and Latinfood U.S. Corp. ("Latinfood" and, together with Zuluaga, "Defendants"), Pl.'s Mot. for Sanctions, Oct. 8, 2021, D.E. 224; (2) Defendants' cross-motion for sanctions pursuant to Federal Rule of Civil Procedure 37(d), Defs.' Cross-Mot. for Sanctions, Nov. 1, 2021, D.E. 227; and (3) Plaintiff's letter-request to strike Defendants' cross-motion for sanctions and brief in opposition to Plaintiff's sanctions motion, Pl.'s Letter-Request to Strike, Nov. 3, 2021, D.E. 228.

Plaintiff accuses Defendants of spoliating and intentionally withholding evidence in this matter, pursuant to Federal Rules of Civil Procedure 37(e) and 37(c).  Specifically, Plaintiff contends that Zuluaga spoliated emails relevant to this litigation by (1) discarding a hard drive and (2) maintaining an auto-deletion policy on Defendants' email accounts, in spite of Defendants' obligation to preserve evidence.  Pl.'s Br. in Supp., Nov. 1, 2021, D.E. 224-1, at pp.

1

2-3. Plaintiff also alleges that Defendants purposefully failed to produce relevant documents, and that Defendants unjustifiably failed to disclose their possession and use of multiple cloud storage services, external hard drives, and a USB key, and that Defendants have declined to search several of those items for relevant documents. *Id.* at pp. 2, 14-15, 28-29.

Industria requests a range of sanctions, including that the Court

1.   enter a default judgment against Defendants;

2.   draw "adverse inferences against Defendants that they intentionally copied Industria's ZENÚ and RANCHERA marks, that they sought to mislead the public as to an association between Defendants and Industria, and that Industria's goodwill was harmed as a result;" and

3.   require Defendants to pay attorneys' fees and costs Plaintiff incurred as a result of the alleged spoliation and withholding.

*Id.* at pp. 20-29.

In their cross-motion, Defendants ask the Court to sanction Plaintiff for alleged violations of Federal Rule of Civil Procedure 37(d). Defendants seek (1) dismissal of this litigation; (2) entry of a default judgment against Plaintiff, and (3) an order directing Plaintiff to reimburse Latinfood the costs and fees Latinfood incurred in connection with the cross-motion and Plaintiff's purportedly inadequate Rule 30(b)(6) depositions. Defs.' Br. in Opp'n, Nov. 1, 2021, D.E. 226, at pp. 36-40. Plaintiff has informally moved to strike Defendants' cross-motion and brief in opposition because "the Court's prior orders did not give Defendants leave to file a cross-motion, [or] allow Defendants to modify their previously filed opposition." Pl.'s Letter-Request to Strike, D.E. 228, at p. 3.

The Court has reviewed the parties' submissions and, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, has considered the parties' motions without oral argument. For the reasons set forth below, Plaintiff's sanctions motion is granted in part and

2

denied in part, Defendants' motion is denied in its entirety, and Plaintiff's informal application to strike is denied as moot.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a Colombian corporation with its principal place of business in Medellín, Colombia.  Am. Compl., Apr. 21, 2017, D.E. 31, at ¶ 13.  It is also "a wholly-owned subsidiary of Grupo Nutresa S.A.," a Colombian food corporation that "conducts business and sells products in the United States through United States-based subsidiaries."  *Id.*  Zuluaga is the owner and principal of Defendant Latinfood, a New York corporation that sells and promotes food products in the State of New Jersey.  *Id.* at ¶¶ 14-15.

On December 27, 2002, Industria acquired two marks central to this litigation from its sister company, Industrias Alimenticias Noel S.A.: the Zenú and Ranchera marks.  *Id.* at ¶¶ 1-2.  Industria's Zenú mark "has been used for more than sixty years to identify meat, sausage, beans and other packaged food products in Colombia and elsewhere."  *Id.* at ¶ 1.  Industria's Ranchera mark, on the other hand, has been used in Colombia and other countries for more than twenty-five years, and is purportedly "among the most well-known trademarks for sausages and meat products."  *Id.* at ¶ 2.

Plaintiff uses distinctive packaging in marketing its Zenú and Ranchera-brand products.  *Id.* at ¶¶ 24-25, 30-31.  Consequently, over the years, Plaintiff has taken several steps to protect its interests.  For example, Plaintiff registered a single "Ranchera" title of work and four titles of work related to the Zenú mark with the United States Copyright Office.  *Id.* at ¶¶ 27, 32; *see also* Exhibits B to F of Am. Compl., D.E. 31-2 to 31-6.  Plaintiff has also registered numerous trademarks in Colombia in connection with Zenú, Ranchera, "and the line of products [Industria] offers under those names."  Am. Compl., D.E. 31, at ¶ 36.  Moreover, Plaintiff once owned

several trademark registrations at the United States Patent and Trademark Office ("USPTO") with the Zenú and Ranchera marks. *Id.* at ¶ 38. Over time, however, those registrations lapsed. *Id.*

In 2013 and 2014, respectively, Zuluaga submitted applications to the USPTO to register Zenú and Ranchera marks on Latinfood's behalf. *Id.* at ¶¶ 48, 73; *see also* Am. Answer, June 25, 2019, D.E. 154, at ¶¶ 48, 50, 73. The USPTO issued Latinfood Registration No. 4402942 for the mark "Zenú" on September 17, 2013, but denied Zuluaga's application to register the Ranchera mark. Am. Compl., D.E. 31, at ¶¶ 48, 50, 73, 79; *see also* Am. Answer, D.E. 154, at ¶¶ 48, 73; Exhibit A to Decl. of Samuel Kadosh, Esq., Sept. 9, 2014, D.E. 224-4, at p. 2 ("Pl.'s Petition for Cancellation"). Plaintiff filed a petition for cancellation of Latinfood's Zenú mark with the USPTO Trademark Trial and Appeal Board on September 9, 2014. Pl.'s Petition for Cancellation, D.E. 224-4. Plaintiff raised several grounds for cancellation, including deceptiveness, false suggestion of a connection, fraud, and likelihood of confusion. *Id.* Plaintiff alleged that the Zenú mark is "well-known . . . with a valuable goodwill belonging exclusively to [Industria]," and that Latinfood had "use[d] the ZENÚ mark to misrepresent to consumers, including those familiar with [Industria]'s ZENÚ mark, that [Latinfood]'s products are from the same source as [Industria]'s goods sold under the Zenú mark." *Id.* at p. 6 ¶ 5, p. 7 ¶¶ 8-11.

Two years later, on October 5, 2016, Plaintiff initiated this matter by filing a Complaint against Defendants. Compl., Oct. 5, 2016, D.E. 1. In this action, Plaintiff alleges that starting in or around 2011, Defendants engaged in a scheme to use and profit from Industria's Zenú and Ranchera marks. Am. Compl., D.E. 31, at ¶¶ 6, 42. Plaintiff also contends that Zuluaga "has caused Latinfood to mimic [Industria]'s [Zenú] packaging – including Plaintiff's stylized logo, copyrighted packaging and trade dress – to falsely suggest an affiliation with [Industria]'s

business in Colombia" and confuse consumers.  *Id.* at ¶¶ 43-47, 67, 69-72, 86; *see also* Am.

Answer, D.E. 154, at ¶ 86.  Defendants filed an Amended Answer denying many of Plaintiff's

allegations and raising several affirmative defenses, including fair use and lack of standing.  Am.

Answer, D.E. 154, at pp. 16-20.  Latinfood also filed a counterclaim and third-party claim

against Plaintiff and Cordialsa USA, Inc. ("Cordialsa"), "a wholly-owned subsidiary of Grupo

Nutresa S.A.," for "tortious interference with a prospective economic advantage."  *Id.* at ¶¶ 4,

25-28.

The pleadings establish that two key issues in this matter are (i) whether Plaintiff has

enforceable marks and, (ii) if so, whether Defendants took actions that constitute acts of

infringement on those marks.  The parties' physical and electronic records concerning their

respective development, use, and registration of the Zenú and Ranchera marks are therefore

central to this litigation.  Ostensibly in recognition of this, Defendants' attorney, Mark J. Ingber,

Esq., emailed Zuluaga a comprehensive litigation hold notice on February 13, 2017.  Exhibit E to

Kadosh Decl., Feb. 13, 2017, D.E. 224-8 ("Litigation Hold Notice").  Mr. Ingber advised

Defendants that:

> Pursuant to F.R.C.P. 26.1(a)(3), all parties to the lawsuit have a duty
> to protect and preserve all documents and information in your
> possession and control, including electronically stored information
> ("ESI") relating to Latinfood, specifically Zenu.  Failure to comply
> with these obligations can have very serious consequences,
> including monetary damages, sanctions and adverse inference in
> litigation.
>
> "Electronic Data" shall include, but is not necessarily limited to, all
> text files (including Word processing documents), Microsoft Excel
> files and all other spread sheets and charts, e-mail files and
> information concerning e-mail (including logs of e-mail history and
> usage, header information and "deleted" files), Microsoft Outlook
> and/or other similar files, internet history files and preferences,
> graphical image file including, but not limited to . . . Portable
> Document Format (PDF) files and all other read-only and/or limited

> access files, data bases, calendar and scheduling information, computer system activity logs, telephone logs, voicemail, and all file fragments and backup files.
>
> Please confirm that all appropriate departments and/or individuals at Latinfood to preserve [sic] and retain all documents, Electronic Data and ESI generated or received that relates to business transactions by Latinfood.
>
> In order to comply with your obligations, all parties are required to suspend all routine document deletion/destruction policies, and put a "litigation hold" in place to ensure the preservation of relevant documents and ESI. Please instruct the appropriate departments and/or individuals to take whatever steps which are necessary to suspend routine document and ESI destruction immediately. You must refrain from removing or altering internal or external drives and media attached thereto from any stand along [sic] personal computers, network work stations, notebook and/or laptop computers, and all wireless devices. This includes e-mails sent or received by any employee and other "active" information stored on your respective servers.

*Id.* (emphasis removed).

On February 17, 2017, less than a week after receiving defense counsel's instructions, Defendants apparently experienced a hard drive malfunction. *See* Defs.' Br. in Opp'n, D.E. 226, at p. 2; *see also* Exhibit D to Kadosh Decl., Feb. 22, 2018, D.E. 224-7, at 35:10-15, 39:15-21 ("Zuluaga February 2018 Deposition"). "[T]he computer that had all the electronic documents that [Zuluaga] handled, created or received, related to any matter other than [Latinfood's] sales" crashed, rendering its hard drive content inaccessible. Zuluaga February 2018 Deposition, D.E. 224-7, at 15:12-18, 50:8-15.

Defendants were less than forthcoming about these events. In fact, Plaintiff learned of the alleged crash nearly six months after it occurred, by way of Defendants' August 9, 2017 responses to Industria's first requests for production. Exhibit G to Kadosh Decl., Aug. 9, 2017, D.E. 224-10, at pp. 8-9; *see also* Defs. Br. in Opp'n, D.E. 226, at p. 13. Defendants initially

reported that "[a]ll email communication between Defendants and USTM" – the company

Defendants retained to file Latinfood's trademark applications – "from 2013 were lost due to a

computer hard-disk crash."  Exhibit G to Kadosh Decl., D.E. 224-10, at pp. 6-8.  To make

matters worse, two months later, on October 17, 2017, Defendants informed Plaintiff that

relevant documents were lost not only to the February 2017 hard drive crash, but also to

Defendants' use of an "automated email deletion system."  Exhibit CC to Kadosh Decl., Oct. 17,

2017, D.E. 224-32, at pp. 2-3.  Defense counsel explained that Defendants' emails were

preserved on the server of a vendor named Network Solutions.  *Id.* at p. 2.  Under the deletion

protocol, however, all of the emails backed up on Network Solution's server "are set to delete

after two weeks' time."  *Id.*  After the two-week period, emails were preserved in only one

location:  Zuluaga's computer hard drive.  *See id.* at pp. 2-3; *see also* Zuluaga February 2018

Deposition, D.E. 224-7, at 34:10-35:6; Defs.' Br. in Opp'n, D.E. 226, at p. 11.  Apparently,

notwithstanding Mr. Ingber's litigation hold notice, Defendants took no steps to cancel the auto-

deletion protocol.  Consequently, Defendants reported that when Zuluaga's hard drive crashed in

February 2017, Defendants' sole copy of emails received or sent prior to that point were lost.

Zuluaga February 2018 Deposition, D.E. 224-7, at 17:9-13, 39:15-21.

The loss of Zuluaga's hard drive and the auto-deletion policy impaired Defendants'

ability to produce:

> 1. "[D]ocuments related to any investigation or due diligence
>    performed by Defendants or by someone on Defendants' behalf"
>    into the ownership and/or use of the Zenú and Ranchera names
>    and marks, Exhibit CC to Kadosh Decl., D.E. 224-32, at p. 3;
>
> 2. Communications with website designers for
>    www.latinfood.us.com and www.zenu.us.com, as well as
>    materials or samples provided to those designers, *id*;
>
> 3. Communications related to Defendants' Zenú and Ranchera

trademark applications, s*ee id.*; *see also* Exhibit G to Kadosh Decl., D.E. 224-10, at pp. 11-12; and

4. Communications concerning any specimens submitted in connection with Defendants' Zenú and Ranchera trademark applications, *see* Exhibit CC to Kadosh Decl., D.E. 224-32, at p. 3; Exhibit G to Kadosh Decl., D.E. 224-10, at pp. 11-12.

Plaintiff raised these issues with the Court during an October 30, 2017 telephone status conference. *See* Text Order, Oct. 30, 2017, D.E. 76. Three months later, on February 22, 2018, Zuluaga was deposed on what was then described as "the spoliation issue." Zuluaga February 2018 Deposition, D.E. 224-7. During the February 22, 2018 deposition, Zuluaga testified that he brought his computer to BestBuy within two days of the alleged February 2017 hard drive malfunction because his computer "was making a grinding noise and the boot up process did not complete." *Id.* at 50:3-12. BestBuy's employees purportedly informed Zuluaga that "[b]ased on the symptoms, it was most definitely a hard drive failure." *Id.* at 50:16-24. After receiving this information, however, Zuluaga did not ask whether Defendants' hard drive could be repaired, or whether its contents could be recovered. *Id.* at 51:4-25. "At that time [he] felt the information on that particular hard drive was not that important, and [he] did not feel that it was worth the investment and the effort to try to recover any of it." *Id.* at 51:18-22. Accordingly, Zuluaga instead instructed BestBuy's employees to install a new hard drive and discarded the old drive into his garbage.[1] *Id.* at 51:23-52:9.

---

[1] The Court hereinafter refers to the hard drive allegedly spoliated in February 2017 as the "Discarded Drive" because it is unclear whether the crash Defendants complained of in-fact occurred. A February 18, 2017 BestBuy service order receipt produced by Defendants includes check-in notes that Zuluaga's "[u]nit previously had a Hard Drive that Crashed, Installing new SSD and 2.0TB Drive Client brought in." Exhibit F to Kadosh Decl., Feb. 18, 2017, D.E. 224-9. The receipt also includes the following "repair comments": "Installed SanDisk SSD, and Western Digital 2.0TB. Installed Windows 10 and Installed Webroot AV, Updated, Unit Tested Good-AgntJ." *Id.* However, neither Zuluaga's February 2018 deposition testimony nor the BestBuy receipt indicate that BestBuy conducted its own diagnostic examination of the drive and confirmed this theory, or merely speculated based on Zuluaga's description of the computer malfunction.

Zuluaga's decision to dispose of the Discarded Drive directly contravened defense counsel's February 13, 2017 instruction to "refrain from removing or altering internal or external drives and media."  *See* Litigation Hold Notice, D.E. 224-8, at p. 1.  In an apparent effort to defend his conduct, Zuluaga testified that he did not immediately understand his duty to preserve evidence.  Zuluaga February 2018 Deposition, D.E. 224-7, at 5:21-6:23, 18:11-19:3.  Zuluaga claimed that he only came to comprehend his obligations in May 2017, three months after receiving defense counsel's preservation notice and throwing out the Discarded Drive.  *Id.* at 6:8-18, 18:11-19:3.  He then verbally instructed a Latinfood employee "not to delete anything, or destroy anything that would be related to Zenu."  *Id.* at 29:3-16.  In addition, Zuluaga paused the two-week auto-deletion protocol, but reinstituted the policy two weeks later.  *Id.* at 40:16-41:14.

Zuluaga also testified during his February 2018 deposition that he had no "particular expertise in information technology," computer retention, or document preservation, and that Latinfood did not have an IT professional on staff.  *Id.* at 63:12-64:3.  Zuluaga was nevertheless able to preserve every email from the date he replaced his hard drive to the date of his February 22, 2018 deposition, and produced to counsel the emails he deemed relevant.  *Id.* at 37:19-38:14.  Zuluaga explained that he undertook "a search for the e-mails containing 'Zenu,' and a search for, within those, . . . the e-mails that had to do with the development, the research, . . . of the trademark . . . labels, pictures, [and] things that were specifically requested."  *Id.* at 38:3-23.  He acknowledged, however, that in the alleged February 17, 2017 hard drive crash and the Discarded Drive's disposal, he had lost Defendants' sole copy of emails up to that point, including emails relevant to this matter.  *Id.* at 16:11-17:13, 39:15-21, 52:10-17.

Zuluaga testified that Defendants endeavored to recover some of the lost documents by contacting their vendors.  *Id.* at 55:9-13.  Defendants "focused on all who had produced or were

involved on the label development or . . . the manufacturing of the Zenú products." *Id.* at 55:14-19.  Defendants then produced to Plaintiff "all of the relevant documents and e-mails" Defendants had received through third-parties.  *Id.* at 59:18-25.  Zuluaga could not say, however, that he recalled or that Defendants "recovered every relevant e-mail that was lost."  *Id.* at 59:18-25, 62:15.

At the Court's instruction, the parties engaged in extensive third-party discovery to determine whether additional documents and communications belonging to Defendants could be recovered.  *See* Kadosh Decl., D.E. 224-3, at ¶¶ 3-4; *see also* Exhibit O to Kadosh Decl., Dec. 7, 2017, D.E. 224-18.  Among the vendors that produced documents in response to Defendants' requests was Cibao Meat Products, Inc. ("Cibao").  Exhibit O to Kadosh Decl., Dec. 7, 2017, D.E. 224-18; *see also* Kadosh Decl., D.E. 224-3, at ¶ 4.  Cibao and its marketing handler, Jaline Isidor Horta ("Isidor"), had assisted Defendants in designing Latinfood's Zenú and Ranchera brand labels.  Exhibit B to Decl. of Mark J. Ingber, Esq., Mar. 7, 2019, D.E. 226-3, at 18:2-4, 33:25-34:24 ("Isidor Deposition"); Exhibit Y to Kadosh Decl., Feb. 16, 2017, D.E. 224-28, at p. 4 ("Defs.' Initial Disclosures").  Defendants produced to Plaintiff 151 pages of materials they received from Cibao.  Kadosh Decl., D.E. 224-3, at ¶ 4.

Two emails that were included in Defendants' third-party production are of particular interest to Plaintiff and have been the subject of much dispute.  Pl.'s Br. in Supp. D.E. 224-1, at pp. 12-13.  The first is an October 8, 2013 email that Isidor sent to Zuluaga with the subject line "Zenu Labels."  Exhibit H to Kadosh Decl., D.E. 224-11.  In that correspondence, Isidor writes, in relevant part:

> Since I will not be here for the meeting on Thursday I am sending
> you a preview of what the labels will look like for the Chorizo's [sic]
> and a sample of what the Salchichon casings will look like.

> A few questions though…
>
> The images for the Chorizo are subject to change.
> I used the images from www.zenu.com.co website for all 3
> Chorizo's [sic] (con Ternera, Colombiano, Mejicano).
> Do you have permission to use their images? Especially for label
> purposes?
> If so please let us know.
> If not then there can be lawsuits from the company to you for using
> their images without permission.
>
> Also if not, you can either provide us with images of the products
> once they have been made or I can do it for an additional cost. *

*Id.*  The second email is one that Isidor sent to Zuluaga ten days later, on October 18, 2013, with

the subject line "Zenu Chorizo."  Exhibit I to Kadosh Decl., D.E. 224-12.  In that October 18,

2013 email, Isidor writes:

> Good afternoon Wilson,
>
> Attached you will find a few different versions of the Chorizo label
> that I photographed for you.
> The one missing is the Mexican product. I have to reshoot it this
> weekend. I will have it for you if not Monday then Tuesday the
> latest.
>
> Also is [sic] the revised version of the Salchichon Cervecero.
> USDA does not recognize Salchichon as a label only Salami so that
> is why I changed it from Salchichon to Salami.
>
> Please let me know what corrections you would like for me to make.
> Also let me know if you are content with the images for the
> Chorizo's [sic] so far.  I tried to mimic them as close as possible.

*Id.*  According to Plaintiff, "[t]hese emails show Zuluaga and Cibao discussing copying Zenú and

Ranchera package design and images from Industria's Colombian website."  Pl.'s Br. in Supp.,

D.E. 224-1, at p. 7.  Defendants did not, however, produce to Plaintiff the emails preceding or

following these communications.  *Id.* at p. 19.

After receiving Cibao's production from Defendants, Plaintiff directly subpoenaed Cibao. In particular, Plaintiff sought Zuluaga's responses to Isidor's October 8 and October 18, 2013 emails and other documents.  Exhibit M to Kadosh Decl., D.E. 224-16, at p. 2.  On November 2, 2018, Cibao's counsel advised Plaintiff that Isidor was the only person with documents concerning Defendants, and she had "kept most if not all of these documents on her personal laptop, which crashed on October 12, 2017." *Id.* at p. 1.  Isidor consequently "lost all of the information she had on her laptop including but not limited to, any and all files relating to Defendants Zuluaga and Latinfoods." *Id.*  Moreover, in September 2018 Isidor "used her new computer to back up some of her Outlook files.  In the process, she wound up deleting all of her Outlook files, both emails, and attachments," and was unable to recover them.  *Id.*

Plaintiff deposed Isidor on March 7, 2019.  Isidor Deposition, D.E. 226-3.  Isidor testified that she and Zuluaga communicated "[m]ainly by phone and some e-mails exchanged." *Id.* at 33:2-5; *see also id.* at 81:11-82:3.  She could not remember, however, whether she had any conversations with Zuluaga prior to her October 8, 2013 email. *Id.* at 45:5-46:6.  Isidor also failed to recall whether and how Defendants responded to her concerns about potential lawsuits and Defendants' use of the www.zenu.com.co website images. *Id.* at 49:12-21; *see also id.* at 50:17-51:18, 54:18-24.  Isidor similarly failed to recollect the discussions she had with Zuluaga surrounding her October 18, 2013 email. *Id.* at 56:19-57:24.  Isidor did recall, however, that Zuluaga had instructed her to design labels based on the images presented on Plaintiff's www.zenu.com.co website, and directed her "to try to mimic images that [she] had seen." *Id.* at 63:5-16, 64:3-25.

Plaintiff's efforts to acquire the electronic communications preceding and following Isidor's October 8 and October 18, 2013 emails through third-party discovery ultimately proved

unsuccessful.  Pl.'s Br. in Supp., D.E. 224-1, at pp. 7-8.  At his second deposition, held on

December 18, 2019, Zuluaga testified that he did not recall giving a written response to Isidor's

October 8, 2013 email.  Exhibit B to Kadosh Decl., Dec. 18, 2019, D.E. 224-5, at 140:18-142:25

("Zuluaga December 2019 Deposition").  However, he did remember speaking with Isidor over

the phone "close to when [he] received it" and "ask[ing] her to come up with our own images

and designs."  *Id.* at 142:17-143:15.  In response to inquiries concerning Isidor's October 18,

2013 email, Zuluaga testified that he had instructed Isidor to look at Plaintiff's website "[f]or

inspiration."  *Id.* at 150:3-151:3.

During his second deposition, Zuluaga was also questioned about discoveries Plaintiff

made after receiving Cibao's direct production.  Cibao's direct production to Plaintiff revealed

that Defendants had not disclosed Zuluaga's personal Gmail account, and that Defendants had

not produced several emails that Cibao had previously given to them.  *Id.* at 220:23-222:5,

224:13-226:6, 227:16-229:10.  Zuluaga's explanations for these lapses varied.  Zuluaga testified,

for example, that he had not disclosed his personal Gmail account because he "didn't think of

[it]" during his February 2018 deposition.  *Id.* at 221:25-222:11.  He had searched his personal

Gmail account "for Zenú and Ranchera," but had not produced June 13 and June 24, 2017 emails

between Defendants and Cibao discussing Latinfood's Zenú logo because the key terms were

"not spelled out" and "didn't come up on [his] search."  *Id.* at 226:14-20, 227:16-230:23, 238:4-

14.  When asked why emails with those terms spelled out were not produced, however, Zuluaga

implausibly denied that they had populated in his search.  *See, e.g.*, *id.* at 235:8-237:15.

On January 7, 2020, less than three weeks after Zuluaga's second deposition and twenty-

four days before the close of fact discovery, Plaintiff learned that Defendants had not only

withheld several Cibao emails, but the existence of four hard drives Defendants claimed to have

only recently discovered in their warehouse.  *See* Exhibit S to Kadosh Decl., Jan. 7, 2020, D.E. 224-22, at p. 2; *see also* Am. Scheduling Order, Nov. 14, 2019, D.E. 170, at p. 2.  Defendants initially expressed a belief that one drive in particular "might potentially be" the Discarded Drive.  Exhibit S to Kadosh Decl., D.E. 224-22, at p. 2.  However, an examination by Fronteo USA, Inc. ("Fronteo"), a neutral forensic examiner, determined it was not the Discarded Drive. *See* Exhibit T to Kadosh Decl., D.E. 224-23 ("Fronteo Report"); *see also* Exhibit Q to Kadosh Decl., Oct. 15, 2020, D.E. 224-20, at 23:5-24:20 ("Zuluaga October 2020 Deposition").

Fronteo issued a memorandum of its investigative findings on May 15, 2020.  *See* Fronteo Report, D.E. 224-23.  The Fronteo Report "identified nothing wrong with the hard drive" Defendants submitted (hereinafter "the Fronteo Drive"), and described the drive as "fully functional."  *Id.* at pp. 3-4.  The report also revealed that 99,940 files and folders on the Fronteo Drive had been accessed between February 18, 2017, the day after Defendants' alleged hard drive crash, and January 7, 2020, the date Defendants notified Plaintiff of the Fronteo Drive's existence.  *See id.* at p. 4.  The most recent last-accessed-date was December 13, 2019, establishing that the Fronteo Drive was used just five days before Zuluaga's December 18, 2019 deposition.  *Id.*  The Fronteo Report also divulged Defendants' previously undisclosed use of a USB key named "wilsonz" and their use of multiple cloud storage services.  *Id.* at pp. 4-5.

On October 15, 2020, Zuluaga was deposed for a third time and questioned concerning the Fronteo Drive and the Fronteo Report's findings.  Zuluaga October 2020 Deposition, D.E. 224-20.  Zuluaga testified that on or before December 12, 2019, he located the Fronteo Drive alongside three "personal" hard drives in a cardboard box.  *Id.* at 9:1-9, 11:15-20, 12:5-13:5.  He successfully accessed three of the four devices, then brought all four to BestBuy on December 12, 2019.  *Id.* at 18:15-19:1.  At Zuluaga's instruction, BestBuy copied the four devices' contents

14

onto a single portable drive.  *Id.* at 18:21-19:3.  Zuluaga retrieved the four devices, in addition to the single portable drive, from BestBuy on December 14, 2019.  *Id.* at 20:17-22:4.  Zuluaga nevertheless chose not to disclose his possession of any of these drives at his second deposition only four days later, on December 18, 2019.  *See id.* at 19:11-20.  Instead, Zuluaga waited more than two weeks to alert defense counsel because he "looked into the drive only after the holidays."  *Id.* at 19:17-25.

Over the course of Zuluaga's third deposition, it became apparent that Defendants' non-disclosure extended well beyond December 2019.  For example, Zuluaga did not deny accessing the Fronteo Drive on February 11, 2018, eleven days before his first deposition.  *Id.* at 37:5-38:2.  He testified that he did not disclose the Fronteo Drive's existence at his February 22, 2018 deposition, however, because "that deposition . . . was focusing on the crashed hard drive" and he "did not know" that the Fronteo Drive contained non-sales documents.  *Id.* at 38:11-39:6.  Zuluaga also denied "knowingly" or "specifically" storing documents in the four cloud storage services identified by the Fronteo Report.  *Id.* at 43:25-46:7.  He purportedly learned of Defendants' use of these systems only after the Fronteo Report was issued.  *Id.* at 46:5-10.  Finally, Zuluaga admitted that he did not search the cloud storage systems or the three "personal" hard drives he located in December 2019 for emails and other documents relevant to this litigation.  *Id.* at 16:2-11, 46:11-15.

Following the completion of remaining discovery, Plaintiff filed the instant motion.  *See* Pl.'s Mot. for Sanctions, D.E. 224.  Defendants filed a brief in opposition to Plaintiff's motion and cross-moved for sanctions three weeks later.  Defs.' Br. in Opp'n, D.E. 226; Defs.' Cross-Mot. for Sanctions, D.E. 227.

### III. DISCUSSION

The Court addresses the parties' motions in turn.

### A. Plaintiff's Motion for Spoliation Sanctions

The Court first considers Plaintiff's sanctions motion, which at its outset asks that the Court penalize Defendants for "throwing away Zuluaga's hard drive and deleting emails."  Pl.'s Br. in Supp., D.E. 224-1, at p. 17.  Plaintiff argues that these acts caused the destruction of relevant evidence, and therefore justify the imposition of spoliation sanctions.  Specifically, monetary sanctions and the entry of a default judgment or, in the alternative, the imposition of an adverse inference that Defendants intentionally copied Plaintiff's marks and mislead the public concerning an association between Plaintiff and Defendants.  *Id.* at pp. 17-20.

It is well established that spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably for[e]seeable litigation."  *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004)).  The 2015 amendments to Federal Rule of Civil Procedure 37(e) created a uniform standard for determining whether spoliation of electronically stored information ("ESI") – which includes the Discarded Drive and emails at issue here – has occurred.  *See* Fed. R. Civ. P. 37 Advisory Committee's note to 2015 amendment ("2015 Advisory Committee Notes"); *see also Bistrian v. Levi*, 448 F. Supp. 3d 454, 464-65 (E.D. Pa. 2020).

Rule 37(e), as amended, provides as follows:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

16

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

> (A) presume that the lost information was unfavorable to the party;

> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or

> (C) dismiss the action or enter a default judgment.

The 2015 Advisory Committee Notes to Rule 37(e) explain that Rule 37(e) "applies only if the information was lost because the party failed to take reasonable steps to preserve the information. . . . Because the rule calls only for reasonable steps to preserve, it is inapplicable when the loss of information occurs despite the party's reasonable steps to preserve." Additionally, "[b]ecause electronically stored information often exists in multiple locations," *id.*, "spoliation occurs only where the information is truly lost and not recoverable elsewhere," *Bistrian*, 448 F. Supp. 3d at 465. The Court utilizes this standard, as opposed to the now-defunct test on which Plaintiff relies, in considering the merits of Plaintiff's motion.[2]

The parties disagree on a threshold issue: whether ESI was actually lost. "It is self-

---

[2] Plaintiff cites *Lexpath Technologies Holdings, Inc. v. Welch*, Civ. No. 13-5379, 2016 WL 4544344 (D.N.J. Aug 30, 2016), in stating that "Courts find spoliation where: (1) the duty to preserve the evidence was reasonably foreseeable to the party; (2) the evidence was in the party's control; (3) the evidence is relevant to the claims or defenses in the case; and (4) there has been actual suppression or withholding of evidence." Pl.'s Br. in Supp., D.E. 224-1, at p. 16. However, Plaintiff's reliance upon that matter is misplaced. There, the court recognized that the 2015 amendments to Rule 37(e) were deemed to "take effect on December 1, 2015, and . . . govern in all proceedings in civil cases thereafter commenced." *Id.* at *4. However, the court did not apply the amended rule because that action commenced, and the alleged acts of spoliation occurred, before December 1, 2015. *Id.* This litigation, on the other hand, commenced on October 5, 2016, well after the amended Rule 37(e)'s effective date. *See* Compl., D.E. 1. The Court therefore considers Plaintiff's motion in light of Rule 37(e) as it was amended effective December 1, 2015.

evident that in order to obtain spoliation sanctions pursuant to Rule 37(e) spoliation must occur." *Kavanagh v. Refac Optical Grp.*, Civ. No. 15-4886, 2017 WL 6395848, at *2 (D.N.J. Dec. 14, 2017).  To establish that spoliation has occurred, Plaintiff, as the moving party, "must prove that ESI was 'lost.'" *Id.* (first citing 2015 Advisory Committee Notes to Fed. R. Civ. P. 37(e); and then citing *Freidman v. Phila. Parking Auth.*, Civ. No. 14-6071, 2016 WL 6246814 (E.D. Pa. Mar. 10, 2016)).  Plaintiff therefore bears the burden of "'show[ing] that the evidence at issue actually existed,' since 'spoliation sanctions can be imposed only when the party seeking such sanctions demonstrates that relevant evidence has been lost.'"  *Eur. v. Equinox Holdings, Inc.*, --- F. Supp. 3d ---, ---, 2022 WL 832027, at *4 (S.D.N.Y. 2022) (quoting *La Belle v. Barclays Cap. Inc.*, --- F.R.D. ---, ---, 2022 WL 121065, at *6 (S.D.N.Y. 2022)).

Plaintiff contends that Zuluaga irretrievably destroyed his written responses to Isidor's October 8 and October 18, 2013 emails when he tossed the Discarded Drive in his trash in February 2017.  Pl.'s Br. in Supp., D.E. 224-1, at pp. 7-8, 17-18.  Plaintiff cites the following as the basis for its belief:  (1) the fact that Zuluaga threw out the Discarded Drive a few days after receiving defense counsel's litigation hold notice; (2) Zuluaga's testimony that the Discarded Drive contained all of the electronic documents he handled; (3) emails produced by Cibao concerning Latinfood's Zenú brand; and (4) Isidor's testimony "that she required all business communications to be in writing."  *See id.* at pp. 18-19; *see also* Pl.'s Reply Br., Nov. 12, 2021, D.E. 230, at p. 3.

The Court finds Plaintiff's arguments on this issue unavailing when considered in the context of the overall record.  The emails attached to Plaintiff's motion do not include any statements establishing or even suggesting that Zuluaga's written responses to Isidor's October 8 and October 18, 2013 emails once existed.  *See, e.g.*, Exhibit H to Kadosh Decl., D.E. 224-11;

Exhibit I to Kadosh Decl., D.E. 224-12; Exhibit DD to Kadosh Decl., June 13, 2017, D.E. 224-33; Exhibit EE to Reply Decl. of Samuel Kadosh, Esq., Oct. 24, 2013, D.E. 231-1. Additionally, Isidor testified that with regard to another business known as Yayi Photography she "strictly d[id] everything via e-mail." Isidor Deposition, D.E. 226-3, at 86:12-16. She communicated with Zuluaga on behalf of Cibao, however, "[m]ainly by phone and some e-mails exchanged." *Id.* at 33:2-5. While Isidor could not recall when or how Defendants reacted to the emails at issue, the Court finds her testimony allows for the possibility that Zuluaga responded by phone. *See id.* at 45:5-51:18. Indeed, Zuluaga testified that this was the case. Zuluaga December 2019 Deposition, D.E. 224-5, at 140:18-143:15, 150:3-151:3. Plaintiff has not submitted sufficient evidence to dispute Zuluaga's assertion.

Plaintiff next contends that the Discarded Drive "undoubtedly had emails" from Latinfood customers who incorrectly believed Latinfood was affiliated with Industria. Pl.'s Br. in Supp., D.E. 224-1, at p. 8. This argument is equally speculative. Plaintiff appears to rely solely on a complaint made by a Latinfood customer named Gloria Moreno. *See id.* (citing Exhibits J through L of Kadosh Decl., D.E.s 224-13 to 224-15). Moreno reported that she had ordered Zenú-brand products from Zuluaga to sell on consignment, under the mistaken belief that Plaintiff sold those products. *See* Exhibit J to Kadosh Decl., D.E. 224-13; *see also* Exhibit K to Kadosh Decl., D.E. 224-14, at p. 4. After Moreno failed to sell all of Defendants' products, Moreno called Cordialsa, an affiliate of Plaintiff, to complain about the perceived decline in Plaintiff's product quality. *See* Pl.'s Br. in Supp., D.E. 224-1, at p. 8; Exhibit J to Kadosh Decl., D.E. 224-13; Exhibit K to Kadosh Decl., D.E. 224-14, at p. 4. The Court cannot conclude, however, that a single telephonic complaint made to an affiliate of Plaintiff establishes that Defendants once possessed and destroyed similar criticism sent via email.

To be clear and to be discussed further below, the Court does not condone Defendants' conduct over the course of discovery.  However, the 2015 Advisory Committee Notes to Rule 37(e) clearly instruct that Rule 37(e) "applies only when such information is lost."  Upon careful consideration of the record, the Court must conclude that Plaintiff has not demonstrated an actual loss or deprivation of ESI.  The Court therefore denies Plaintiff's motion for spoliation sanctions pursuant to Rule 37(e).

### B.  Plaintiff's Allegations of Withholding

Plaintiff next asks that the Court sanction Defendants pursuant to Federal Rule of Civil Procedure 37(c) and the Court's inherent power for withholding relevant evidence.  Pl.'s Br. in Supp., D.E. 224-1, at p. 25.

Federal Rule of Civil Procedure 37(c) authorizes the Court to sanction a party for failing to disclose certain information without substantial justification.  *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 99 (D.N.J. 2006).  Rule 37(c)(1) provides as follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

The purposes of each section of Rule 37 are to:  "(1) penalize the culpable party or attorney; (2) deter others from engaging in similar conduct; (3) compensate the court and other parties for the expense caused by the abusive conduct; and (4) compel discovery and disclosure."  *Wachtel*, 239

F.R.D. at 99 (first citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)); and then citing *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985)). However, the Third Circuit has cautioned that "a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified." *Republic of Phil. v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994). The Third Circuit has also instructed that

> Although a court retains the inherent right to sanction when rules of court or statutes also provide a vehicle for sanctioning misconduct, resort to these inherent powers is not preferred when other remedies are available. . . . "[g]enerally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists."

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 278 F.3d 175, 189 (3d Cir. 2002) (second alteration in original) (quoting *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995)). The Court therefore first examines Plaintiff's application pursuant to Rule 37(c)(1) and, for the reasons set forth below, need not reach the issue of whether sanctions are appropriate pursuant to the District Court's inherent powers.

To determine whether a party has violated Rule 37(c)(1) and whether sanctions are warranted, a court must first determine whether there has been a violation of Rule 26(a) or Rule 26(e). *See* Fed. R. Civ. P. 37(c)(1) (stating sanctions may be imposed "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e)). Plaintiff does not appear to rely on Rule 26(a), and the Court cannot conclude on the record before it that the discovery at issue consisted of materials that Defendants would use to support their claims and defenses. The Court therefore turns to Rule 26(e). Rule 26(e)(1) provides in relevant part:

> A party who has made a disclosure under Rule 26(a) – or who has

responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response:

> (A)   in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

> (B)  as ordered by the court.

Plaintiff chiefly argues that Defendants should be sanctioned for (1) concealing the existence of the Fronteo Drive; (2) failing to produce several emails about which Defendants were aware, but the existence of which were only revealed through Cibao's direct production to Plaintiff; (3) using inadequate search terms in parsing through electronic discovery; and (4) "refus[ing] to search certain digital repositories where responsive documents were stored."  Pl.'s Br. in Supp., D.E. 224-1, at pp. 27-29.  Plaintiff also argues Defendants should be sanctioned because (5) "Zuluaga falsely testified at his first two depositions that all of his emails and non-financial documents had been lost when he threw away the crashed hard drive," and Defendants therefore "misrepresented facts."  *Id.* at p. 27.

Defendants devote much of their brief in opposition to denying Plaintiff's spoliation allegations, but dispute only one of Plaintiff's contentions concerning withholding.  *See* Defs.' Br. in Opp'n, D.E. 226, at pp. 34-35.  Specifically, Defendants deny that Zuluaga falsely testified at his first and second depositions, and instead contend that Zuluaga merely testified from a "mistaken belief."  *Id.* at p. 35.  Apart from this distinction, Defendants do not make any argument that the above-referenced decisions and omissions were "substantially justified."  *See id.* at pp. 34-36.

It is well settled that a party's failure to timely produce plainly relevant and responsive discovery, and to timely supplement that discovery when that party knows its responses are

22

incomplete or incorrect, may constitute withholding.  *See, e.g.*, *Wilczynski v. Redling*, Civ. No. 12-4335, 2014 WL 5361916, at *5-6 (D.N.J. Oct. 21, 2014) (finding violation of Rule 37(c) where defendant first disclosed relevant documents in motion for summary judgment, and barring defendant from using those documents at trial).  The record in this case establishes that on multiple occasions Defendants had the obligation and ability to supplement and correct their disclosures and discovery production, but failed or refused to do so.  Those decisions multiplied these proceedings generally, and the completion of fact discovery specifically by a considerable degree.  The Fronteo Drive provides an apt example.  Defendants concealed the existence of the Fronteo Drive for nearly three years, even as they accessed 99,940 files on that drive between February 2017 and December 2019.  *See* Fronteo Report, D.E. 224-23, at pp. 4-5.  The Fronteo Drive contained hundreds of documents that were not merely discoverable under Rule 26, but which were responsive to Plaintiff's discovery requests.  Pl.'s Br. in Supp., D.E. 224-1, at p. 13.  Indeed, a review of the list of files located by Fronteo's analysis suggests many were responsive to Plaintiff's 2017 requests for communications and documents related to Defendants' Zenú and Ranchera trademark applications.  Fronteo identified documents entitled "Approval Notice ZENÚ trademark;" "ZENÚ Trademark (Registration);" "USTM Docs;" "USTM 01-25-13;" "USTM 08-21-13 ZENU transfer of own[];" and "USTM 10-16--13," with file creation dates ranging from March 17, 2016 to March 22, 2016 in the Fronteo Drive's cloud synchronization folders.  Exhibit W to Kadosh Decl., D.E. 224-26, at p. 75.  Fronteo also identified documents with titles such as "Alimentos Zenu Vs Zenu," "zenu logo," "Zenu Vs Zenu," "Price Structure_Zenu_," and similar names with creation dates predating 2017 on the Fronteo Drive. *See, e.g.*, Exhibit V to Kadosh Decl., D.E. 224-25, at pp. 152, 189, 241, 290, 300, 307, 338, 358, 398, 424, 439, 449, 480, 485, 556, 825.  Without question, Defendants should have disclosed the

existence of the Fronteo Drive and produced the relevant documents that it contains years ago.

Defendants also frustrated third-party discovery and protracted these proceedings at Plaintiff's expense by producing to Plaintiff only a fraction of the documents Defendants had received from Cibao.  *See* Kadosh Decl., D.E. 224-3, at ¶ 4; *see also* Zuluaga December 2019 Deposition, D.E. 224-5, at 235:8-237:15, 238:4-14.  For example, Defendants received from Cibao but did not produce to Plaintiff a plainly relevant June 24, 2017 email Zuluaga sent to Isidor, wherein Zuluaga and Isidor discussed a new logo for Latinfood's Zenú-brand products. Zuluaga December 2019 Deposition, D.E. 224-5, at 227:3-230:23.  Defendants also only partially produced an email chain between Zuluaga and Isidor dating from January 22, 2018 to February 2, 2018.  *Id.* at 235:14-236:13.  Defendants removed a February 2, 2018 email from that chain, notwithstanding the fact that that email contained their target search term "Zenu."  *Id.* at 236:20-237:15.  Similarly, Defendants produced an email that Isidor sent to Zuluaga on December 5, 2017 at 5:24 p.m., wherein Isidor wrote:  "This is what I could find that I had physically printed out during the time I created the labels for you so far.  My computer stopped working earlier this year and had to get a new one.  Unfortunately, my older e-mails were lost in the process."  *Id.* at 241: 11-24.  However, Defendants withheld a second email Isidor sent to Zuluaga fourteen minutes later, which stated:  "By some miracle, Outlook archived all these e-emails.  I had no idea.  When I did the search for 'Zenu,' all those e-mails that you will be receiving shortly came up.  Hopefully all that helps.  Regards."  *Id.* at 241:20-243:11.  Plaintiff learned that Defendants extracted these and other emails, as well as more than one hundred pages of other documents, from Cibao's production to Defendants only after undertaking a comparison of Defendants' secondhand and Cibao's direct productions.  *See* Kadosh Decl., D.E. 224-3, at ¶ 4.  It is therefore beyond dispute that Defendants failed on several critical occasions to

supplement and correct their discovery responses in a timely manner.  It is equally clear that Plaintiff suffered surprise because of Defendants' conduct.

The Court must next ascertain whether Defendants' "failure to comply with [their] discovery obligations was 'substantially justified.'" *Selzer v. Dunkin' Donuts, Inc.*, Civ. No. 09-5484, 2015 WL 3668647, at *3 (E.D. Pa. June 15, 2015).  "'Substantial justification' requires 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.  The proponent's position must have a reasonable basis in law and fact.  The test is satisfied if there exists a genuine dispute concerning compliance.'" *Kinney v. Trs. of Princeton Univ.*, Civ. No. 04-5252, 2007 WL 700874, at *5 (D.N.J. Mar. 1, 2007) (quoting *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 591 (D.N.J. 1997)); *accord Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 241 (3d Cir. 2007).  "[I]nadvertence is not a substantial justification for failing to produce documents under Rule 37(c)(1)." *Trowery v. O'shea*, Civ. No. 12-6473, 2015 WL 9587608, at *6 (D.N.J. Dec. 30, 2015).

The record as a whole compels the conclusion that Defendants' violations were not substantially justified.  There is no genuine dispute concerning compliance.  *See Kinney*, 2007 WL 700874, at *5.  The violations committed by Defendants were repeated and not of the type on which reasonable legal minds may disagree.  For example, Defendants did not heed their counsel's litigation hold notice issued on February 13, 2017, allowing their automated email deletion system to remain in place.  Although the deletion protocol was eventually paused in May 2017, it was inexplicably reinstituted only two weeks later.  Defendants then waited more than four months – until October 17, 2017 – to disclose their use of the email auto-deletion protocol.  *See* Exhibit CC to Kadosh Decl., D.E. 224-32; *see also* Zuluaga February 2018

Deposition, D.E. 224-7, at 40:16-41:14.

Zuluaga also failed to heed defense counsel's instructions when he tossed the Discarded Drive into his garbage without making any inquiries into whether the drive could be fixed or its contents recovered, or even preserving it for examination by the parties' attorneys. Zuluaga February 2018 deposition, D.E. 224-7, at 51:4-25. Defendants exacerbated this issue and added insult to injury by failing to notify Plaintiff of the Discarded Drive's alleged crash for a period of nearly six months at the outset of discovery. *See* Exhibit G to Kadosh Decl., D.E. 224-10, at pp. 8-9.

When the litigants undertook third-party discovery to determine whether any of Defendants' documents and emails could be recovered, Defendants indefensibly withheld plainly relevant and responsive communications between Zuluaga and Isidor. *See* Zuluaga December 2019 Deposition, D.E. 224-5, at 235:8-237:15. Indeed, Defendants – without notice or cogent explanation – produced less than half of the items they had been given by their vendor, Cibao, to Plaintiff. *See* Kadosh Decl., D.E. 224-3, at ¶ 4.

Defendants also failed to disclose the existence of four hard drives – including the Fronteo Drive – despite accessing nearly 100,000 files on the Fronteo Drive throughout the course of this litigation and after discovery responses had been served. *See* Fronteo Report, D.E. 224-23, at pp. 3-4. Defendants waited until after Zuluaga's second deposition to alert Plaintiff of the Fronteo Drive's existence, but clearly knew of the Fronteo Drive for years. *See id.*; *see also* Exhibit S to Kadosh Decl., D.E. 224-22, at p. 2. Such conduct does not have a reasonable basis in law or fact, and cannot be ascribed to mere inadvertence. Accordingly, the Court cannot conclude that Defendants' violations of Rule 26(e) were substantially justified.

The Court must next determine whether Defendants' conduct was harmless. In doing so,

the Court considers whether Plaintiff suffered prejudice from Defendants' actions, and Plaintiff's ability to cure the prejudice.  *HomeSource, Corp. v. Retail Web Services, LLC*, Civ. No. 18-11970, 2020 WL 12188147, at *8 (D.N.J. Mar. 30, 2020) (citing *Wachtel*, 239 F.R.D. at 105).  Prejudice from an adversary's failure to adequately or timely respond to discovery may include "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Scarborough v. Eubanks,* 747 F.2d 871, 876 (3d Cir. 1984).  However, "[p]rejudice need not be irremediable, . . . and may include the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy and the burden a party must bear when forced to file motions in response to the strategic discovery tactics of an adversary."  *Wachtel*, 239 F.R.D. at 105 (citing *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222-23 (3d Cir. 2003)).

Here, Plaintiff expended considerable financial and non-financial resources in responding to, and attempting to procure discovery in spite of, Defendants' violative tactics.  Plaintiff notes, for example, that it was forced to "spend thousands of dollars on a court-ordered review of the [Fronteo D]rive, followed by a third deposition of Zuluaga."  Pl.'s Br. in Supp., D.E. 224-1, at p. 27.  Plaintiff also expended additional time and incurred costs in directly subpoenaing Cibao; in comparing Cibao's production to Defendants with Cibao's production to Plaintiff to discern the extent of Defendants' withholding, and in filing the instant motion for relief.  *See Wachtel*, 239 F.R.D. at 105 (noting plaintiffs were prejudiced because, among other things, they "had to waste time and money" to identify and review previously undisclosed materials).  Defendants forced

Plaintiff's hand by shirking their discovery obligations.[3]

Moreover, the record makes clear that Plaintiff lacked the ability to cure the harm caused by Defendants' violations, and Defendants' violations were not harmless.  The original Pretrial Scheduling Order entered in this matter on April 6, 2017 called for the completion of fact discovery by February 23, 2018.  Pretrial Scheduling Order, Apr. 6, 2017, D.E. 27.  Plaintiff raised spoliation concerns based on the alleged hard drive crash and Defendants' automated email deletion policy during an October 30, 2017 telephone status conference.  Text Order, D.E. 76.  The parties then spent several months meeting and conferring on how to address the spoliation issue.  This necessitated multiple extensions of the discovery deadlines.  *See, e.g.*, Order, Feb. 5, 2018, D.E. 91 (extending deadline for raising discovery disputes and extending fact discovery deadline to May 23, 2018); Order, May 14, 2018, D.E. 106 (extending fact discovery deadline to September 24, 2018); *see also* Am. Scheduling Order, July 24, 2018, D.E. 116 (extending fact discovery to November 24, 2018); Am. Scheduling Order, Oct. 17, 2018, D.E. 121 (extending fact discovery to December 24, 2018).

---

[3]  The record also demonstrates that Defendants' unjustified refusal to search Zuluaga's cloud storage services, the three "personal" hard drives located in Defendants' warehouse, and the "wilsonz" USB key identified by the Fronteo Report for relevant documents has impacted Plaintiff's ability to prepare for trial.  The Fronteo Report identified four cloud storage service synchronization folders on the Fronteo Drive, and noted that "[b]y nature of synchronization folders the contents of these folders . . . would exist in the cloud as well as on the computer."  Fronteo Report, D.E. 224-23, at p. 5.  However, it is possible that relevant files were added to the cloud storage services and not synced to the Fronteo Drive.  For instance, Defendants could have intentionally or unintentionally paused the synchronization settings and continued saving files to their cloud storage services using web browsers.  It is also possible that the cloud storage files were not synchronized to the Fronteo Drive because the Fronteo Drive was irregularly used and lacked internet capability.  *See* "Fix Problems in Drive for Desktop," Google, https://support.google.com/drive/answer/2565956?hl=en&co=GENIE.Platform%3DDesktop (last visited May 26, 2022).  Under either scenario, Zuluaga's cloud storage services could possess a different quantity of files than the Fronteo Drive, all of which remain out of Plaintiff's reach.  The "wilsonz" USB drive may also possess more documents than those "known to exist" by Fronteo; particularly given Fronteo's analysis was not of the "wilsonz" USB key itself, but a link file analysis conducted on the Fronteo Drive. *See* Fronteo Report, D.E. 224-23, at p. 5.  Neither Plaintiff nor the Court can determine the existence, relevance, and value of those items without Defendants' participation.

The Court attributes multiple extensions, as well, to Defendants' failure to produce fulsome discovery from third parties, notwithstanding the potential spoliation issues of Defendants' own making.  For example, when Plaintiff sought relevant emails – including emails between Defendants and Cibao – and documents establishing the existence of the auto-deletion protocol from Network Solutions, Defendants moved to quash Plaintiff's subpoena.  *See* Exhibit A to Defs.' Mot. to Quash, Mar. 29, 2019, D.E. 146-3, at pp. 8-9, ¶¶ 3-8; *see also* Defs.' Mot. to Quash, May 10, 2019, D.E. 146.  Although the parties resolved the motion, it was only after Plaintiff filed a brief in opposition.  *See* Pl.'s Brief in Opposition, May 20, 2019, D.E. 147; Letter from Mark J. Ingber, Esq., May 23, 2019, D.E. 148; Text Order, June 12, 2019, D.E. 149. Defendants' Rule 26(e) violations also required the Court's intervention to resolve numerous discovery disputes.  *See, e.g.*, Order, Nov. 15, 2019, D.E. 170 (resolving disputes by, *inter alia*, ordering another deposition of Zuluaga concerning spoliation and Defendants to produce Latinfood's Quickbook files and invoices for 2014-18 for all Latinfoods products bearing the ZENÚ and RANCHERA marks); Order, Jan. 13, 2020, D.E. 177 (resolving disputes by, *inter alia*, (1) requiring Defendants to produce to Plaintiff all responsive documents from Defendants' "recently re-discovered hard drives"; (2) ordering the parties to meet and confer on selection of neutral forensic computer examiner; (3) granting Plaintiff leave to take additional deposition of Zuluaga concerning the hard drives; and (4) holding in abeyance expert discovery and dispositive motion deadlines pending forensic examination).  In sum, Defendants multiplied these proceedings and substantially delayed the completion of fact discovery, to the detriment of both Plaintiff and the Court's resources.  Where, as here, a party so multiplies proceedings by its violations of Rule 26(a) or (e), and in the process causes their adversary to expend considerably more time and money to obtain discovery to which the adversary is entitled, courts have imposed

29

sanctions under Rule 37(c) regardless of whether the movant can show it was ultimately deprived of discovery.  *See, e.g.*, *Tarlton v. Cumberland Cnty. Corr. Facility*, 192 F.R.D. 165, 170-71 (D.N.J. 2000) (imposing monetary sanctions for defendant's unjustified failure to timely provide relevant medical records, where plaintiff obtained those records only after "repeatedly seeking the court's assistance"); *Wilczynski*, 2014 WL 5361916, at *6 (prohibiting defendants from introducing at trial documents that plaintiff first received in defendant's summary judgment opposition papers).

The Court next considers what sanctions, if any, should be imposed.  A number of potential sanctions are available under Rule 37(c)(1), including entry of a default judgment, striking pleadings, and "inform[ing] the jury of the party's failure."  The imposition of attorneys' fees and costs are also authorized under Rule 37(c)(1) where, as here, a court finds that "a party failed to disclose information without substantial justification."  *Wachtel*, 239 F.R.D. at 110. The Third Circuit has explained that in addition to "the nature of the failure to produce," "the circumstances and timing of the eventual production of the documents is a correlative factor for the district court to consider . . . in determining the nature and severity of the sanction." *Tracinda Corp.*, 502 F.3d at 241; *see also Montana v. Cnty. of Cape May Bd. of Freeholders*, Civ. No. 09-0755, 2013 WL 11233748, at *10 (D.N.J. Sept. 20, 2013) (taking into consideration the non-disclosure's impact on the moving party).  The Third Circuit has also emphasized that

> a pattern of wrongdoing may require a stiffer sanction than an isolated incident; a grave wrongdoing may compel a more severe sanction than might a minor infraction; and wrongdoing that actually prejudices the wrongdoer's opponent or hinders the administration of justice may demand a stronger response than wrongdoing that, through good fortune or diligence of court or counsel, fails to achieve its untoward object.

*Westinghouse Elec. Corp.*, 43 F.3d at 74.

In *Wachtel v. Health Net, Inc.*, the district court considered an application for the imposition of Rule 37(c) sanctions in a case where "[n]on-production was the rule rather than the exception." 239 F.R.D. at 92. In *Wachtel*, defendant Health Net produced fewer than 7,000 pages of discovery and "specifically represented to the [c]ourt that it had produced all relevant documents" as of November 17, 2003. *Id.* Notwithstanding the plaintiffs' repeated inquiries into whether the defendants' production was complete, multiple motions to compel filed by the plaintiffs, and the defendants' obligation to produce a certification of completeness, the defendants offered "[o]ver 12,000 pages of documents never produced in discovery" in support of their June 10, 2005 summary judgment motions. *Id.*; *see also id.* at 105 n.43. The court determined that many emails and documents responsive to the plaintiffs' discovery requests were never produced because "[the defendants'] process for responding to discovery requests was utterly inadequate." *See id.* at 92-94. Moreover, "a vast quantity of highly relevant e-mails from Health Net employees' accounts were never searched for and never produced during the discovery period," and it was only on February 28, 2006 that the court learned Health Net "used an e-mail retention policy that automatically removed e-mails from employees' active files and sent them to back-up disks every 90 days." *Id.* at 94-95.

The district court determined that Health Net had displayed a "persistent pattern of delay, defiance of Court Orders, evasive responses to [the p]laintiffs' discovery requests, and lack of candor." *Id.* at 99. Consequently, the court's sanctions pursuant to Federal Rules of Civil Procedure 37(b)(2) and 37(c)(1) were both tailored and significant. *See id.* at 109-110. First, the court required Health Net to pay attorneys' fees and costs that the plaintiffs had "incurred in connection with the Rule 37/Integrity hearing and all briefing in connection therein as well as Plaintiffs' motions brought to invoke discovery compliance *after* an Order of the Magistrate

Judge or the Court had so ordered and Health Net had still not complied." *Id.* at 110. The court also directed that, "[s]hould [p]laintiffs choose to re-depose any of the witnesses whose documents were not completely searched or produced prior to their depositions in violation of Court Order, [d]efendants shall bear all costs and attorneys [sic] fees of such renewed depositions." *Id.* at 110-11. Finally, the court imposed upon Health Net a fine to be paid to the Clerk of Court, explaining the intentional discovery abuses "caused the unnecessary drain of court time and resources and . . . seriously interfered with the functioning of this [c]ourt." *Id.* at 111.

In *Trowery v. O'shea*, a case with Rule 37(c) violations arguably less severe than those committed by the defendants in *Wachtel* and in this matter, the district court also saw fit to impose sanctions. 2015 WL 9587608, at *10. In that matter, the plaintiff requested on January 31, 2013 that defendant Zimmer, Inc. ("Zimmer") produce documents concerning an allegedly defective plate inserted into the plaintiff's spine. *Id.* at *1-2. Zimmer produced responsive documents, including "device history records" and a "complaint detailed summary report" on the final day of fact discovery, January 15, 2015. *Id.* at *2. Zimmer then served the plaintiff an updated complaint detailed summary report "together with other documents" containing material statements on March 4, 2015. *Id.* at *2-3. The court found Zimmer's late productions lacked substantial justification and violated Rule 37(c)(1), notwithstanding Zimmer's claims that its pro hac vice counsel had merely made "an inadvertent mistake." *Id.* at *6. Consequently, Zimmer and its pro hac counsel were required to pay the moving parties' "reasonable expenses, including reasonable attorneys' fees and costs associated with the motions for sanctions." *Id.* at *10.

In *Montana v. County of Cape May Board of Freeholders*, Cape May produced 4,000 pages of documents on September 19, 2012, the day before the expiration of the existing

discovery deadline.  2013 WL 11233748, at *3.  The district court found, however, that the "document production included documents responsive to discovery requests served in 2009 and 2010, and that the documents should have been produced 'substantially earlier.'"  *Id.*  The court determined that although Cape May had not acted in bad faith or willfully, its discovery deficiencies "upset the orderly progression of the case, delayed trial, resulted in duplicative and unnecessary discovery, and caused [the] plaintiff to incur substantial unnecessary transaction costs."  *Id.* at * 9.  Moreover, Cape May's explanations for its failure to produce relevant documents were "far from convincing" and "d[id] not 'substantially justify' its tardy document production."  *Id.*  The court accordingly determined that sanctions were appropriate under Rule 37(c)(1)(A), and held that the plaintiff was "entitled to reimbursement of the transaction costs reasonably incurred to respond to [the defendant's] late production."  *Id.* at *11.

Here, the Court finds Defendants' discovery abuses are arguably less severe than the conduct at issue in *Wachtel*, but are at least as egregious as in *Trowery* and *Montana*. Defendants, as explained at length *supra*, were not forthcoming during discovery concerning their electronic discovery, the repositories for that discovery, and documents Defendants received from third parties.  Defendants also failed to timely and effectively search for and produce responsive materials to Plaintiff, despite an unmistakable obligation to do so, and thereby hamstrung the timely completion of discovery in this matter, and the Court's ability to control its docket.  That said, the Court does not find that a fine payable to the Clerk of Court is warranted.  Instead, the Court concludes that, pursuant to Rule 37(c)(1)(A), the imposition of monetary sanctions payable to Plaintiff is appropriate.  Although Defendants' violations are serious, this Court cannot conclude that those violations justify the imposition of more severe sanctions, such as entry of a default judgment or striking Defendants' pleadings.  The application

of such sanctions would impair Defendants' ability to present their claims and defenses at trial on the merits.  While Defendants' conduct protracted these proceedings and caused Plaintiff to incur otherwise avoidable fees and expenses, Plaintiff has not demonstrated actual deprivation of discovery, or that Defendants' conduct irremediably impacted Plaintiff's ability to try this matter on the merits.  Accordingly, Defendants shall reimburse Plaintiff the reasonable attorneys' fees and costs Plaintiff incurred in bringing its motion for sanctions.  Defendants shall also compensate Plaintiff for the attorneys' fees and costs Plaintiff incurred in:  (1) obtaining a neutral forensic examination of the Fronteo Drive and analyzing the contents of the Fronteo Report, (2) conducting the third deposition of Zuluaga, as that deposition was necessitated solely by Defendants' failure to timely disclose the existence of the Fronteo Drive, and (3) obtaining direct document production from Cibao and comparing that production to Defendants' indirect production.  Plaintiff may file an affidavit and an appropriate legal memorandum attesting to its reasonable attorneys' fees and costs caused by the foregoing violations, on or before **June 27, 2022**.  Plaintiff's affidavit must set forth a description of the services for which it seeks fees and explain how those services are related to Defendants' Rule 37(c) violations.  Additionally, Plaintiff must provide the total hours worked, the rate charged, any costs it seeks, and all other applicable information necessary for the Court to conduct a lodestar calculation.  Defendants may respond by **July 18, 2022.**  Defendants are also ordered to undertake a good-faith, comprehensive search of (a) the three "personal" hard drives located in Defendants' warehouse in December 2019, (b) the "wilsonz" USB key, and (c) Defendants' Amazon Drive, Dropbox, One Drive, and Google Drive cloud storage files for documents relevant to this litigation. Defendants shall undertake this search using the terms, conditions, and deadlines identified in the Order accompanying this Opinion.  Defendants shall produce any such responsive materials by

**July 19, 2022.** To the extent Plaintiff concludes that production necessitates the deposition of any additional witness, Plaintiff shall so inform the Court and defense counsel by **August 15, 2022**. By **August 29, 2022,** the parties will inform the Court of the date for any such deposition.

### C. Defendants' Cross-Motion for Sanctions

The Court next addresses Defendants' cross-motion for sanctions pursuant to Federal Rule of Civil Procedure 37(d). Rule 37(d)(1)(A)(i) permits the Court to order sanctions if "a party or a party's officer, director, or managing agent – or a person designated under Rule 30(b)(6) or 31(a)(4) – fails, after being served with proper notice, to appear for that person's deposition." Defendants argue that Plaintiff in effect failed to appear for two depositions because it produced two Rule 30(b)(6) designees – Luis Ignacio Salazar and Santiago Jiménez – who were unable to adequately answer questions. *See* Defs.' Br. in Opp'n, D.E. 226, at pp. 37-39. However, the Court ruled on Defendants' objections to the sufficiency of these witnesses years ago.

In a joint letter filed by the parties on July 26, 2019, Defendant contended Salazar "was not properly prepared or knowledgeable" about a number of topics. Joint Status Report, July 26, 2019, D.E. 157, at pp. 8-10. At that time, Defendants did not seek sanctions, much less demonstrate that sanctions were appropriate. *See id.* Instead, Defendants merely demanded that Plaintiff produce a substitute Rule 30(b)(6) witness. *Id.* After hearing oral argument on October 25, 2019, the Court ordered Plaintiff to produce an alternative witness. Order, Nov. 15, 2019, D.E. 170; Transcript, Oct. 25, 2019, D.E. 167. Plaintiff later produced Jiménez. *See* Defs.' Letter, Feb. 1, 2020, D.E. 182, at p. 4. Defendants challenged the adequacy of this Rule 30(b)(6) deponent, as well, and only then demanded the imposition sanctions. *See id.* The Court rejected Defendants' request in its entirety, and Defendants never made an application for

reconsideration.  Order, Feb. 18, 2020, D.E. 184, at p. 3.  The Court therefore denies Defendants'
cross-motion for sanctions.

**D.  Plaintiff's Letter-Request to Strike**

Because the Court has denied Defendants' cross-motion, Plaintiff's application to strike
is denied as moot.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's sanctions motion is granted in part and denied in
part.  Defendants' cross-motion is denied, and Plaintiff's informal application to strike
Defendants' cross-motion and brief in opposition is denied as moot.  An appropriate Order
accompanies this Opinion.

*s/ Michael A. Hammer*
**Hon. Michael A. Hammer,**
**United States Magistrate Judge**

DATED: **May 26, 2022**