UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **INDUSTRIA DE ALIMENTOS ZENU S.A.S.**,<br><br>    Plaintiff/Counter Defendant,<br><br>v.<br><br>**LATINFOOD U.S. CORP. d/b/a ZENU PRODUCTS CO. and WILSON ZULUAGA**,<br><br>    Defendants/Counter Claimants/Third Party Plaintiffs,<br><br>v.<br><br>**CORDIALSA USA, INC.**<br><br>    Third Party Defendant. | Civ. No. 16-6576 (KM) (MAH)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Now before the Court are the motions (DE 236; DE 259) of defendants, Latinfood U.S. Corp. doing business as Zenú Products Co. and Wilson Zuluaga (collectively "Latinfood") objecting to Magistrate Judge Michael Hammer's May 26, 2022 opinion (DE 232) awarding sanctions to plaintiff Industria De Alimentos Zenú S.A.S. and third-party defendant Cordialsa USA, Inc. (collectively "Industria") and denying sanctions to Latinfood; and Judge Hammer's July 27, 2022 order (DE 253) denying Industria's application for fees and expenses without prejudice.

Even setting aside the standard of review, I find myself in agreement with Judge Hammer's well-reasoned opinion and his characterizations of Latinfood's obstructive litigation conduct. For the reasons set forth below, Latinfood's motions (DE 236; DE 259) are **DENIED**.

## I.    BACKGROUND

The Court presumes familiarity with the nature and history of this litigation. I focus on the facts most relevant to the pending motions.[1]

On October 5, 2016, Industria initiated this action against Latinfood and Zuluaga, alleging violations of the Lanham Act of 1946 (codified at 15 U.S.C. §§ 1064, 1125); copyright infringement under 17 U.S.C. § 501; protection under the Inter-American Convention for Trade Mark and Commercial Protection; and unfair competition under New Jersey law.

During the course of discovery, on February 13, 2017, Zuluaga received a "Litigation Hold Notice" from his attorney advising him to, among other things, "protect and preserve all documents and information in your possession and control, including electronically stored information [] relating to Latinfood, specifically Zenú." (Kadosh Decl. Ex. E.) Just a few days later, on February 17, 2017, Zuluaga's hard drive malfunctioned on "the computer that had all the electronic documents that [Zuluaga] handled, created or received, related to any matter other than [Latinfood's] sales." (Kadosh Decl. Ex. D Zuluaga Tr. 15:12–18, 50:8–15.) Everything in the hard drive was lost. (*Id.* Tr. 35:10–18.)

---

[1] Certain citations to record are abbreviated as follows:

"DE" = Docket entry number in this case

"Kadosh Decl." = Declaration of Samuel Kadosh in Support of Industria's motion for spoliation and discovery sanctions (DE 224-3)

"Op." = Judge Hammer's May 26, 2022, opinion granting in part Industria's motion for spoliation and discovery sanctions and denying Latinfood's cross-motion for sanctions (DE 232)

"Order" = Judge Hammer's July 27, 2022, order denying, without prejudice, plaintiff's application for attorney's fees and costs (DE 253)

"Def. Op. Objections" = Latinfood's objections to Judge Hammer's May 26, 2022, opinion sanctioning Latinfood, awarding Industria attorney's fees and costs, and denying Latinfood's cross-motion for sanctions (DE 236)

"Def. Order Objections" = Latinfood's objections to Judge Hammer's July 27, 2022, order dismissing Industria's fee application without prejudice and allowing Industria to supplement (DE 259)

Zuluaga also testified at his deposition on February 22, 2018, that he brought his computer to BestBuy within days of the alleged hard drive malfunction, and that the BestBuy employees informed him that "it was most definitely a hard drive failure." (*Id.* Tr. 50:3–24.) Zuluaga instructed the BestBuy employees to install a new hard drive and he discarded the old drive in his garbage. (*Id.* Tr. 51:23–52:9.)

In addition to the hard drive, Zuluaga preserved his emails with a server company named Network Solutions. (Kadosh Decl. Ex. CC pp. 2–3.) Notwithstanding the Litigation Hold Notice, all email communications on Network Solution's server were set to delete after two weeks' time. (*Id.*)

As a result of the hard drive malfunction and the auto-deletion policy, Latinfood could not produce a number of documents.

At the Court's instruction, the parties engaged in third-party discovery to recover the lost documents and communications. (Kadosh Decl. ¶¶ 3–4; Ex. O.) During that discovery, the parties learned that Jaline Isidor Horta of Cibao Meat Products, Inc. ("Cibao"), a vendor who assisted Zuluaga in designing Latinfood's food labels, experienced a laptop failure on October 12, 2017, and lost any and all files relating to defendants. (Kadosh Decl. Ex. M.) Additionally, through third-party production, Industria learned that Latinfood had failed to disclose Zuluaga's personal Gmail account and had not produced several emails. (Kadosh Decl. Ex. B Zuluaga Tr. 220:23–222:5, 224:13–226:6, 227:16–229:10.) During Zuluaga's second deposition on December 18, 2019, he explained that he did not disclose his personal Gmail account because it was his "personal email" and he "didn't think of identifying it." (*Id.* Tr. 221:22–222:5.)

On January 7, 2020, Industria learned of the existence of other hard drives Zuluaga claimed to have only recently discovered in a warehouse, one of which Latinfood believed "might potentially" be the previously discarded hard drive (the "Fronteo Drive"). (Kadosh Decl. Ex. S.) However, Fronteo USA, Inc. ("Fronteo") examined the hard drive and issued a report (the "Fronteo Report") wherein it determined that the Fronteo Drive was not the discarded hard drive.

(*See* Kadosh Decl. Ex. T, Ex. Q Zuluaga Tr. 23:5–24:20.) Additionally, it appeared from the Fronteo Report that Zuluaga knew of this hard drive's existence for years, because nearly 100,000 files on the Fronteo Drive showed "last accessed" dates of April 20, 2017, May 25, 2017, June 4, 2017, February 11, 2018, and December 11–13, 2019. (*See* Kadosh Decl. Exs. T, V.)

On October 8, 2021, Industria filed a motion for spoliation and discovery sanctions (DE 224), which Latinfood opposed (DE 226). Latinfood also filed a cross-motion for sanctions (DE 227), which Industria moved to strike (DE 228).

In its cross-motion for sanctions, Latinfood argued that Industria failed to appear for two Rule 30(b)(6) depositions. (DE 226 pp. 36–40.) Specifically, Latinfood argued that two of the witnesses produced by Industria, Luis Ignacio Salazar and Santiago Jiménez, were inappropriately designated, in that they were unable to answer questions related to the topics set forth in the notice. (*Id.* pp. 37–40.)

On May 26, 2022, Judge Hammer issued an opinion granting in part and denying in part Industria's motion, and denying Latinfood's cross-motion. (DE 232.) As to plaintiff's motion, Judge Hammer concluded that Latinfood's violations were serious, but did not conclude that those violations warranted the most severe sanctions, such as the entry of default judgment or striking of Latinfood's pleadings. Instead, Judge Hammer ordered Latinfood to reimburse Industria for the reasonable attorney's fees and costs incurred in relation to its motion for sanctions and third-party discovery:

> Defendants, as explained at length *supra*, were not forthcoming during discovery concerning their electronic discovery, the repositories for that discovery, and documents Defendants received from third parties. Defendants also failed to timely and effectively search for and produce responsive materials to Plaintiff, despite an unmistakable obligation to do so, and thereby hamstrung the timely completion of discovery in this matter, and the Court's ability to control its docket. That said, the Court does not find that a fine payable to the Clerk of Court is warranted. Instead, the Court concludes that, pursuant to Rule 37(c)(1)(A), the imposition of monetary sanctions payable to Plaintiff is appropriate. Although

> Defendants' violations are serious, this Court cannot conclude that those violations justify the imposition of more severe sanctions, such as entry of a default judgment or striking Defendants' pleadings. The application of such sanctions would impair Defendants' ability to present their claims and defenses at trial on the merits. While Defendants' conduct protracted these proceedings and caused Plaintiff to incur otherwise avoidable fees and expenses, Plaintiff has not demonstrated actual deprivation of discovery, or that Defendants' conduct irremediably impacted Plaintiff's ability to try this matter on the merits. Accordingly, Defendants shall reimburse Plaintiff the reasonable attorneys' fees and costs Plaintiff incurred in bringing its motion for sanctions. Defendants shall also compensate Plaintiff for the attorneys' fees and costs Plaintiff incurred in: (1) obtaining a neutral forensic examination of the Fronteo Drive and analyzing the contents of the Fronteo Report, (2) conducting the third deposition of Zuluaga, as that deposition was necessitated solely by Defendants' failure to timely disclose the existence of the Fronteo Drive, and (3) obtaining direct document production from Cibao and comparing that production to Defendants' indirect production.

(*Id.* pp. 33–34.) Judge Hammer ordered Industria to file an affidavit and legal memorandum supporting its reasonable attorney's fees and costs, and permitted Latinfood to file a reply. (*Id.* p. 34.) Judge Hammer also order Latinfood to conduct additional discovery. (*Id.* pp. 34–35.)

As to Latinfood's cross-motion for sanctions, Judge Hammer reminded the parties that the Court had already ruled on Latinfood's objections to the sufficiency of those witnesses. (*Id.* p. 35.) On July 26, 2019, in a joint status report to the Court, Latinfood asserted that Salazar "was not properly prepared or knowledgeable" about a number of topics and requested that Industria produce a substitute Rule 30(b)(6) witness, relief which the Court ordered. (DE 157 pp. 8–10; DE 170.) Industria then produced a substitute witness, Jiménez, whose testimony Latinfood also objected to and demanded sanctions. (DE 182 p. 4.) On February 18, 2020, Judge Hammer denied Latinfood's request for sanctions. (DE 184.) Latinfood did not seek reconsideration of that order.

On June 10, 2022, Latinfood filed its objections to Judge Hammer's opinion and order. (DE 236.) On June 13, 2022, Industria filed a motion to strike Latinfood's objections as untimely. (DE 239.) Although the Court initially granted Industria's motion, the Court filed an amended order on June 15, 2022, denying the motion to strike and ordering Industria to file an opposition brief within 14 days. (DE 241, 242.) Also on June 15, 2022, Latinfood filed a request to stay portions of Judge Hammer's decision pending this Court's resolution of Latinfood's objections. (DE 243.) On June 17, 2022, I denied Latinfood's request as presented, except that actual payment of monetary sanctions was stayed until further order of the Court. (DE 245.) On June 29, 2022, Industria filed its response to Latinfood's objections to Judge Hammer's May 26, 2022 opinion. (DE 247.)

On June 27, 2022, Industria filed its application for attorney's fees and costs (DE 246), which Latinfood opposed (DE 250, 251). On July 27, 2022, Judge Hammer denied, without prejudice, Industria's application for fees and expenses. (DE 253.) Judge Hammer explained that Industria's submission prevented the Court from being able to conduct a proper lodestar analysis because Industria failed to "establish the prevailing market rates in the legal community, and explain where the rates its counsel seeks stand in comparison to those prevailing rates" and included legal argument in its affidavit. (*Id.*) Judge Hammer ordered Industria to make a new submission consistent with the Court's order. (*Id.*) On August 9, 2022, Latinfood objected to Judge Hammer's July 27, 2022 order (DE 259), to which Industria responded (DE 261).

II. **LEGAL STANDARD**

A District Court will reverse a Magistrate Judge's decision on a non-dispositive motion only if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo. *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1993).

"A Magistrate Judge's finding is clearly erroneous when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is left with the definite and firm conviction that a mistake has been committed." *Coyle v. Hornell Brewing Co.*, No. 08-cv-2797, 2009 WL 1652399, at *3 (D.N.J. June 9, 2009) (quoting *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008)) (citations omitted). "A [ruling] is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998). The appealing party bears the burden of establishing that the Magistrate Judge's decision was clearly erroneous or contrary to law. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

## III. DISCUSSION

### A. May 26, 2022 Opinion

Latinfood asserts a number of objections to Judge Hammer's opinion; I address each argument in turn.

#### 1. Whether Industria is entitled to obtain attorney's fees and costs associated with the forensic examination of the Fronteo Drive and analyzing the contents of the Fronteo Report

Judge Hammer ordered Latinfood to compensate Industria for its attorney's fees and costs incurred in "obtaining a neutral forensic examination of the Fronteo Drive and analyzing the contents of the Fronteo Report." (Op. p. 34.) Latinfood asserts that Industria is not entitled to fees and costs associated with Fronteo's forensic examination of the Fronteo Drive because the Fronteo Drive turned out not to be the hard drive that Zuluaga discarded and because the parties previously agreed to split the cost of the Fronteo Report. (Def. Op. Objections pp. 6–8.)

I conclude that Judge Hammer's decision is not clearly erroneous or contrary to law. Zuluaga himself clearly thought that the Fronteo Drive might contain files relevant to this litigation, as his counsel stated in January 2020: "[O]ur client believes that one of these hard drives might potentially be the hard

7

drive which it thought it had previously discarded after their computer crashed in early 2017"—referring to the hard drive that contained "all the electronic documents that [Zuluaga] handled, created or received, related to any matter other than [Latinfood's] sales." (*See* Kadosh Decl. Ex. S; Ex. D Zuluaga Tr. 15:12–18, 50:8–15.) The record shows that the hard drive had been accessed multiple times, including dates shortly before each of Zuluaga's first two depositions, yet Latinfood failed to disclose the existence of the Fronteo Drive to Industria until January 2020. (*See* Kadosh Decl. Ex. V (showing "last accessed" dates of February 11, 2018, and December 11–13, 2019); Ex. D (transcript of Zuluaga's deposition on February 22, 2018); Ex. B (transcript of Zuluaga's deposition on December 18, 2019)).

As to Latinfood's assertion that the parties agreed to split the cost of the forensic examination, that consideration is best addressed in connection with Industria's application for attorney's fees and costs. (*See* DE 226-14.)

2. **Whether Industria is entitled to fees and costs for preparing for and conducting Zuluaga's third deposition on October 15, 2020**

Judge Hammer determined that (1) the third deposition of Zuluaga, which took place on October 15, 2020, was necessitated solely by Latinfood's failure to timely disclose the existence of the Fronteo Drive; and (2) Latinfood concealed the existence of the Fronteo Drive for nearly three years and accessed 99,940 files on that drive between February 2017 and December 2019. (Op. p. 23, 34.) Latinfood asserts that Judge Hammer's determinations are clearly erroneous and contrary to law because the Fronteo Drive was accessed "only" six times between April 2017 and December 2019, the files that were accessed were "system files" and "would not have yielded any [search term] hits," there is no indication that it was Zuluaga who accessed the Fronteo Drive on April 20, 2017, and it was a BestBuy employee who accessed the Fronteo Drive in December 2019.

I conclude that Judge Hammer's statements were not clearly erroneous or contrary to law. Latinfood failed to disclose the hard drive's existence until

8

January 2020, despite the Fronteo Report's finding that thousands of files on the hard drive had been accessed between February 2017 and January 2020, including dates shortly before Zuluaga's first two depositions. (*See* Kadosh Decl. Ex. V.) Additionally, Latinfood's counsel asserted that the Fronteo Drive may have been the drive previously discarded by Zuluaga. (*See* Kadosh Decl. Ex. S.) Latinfood also fails to point to any evidence that contradicts the Fronteo Report's findings and fails to provide any explanation for withholding the Fronteo Drive's existence from Industria.

### 3. Whether Latinfood indefensibly withheld plainly relevant and responsive communications between Zuluaga and Cibao

Judge Hammer ruled that "Defendants indefensibly withheld plainly relevant and responsive communications between Zuluaga and Isidor." *See* Zuluaga December 2019 Deposition, D.E. 224-5, at 235:8-237:15. Indeed, Defendants – without notice or cogent explanation – produced less than half of the items they had been given by their vendor, Cibao, to Plaintiff. *See* Kadosh Decl., D.E. 224-3, at ¶ 4." (Op. p. 26). Latinfood asserts that it provided Industria with all the documents that it received from Isidor and blames Isidor for the missing documents. (Def. Op. Objections pp. 11–14.)

I conclude that Judge Hammer's ruling is not clearly erroneous or contrary to law. There is ample and specific evidence in the record which contradicts Latinfood's generic assertions that it did not withhold relevant emails between Zuluaga and Isidor. (*See* Op. p. 24.) For example, Isidor sent Zuluaga two emails regarding her search for relevant documents on December 15, 2017, but Latinfood only produced one of those emails. (*See* Kadosh Decl. Ex. B Zuluaga Tr. 238:15–244:24.) The second email, which referenced additional documents related to Zenú, was provided only by Cibao in response to Industria's third-party subpoena. (*See id.*) Additionally, Zuluaga failed to disclose the existence of a Gmail account where he conducted Latinfood related communications. As Judge Hammer explained:

9

> During his second deposition, Zuluaga was also questioned about discoveries Plaintiff made after receiving Cibao's direct production. Cibao's direct production to Plaintiff revealed that Defendants had not disclosed Zuluaga's personal Gmail account, and that Defendants had not produced several emails that Cibao had previously given to them. [Dep. Tr.] at 220:23-222:5, 224:13-226:6, 227:16-229:10. Zuluaga's explanations for these lapses varied. Zuluaga testified, for example, that he had not disclosed his personal Gmail account because he "didn't think of [it]" during his February 2018 deposition. *Id.* at 221:25-222:11. He had searched his personal Gmail account "for Zenú and Ranchera," but had not produced June 13 and June 24, 2017 emails between Defendants and Cibao discussing Latinfood's Zenú logo because the key terms were "not spelled out" and "didn't come up on [his] search." *Id.* at 226:14-20, 227:16-230:23, 238:4-14. When asked why emails with those terms spelled out were not produced, however, Zuluaga implausibly denied that they had populated in his search. *See, e.g., id.* at 235:8-237:15.

(Op. p. 13.) Latinfood provides no plausible explanation for why it withheld documents within its possession and control.

### 4. Whether Latinfood should be required to search the other personal hard drives located in Latinfood's warehouse in December 2019, the "wilsonz" USB key, and Latinfood's Amazon Drive, Dropbox, One Drive, and Google Drive cloud storage files for documents relevant to this litigation

Judge Hammer ordered Latinfood to undertake a good-faith, comprehensive search of the following locations for responsive documents:

> (a) the three "personal" hard drives located in Defendants' warehouse in December 2019,
>
> (b) the "wilsonz" USB key, and
>
> (c) Defendants' Amazon Drive, Dropbox, One Drive, and Google Drive cloud storage files

for documents relevant to this litigation. (Op. p. 34.) Latinfood asserts that there was no basis for Judge Hammer to order it to undertake a search of those locations as the same would be "expensive, duplicative,

and a waste of financial and other resources for data which was exhaustively searched, reported, and already produced in this matter." (Def. Op. Objections p. 19.)

I conclude that Latinfood's objections to this portion of Judge Hammer's opinion are moot. On July 19, 2022, Zuluaga submitted a certification stating that he conducted a good-faith, comprehensive search of the three locations pursuant to the Court's May 26, 2022 order and found "no relevant or discoverable material [] in any of these locations identified in the Court's Order that had not already been produced in this lawsuit." (DE 252.) I observe by the way, however, that Judge Hammer was justified in entering that order, if only because Latinfood's grudging responses inspired very little confidence that all relevant material had been produced.

### 5. Whether Latinfood is responsible for delaying discovery

Judge Hammer attributed numerous discovery delays to Latinfood and criticized Latinfood's discovery tactics:

> Here, Plaintiff expended considerable financial and non-financial resources in responding to, and attempting to procure discovery in spite of, Defendants' violative tactics. Plaintiff notes, for example, that it was forced to "spend thousands of dollars on a court-ordered review of the [Fronteo D]rive, followed by a third deposition of Zuluaga." Pl.'s Br. in Supp., D.E. 224-1, at p. 27. Plaintiff also expended additional time and incurred costs in directly subpoenaing Cibao; in comparing Cibao's production to Defendants with Cibao's production to Plaintiff to discern the extent of Defendants' withholding, and in filing the instant motion for relief. . . . Defendants forced Plaintiff's hand by shirking their discovery obligations.[]

> Moreover, the record makes clear that Plaintiff lacked the ability to cure the harm caused by Defendants' violations, and Defendants' violations were not harmless. The original Pretrial Scheduling Order entered in this matter on April 6, 2017 called for the completion of fact discovery by February 23, 2018. Pretrial Scheduling Order, Apr. 6, 2017, D.E. 27. Plaintiff raised spoliation concerns based on the alleged hard drive crash and Defendants'

11

automated email deletion policy during an October 30, 2017 telephone status conference. Text Order, D.E. 76. The parties then spent several months meeting and conferring on how to address the spoliation issue. This necessitated multiple extensions of the discovery deadlines. *See, e,g.*, Order, Feb. 5, 2018, D.E. 91 (extending deadline for raising discovery disputes and extending fact discovery deadline to May 23, 2018); Order, May 14, 2018, D.E. 106 (extending fact discovery deadline to September 24, 2018); *see also* Am. Scheduling Order, July 24, 2018, D.E. 116 (extending fact discovery to November 24, 2018); Am. Scheduling Order, Oct. 17, 2018, D.E. 121 (extending fact discovery to December 24, 2018).

The Court attributes multiple extensions, as well, to Defendants' failure to produce fulsome discovery from third parties, notwithstanding the potential spoliation issues of Defendants' own making. For example, when Plaintiff sought relevant emails – including emails between Defendants and Cibao – and documents establishing the existence of the auto-deletion protocol from Network Solutions, Defendants moved to quash Plaintiff's subpoena. *See* Exhibit A to Defs.' Mot. to Quash, Mar. 29, 2019, D.E. 146-3, at pp. 8-9, ¶¶ 3-8; *see also* Defs.' Mot. to Quash, May 10, 2019, D.E. 146. Although the parties resolved the motion, it was only after Plaintiff filed a brief in opposition. *See* Pl.'s Brief in Opposition, May 20, 2019, D.E. 147; Letter from Mark J. Ingber, Esq., May 23, 2019, D.E. 148; Text Order, June 12, 2019, D.E. 149. Defendants' Rule 26(e) violations also required the Court's intervention to resolve numerous discovery disputes. *See, e.g.*, Order, Nov. 15, 2019, D.E. 170 (resolving disputes by, *inter alia*, ordering another deposition of Zuluaga concerning spoliation and Defendants to produce Latinfood's Quickbook files and invoices for 2014-18 for all Latinfoods products bearing the ZENÚ and RANCHERA marks); Order, Jan. 13, 2020, D.E. 177 (resolving disputes by, *inter alia*, (1) requiring Defendants to produce to Plaintiff all responsive documents from Defendants' "recently re-discovered hard drives"; (2) ordering the parties to meet and confer on selection of neutral forensic computer examiner; (3) granting Plaintiff leave to take additional deposition of Zuluaga concerning the hard drives; and (4) holding in abeyance expert discovery and dispositive motion deadlines pending forensic examination). In sum, Defendants multiplied these proceedings and substantially delayed the completion of fact discovery, to the detriment of both

> Plaintiff and the Court's resources. Where, as here, a party so multiplies proceedings by its violations of Rule 26(a) or (e), and in the process causes their adversary to expend considerably more time and money to obtain discovery to which the adversary is entitled, courts have imposed sanctions under Rule 37(c) regardless of whether the movant can show it was ultimately deprived of discovery.

(Op. pp. 27–30 (footnote and citations omitted).)

Latinfood asserts that "[t]his litigation has been rife with discovery disputes between the parties' counsel that led to numerous requests for extension to various Scheduling Orders." (Def. Op. Objections p. 19.) Latinfood also points out that the two-week auto-deletion policy applied only to the cloud server and not to the discarded hard drive, and that Zuluaga eventually removed the auto-deletion policy. (*Id.* p. 21.) Additionally, Latinfood asserts that Industria contributed to the discovery delays because it "served an overbroad subpoena on Network Solutions." (*Id.* pp. 22–23.)

I conclude that Judge Hammer's findings related to Latinfood's discovery tactics and delays were not clearly erroneous or contrary to law. Judge Hammer's findings are properly supported by the record and Latinfood's arguments fail to contradict those findings.

### 6. Whether Latinfood delayed the production of QuickBooks files through 2018

Judge Hammer noted that the Court intervened in a discovery dispute concerning Latinfood's QuickBooks files:

> Defendants' Rule 26(e) violations also required the Court's intervention to resolve numerous discovery disputes. *See, e.g.*, Order, Nov. 15, 2019, D.E. 170 (resolving disputes by, *inter alia*, ordering another deposition of Zuluaga concerning spoliation and Defendants to produce Latinfood's Quickbook files and invoices for 2014-18 for all Latinfood[] products bearing the ZENÚ and RANCHERA marks).

(Op. p. 29.) Latinfood takes issue with this portion of Judge Hammer's opinion because Industria delayed seeking the QuickBook files for nearly two years. (Def. Op. Objections pp. 23–24.) Latinfood also asserts that Industria's counsel

13

contributed to the discovery delays because it continually needed to "engag[e] with its Col[o]mbian Client, its Col[o]mbian in-house counsel; its Col[o]mbian outside counsel in order to get their la[w]yers['] approval **on every issue (including all discovery issues),** plus the necessity of Spanish translations." (*Id.* p. 25 (emphasis in original).)

I conclude that Judge Hammer's description of the dispute related to Latinfood's QuickBook files is not clearly erroneous or contrary to law. Although Industria waited two years to raise this issue, Latinfood does not meaningfully dispute that it had an obligation to produce the QuickBook files and did so only after the Court intervened. (*See* DE 170.) Latinfood's position regarding counsel's need to consult with its client and counsel in Colombia has no bearing on whether or not the Court did, or did need to, intervene in the dispute.

### 7. Whether Latinfood failed to supplement and correct its discovery responses in a timely manner

Judge Hammer found that "on multiple occasions Defendants had the obligation and ability to supplement and correct their disclosures and discovery production, but failed or refused to do so." (Op. p. 23.) Judge Hammer provided two examples: (1) that Latinfood concealed the existence of the Fronteo Drive for nearly three years; and (2) that Latinfood failed to produce all the documents Zuluaga received from Isidor. (Op. pp. 23–24.)

Latinfood asserts that Judge Hammer's statement is incorrect because it supplemented its discovery production on other occasions. (Def. Op. Objections pp. 25–26.) However, none of the examples provided by Latinfood contradict Judge Hammer's findings. As discussed above, Judge Hammer's conclusion that Latinfood concealed the Fronteo Drive and failed to produce all documents exchanged between Zuluaga and Isidor is properly supported by the record. Therefore, I conclude that Judge Hammer's finding is not clearly erroneous or contrary to law.

14

### 8. Whether Latinfood's cross-motion for sanctions should have been denied

Latinfood filed a cross-motion for sanctions, arguing that Industria failed to appear for two Rule 30(b)(6) depositions. (DE 226 pp. 36–40.) More specifically, Latinfood argued that two of Industria's witnesses, Luis Ignacio Salazar and Santiago Jiménez, were inadequate and unable to answer questions related to the topics set forth in the Rule 30(b)(6) notice. (*Id.* pp. 37–40.) Judge Hammer denied Latinfood's cross-motion for sanctions because the Court had already ruled on Latinfood's objections to the sufficiency of those witnesses in July 2019 and February 2020, and Latinfood failed to seek reconsideration of those decisions. (Op. p. 35.)

Latinfood asserts that Judge Hammer's denial of its cross-motion for sanctions is contrary to law because it "requir[ed] Latinfood to have filed a 'reconsideration,' rather than a motion on notice which Latinfood has done." (Def. Op. Objections p. 27.) For support, Latinfood relies on an order issued by Judge Hammer in an unrelated case, *Ha v. Baumgart Café of Livingston*, No. 15-cv-5530, 2017 WL 11477362 (D.N.J. Sept. 13, 2017).

In the *Ha* order, Judge Hammer denied the defendants' motion for sanctions without prejudice to re-filing because the defendants "fail[ed] to set forth the legal basis on which they seek the Court to impose sanctions and attorneys fees in a manner that gives [counsel] adequate notice of the 'precise sanctioning tool' on which Defendants rely in seeking sanctions." *Id.* at *1. The order on which Latinfood relies has no relevance to this case because the sufficiency of Latinfood's motion for sanctions is not at issue. Judge Hammer denied Latinfood's motion for sanctions because the Court already ruled on the same issues in July 2019 and February 2020, and Latinfood did not seek reconsideration of those decisions. I also see no "unusual circumstances" that would warrant a different outcome. *See Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir.1981) (describing law of the case doctrine).

15

I will not sanction a party for abiding by a Magistrate Judge's ruling. Therefore, I conclude that Judge Hammer's denial of Latinfood's cross-motion for sanctions is not clearly erroneous or contrary to law.

\* \* \*

Judge Hammer issued a thorough, detailed, and well-reasoned opinion. I find no clear error of fact or error of law, and I agree with Judge Hammer's analysis. Therefore, Latinfood's motion objecting to Judge Hammer's May 26, 2022 opinion is denied.

### B. July 27, 2022 Order

Latinfood asserts the following objections to Judge Hammer's July 27, 2022 order: (1) "[n]owhere in the Order is it stated that the Court reviewed or considered Latinfood's proper and timely filed fee application opposition papers"; (2) "the Court[] [has] provid[ed] Plaintiff with a 2nd bite of the fee application apple [and] Defendants' have been prejudiced. Specifically, Plaintiff has now received a detailed roadmap (by virtue of the July 27, 2022 Order and by virtue of having vetted Latinfood's opposition papers) to enable Plaintiff to cure its woefully deficient fee application, which either completely ignored or willfully disregarded the Court's May 26, 2022 Order"; (3) the declaration in support of Industria's fee application "was plagued with a litany of issues that should have resulted in its dismissal with prejudice, as set forth in Latinfood's opposition papers" and failed to comply with "New Jersey Local Civil Rule 7.2(a) and Other Standards Set by This District and Circuit." (Def. Order Objections pp. 3–8.)

I conclude that Latinfood's arguments are without merit. The Court has the "inherent power to manage its caseload, control its docket, and regulate the conduct of attorneys before it," which "provides authority to fashion tools that aid the court in getting on with the business of deciding cases." *Vanderwerff v. Quincy Bioscience Holding Co., Inc.*, No. 17-cv-784, 2018 WL 6243040, at \*4 (D.N.J. Nov. 28, 2018) (quoting *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 567 (3d Cir. 1985) and citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)

(recognizing the "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *United States v. Wecht*, 484 F.3d 194, 217 (3d Cir. 2007) ("It is important to note that district courts have wide discretion in the management of their cases.")). Judge Hammer's decision to permit Industria to file an amended fee application did not prejudice Latinfood and is consistent with other courts in this district. *See, e.g., Granillo v. FCA US LLC*, No. CV16-cv-153, 2019 WL 4052432, at *5 (D.N.J. Aug. 27, 2019) ("At the Court's request, Plaintiffs provided supplemental briefing regarding the hours expended, the reasonableness of counsel's hourly rates, the hours billed to the litigation along with a summary of the tasks performed, the requested contingent risk multiplier[,] and the costs/expenses incurred."); *S.D. v. Manville Bd. of Educ.*, 989 F. Supp. 649, 657 (D.N.J. 1998) (concluding that, "[r]ather than engage in conjecture [regarding appropriate billing rates], the more prudent course is to deny plaintiff's request for attorney's fees and costs without prejudice to the filing of a properly supported application").

Therefore, I conclude that Judge Hammer's order denying Industria's fee application, without prejudice, and permitting Industria to file an amended fee application is not clearly erroneous or contrary to law. Latinfood's motion objecting to Judge Hammer's July 27, 2022 order is denied.

## IV.   CONCLUSION

For the reasons set forth above, Latinfood's motions (DE 236; DE 259) objecting to Judge Hammer's May 26, 2022 opinion and July 27, 2022 order are **DENIED**.

An appropriate order follows.

Dated: June 27, 2023

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**