Mark J. Ingber, Esq.
THE INGBER LAW FIRM
30 West Mt. Pleasant Avenue
Suite 203
Livingston, New Jersey 07039
Tel: (973) 921-0080
ingber.lawfirm@gmail.com
*Attorney for Defendants Latinfood U.S. Corp.
d/b/a Zenú Products Co. and Wilson Zuluaga*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDUSTRIA DE ALIMENTOS Zenú S.A.S., <br><br> v. <br><br> LATINFOOD U.S. CORP. d/b/a Zenú PRODUCTS CO. and WILSON ZULUAGA <br><br>    Defendants/Counter Plaintiff, <br><br> LATINFOOD U.S. CORP. d/b/a Zenú PRODUCTS CO., <br><br>    Defendants/Counter Plaintiff, <br> v. <br><br> INDUSTRIA DE ALIMENTOS Zenú S.A.S and CORDIALSA USA, INC. <br><br>    Counter Defendants, | Civil Action No: 2:16-CV-06576 (KM)(MAH) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A STAY OF THE CANCELLATION OF LATINFOOD'S ZENÚ MARK AND A STAY OF THE INJUNCTION ON LATINFOOD FROM USING THE ZENÚ AND RANCHERA MARKS**

**TABLE OF CONTENTS**

LEGAL STANDARD ............................................................................................................1
ARGUMENT .......................................................................................................................2
   1.  A STAY IS WARRANTED ON ALL FOUR EQUITABLE FACTORS .............................3
      a.  Defendants are likely to Prevail on the Merits .................................................3
      b.  Irreparable Injury Will Result if a Stay Does Not Issue ....................................8
      c.  The Balance of Equities Favors the Entry of a Stay .........................................9
      d.  The Public Interest Favors a Stay ...................................................................10
CONCLUSION ..................................................................................................................13

**TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Gov't of the V.I.*,
    947 F. Supp. 894 (D.V.I. 1996) .................................................................................. 3

*Conestoga Wood Specialities Corp. v. Secretary of U.S. Dept. of Health and Human Services*,
    2013 WL 1277419 at *1 (3d Cir. Feb. 8, 2013) ........................................................... 1

*Court." Union Pac. Res. Group v. Pennzoil Co.*,
    1997 U.S. Dist. LEXIS 24217 at **1-2 (D. Del. Sept. 3, 1997) .................................. 2

*First Amendment Coalition v. Judicial Inquiry and Review Board*,
    584 F. Supp. 635 (E.D. Pa. 1984) .............................................................................. 12

*Grupo Gigante SA De CV v. Dallo & Co.*,
    391 F.3d 1088 (9th Cir. 2004) ...................................................................................... 6

*Hilton v. Braunskill*,
    481 U.S. 770 (1987) ...................................................................................................... 1

*ITC Ltd. v. Punchgini, Inc.*,
    482 F.3d 135 (2nd Cir. 2007) .................................................................................. 11, 4

*Kershner v. Mazurkiewicz*,
    670 F.2d 440 (3d Cir. 1982) (en banc) ....................................................... 10, 7, 8, 9

*Kos Pharm., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004) ......................................................................................... 1

*Marshak v. Treadwell*, 240 F. 3d 184 (3d. Cir. 2001) ................................................... 7

*Meenaxi Enterprise, Inc. v. Coca-Cola Company*,
    38 F.4th 1067 (Fed. Cir. 2022) .............................................................................. 4, 5,6

*Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co.*,
    1991 U.S. Dist. LEXIS 18493 (E.D. Pa. Dec. 19, 1991) ............................................ 3

*Nken v. Holder*,
    556 U.S. 418 (2009) ...................................................................................................... 1

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*,
    743 F. App'x 457 (D.C. Cir. 2018) ....................................................................... 11, 4

*Rennie v. Klein*,
    481 F. Supp. 552 (D.N.J. 1979) ................................................................................... 3

*S.E.C. v. Black*,
  163 F.3d 188 (3d Cir. 1998) ............................................................................................... 7

*St. Claire v. Cuyler*,
  482 F. Supp. 257 (E.D. Pa. 1979) .................................................................................... 11

*Territorial Court of Virgin Islands v. Richards*,
  674 F. Supp. 180 (D.V.I. 1987) ....................................................................................... 11

*Wrist-Rocket Mfg. Co. v. Saunders Archery Co.*,
  516 F.2d 846 (8th Cir. 1975) ............................................................................................. 7

**Statutes**

28 U.S.C. § 1292 ....................................................................................................................... 7

Section 14 ................................................................................................................................. 5

Defendants Latinfood U.S. Corp., d/b/a Zenú Products Co., and its principal Wilson Zuluaga, (hereinafter collectively "Latinfood" or "Defendants") move this Court for a stay of the of the Court's June 27, 2023 Order [ECF. No. 298] and Opinion [ECF. No. 297] cancelling Latinfood's longstanding U.S. federally registered Zenú mark under Articles 8 and 18 of the Inter American Convention for Trademark and Commercial Protection ("IAC"), and a stay of the injunction on Latinfood using its longstanding Zenú and Ranchera marks under Article 18 of the IAC, pending final judgment and/or interlocutory appeal.

## LEGAL STANDARD

"[T]he standard for obtaining a stay pending appeal is essentially the same as that for obtaining a preliminary injunction." *Conestoga Wood Specialities Corp. v. Secretary of U.S. Dept. of Health and Human Services*, 2013 WL 1277419 at *1 (3d Cir. Feb. 8, 2013). Like most preliminary injunctions, a stay pending appeal is governed by four equitable factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
> (2) whether the applicant will be irreparably injured absent a stay;
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
> (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (line breaks added for clarity)). *Accord Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

These familiar equitable factors cannot be reduced to a "set of rigid rules," but rather necessitate "individualized judgments in each case." *Hilton*, 481 U.S. at 777. *Accord Hotel & Restaurant Employees & Bartenders International Union Local 54 v. Read*, 597 F. Supp. 1431, 1446 (D.N.J. 1984). And, "[w]hile the decision to enter a stay pending an appeal is within the

discretion of the Court, the Court must exercise its discretion 'principally to preserve the status quo pending resolution by the appellate Court." *Union Pac. Res. Group v. Pennzoil Co.*, 1997 U.S. Dist. LEXIS 24217 at \*\*1-2 (D. Del. Sept. 3, 1997).

## ARGUMENT

In its June 27 Order and Opinion, this Court granted Plaintiff's motion for summary judgment and ordered the immediate cancellation of Defendants' Zenú mark under Articles 8 and 18 of the IAC, as well as enjoining Latinfood from using its Zenú and Ranchera marks under Article 18 of the IAC, subject only to a short stay, "conditional upon a showing of proper authentication of the Colombian records within 30 days."[1] June 27 Opinion at 30.

As set forth below, Defendants submit that this extraordinary remedy will cause irreparable harm and suffering to Defendants' business and family. The issuance of a stay is therefore necessary to prevent the irreparable harm that is certain to occur if Latinfood is immediately enjoined from using its longstanding Zenú and Ranchera marks, which it has utilized for over twelve years and now represents half of its overall business. And, as illustrated in the Zuluaga Declaration, each day the injunction remains in place, the harm to Latinfood increases. More specifically, the immediate nature of the injunction and cancellation likely ensures that Defendant will be unable to survive as a business entity. This, of course, will have disastrous consequences not only to Latinfood and Mr. Zuluaga but also to their employees, and to those who rely on

---

[1] In a letter to the Court on July 7, 2023, Plaintiff's counsel confirmed:
 "Pursuant to the summary judgment decision, Plaintiff has 30 days from the date of the decision to file certified copies of Plaintiff's relevant Colombian trademark certificates, and defendants have 15 days thereafter to file any response to the filings. Plaintiff is working on this and will meet the deadline." Dkt. 300.

2

Latinfood and their employees for support. Moreover, when these imminent and certain injuries are weighed against the *de minimis* prospective injuries to Plaintiff—and the collateral resulting instability to trademark law overall—the balance of equities tips decidedly in favor of a stay.

In light of Latinfood's intent to appeal the Court's June 27 Order, the weighty first-impression issues presented in this case that must be resolved on appeal, and the irreparable injury that Latinfood will suffer if the Order remains in effect but is ultimately vacated, Latinfood respectfully requests an emergency stay until final judgment and/or resolution of the matter on interlocutory appeal. In light of the immediacy and magnitude of the injury, Latinfood additionally requests expedited briefing and consideration of this stay request motion.

## I.   A STAY IS WARRANTED ON ALL FOUR EQUITABLE FACTORS

### a.   Defendants are Likely to Prevail on The Merits

Defendants are likely to prevail on their marks on appeal, and at the very least have a matter of first impression of enormous consequence to be litigated before the Circuit Court. These considerations warrant heavily in favor of a stay pending resolution.

Indeed, "a movant need not always establish a high probability of success on the merits where the stakes are, as here, quite so high. The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movant will suffer absent the stay. . . . [A]t a minimum, the movant is required to show. . . serious questions about the merits of the injunction and an even higher degree of irreparable harm than is normally required." *Anderson v. Gov't of the V.I.*, 947 F. Supp. 894, 898 (D.V.I. 1996). *See also Rennie v. Klein*, 481 F. Supp. 552, 555 (D.N.J. 1979); *Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co.*, 1991 U.S. Dist. LEXIS 18493, at *4 (E.D. Pa. Dec. 19, 1991) (in a trademark case, "the defendant must show that the

3

appeal presents a difficult legal question, or that there are substantial questions presented as to the validity of the court's decision" (citations and quotation marks omitted)).

In its June 27 Order, this Court, on a case of first impression, ordered the immediate cancellation of Defendants' longstanding Zenu mark, and immediately enjoined any use by Defendants of their longstanding Zenu and Ranchera marks based solely on Industria's foreign trademark registrations pursuant to Articles 8 and 18 of the IAC. This is extremely strong medicine in a context devoid of judicial precedent. There are, moreover, substantial questions presented as the Court's decision flies in the face of the "axiomatic principle of trademark law that priority in adoption and actual use of a name of designation, as a trademark" as "the essential criterion upon which ownership is based." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, 743 F. App'x 457, 467 (D.C. Cir. 2018); *see also ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 163-164 (2nd Cir. 2007).

But even if this were not the case, *Meenaxi Enterprise, Inc. v. Coca-Cola Company*, 38 F.4th 1067 (Fed. Cir. 2022)—with a strikingly similar fact pattern—counsels in exactly the opposite direction, and counsels strongly towards Defendants' ultimate success on the merits. On those facts:

| COCA COLA | INDUSTRIA |
|---|---|
| Coca Cola owned foreign (Indian) marks for Thums Up cola and Limca lemon-lime soda and distributed those products in foreign markets such as India. | Industria owned foreign (Columbian) marks for Zenú and Ranchera and distributed those products in foreign markets such as Colombia. |
| Meenaxi was the first to register marks for Thums Up and Limca in the U.S. and was the first to distribute those products in the U.S. | Latinfood was the first to register a use mark for Zenú in the U.S. and was the first to distribute Zenú and Ranchera products in the U.S. |
| Meenaxi's U.S. logos and slogan were nearly identical to those used by Coca-Cola abroad. | Latinfood's U.S. logos and slogan were nearly identical to those used by Industria abroad. |

| | |
|---|---|
| Coca-Cola sought to cancel Meenaxi's U.S. registration under Section 14(3) of the Lanham Act, asserting that Meenaxi had misrepresented the source of its goods. | Industria sought to cancel Latinfood's U.S. registration under Section 14(3) of the Lanham Act, asserting that Industria had misrepresented the source of its goods. |
| Coca-Cola failed to identify any lost sales in the United States, and "nebulous future plans for U.S. sales cannot be the basis for a Lanham Act claim." *Meenaxi*, 38 F.4th at 1067. | Industria failed to identify any lost sales in the United States, and "nebulous future plans for U.S. sales cannot be the basis for a Lanham Act claim." *Meenaxi*, 38 F.4th at 1067. |
| The United States Court of Appeals for the Federal Circuit concluded, lacking direct commercial injury, "Coca-Cola ha[d] not established reputational injury in the United States, or a cause of action under § 14(3) of the Lanham Act." *Id.* at 1079. | This Court concluded that Meenaxi, "while suggestive," served as an invitation to explore "multiple alternative bases" for a "statutory cause of action under the Lanham Act." Opinion at 35. |

Indeed, while this Court found the above intervening authority of *Meenaxi* "suggestive," it inexplicably did not "alter [it's] prior analysis" that Plaintiff's claims are not barred by the fundamental territoriality principle, which recognizes that a trademark has a "separate existence in each sovereign territory in which it is registered or legally recognized as a mark." *Meenaxi*, 38 F.4th at 1073.

Latinfood respectfully submits that the Court should have found the authority of the Federal Circuit Court of Appeals decision in *Meenaxi* as persuasive and binding—as it is based on the almost identical fact patterns to the case at bar—and should have rejected it as an invitation to explore other, attenuated bases for purported Lanham Act violations. Moreover, unlike the case at bar, Coca-Cola did **_not_** actually claim any U.S. trademark rights in Thums Up or Limca; rather, Coca-Cola's claim was based on *injury* allegedly occurring in the U.S. while Industria is claiming direct U.S. trademark rights as to both Zenú and Ranchera. Instead of adhering to *Meenaxi*, this Court created new law in ordering the immediate cancellation of a longstanding U.S. trademark registration based on usage abroad, and immediately enjoining any use of Latinfood's longstanding Zenu and Ranchera branded marks. This has resulted in a matter of first impression, predicated on

5

foreign trademark registrations pursuant to Articles 8 and 18 of the IAC, which cries out for appellate review.

It is further noteworthy that the holding of *Meenaxi* is itself not itself well-settled. In the concurring opinion, Judge Reyna reasoned that the factual inquiries on which the majority relied—lost sales and reputational injury among U.S. consumers—"*are directly reflective of the territoriality principle and the well-known mark exception.*" 38 F.4th at 1079 (emphasis added). Judge Reyna expressed concern that the majority's holding even went too far, and "could be reasonably read to imply that Coca-Cola could have established statutory standing if it proved that U.S. consumers were aware of its Indian brands," whereas Judge Reyna still would have reversed in that case "*because the territoriality doctrine governs, and Coca-Cola waived reliance on the well-known mark exception thereto.*" *Id.* at 1082 (emphasis added). This is a separate, independent argument upon which Defendants may likely prevail on in further course in this action.

Indeed, just as in *Meenaxi*, Plaintiff in this case chose to waive reliance on the famous-mark exception of the territoriality doctrine.[2] Typically, a trademark is recognized as having a separate existence in each sovereign territory in which it is registered or legally recognized as a mark. This exception, however, applies to marks that are sufficiently well-known in a territory despite a lack of registration or sufficient use in that territory.[3] Had Industria not waived argument on this exception, it may have had a better argument to protect its Zenú and Ranchera marks. Of course, Plaintiff likely recognized the futility of such an argument

---

[2] Industria alleged in its Amended Complaint (Dkt. No. 31) that its Zenú mark had become well-known in the U.S. long before the alleged date of first use by Latinfood's trademark application that matured into Reg. No. 4,402,942. *Id.* at 40. Industrial's Amended Complaint is also rife with claims that its marks are "well-known." *See id.* at 2, 12, 27, 29, 31, 35, 59, 94, 95, 103, 123,173, 202, 203, 211, 212.

[3] *See Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1094 (9th Cir. 2004) (recognizing the "well-known marks" doctrine as an exception to the territoriality doctrine).

considering that "it has also not conducted any market surveys specific to the United States for its Zenú or Ranchera marks." June 27 Opinion at 4.

Even putting aside these critical issues of first impression, this matter is all but certainly headed for appellate review on the basis of the injunction itself. The Third Circuit in *Marshak v. Treadwell* held that "we have jurisdiction to review an order relating to an injunction under § 1292(a)(1), our jurisdiction extends to matters inextricably linked to the appealable order." 240 F. 3d 184, 190 (3d. Cir. 2001) (citing *S.E.C. v. Black*, 163 F.3d 188, 194 (3d Cir. 1998)).

Specifically, in *Marshak*, the grounds on which cancellation of the federally registered mark was ordered—fraud on the PTO— was also asserted by Treadwell as a defense to Marshak's claim that Treadwell was infringing Marshak's mark. In other words, "[a]ll of the arguments raised by Marshak on appeal in connection with the cancellation order appl[ied] as well to that defense." *Marshak*, 240 F.3d at 190. Inasmuch, it was all reviewable on appeal as "the link between the order of cancellation and the injunctive order is close enough to permit review of the order of cancellation." *Id*. *See also Wrist-Rocket Mfg. Co. v. Saunders Archery Co*., 516 F.2d 846, 849 (8th Cir. 1975) (court has jurisdiction under 28 U.S.C. § 1292(a)(1), to examine the merits of order granting a permanent injunction and ordering the cancellation of registration"). Indeed, interlocutory orders that are 'inextricably bound' to an injunction may also be considered in the same appeal. *See Kershner v. Mazurkiewicz*, 670 F.2d 440, 449 (3d Cir. 1982) (*en banc*). In review of the injunctions ordered in this case, Defendants accordingly anticipate interlocutory appellate review of the underlying mark priority issues.

Finally, as to the Ranchera mark, this Court also immediately enjoined Latinfood's use of its longstanding mark, despite recognizing in its June 27 Opinion at 28, fn 23:

> that another U.S. company [Cacique, Inc.] (unrelated to this action) filed an
> opposition to Industria's application to register its Ranchera mark, asserting a

7

> likelihood of confusion with respect to its U.S.-registered "Ranchero" mark. (Def. St. ¶ 22; Pl. Resp. ¶ 22.) That matter has also been stayed pending disposition of this case. (*Id*.) That dispute does not affect my analysis because, at this time, Industria's application to register its Ranchera mark has not been denied.

This Court later opined in its June 27 Opinion at 63, *fn* 38 that:

> The dispute concerning whether Industria's Ranchera mark is registrable could present a further obstacle to a finding that Industria owns the Ranchera trademark. Proceedings on that challenge, however, have been stayed pending the outcome of this action. (Def. St. ¶ 22; Pl. Resp. ¶ 22.)

Because additional proceedings inextricably tied to the merits remain suspended pending the outcome of this action, these outstanding issues themselves counsel in favor of a stay on the merits of the proceedings themselves.

### b. Irreparable Injury Will Result if a Stay Does Not Issue

As to the second prong, Mr. Zuluaga's impassioned Declaration demonstrates that Latinfood will suffer irreparable injury if the stay is not granted. As evidenced in the Zuluaga Declaration, Latinfood will become inoperable if the injunction immediately commences. Latinfood cannot contemplate an injury any more irreparable than the irreversible loss of an entire business.

Specifically, in his Declaration, Mr. Zuluaga testifies that this order is an existential threat to his business, the people it supports, that—once entered—cannot be undone. *See* Wilson Zuluaga Decl. at ¶¶ 4, 5. Putting aside from the economic loss in being unable to sell products in the pipeline, *id.* at ¶ 6, the order has the direct effect of closing Defendants' access to capital, and raising the serious specter of bankruptcy, *id.* at 4, 5. This, of course, will have disastrous consequences not only to Latinfood but also to Mr. Zuluaga's family, employees, and all those who rely on Latinfood and its employees for support. *Id.* at ¶ 5.

Additionally, since the irreparable injury of inoperability is so great, it should be noted that the burden on the first factor of likelihood of success is diminished due to the extreme hardship of business closure. Thus, even if the Court believes the likelihood of success is not strong, this second factor should predominate over the first factor in the Courts analysis for a stay. *Cf. Anderson*, 947 F. Supp. at 898; *see also In re S.A. Holding Co., LLC*, 2007 U.S. Dist. LEXIS 39472 (D.N.J., May 30, 2007).

At the very least, absent a stay, an immediate injunction on Latinfood's use of its longstanding Zenu and Ranchera brands would destroy its business; as well any ability to sell off its product line or provide any ability to rebrand and retool its business, which it has spent over twelve years developing. Wilson Zuluaga Decl. at ¶¶ 7 -8.. Thus, on its face a lack of stay will be irreparably harmful as a matter of course.

### c. The Balance of Equities Favors the Entry of a Stay

In stark contrast to the harm that will befall Defendants, Plaintiff will not suffer from a stay of the cancellation and injunction on Defendants as Plaintiff concedes that it has no U.S. sales of Zenú and Ranchera products. Pl. Mot. p. 27; June 27 Opinion at 59. Furthermore, there are no imminent future plans for which a modest stay would harm Plaintiff. Plaintiff has not objectively demonstrated the necessary plan, logistics, or FDA approval to export its products to the U.S.[4]

---

[4] In 2014, Mr. Arango emailed ProExport stating: "I would like to see if proexport could give us some advice with some products that I have always wanted to import, but have heard could not be brought to the USA because of US government restrictions. Specifically, they are some Zenú products. Do you think we could go over this with proexport to see if this kind of product can be brought to the US and what the restrictions or duties would be under the [FDA]?" (Salazar Decl. Ex. MM.) In June 2014, Industria's head of marketing emailed Mr. Ramos stating: "Regarding the possibility of exporting frozen products, this has not yet been explored due to the current logistical barriers and the fact that we still have a great deal of work to do to penetrate the local market[.]" (Salazar Decl. Ex. DD.) As late as February 2022, in response to a consumer's inquiry regarding importing Industria's Zenú products to the U.S., Industria's advertising agency manager responded

Industria does not advertise or sell its Zenú or Ranchera products in the United States. June 27 Opinion at 4. Industria has also not conducted any market surveys specific to the United States for its Zenú or Ranchera marks. *Id.* Additionally, Plaintiff has not and cannot provide any information regarding its reputation in the United States. *See id.* Although Industria's Zenú and Ranchera websites have been visited by users located in the United States, there are no products for sale on those websites and there is no indication that Industria sells products to United States consumers either through its websites or in stores. June 27 Opinion at 60.

Indeed, this Court has held as much, that "Industria fails to show that there is a reasonable basis for the belief it is likely to be damaged as a result of Latinfood's false advertising" and "no reasonable jury in 2023 could conclude that Latinfood's use of Industria's logo in 2016 is likely to cause damage to Industria in the future." June 27 Opinion at 60.

Thus, the third prong weighs solidly in favor of Latinfood.

### d. The Public Interest Favors a Stay

As to the fourth and final prong, there is no prior U.S. court decision ordering the cancellation of a U.S. trademark registration and enjoining U.S. use based solely on foreign trademark registrations pursuant to Articles 8 and 18 of the IAC.

There is, moreover, no recognized public interest in the United States for this Court to immediately cancel a longstanding U.S. trademark registration and immediately enjoin any use of Latinfood's longstanding Zenu and Ranchera branded marks, based on a case of first impression and foreign trademark registrations pursuant to Articles 8 and 18 of the IAC.

---

that the company was unable to import certain foods because of government restrictions. (Salazar Decl. Ex. UU.) Id. at 36.

10

To the contrary, such a decision flies in the face of U.S. public interest in the "axiomatic principle of trademark law that priority in adoption and actual use of a name of designation, as a trademark, is the essential criterion upon which ownership is based." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, 743 F. App'x 457, 467 (D.C. Cir. 2018). *See also ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 163-164 (2nd Cir. 2007). The erosion of this principle cannot be overstated. The ability and confidence of U.S. trademark registrants and common law users to rely on their U.S. priority rights will be completely undermined and compromised by this decision and could lead to widescale attempts by foreign entities to similarly rely solely on their foreign registrations to cancel and enjoin U.S. trademark holders. Clearly, if left to stand, this case will have a negative impact on interstate commerce and disenfranchise U.S. trademark registration and common law holders.

Finally, a stay is also appropriate because this case is one of first impression, in that "the Third Circuit still has not addressed the question of whether a foreign trademark holder who has never used the trademark in U.S. commerce is a person entitled to maintain a cause of action under the Lanham Act." June 29 Opinion at 33. Indeed, questions of first impression are inherently well suited for temporary stays, as a stay would serve the public interest by facilitating appellate guidance on an unsettled question of national significance. "[U]nder circumstances where the holding is novel, or resolves a question of first impression, a trial court might choose to stay its order pending analysis by an appellate court." *St. Claire v. Cuyler*, 482 F. Supp. 257, 258 (E.D. Pa. 1979). The same result should lie here, and the Court should take up the invitation to enter a stay to facilitate the public interest. *See also Territorial Court of Virgin Islands v. Richards*, 674 F. Supp. 180 (D.V.I. 1987) ("Nevertheless, because the question is one where the Third Circuit's review is plenary, and there is an inherent public interest in the application of the proper law,

especially where the question involves the constitutional assignment of power, we believe that the interests weigh heavily in maintaining the status quo until the Circuit addresses this case of first impression. Other courts have thought likewise."). *See e.g.*, *First Amendment Coalition v. Judicial Inquiry and Review Board*, 584 F. Supp. 635, 638 (E.D. Pa. 1984)).

Given this reality and the factors mentioned above, the public interest prong weighs strongly in Latinfood's favor.

## CONCLUSION

In view of the specific consequences of the "individualized judgment[] in [this] case"— *Hilton*, at 777; *Hotel & Restaurant Employees & Bartenders International Union Local 54 v. Read*, 597 F. Supp. 1431, 1446 (D.N.J. 1984) —and where all four factors favor Latinfood, a stay should issue pending final judgment and/or interlocutory appeal to preserve the status quo, and the very life of Latinfood's business. *See Anderson*, 947 F. Supp. at 898. Latinfood therefore respectfully requests that the Court issue a stay of the immediate cancellation of its Zenú mark under Articles 8 and 18 of the IAC; and a stay of the immediate injunction that prohibits Latinfood from using its Zenú and Ranchera marks under Article 18 of the IAC pending final judgment and in order to preserve the status quo pending appeal.

Respectfully submitted,

Dated July 11, 2023  By:  /Mark J. Ingber/
  Mark J. Ingber, Esq.