Mark J. Ingber, Esq.
THE INGBER LAW FIRM
30 West Mt. Pleasant Avenue
Suite 203
Livingston, New Jersey 07039
Tel: (973) 921-0080
ingber.lawfirm@gmail.com
*Attorney for Latinfood U.S.*
*Corp. d/b/a Zenú Products Co.*
*and Wilson Zuluaga*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INDUSTRIA DE ALIMENTOS Zenú S.A.S., <br><br> Industria, <br> v. <br><br> LATINFOOD U.S. CORP. d/b/a Zenú PRODUCTS CO. and WILSON ZULUAGA <br><br><br> LATINFOOD U.S. CORP. d/b/a Zenú PRODUCTS CO., <br><br> v. <br><br> INDUSTRIA DE ALIMENTOS Zenú S.A.S and CORDIALSA USA, INC. | Civil Action No: 2:16-CV-06576 |

**LATINFOOD'S REPLY BRIEF IN SUPPORT OF LATINFOOD'S**
**MOTION TO STAY THE CANCELLATION OF LATINFOOD'S ZENÚ MARK**
**AND STAY OF THE INJUNCTION ON LATINFOOD FROM USING ITS' ZENÚ**
**AND RANCHERA MARKS**

i

# TABLE OF CONTENTS

Page(s)

**PRELIMINARY STATEMENT** ................................................................................................1

**ARGUMENT** ................................................................................................................................2

    I.      Defendants' Stay Motion is Not Premature.............................................................2

    II.     Plaintiff was Indisputably Served with the Notice of Appeal at Least Six Times .3

    III.    Defendants Have Demonstrated a Likelihood of Success on the Merits; Irreparable Harm to Defendants and No Harm to Plaintiff; and That a Balancing of the Equities Favors a Stay ................................................................3

    IV.    Territorial Doctrine Supports Latinfood and Bars Plaintiff's IAC claims ...........4

    V.     Defendants Will Suffer Irreparable Harm .............................................................7

**CONCLUSION** ...........................................................................................................................9

**Table of Authorities**

**Cases**

*Bacardi Corp of America v. Domenech*,
  311 U.S. 150 (1940) ................................................................................................ 6

*British-American Tobacco Co. v. Philip Morris*,
  2000 TTAB LEXIS 390 (T.T.A.B. June 14, 2000) .................................................. 5

*Diaz v. Servicios De Franquicia Pardo's S.A.C.*,
  2007 TTAB LEXIS 34 (T.T.A.B. February 16, 2007) ............................................. 5

*Empresa Cubana del Tabaco v. Culbro Corp.*,
  213 F. Supp. 2d 247 (S.D.N.Y. 2002) ..................................................................5, 7

*Havana Club Holding, S.A. v. Galleon, S.A.*,
  203 F.3d 116 (2d Cir. 2000) .................................................................................4, 5

*ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135 (2nd Cir. 2007) ............................................. 4

*Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir. 1974). ........................................... 3

*Medellin v. Texas*, 552 U.S. 491 (2008) ......................................................................5, 6

*Meenaxi Enterprise, Inc. v. Coca-Cola Company*,
  38 F.4th 1067 (Fed. Cir. 2022) .............................................................................5, 6

*Minard Run Oil Co. v. United States Forest Serv.*,
  670 F.3d 236 (3d Cir. 2011) ................................................................................. 7-8

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*,
  743 F. App'x 457 (D.C. Cir. 2018) ......................................................................... 4

*Tenny Journal Communs. v. Verizon N.J.*,
  2021 U.S. Dist. LEXIS 166313 (D.N.J Sept. 1, 2021) ............................................ 8

**Statutes**

§ 14(3) ............................................................................................................................. 5
§ 43(a) ............................................................................................................................. 5
§ 44(b) ............................................................................................................................. 5
28 U.S.C. § 1292(a)(1) .................................................................................................... 2

**Other**

Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, § 211(b), 112 Stat. 2681, 2681-88 (1998) ................................................................... 4

2 Restatement (Third) of Foreign Relations Law of the United States § 907, Comment a, p. 395 (1986) ........................................................................................................................... 6

S. Rep. No. 79-1333 (1946), *reprinted in* 1946 U.S. Code & Cong. Serv. 1274, 1276 ..................6

**PRELIMINARY STATEMENT**

Latinfood U.S. Corp. d/b/a Zenú Products Co. and its principal, Defendant Wilson Zuluaga (collectively "Latinfood" or "Defendants"), by and through their undersigned counsel, hereby submit this reply brief (the "Reply") in further support of their Motion for a Stay [ECF. 303] of the Court's June 27, 2023 Order [ECF. No. 298] and Opinion [ECF. No. 297] cancelling Latinfood's longstanding U.S. federally registered Zenú mark under Articles 8 and 18 of the Inter American Convention for Trademark and Commercial Protection ("IAC"), and a stay of the injunction on Latinfood using its longstanding Zenú and Ranchera marks under Article 18 of the IAC, pending final judgment and/or interlocutory appeal; and in response to the opposition filed by Plaintiff/Counter Defendant Industria de Alimentos Zenú S.A.S. ("Industria") and Third-Party Defendant Cordialsa USA, Inc. ("Cordialsa") (collectively, "Industria") [D.E. 315] (the "Opposition" or "Opp.").

## ARGUMENT

**I. Defendants' Stay Motion is Not Premature**

Plaintiff claims that Latinfood's Motion for a Stay is premature by falsely asserting that the Court's injunction Order has not yet been issued. In fact, the Court's June 27 Opinion specifically sets forth:

> The result of the foregoing analysis, then, is that Latinfood's Zenú mark is canceled based on Industria's treaty rights under Articles 8 and 18 of the IAC[1], and Latinfood is enjoined from using the Zenú and Ranchera marks based on Industria's treaty rights under Article 18. Both rulings, however, are stayed, conditional upon a showing of proper authentication of the Colombian records within 30 days.[2]

For the reasons set forth in their Stay Motion, Latinfood is only asking the Court to continue its issued stay of the ruling pending final judgment and/or interlocutory appeal.[3]

Latinfood clearly has the right to appeal the Court's interlocutory order. Interlocutory appeals from the district courts to the courts of appeal are governed by 28 U.S.C. § 1292(a)(1):

> **(a)** Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:
> **(1) <u>Interlocutory orders of the district courts of the United States</u>**, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, **<u>granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions</u>**, except where a direct review may be had in the Supreme Court. emphasis added.

---

[1] The Court did not order the cancellation of Defendants' Zenu mark pursuant to Section 14(3) claim and therefore Latinfood's Motion for a Stay does not address such claim. Said claim will be a subject of Latinfood's Third Circuit appeal.

[2] "[E]xcept that the effect of this ruling is **STAYED** pending compliance with the decretal paragraph immediately following…" Court's June 27, 2023 Order [ECF. No. 298].

[3] Plaintiff's counsel only yesterday alerted the Court in a letter [ECF. No. 316] that "[i]n sum, the enclosed documents clearly demonstrate that Plaintiff has owned Colombian trademark registrations in ZENÚ and RANCHERA in various food categories since well before Defendants' January 25, 2013 Zenú trademark application, as well as its claimed (but unsubstantiated) first use of either trademark in 2010 or 2011. **Based on this, we hereby request that the Court lift the stay and issue the cancellation and injunction order, pursuant to the Opinion and Order, prohibiting Defendants from using Plaintiff's ZENÚ and RANCHERA trademarks.** (emphasis added).

Moreover, leave to file an interlocutory appeal may be granted when the order at issue (1) involves a controlling question of law upon which there is (2) substantial grounds for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. See *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974).

### II. Plaintiff was Indisputably Served with the Notice of Appeal at Least Six Times

Plaintiff further erroneously claims that Defendants' have not yet served a Notice of Appeal of such Order, when in fact said Notice of Appeal was filed and served on at least 6 attorneys for Plaintiff (including Samuel Kadosh) through ECF on July 27, 2023. See Dkt. No. 309.

### III. Defendants Have Demonstrated a Likelihood of Success on the Merits; Irreparable Harm to Defendants and No Harm to Plaintiff; and That a Balancing of the Equities Favors a Stay

Defendants have fully demonstrated all the elements necessary to obtain a stay pending appeal, namely, a likelihood of success on the merits, irreparable harm to Defendants and none to Plaintiff, and that a balancing of the equities favors a stay in its motion. Dkt. No. 303, Pgs. 3-12.

Defendants contend that the application of Articles 8 and 18 of the IAC in cancelling of Defendants' Zenú mark under Articles 8 and 18 of the IAC, as well as enjoining Latinfood from using its Zenú and Ranchera marks under Article 18 of the IAC is inappropriate for the reasons set forth in Defendants' Stay Motion. (Dkt. No. 303).

Further, it is respectfully submitted that this Court erroneously held that

> The holdings of Havana and Empresa do not foreclose Industria's claims under Articles 7 and 8 of the IAC. Both cases recognized that Articles 7 and 8

> of the IAC are incorporated by Section 44(g) of the Lanham Act. There was no Section 44(g) claim in Empresa, and the 44(g) claims in Havana failed for reasons that do not apply here: specifically that, as claims by a Cuban entity, they were explicitly barred by Section 211(b) of the Omnibus Act. Indeed, Congress's explicit barring of such claims in the Omnibus Act implies that, but for the Omnibus Act, they would be viable under Articles 7 and 8 of the IAC. It follows that Industria (which is not a Cuban entity) may assert IAC claims, not under Section 44(h), but under 44(g). July 27, 2023 Opinion at 16.

In fact, Section 44(g) claims are not "explicitly barred" under the Omnibus Act. See Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, § 211(b), 112 Stat. 2681, 2681-88 (1998) ("Omnibus Act"). Indeed, there is no mention of 44(g) at all in the Act. Id. The claims failed in *Havana* because of the Omnibus Act, but that does not necessarily mean that absent the Act the claims would have prevailed. *Havana*, 203 F.3d 116. Also, 44(g) cannot be a basis for invoking Article 8 of the IAC, because Article 8 pertains to the cancellation of trademarks and 44(g) pertains to trade names.

### IV. Territorial Doctrine Supports Latinfood and Bars Plaintiff's IAC claims

In its June 27 Order, this Court, on a case of first impression, ordered the immediate cancellation of Defendants' longstanding Zenu mark, and immediately enjoined any use by Defendants of their longstanding Zenu and Ranchera marks based solely on Industria's foreign trademark registrations pursuant to Articles 8 and 18 of the IAC. Latinfood raised substantial questions in its Stay Motion that the Court's decision flies in the face the "axiomatic principle of trademark law that priority in adoption and actual use of a name of designation, as a trademark" as "the essential criterion upon which ownership is based." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, 743 F. App'x 457, 467 (D.C. Cir. 2018) *see also ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 163-164 (2nd Cir. 2007).

4

But even if this were not the case, as expressly detailed in its Stay Motion, *Meenaxi Enterprise, Inc. v. Coca-Cola Company*, 38 F.4th 1067 (Fed. Cir. 2022)—a newly issued Circuit Court decision with a strikingly similar fact pattern—counsels in exactly the opposite direction as held by this Court, and steers strongly towards Defendants' ultimate success on the merits.

In an effort to distinguish *Meenaxi Enterprise, Inc. v. Coca-Cola Company*, 38 F.4th 1067 (Fed. Cir. 2022), Industria relied on two cases, *Diaz v. Servicios De Franquicia Pardo's S.A.C.*, 2007 TTAB LEXIS 34, *7 (T.T.A.B. February 16, 2007) and *British-American Tobacco Co. v. Philip Morris*, 2000 TTAB LEXIS 390 (T.T.A.B. June 14, 2000) which were administrative cases brought before the Trademark Trial and Appeal Board ("TTAB"), not the district court.[4]

In *Meenaxi*, the Court noted that "[a]part from *Belmora*, there is limited authority that directly addresses whether claims under § 14(3) or § 43(a) of the Lanham Act may be based on lost sales or reputational injury occurring solely outside the United States. In any event, *the extent to which the Lanham Act applies to activities outside the United States is not a question implicated here*.

---

[4] This Court erroneously cites to these same administrative TTAB cases, and in particular uses British American Tobacco, a TTAB administrative case, to interpret *Medellin v. Texas*, 552 U.S. 491 (2008), instead of *Empresa Cubana del Tabaco v. Culbro Corp.*, 213 F. Supp. 2d 247 (S.D.N.Y. 2002). This Court has even departed from highly authoritative Circuit decisional law in holding that the IAC claims can grant greater rights than those available under the Lanham Act. In particular, from the **Second Circuit, in *Havana Club Holding, S.A. v. Galleon, S.A.*, 203 F.3d 116, 127-18 (2d Cir. 2000).** Havana Club first argues that it does not need sections 44(b) and (e) of the Lanham Act to assert its rights under the IAC because upon ratification, the IAC became law in the United States without the aid of additional legislation. *See also Bacardi Corp. of America v. Domenech*, 311 U.S. 150, 161 (1940). This argument presumes that when Congress enacted section 44(b) of the Lanham Act, it intended to incorporate into law only those treaties that were not self-executing at the time. The original text of section 44(b) and the legislative history, however, suggest otherwise. When enacted in 1946, section 44(b) of the Lanham Act specifically incorporated the treaty rights of persons who are nationals of, domiciled in, or have a bona fide and effective business or commercial establishment in any foreign country, which is a party to (1) the International Convention for the Protection of Industrial Property .. or (2) *the General Inter-American Convention for Trade Mark and Commercial Protection* . . . or (3) any other convention or treaty relating to trade-marks, trade or commercial names, or the repression of unfair competition to which the United States is a party . . . . Trademark Act of 1946, ch. 540, § 44(b), 60 Stat. 427, 442.

5

Coca-Cola bases its claim entirely on alleged injury occurring in the United States. 38 F.4 at 1075-76.  Here, like there, *the extent to which the Lanham Act applies to activities outside the United States is not a question implicated here* and Industria's claims are based entirely on alleged injury occurring in the United States.

Although the Supreme Court had already ruled the IAC to be self-executing, *see Bacardi Corp of America v. Domenech*, 311 U.S. at 161 (1940), Congress specifically referred to the IAC in section 44(b) because Congress simply was not sure whether the trademark treaties had acquired the force of law.[5] The Senate Report explained:

> These conventions have been ratified, but it is a question whether they are self-executing, and whether they do not need to be implemented by appropriate legislation. Industrialists in this country have been seriously handicapped in securing protection in foreign countries due to our failure to carry out, by statute, our international obligations.

S. Rep. No. 79-1333 (1946), *reprinted in* 1946 U.S. Code & Cong. Serv. 1274, 1276.

Accordingly, Congress intended the Lanham Act "to carry out *by statute* our international commitments to the end that American traders in foreign countries may secure the protection to their marks to which they are entitled." *Id.*  Indeed, referring specifically to "inter-American conventions," Congress aimed to eliminate "these sources of friction with our Latin-American friends" and "facilitate mutual trade in this hemisphere" by ensuring the protection of their

---

[5] As the Supreme Court explains, "[e]ven when treaties are self-executing in the sense that they create federal law, the background presumption is that '[i]nternational agreements, even those directly benefitting private persons, generally do not create private rights or provide for a private cause of action in domestic courts.'" *Medellin*, 552 U.S. at 506 (citing 2 Restatement (Third) of Foreign Relations Law of the United States § 907, Comment a, p. 395 (1986)). As such, "a number of the Courts of Appeals have presumed that treaties do not create privately enforceable rights in the absence of express language to the contrary." *Medellin*, 552 U.S. at 506 (citations omitted).

trademark rights in the United States. *Id.* Therefore, Industria must assert its rights under the IAC pursuant to section 44(b) of the Lanham Act.

The *Empresa Cubana del Tabaco v. Culbro Corp.*, 213 F. Supp. 2d 247 (S.D.N.Y. 2002) case goes on to further discuss the impact of this on claims under Article 7 and 8, in a holding that is strongly persuasive to the case at bar, that:

> **Under Section 44(e), a foreign party that has already registered its mark in a convention nation may submit a certified copy of that registration to the U.S.P.T.O. at any time. A U.S. registration then will issue, if the mark otherwise qualifies for registration under U.S. law, but without special priority rights. Therefore, if someone else begins to use the mark in U.S. commerce before the foreign party submits a certified copy of the foreign registration to the U.S.P.T.O., the first U.S. user will have priority in the mark.** (emphasis added).

*Empresa*, 213 F. Supp. 2d at 282 (S.D.N.Y. 2002).

### V. Defendants Will Suffer Irreparable Harm

Industria proffered no defense, nor made any showing that invalidates Defendants' irreparable harm claim. Industria, instead, chose to focus instead on whether or not Defendants can timely liquidate its longstanding Zenu and Ranchera marks and not the merits of their opposition. This dismissive approach fails. Industria flippantly observes that Defendants will not be irreparably harmed and only face "quintessential monetary harm" based on labeling issues (Opp. at 3) which is off the mark. The Third Circuit has also weighed in on whether or not businesses that would suffer temporary economic losses and might go bankrupt was sufficient reason to establish irreparable harm and ruled in the affirmative. See *Minard Run Oil Co. v. United States Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011) (Third Circuit precedent stating that "a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement," except where

"the potential economic loss is so great as to threaten the existence of the movant's business."). Also, the Third Circuit has observed that even when an action will result in the destruction of business, a district court's refusal to grant a [preliminary] injunction is appropriate when the loss is capable of ascertainment and award at final judgment. *Tenny Journal Communs. v. Verizon N.J.*, 2021 U.S. Dist. LEXIS 166313 * 13-14 (D.N.J Sept. 1, 2021).

Plaintiff will not be injured, substantially or otherwise, if a stay is entered. In particular, Industria has not proffered a scintilla of evidence that it is actively seeking to enter the U.S. market and would enter forthwith if not for Defendants' alleged fraudulent registration of their Zenu and Ranchera trademarks. The additional delay would therefore not substantially injure Plaintiff. This Court itself recognized and repudiated Industria's claim finding that

> *there is a dispute of material fact as to whether Industria concretely intends or is able to enter the United States market. See Section IV.A.2. Additionally, Industria has not provided any information regarding its reputation in the United States. See id. Although Industria's Zenú and Ranchera websites have been visited by users located in the United States thousands of times between 2012 and 2017, there are no products for sale on those websites and there is no indication that Industria sells products to United States consumers either through its websites or in stores. For the same reason that the so-called "statutory standing" issue requires the involvement of the finder of fact, I lack a sufficient record to weigh the seventh, eighth, and ninth factors on a summary judgment standard.*

June 27, 2023 Opinion at 60. (emphasis added).

Moreover, the entry of a stay in the matter would not unduly prejudice or present a clear tactical disadvantage to plaintiff. Although the stay might delay the court's determination as to Plaintiffs' trademarks claims it would not be for such a protracted or indefinite period to constitute an abuse of discretion. The entry of a stay might simplify or even eliminate the need for trial on the remaining validity challenges in the matter. Finally, although discovery was complete and summary judgment had been partially decided, the Court has not set a trial date, nor has it issued

a pretrial order. Thus, the balance of relevant factors weighed in favor of granting Defendants' motion.

Because Plaintiff offers no viable opposition to the irreparable harm Defendants would suffer, their opposition should be denied.

**CONCLUSION**

For the foregoing reasons, the Court should grant Latinfood's Motion for Stay Pending Final Judgment and/or Appeal, along with such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: August 14, 2023                    By:    /Mark J. Ingber/
                                                  Mark J. Ingber, Esq.

9