Mark J. Ingber, Esq.
THE INGBER LAW FIRM
30 West Mt. Pleasant Avenue
Suite 203
Livingston, New Jersey 07039
Tel: (973) 921-0080
ingber.lawfirm@gmail.com
*Attorney for Latinfood U.S.*
*Corp. d/b/a Zenú Products Co.*
*and Wilson Zuluaga*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDUSTRIA DE ALIMENTOS ZENÚ S.A.S.,<br><br>    Plaintiff,<br>  v.<br><br>LATINFOOD U.S. CORP. d/b/a ZENÚ<br>PRODUCTS CO. and WILSON ZULUAGA<br><br>    Defendants/Counter Plaintiff,<br>_____<br><br>LATINFOOD U.S. CORP. d/b/a ZENÚ<br>PRODUCTS CO.,<br><br>    Defendants/Counter Plaintiff<br>v.<br><br>INDUSTRIA DE ALIMENTOS ZENÚ S.A.S<br>and CORDIALSA USA, INC.<br><br>    Counter Defendants. | Civil Action No: 2:16-CV-06576<br>(CCC)(MAH) |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S SECOND APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES; AND IN SUPPORT OF DEFENDANTS' MOTION FOR FEES AND COSTS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

    PROCEDURAL HISTORY & STATEMENT OF FACTS .................................... 2

    A.   Plaintiff's Spoliation And Sanctions Motions .................................. 2

    B.   Plaintiff's 1st Fee App. .................................................................... 3

    C.   Plaintiff's 2nd Fee App. .................................................................. 4

    D.   Latinfood is Entitled to Offset It's Attorneys' Fees in Making a Second Fee Opposition Submission, From Any Fee Awarded to Plaintiff ........................ 6

    LEGAL STANDARD ........................................................................ 7

II.    ARGUMENT ...................................................................................... 9

    A.    The Hours That Reed Smith Charged Plaintiff Were Not Reasonable ....... 9

    B.   The District Court Should, at a Minimum, Drastically Reduce Plaintiff's Claimed Fees as their Motion for Spoliation was Unsuccessful ............... 17

    C.   Latinfood Cannot Evaluate the Redacted Entries in Kadosh Declaration Which Warrants Rejecting those Entries .................................... 19

    D.   The Kadosh Declaration Includes Reed Smith's Excessive and Overinflated Fees in Connection with Plaintiff's Sanctions "Motion" ................................................................**Error! Bookmark not defined.**

    E.   The Kadosh and Flynn Declarations Ignore Numerous Deficiencies Noted by Saffer in His Initial July 18, 2022 Decl.; and Includes Vague and Ambiguous Entries .................................................................. 21

    F.   The Kadosh Declarations Include Irrelevant And Excessive Fees Associated With Unrelated Discovery Disputes and Client Communications ........................................................................ 24

    G.   Reed Smith's Entries Include Numerous Instances of Inefficiencies and Duplication of Effort ...........................**Error! Bookmark not defined.**

    H.   Reed Smith's Entries Include Administrative Tasks … ..**Error! Bookmark not defined.**

    I.   Kadosh Declaration Contains Certain Expenses That Should

Be Denied…...............................................**Error! Bookmark not defined.**

III.    THE INTERESTS OF JUSTICE REQUIRE THE COURT TO EXERCISE ITS' EQUITABLE POWERS AND OFFSET FROM ANY FEE AWARDED TO PLAINTIFF, DEFENDANTS' ATTORNEYS' FEES IN HAVING TO MAKE A SECOND OPPOSITION SUBMISSION, WHICH WAS   DUE SOLELY TO INDUSTRIA'S INITIAL DEFICIENT FEE APPLICATION ............................ 32

IV.    CONCLUSION ........................................................................................... 34

**Table of Authorities**

**Cases**

*Adam X. v. N.J. Dep't of Corr.*,
   2022 U.S. Dist. LEXIS 37601 (D.N.J. Mar. 3, 2022) ........................................................ 15

*Apple Corps. Ltd. v. Int'l Collectors Soc.*,
   25 F. Supp. 2d 480 (D.N.J. 1998) ........................................................ 8, 9, 15, 18

*Arku-Nyadia v. Legal Sea Foods, LLC*,
   2022 U.S. Dist. LEXIS 56581 (D.N.J Mar. 29, 2022) ........................................................ 14

*Asta Funding, Inc. v. Neal*,
   2018 U.S. Dist. LEXIS 193445 (D.N.J., Nov. 9, 2018) ........................................................ 7

*Asta Funding, Inc. v. Neal*,
   2017 U.S. Dist. LEXIS 163879 (D.N.J. Sep. 29, 2017) ........................................................ 7

*AT&T Corp. v. JMC Telecom, LLC*,
   2005 U.S. Dist. LEXIS 36559, 2005 WL 2086194 (D.N.J. Aug. 26, 2005) ........................................................ 7,15

*Bell v. United Princeton Properties, Inc.*,
   884 F.2d 713 (3d Cir. 1989) ........................................................ 9

*Bing Li v. Aeterna Zentaris Inc.*,
   2021 U.S. Dist. LEXIS 105757 (D.N.J. June 1, 2021) ........................................................ 15

*Blum v. Stenson*,
   465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) ........................................................ 9

*Dartell v. Tibet Pharms., Inc.*,
   2017 U.S. Dist. LEXIS 100872, 2017 WL 2815073 (D.N.J. June 29, 2017) ........................................................ 13

*Evans v. Port Auth. of N.Y. & N.J.*,
   273 F.3d 346 (3d Cir. 2001) ........................................................ 20

*Field v. Haddonfield Bd. of Educ.*,
   769 F. Supp. 1313 (D.N.J. 1991) ........................................................ 17

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
   386 U.S. 714 (1967) ........................................................ 32

*Halderman by Halderman v. Penhurst State Sch. & Hosp.*,
   49 F.3d 939 (3d Cir. 1995) ........................................................ 26, 27

*Hall v. Cole*,
   412 U.S. 1943 (1973) ........................................................ 32

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................ 16, 20

*Holmes v. Millcreek Twp. School Dist.*,
   205 F.3d 583 (3d Cir. 2000) ........................................................ 17

iv

*In re Mercedes-Benz Tele Aid Contract Litig.*,
    2011 U.S. Dist. LEXIS 101995 (D.N.J. Sep. 9, 2011) ....................................................... 16

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
    426 F.3d 694 (3d Cir. 2005) .................................................................... 7, 8, 10, 16

*J&J Snack Foods Corp. v. Earthgrains Co.*,
    2003 U.S. Dist. LEXIS 8040, 2003 WL 21051711 ............................................... 16

*Khona* v. *Subaru of Am., Inc.*,
    2021 U.S. Dist. LEXIS 202153 (D.N.J. Oct. 20, 2021) .............................................. 15, 16

*Lanni v. New Jersey*,
    259 F.3d 146 (3d Cir. 2001) .................................................................................. 7

*Loughner v. University of Pittsburgh*,
    260 F.3d 173 (3d Cir. 2001) .................................................................................. 7

*Maldonado v. Houstoun*,
    256 F.3d 181 ................................................................................. 18, 20, 27, 9

*McKenna v. City of Philadelphia*,
    582 F.3d 447 (3d Cir. 2009) .................................................................................. 7

*MCO & EA LLC v. Silver Globe Inc., No. CV 20-17100*,
    2023 U.S. Dist. LEXIS 85268, 2023 WL 3478466 (D.N.J. May 15, 2023) ...................... 14

*Microsoft Corp. v. United Computer Res. of N.J., Inc.*,
    216 F. Supp. 2d 383 (D.N.J. 2002) ................................................................. 21, 22, 23

*Mills v. Electric Auto-Lite Co.*,
    396 U.S. 375 (1970) ............................................................................................ 32

*Ocasio v. Cnty. of Hudson*,
    2023 U.S. Dist. LEXIS 137618 (D.N.J. Aug. 8, 2023) ...................................................... 14

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
    2017 U.S. Dist. LEXIS 97909, 2017 WL 2734714 (D.N.J. June 26, 2017) ...................... 13

*P.G. v. Brick Twp. Bd. Of Educ.*,
    124 F. Supp. 2d 251 (D.N.J., Dec. 11, 2000) ................................................................. 9

*Pa. Envtl. Def. Found. v. Canon-Mcmillan Sch. Dist.*,
    152 F.3d 228 (3d Cir. 1998) .................................................................................. 17

*Public Int. Research Group of N.J., Inc. v. Windall*,
    51 F.3d 1179 (3d Cir. 1995) .................................................................................. 7

*Rainey v. Philadelphia Housing Auth.*,
    832 F. Supp. 127 (E.D. Pa. 1993) ...................................................................... 18

*Rendine v. Pantzer*,
    141 N.J. 292, 661 A.2d 1202 (N.J. 1995) .................................................................. 7

*Rhodes v. Matrix Servicing, LLC*,
   2020 U.S. Dist. LEXIS 177854, 2020 WL 5760455 (D.N.J. Sept. 28, 2020) ................................... 18

*Rode v. Dellacriprete*
   892 F.2d. 1177 (3d Cir. 1990) ..................................................................................... 20, 8

*Rossi v. P&G*
   2013 U.S. Dist. LEXIS 143180 (D.N.J. Oct. 3, 2013) ................................................ 16

*S.D. v. Manville Bd. Of Educ.*,
   989 F. Supp. 649 656 (D.N.J. Jan. 7, 1998) ................................................................. 9

*Schofield v. Trustees of the Univ. Of Penn.*,
   919 F. Supp. 821 (E.D. Pa. 1996) ............................................................................... 26

*School District of Philadelphia v. Kirsch*,
   722 F. App'x. 215 (3d Cir. 2018) ................................................................................. 9

*Shelton v. Restaurant.com Inc.*,
   2016 U.S. Dist. Lexis 176785 (D.N.J. Dec. 21, 2016) ............................................. 18, 28

*Sprague v. Ticonic National Bank*,
   307 U.S. 161 (1939) ................................................................................................... 32

*Stadler v. Abrams, No. CV 13-2741*,
   2018 U.S. Dist. LEXIS 126499, 2018 WL 3617967 (D.N.J. July 30, 2018) ................................. 8, 10

*Stokes v. Lecce*,
   384 F. Supp. 1039 (E.D. Pa. Nov. 11, 1974) ............................................................... 32

*Talone v. Am. Osteopathic Ass'n*,
   2018 U.S. Dist. LEXIS 203983, 2018 WL 6318371 (D.N.J. Dec. 3, 2018) ................................. 13

*United States ex rel. Bahnsen v. Bos. Sci. Neuromodulation Corp.*,
   2021 U.S. Dist. LEXIS 6674 (D.N.J. Jan. 11, 2021) ............................................... 12, 14, 15

*United States ex rel. Menold v. Lotus Family Med.*,
   2022 U.S. Dist. LEXIS 20397 (DNJ Feb. 3, 2022) .................................................... 13, 28

*United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128 (3d Cir. 2018) ................................. 13, 14

*Ursic v. Bethlehem Mines*,
   719 F.2d 670 (3d Cir. 1983) ....................................................................................... 28

*Warner v. Twp. of S. Harrison*,
   2013 U.S. Dist. LEXIS 90411 (D.N.J. June 27, 2013) ................................................ 23

*Washington v. Philadelphia County Court*,
   89 F.3d 1031 (3d Cir. 1996) ....................................................................................... 8

*Young v. Smith*,
   269 F. Supp. 3d 251 (M.D. Pa. 2017) .............................................................. 10, 11, 28, 29

**Statutes**

20 U.S.C. § 1415 ............................................................................................................ 9

Civil Procedure § 1387 35B ......................................................................................... 32

Civil Procedure § 1388 ............................................................................................ 32-33

**Other**

Fed. R. Civ. P. 23 ......................................................................................................... 16

Federal Rules of Civil Procedure 37 ................................................................... 18, 2-3, 3

Rule 7.2 ....................................................................................................................... 3, 4

Rule 37 ............................................................................................................. 17, 2, 20, 3

## PRELIMINARY STATEMENT

Defendants Latinfood U.S. Corp. d/b/a Zenú Products Co. and Wilson Zuluaga ("Latinfood" or "Defendants") submit this Memorandum of Law in opposition to Plaintiff Industria De Alimentos Zenu S.A.S.'s ("Industria" or "Plaintiff") October 20, 2023 Second Application for Fees and Expenses ("Plaintiff's 2nd Fee App."). Plaintiff's 2nd Fee App. was necessitated after Plaintiff filed a woefully deficient fee application on June 27, 2022 (Dkt. 246).

Despite the Court, on July 27, 2022, issuing a *sua sponte* Order permitting Plaintiff to supplement its initial fee application that the Court expressly found to be patently deficient, Plaintiff's 2nd Fee App. fails to cure those woeful deficiencies. By way of example:

1. Plaintiff continues to seek reimbursement based on its attorneys' hourly fees that are wholly inconsistent with prevailing market rates in the District of New Jersey;

2. Plaintiff continues to seek reimbursement for the attorneys' fees and costs it incurred in connection with an **unsuccessful** spoliation motion;

3. Plaintiff totally ignores Defendants' expert's previous observations, **supported by Exhibits** that, among other things, Plaintiff's attorneys billed for excessive time relating to the deposition of Wilson Zuluaga, its attorneys performed tasks more suitable for a paralegal, there is un-reimbursable time regarding the Fronteo Report, there are instances of inefficiencies and needless duplication of effort, and its attorneys billed for vague and ambiguous tasks;

4. Plaintiff's expert's opinion is, in fact, a net opinion as to the tasks for which Plaintiff seeks reimbursement and should be disregarded;

5. Plaintiff continues to seek reimbursement for attorneys' fees and costs in connection with its sanctions motion that are patently excessive;

6. Plaintiff continues to seek reimbursement for attorneys' fees and costs for discovery disputes and client communications

1

that are impermissible under the Order imposing sanctions;
7.    Plaintiff continues to seek reimbursement for costs that are
not reimbursable.

For these reasons, Plaintiff's application for an Order approving its request for attorneys'

fees and costs should be denied or significantly reduced.

In addition, the interests of justice require the Court to exercise its' equitable powers and

offset from any fee award to Plaintiff, all  attorneys' fees by the undersigned and Mr. Saffer in

making a second fee opposition submission, which was  due solely to Industria's initial and

woefully deficient fee application.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A.    Plaintiff's Spoliation and Sanctions Motions

On October 8, 2021, Plaintiff filed a motion "for spoliation and discovery sanctions against

Defendants".  (Dkt. 224).  On May 26, 2022, the Honorable Michael A. Hammer, United States

Magistrate Judge, entered an Order (the "Order") that "denie[d] Plaintiff's motion for spoliation

sanctions pursuant to Rule 37(e)," finding that Plaintiff failed to:  (1) demonstrate any spoliation

by Latinfood; (2) establish any loss or deprivation of ESI; (3) demonstrate bad faith by Industria;

(4) present any evidence of any crucial missing documents that Latinfood failed to produce; (5)

demonstrate an actual deprivation of discovery; or (6) prove that Latinfood's conduct irremediably

impacted Industria's ability to try this matter on the merits.  In its finding, the Court found

"Plaintiff's arguments on this issue unavailing as Industria's submission was based on a single

telephonic complaint made to an affiliate of Plaintiff establishes that Defendants once possessed

and destroyed similar criticism sent via email". (Dkts. 232-233).  Consequently, Plaintiff's

spoliation was denied.

The Court did, however, find Latinfood liable for four violations of Federal Rules of Civil

Procedure 37(c) and limiting compensable fees and costs to four (4) discrete categories as follows:

> Plaintiff may seek fees and costs it incurred in (i) obtaining a neutral forensic examination of the Fronteo Drive and analyzing the contents of the Fronteo Report; (ii) preparing for and conducting Defendant Wilson Zuluaga's October 2020 deposition; (iii) obtaining a direct document production from Cibao, and in comparing Cibao's direct production to Defendants' indirect production; and (iv) bringing its motion for sanctions. Plaintiff's affidavit must set forth a description of the services for which it seeks fees and explain how those services are related to the aforementioned Rule 37(c) violations. Additionally, Plaintiff must provide proofs substantiating the total hours worked, the rates charged, any costs it seeks, and all other applicable information necessary for the Court to conduct a lodestar calculation.

Order, at 2.

The Court Ordered **"**that Plaintiff may file an affidavit attesting to its reasonable expenses, including attorneys' fees, caused by Defendants' violations of Federal Rule of Civil Procedure 37(c)…"*Id.*, at 2.

**B.**    **Plaintiff's 1ˢᵗ Fee App.**

On June 27, 2022, Plaintiff submitted a woefully deficient fee application ("Plaintiff's 1ˢᵗ Fee App.") relying solely on a Declaration of Samuel Kadosh, Esq., a then-13 year associate at Plaintiff's counsel, Reed Smith LLP ("Reed Smith") who is resident in Reed Smith's New York City office and who opined on reasonable hourly rates for attorneys in this District.   That Declaration improperly contained case law, legal arguments, and summations contrary to Local Rule 7.2(a).

Latinfood timely filed its opposition consisting of the Declaration of Michael A. Saffer, Esq. (the "*Saffer* Decl.")[1] and a Memorandum of Law.  (Dkt. 246).  Recognizing the patent

---

[1] In contrast to Plaintiff's 1ˢᵗ Fee App. which contained no expert opinion, Mr. Saffer,  who is Co-Chair of the Commercial and Corporate Litigation Department at Mandelbaum Barrett, P.C.,  one of the largest, most prestigious,

deficiencies in Plaintiff's 1st Fee App. which Defendants referenced in their opposition papers, on July 27, 2022, the Court issued a *sua sponte* Order denying Plaintiff's application for fees and expenses without prejudice.  In that denial, Judge Hammer noted that:

> Plaintiff's submission does little to assist the court in conduct the lodestar analysis . . . Plaintiff's application . . . frustrate(s) this court's ability to conduct the necessary lodestar analysis".  July 27 Order, fn. 1.

Nonetheless, the Court afforded "Plaintiff one final opportunity to make an appropriate submission that, among other things, addresses more completely the lodestar analysis".  *Ibid.*, fn. 1.

## C.   **Plaintiff's 2nd Fee App.**

On October 20, 2023, Plaintiff submitted Plaintiff's 2nd Fee App. consisting of a Declaration of Samuel Kadosh, Esq. (the "Kadosh 2nd Decl."), a Declaration of James P. Flynn, Esq. (the "Flynn Decl."), and a Memorandum of Law (D.E.  324-325).  Notably, the Kadosh 2nd Decl. is nearly identical to the prior June 27, 2022 Kadosh 1st Declaration which the Court expressly found in the July 27 Order to be deficient.   More specifically, the only variation between the two Kadosh declarations lies in the addition of ¶¶14-16 in the latter Declaration which attempts to explain why Reed Smith attorneys spent 24.6 hours preparing for a deposition that lasted 2.5 hours.  Those supplemental paragraphs claim that such extensive deposition preparation was necessary to review the two prior Zuluaga deposition transcripts and to review a certain hard drive.  See *Supplemental Saffer Decl.*, ¶24.

Those supplemental paragraphs, however, never address why a review of the 361 pages of the prior Zuluaga depositions (which could have been performed by a paralegal), the

---

and longstanding law firms in New Jersey, opined that Reed Smith's hourly rates and its fees, and most of the expenses the Plaintiff seeks to recover, are not reasonable for this District.

review of hard drive by a paralegal (especially when Mr. Kadosh states that there was no charge for the paralegal's conversion of the emails from Spanish to English), and preparing some notes for a 2.5 hour deposition allegedly consumed almost 25 hours of attorney time. *Supplemental Saffer Decl.*, ¶25.

It should also be noted that Messrs. Kadosh and Flynn never explain why four separate attorneys expended time in preparing for the Zuluaga deposition, Kadosh 2nd Decl., ¶17, that lasted only 2.5 hours. *Supplemental Saffer Decl.*, ¶26.

Mr. Flynn's opinion seeks to address the reasonableness of Reed Smith's hourly rates and the time that firm expended on various tasks lack factual support. He disagrees with Mr. Saffer's opinion that the proper standard for determining a reasonable hourly rate for Reed Smith's work on the sanctions motion is the standard utilized by Community Legal Services, Inc. ("CLS") and that the time that Reed Smith spent on certain tasks was either excessive or contrary to what is compensable under the Order.

Although Reed Smith objects to the applicability of the CLS rates on the basis that "the rates for Philadelphia attorneys are of little value in this case . . . .", Pb 17, the 2022 Wolters Kluwer Real Rate Report (the "Real Rate Report") that Mr. Flynn relies upon for his opinion regarding reasonable attorney rates is based on "the median rate for commercial litigation at firms of 1,000 or more lawyers in **Philadelphia, PA** . . . ." *Flynn* Decl., ¶12. Similarly hypocritical is Mr. Flynn's objection to the CLS hourly rates being effective as of July 1, 2018. *Flynn* Decl., ¶8, fn.1. He ignores that the time period for the tasks for which Reed Smith seeks a fee and costs award range from February 26, 2018 through October 22, 2020 which date range is far more applicable to the standard hourly rates as of July 1, 2018 than the Real Rate Report's 2023 attorney hour rates.

Plaintiff's 2nd Fee App. also contends that this District does not generally recognize the applicability of the CLS rates in determining the reasonableness of attorney hourly rates in this District. As set forth below, there are abundant examples of Courts in this District utilizing the CLS rates for that purpose.

Indeed, Plaintiff's 2nd Fee App. is more noteworthy for what it ignores rather than what it addresses. Plaintiff never addresses, and therefore never denies, that the tasks identified in ¶¶21, 25, and 26 of the prior filed *Saffer* Decl. are non-reimbursable. Similarly, Plaintiff ignores all of Mr. Saffer's observations in his prior Declaration about the impropriety of Reed Smith seeking an award of attorneys' fees and costs in excess of $115,000 in bringing its motions for sanctions and spoilation which spoliation motion was denied. *Supplemental Saffer Decl.*, ¶35.

Similarly, Plaintiff's 2nd Fee App. does not address Exhibit F to the prior *Saffer* Decl. that identified excessive or unnecessary time charges by Reed Smith on the sanctions motion. 1st *Saffer* Decl., ¶30. It does not address Exhibit G to the prior *Saffer* Decl. that identified tasks charged by Reed Smith on the sanctions motion that were administrative in nature and were, therefore, non-compensable. 1st *Saffer* Decl., ¶31.

Plaintiff's and Reed Smith's failure to address these concerns about the reasonableness of the time that Reed Smith allegedly expended on certain tasks caused Mr. Saffer's to conclude that Mr. Flynn's opinion, constitutes a "net opinion" as to those tasks. *Supplemental Saffer Decl.*, ¶34.

**D.**   **Latinfood is Entitled to Offset It's Attorneys' Fees and Costs in Making a Second Fee Opposition Submission, From Any Fee Awarded to Plaintiff**

After Plaintiff's failed and deficient initial fee application, the Court, in its July 27, 2022 Order (Dkt. 253), determined it to be "in the interest of fairness, and in the discretion of the Court" to grant Plaintiff "*one final opportunity* to make an appropriate submission that, among other

things, addresses more complete the lodestar analysis." Emphasis added. Similarly, in the interest of fairness, the Court should exercise its' equitable powers and offset from any fee award to Plaintiff, all attorneys' fees and costs expended by the undersigned and Mr. Saffer in making a supplemental fee opposition submission, which was due solely to Industria's initial and deficient fee application.

## I.  LEGAL STANDARD

For both state and federal fee-shifting statutes, the "lodestar" method provides the starting point for determining a reasonable fee. See *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001); *Rendine v. Pantzer*, 141 N.J. 292, 661 A.2d 1202, 1216 (N.J. 1995). Courts determine the lodestar "by calculating the 'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)), "A party seeking attorney fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable" and must submit evidence to support its claims. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005).

"The starting point in ascertaining a reasonable hourly rate is 'the attorney's usual billing rate, but this is not dispositive.'" *Loughner v. University of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) (quoting *Public Int. Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). The Court should "determine the currently prevailing rates in the community for comparable legal services at the time the fee petition was filed." *Lanni v. New Jersey*, 259 F.3d 146, 150 (3d Cir. 2001).[2]  Once a reasonable hourly rate is determined, the Court must next

---

[2]Judge Hammer has, of course, ruled similarly in *Asta Funding, Inc. v. Neal*, Civil Action No. 14-2495 (KM), 2017 U.S. Dist. LEXIS 163879 (D.N.J. Sep. 29, 2017) *Asta Funding, Inc. v. Neal*, 2018 U.S. Dist. LEXIS 193445 (D.N.J., Nov. 9, 2018) and affirmed by Judge Kevin McNulty in *Asta Funding, Inc. v. Neal*, 2018 U.S. Dist. LEXIS 193445 (D.N.J., Nov. 9, 2018), holding "Prevailing market rates in the legal community usually set the reasonable hourly rate.

consider whether the time expended is reasonable. The court should exclude "hours that are not 'reasonably expended' by virtue of excessiveness, redundancy, or lack of necessity." *Mosaid*, 224 F.R.D. at 597 (quoting *Rode*, 892 F.2d at 1183).

An opposing party must object with sufficient specificity to any request for fees. *Id.* "Once the opposing party has objected, the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable." *Id.* "In reviewing a fee application, a district court must conduct 'a thorough and searching analysis,'" *Id.* (citation omitted). Notably, however, the Third Circuit has held that district courts "may not reduce an award *sua sponte*. Reductions are only appropriate in response to specific objections made by the opposing party." *Stadler v. Abrams*, No. CV 13-2741, 2018 U.S. Dist. LEXIS 126499, 2018 WL 3617967, at *2 (D.N.J. July 30, 2018) (citing *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 719 (3d Cir. 1989)).

The moving party, here Industria, bears the burden of proving, through competent evidence, the reasonableness of the hours worked, and rates claimed. *Washington v. Philadelphia County Court*, 89 F.3d 1031, 1035 (3d Cir. 1996). If presented with "competent evidence" and "[i]f it wishes to challenge the fee award, the opposing party must then object 'with sufficient specificity' to the [fee] request." *Interfaith Cmty. Org.*, 426 F.3d at 703 (quoting *Rode v. Dellarcriprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

---

See *AT&T Corp. v. JMC Telecom, LLC*, No. 99-2578, 2005 U.S. Dist. LEXIS 36559, 2005 WL 2086194, at *3 (D.N.J. Aug. 26, 2005) (explaining that the prevailing party satisfies this burden by "submitting the affidavits of other attorneys in the relevant legal community, attesting to the range of prevailing rates charged by attorneys with similar skill and experience."). Under the "forum rate rule," out-of-state attorneys obtain the hourly rate "prevailing in the forum in which the litigation is lodged." *Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F. Supp. 2d 480, 493 (D.N.J. 1998).

## II.    ARGUMENT

### A.    The Hours That Reed Smith Charged Plaintiff Were Not Reasonable

For the tasks performed, Reed Smith is required to establish a reasonable rate for performing that task. "A reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3rd Cir. 2001)(citing *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984).[3] "Although [a] respondent's objections to the fee petition must be clear, a party challenging a fee petition need not always challenge specific time entries and have the court find that some specific time entry was unreasonable or unnecessary....'" *Apple Corps. Ltd. v. Int'l Collectors Soc'y*, 25 F. Supp.2d 480, 485 n.4 (D.N.J. 1998) (quoting *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)). The opposing party's objections are sufficient, for example, if it alleges the excessiveness of hours expended on particular categories of work. *Id.*

The Third Circuit has long held that the movant bears the burden of establishing, by way of satisfactory evidence, in addition to the attorney's own affidavits … that the hourly requested rates meet this standard." *School District of Philadelphia v. Kirsch*, 722 F. App'x. 215, 229 (3d Cir. 2018)(quoting *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)). "The party normally satisfies this burden by submitting the affidavits of other attorneys in the relevant community, attesting to the range of the prevailing rates charged by attorneys with similar skill and experience." *P.G. v. Brick Twp. Bd. Of Educ.*, 124 F. Supp. 2d 251, 261 (D.N.J., Dec. 11,

---

[3]A court may reduce the attorneys' fees awarded to a prevailing party if "the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience." 20 U.S.C. § 1415(i)(3)(F)(ii).

[3]The fee applicant's burden may be satisfied by the submission of affidavits of non-party attorneys with personal knowledge of the hourly rates customarily charged in the relevant community. *Apple Corps. V. International Collectors Soc'y*, 25 F. Supp. 2d, 480, 492 (D.N.J. 1998).

2000)(citing *S.D. v. Manville Bd. Of Educ.*, 989 F. Supp. 649 656 (D.N.J. Jan. 7, 1998).[4]  The reasonable hourly rate is determined by reference to the marketplace.  *Stadler v. Abrams*, *supra*, at *22.

In the Third Circuit, as in most circuit courts, the relevant rate is the prevailing rate in the forum of the litigation.  *Interfaith Cmty. Org.*, *supra*, at 705. Also, there is a responsibility on counsel to "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Young v. Smith*, 269 F. Supp. 3d 251, 277 (M.D. Pa. 2017).

Plaintiff's Memorandum of Law contends that Reed Smith's 2018 – 2021 New York City hourly billing rates of $440 - $995 per hour for that non-forum law firm are "reasonable and within prevailing market rates for trademark litigation in the Northern New Jersey section of this District" which contentions were rubberstamped by Plaintiff's expert, James P. Flynn, Esq. ." Dkt. No. 325, ¶ 6.  Mr. Flynn went on to further incorrectly opine that:

> Defendants suggest that the reasonable rates for sophisticated intellectual property litigation in federal court in Newark should be based on 2018 rates from the Community Legal Services of Philadelphia ("CLS"). See Saffer Declaration, e.g., at paragraphs 16 ff. These rates are five years old are for a different legal market, and are not based on rates charged by large firms such as Reed Smith. In my experience, the CLS rates identified by Defendants do not reflect the prevailing rates for large firms conducting sophisticated intellectual property litigation in federal court in Newark." Id. at  ¶ 8-9.
>
> I have also not found any reported case, and know of no instance, where Community Legal Services of Philadelphia used those rates to apply for a fee award in an intellectual property case in any Pennsylvania state court or any district court within the Third

Circuit. Consequently, I would not, a matter of my professional judgment, apply such CLS rates in determining reasonable attorneys' fees in an intellectual property case in this district, especially in its Newark northern vicinage." Id. at ¶ 10.

Mr. Flynn's assertions that the following Reed Smith's NY based attorney rates

| Name | Title | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|
| Raymond, Peter (43 yrs exp.) | Partner | $ 995.00 | $ 995.00 | $ 995.00 | $ 995.00 |
| Kadosh, Samuel (13 yrs exp.) | Counsel | $ 710.00 | $ 760.00 | $ 760.00 | $ 810.00 |
| Berman, Jeremy A. (4 yrs. Exp.) | Associate | $ 440.00 | $ 480.00 | $ 535.00 | $ 590.00 |
| Castillo Jr., Jose A. | Sr. Paralegal | $ 170.00 | $ 185.00 | $ 200.00 | $ 215.00 |
| Mantzopoulos, Elias | Legal Tech | $ 380.00 | $ 415.00 | $ 445.00 | |

are reasonable for trademark litigation in Northern New Jersey section of this district lack merit. He dismissed utilizing the CLS attorney rate schedule in this action, stating that "the rates for Philadelphia attorneys are of little value in this case . . . .", Pb 17, and that he would not "apply such CLS rates in determining reasonable attorneys' fees in an intellectual property case in this district, especially in its Newark northern vicinage."  Id.  However, he then ironically advocated for the Court to be guided by the Real Rate Report and provided _the Real Rate Report Pennsylvania rate schedule which does not specifically address attorney rates for intellectual property attorneys in New Jersey but rather for Pennsylvania attorneys engaged in Commercial Litigation and not related to intellectual property._ See Dkt. No. 325-1, p.7.

Furthermore, in pointing out that Mr. Saffer used five-year old 2018 CLS Rates, Mr. Flynn failed to acknowledge that the 2018 CLS Rates were the CLS attorney hourly rates in effect at the time that Mr. Saffer submitted his initial Declaration in 2022. See 1st _Saffer_ Decl., Dkt. No. 250-1

("The range of hourly rates in the CLS, which dates back to July 1, 2018, **but have not been updated** is still the standard."); 1st *Saffer* Decl., ¶¶14-15 See also, Db 12, Dkt. No. 250, p. 12 ("It is respectfully requested that Your Honor employ the CLS fee schedule https://clsphila.org/about-community-legal-services/attorney-fees)(last accessed July 15, 2022).

The legal precedents that Plaintiff presents in support of its application do not support Plaintiff's position.  Plaintiff's cite, in a footnote, to the non-binding decision in *United States ex rel. Bahnsen v. Bos. Sci. Neuromodulation Corp.*, 2021 U.S. Dist. LEXIS 6674, at *9 n.1 (D.N.J. Jan. 11, 2021) ("CLS schedule has been approved for use in Philadelphia and does not control in Newark"), Pb 17, to support his opinion as to the applicability of the Real Rate Report where the median rate for commercial litigation at firms of 1,000 or more lawyers in Philadelphia, PA was $945 for partners and $624 for associates with the rate at the third quartile was $1,285 for partners and $829 for associates. See *Flynn* Decl. ¶ 12.  Yet, not only is that decision distinguishable from the facts of the within action, but Plaintiff ignores the plethora of legal precedents in our District that recognize CLS as a benchmark standard for determining reasonable attorney hourly rates in the District of New Jersey.

In *Bahnsen*, the Court did not even provide the requested attorney rates but instead held as follows:

> Judge Mannion issued the R&R on February 14, 2020, recommending that Relators be awarded $4,632,828.84 in fees and $908,583.33 in litigation costs, for a total award of $5,541,412.17. R&R at 1. Judge Mannion first **considered the hourly rates under the lodestar method and found a blended rate of $618 to be reasonable for all attorneys** at Susman Godfrey, the firm representing Relators, *but applied lower rates* to Susman Godfrey paralegals and local counsel. Id. at 8. Judge Mannion then considered the hours expended. Because of concern over the vagueness of certain entries (including 172 entries described as only "Reviewing documents"), Judge Mannion recommended reducing the requested 8,105.7 Susman Godfrey attorney hours by 850 hours,

to 7,255.7 hours. Id. at 9. Judge Mannion then considered adjustments to the lodestar, looking specifically to the "results obtained," and recommended a 10% downward adjustment of the fee award. Id. at 11. As to costs, Judge Mannion recommended granting Relator's request for litigation costs of $908,583.33 because BSNC had failed to make specific objections. Bahnsen at *3-4. (Emphasis added).

That Court, further commented that "the cases to which Judge Mannion cited also reflect that an hourly rate of $618 is reasonable in this jurisdiction. *See Talone v. Am. Osteopathic Ass'n*, 2018 U.S. Dist. LEXIS 203983, 2018 WL 6318371 (D.N.J. Dec. 3, 2018); *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, 2017 U.S. Dist. LEXIS 97909, 2017 WL 2734714 (D.N.J. June 26, 2017); *Dartell v. Tibet Pharms., Inc.*, 2017 U.S. Dist. LEXIS 100872, 2017 WL 2815073 (D.N.J. June 29, 2017)" and agreed with Judge Mannion's conclusion that $618 is a reasonable and appropriate rate. *Id.* at *9. **Therefore even if the CLS rates do not apply, the Court felt that $618/hour is reasonable hourly rate for attorneys in this District.**

Mr. Flynn opines that he had:

> not found any reported case, and knows of no instance, where Community Legal Services of Philadelphia used those rates to apply for a fee award in an intellectual property case in any Pennsylvania state court or any district court within the Third Circuit. Consequently, I would not, a matter of my professional judgment, apply such CLS rates in determining reasonable attorneys' fees in an intellectual property case in this district, especially in its Newark northern vicinage." *Flynn* Decl. ¶ 10.

Mr. Flynn's opinion in this regard is, however, patently erroneous as it is contrary to law. The reality is that the CLS Rate Schedule is widely recognized and adopted as a benchmark standard for evaluating reasonable hourly attorney rates in the Third Circuit.

In *United States ex rel. Menold v. Lotus Family Med.*, 2022 U.S. Dist. LEXIS 20397 (DNJ Feb. 3, 2022), the Court found that "*the requested CLS-based rates are reasonable as Relator's counsel and their CLS-based hourly rates were recently upheld by the Third Circuit in United*

*States ex rel. Palmer v. C&D Techs., Inc., 897 F.3d 128 (3d Cir. 2018).*"  *See also Palmer*, 897

F.3d at 138 ("[T]he District Court was within its discretion to apply the mid-point of the CLS rates

for a 'reasonable' hourly rate.").

Moreover, the Court in *Menold* held that "Defendants also argue in their supplemental brief

that the CLS rates have "previously been held inapplicable in New Jersey" due to their

Philadelphia-based origins rather than the present New Jersey forum. (Db at 2, ECF No. 42)

(citing *United States ex rel. Bahnsen v. Bos. Sci. Neuromodulation Corp*., 2021 U.S. Dist. LEXIS

6674, at *9 n.1 (D.N.J. Jan. 11, 2021)).  However, the text on which Defendants rely merely states

that the CLS rates were "approved for use in Philadelphia and [do] not control in Newark," [is] far

from a categorical rejection." *Id. at H \*14*

Indeed, as recently as four months ago, this Court recognized CLS rates as a benchmark

for determining the reasonableness of hourly attorneys' fees in this District.  S*ee Ocasio v. Cnty.*

*of Hudson*, 2023 U.S. Dist. LEXIS 137618, *6 n.2 (D.N.J. Aug. 8, 2023), where the Court noted,

with specificity, that "**[w]hile the CLS fee schedule is predominantly related to the**

**Philadelphia market, courts in the Newark vicinage of the District of New Jersey have**

**considered it as a benchmark as well.**"  (Emphasis added).  *See also*, *e.g.*, *MCO & EA LLC v.*

*Silver Globe Inc.*, No. CV 20-17100, 2023 U.S. Dist. LEXIS 85268, 2023 WL 3478466, at *4

(D.N.J. May 15, 2023) (Chesler, J.)("These rates are reasonable. Courts in the Third Circuit  often

use the rates set by Community Legal Services in Philadelphia as a benchmark for

reasonable hourly rates within the geographic bounds of the Circuit).

In *Arku-Nyadia v. Legal Sea Foods, LLC*, 2022 U.S. Dist. LEXIS 56581 (D.N.J Mar. 29,

2022) the Court held that "[t]o substantiate the reasonableness of these rates, counsel submitted a

2018 fee schedule published by Community Legal Services of Philadelphia (CLS) for use in fee-

shifting cases, as well as supporting declarations from independent counsel in the field. (ECF Nos. 140; 143; 142, Exh. B). In addition, the rate sought for the paraprofessional law clerks comports with that previously approved by the Third Circuit. *See Bahnsen*, *supra*, at  *9 n.1 (approving billing rate of $150 per hour for paralegals).  Based on these submissions and given the Court's familiarity with prevailing market rates for legal services in this community, the Court finds the rates sought by plaintiff's counsel reasonable."). Id. at *20-21.

Prevailing market rates in the legal community usually set the reasonable hourly rate. *AT & T Corp. v. JMC Telecom, LLC*, 2005 U.S. Dist. LEXIS 36559, 2005 WL 2086194, at *3 (D.N.J. Aug. 26, 2005) (explaining that the moving party satisfies this burden by "submitting the affidavits of other attorneys in the relevant legal community, attesting to the range of prevailing rates charged by attorneys with similar skill and experience"). Under the "forum rate rule," out-of-state attorneys are required to obtain the hourly rate "prevailing in the forum in which the litigation is lodged." *Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F. Supp. 2d 480, 493 (D.N.J. 1998)

Plaintiff's brief is reliant on wholly inapposite class action cases that involve agreed upon settlements.  For example, Plaintiff cites  to *Adam X. v. N.J. Dep't of Corr.*, 2022 U.S. Dist. LEXIS 37601 (D.N.J. Mar. 3, 2022), an unopposed motion to approve the class action settlement agreement in a civil rights class action lawsuit in which the parties agreed to the award of attorneys' fees.  "In addition, there were no objections to the Settlement Agreement or attorneys' fees [unlike the case at bar]. As such, the Court is satisfied that the requested billing rates and fee amount are reasonable." *Id*., at *33. Plaintiff's reliance on *Khona v. Subaru of Am., Inc.*, 2021 U.S. Dist. LEXIS 202153 (D.N.J. Oct. 20, 2021) and *Bing Li v. Aeterna Zentaris Inc.*, 2021 U.S. Dist. LEXIS 105757 (D.N.J. June 1, 2021) is similarly misplaced and paints an inaccurate picture of "reasonable" attorneys' fees and costs.

15

In *Khona*, another class action settlement, the Court had a limited role in reviewing the fee agreement ("When parties have reached an agreement with respect to attorney's fees, the court may award them so long as they are "reasonable." Fed. R. Civ. P. 23(h); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Further, "while the Court is not bound by the agreement between the parties, *the fact that the award was the product of arms-length negotiations," as has occurred here* [but unlike the case at bar]*, "weighs strongly in favor of approval*." *Rossi*, 2013 U.S. Dist. LEXIS 143180, at *10…Courts "routinely approve" such agreements. *Id.* at *27 (citing numerous cases). **Therefore, as a general matter in this case, the Court's role in scrutinizing the fee agreement is limited."** *Khona,* 2021 U.S. Dist. LEXIS 202153 *1-2 (emphasis added). In *Li*, also a class action settlement, the Court simply issued an order approving the proposed plan of allocation of the "Net Settlement Fund" and incorporated by reference the definitions in the Stipulation and Agreement of the Settlement. *Id* at *3.[5]

Finally, *In re Mercedes-Benz Tele Aid Contract Litig.*, 2011 U.S. Dist. LEXIS 101995 (D.N.J. Sep. 9, 2011), yet another inapposite class action litigation, the case was settled when Class counsel submitted an *uncontested* motion for an award of $6,250,000 in attorneys' fees and out-of-pocket costs which was negotiated after the Class Settlement was agreed upon. *Id*. at 17.[6] Once again, Plaintiff and Reed Smith have not carried their burden of demonstrating, by competent evidence, the reasonableness of Reed Smith's requested non-forum, hourly rates, nor have they provided the Court with sufficient evidence to perform a lodestar computation of their fees.

---

[5] The Court must award fees to the prevailing party at the requested hourly rate if, as here, the losing party submits no contradictory evidence. *See J&J Snack Foods Corp. v. Earthgrains Co.*, 2003 U.S. Dist. LEXIS 8040, 2003 WL 21051711, at *7.

[6] The cases that Defendants cite, however, did not object to the sought-after fee award, as it must do in order to successfully challenge the award. *See Interfaith Cmty. Org.*, 426 F.3d at 703. .

**B.     The District Court Should, at a Minimum, Drastically Reduce Plaintiff's Claimed Fees as their Motion for Spoliation was Unsuccessful**

Once the lodestar is calculated, "the district court is permitted to adjust fees depending on the success of the party seeking fees." *Pa. Envtl. Def. Found. v. Canon-Mcmillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Specifically, the district court may adjust the amount, which is "primarily based on the degree of success that the plaintiff obtained." *Id.*

> Where a plaintiff presents different claims for relief that are based on unrelated facts and legal theories, courts should exclude fees for time expended in unsuccessful claims. However, where much of counsel's time was devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. **[T]he most critical factor is the degree of success obtained.** In exercising its discretion in fixing the award, the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. (emphasis added).

*Field v. Haddonfield Bd. of Educ.*, 769 F. Supp. 1313, 1322 (D.N.J. 1991); *see also Holmes v. Millcreek Twp. School Dist.*, 205 F.3d 583, 595-96 (3d Cir. 2000) (awarding one-fourth of fees where plaintiff prevailed on some but not all claims).  Here, Plaintiff utterly failed in its all-important, long sought Spoliation motion brought pursuant to Rule 37(e).

This Court denied Industria's Spoliation motion, finding that Industria failed to: demonstrate any spoliation by Latinfood; prove any loss or deprivation of ESI; establish a finding of bad faith by Industria; present evidence of any crucial missing documents that Latinfood failed to produce; show that Industria was actually deprived of discovery; or that Latinfood's conduct irremediably impacted Industria's ability to try this matter on the merits ("The Court finds

Plaintiff's arguments on this issue unavailing as Industria's submission was based on a single telephonic complaint made to an affiliate of Plaintiff establishes that Defendants once possessed and destroyed similar criticism sent via email"). (Dkts. 232-233). In fact, the Court only granted Plaintiff's limited reasonable attorneys' fees and expenses due to Defendants' alleged violations of FRCP 37(c). Accordingly, Plaintiff's 2nd Fee Application should therefore be denied, or at the very least, drastically adjusted downward to be in line with the prevailing rates in New Jersey and to reflect Plaintiff's limited "success." *Supplemental Saffer Decl.*, ¶8(a).

In light of Plaintiff's failure to meet its burden, the Court should exercise its discretion to determine a reasonable hourly rate for each attorney. *Apple Corps.*, 25 F. Supp. 2d at 492 ("If the fee applicant fails to meet its initial burden or if the opposing party challenges the fee applicant's proffer, the determination of the appropriate market rate is vested within the [C]ourt's discretion."). As "[t]he fee schedule established by Community Legal Services, Inc. ("CLS") 'has been approvingly cited by the Third Circuit as being well developed and has been found … to be a fair reflection of the prevailing market rates.'" *Maldonado*, 256 F.3d at 187 (quoting *Rainey v. Philadelphia Housing Auth.*, 832 F. Supp. 127, 129 (E.D. Pa. 1993); see also *Rhodes v. Matrix Servicing, LLC*, 2020 U.S. Dist. LEXIS 177854, 2020 WL 5760455, at *5 (D.N.J. Sept. 28, 2020) (approving hourly rates based on CLS fee schedule). As the Third Circuit has approved of the court's use of the CLS fee schedule in determining a reasonable hourly rate for New Jersey attorneys' fees,  the Court should apply the CLS fee schedule https://clsphila.org/about-community-legal-services/attorney-fees)( last accessed July 15, 2022) in its determination of the hourly rates in this case. *Supplemental Saffer Decl.* at ¶16; see also, *Shelton v. Restaurant.com Inc.*, 2016 U.S. Dist. Lexis 176785, *12  (D.N.J. Dec. 21, 2016); *See also Maldonado v. Houstoun*, 256 F.3d 181, 187-88 (3d Cir. 2001).

**C.    Latinfood Cannot Evaluate the Redacted Entries in Kadosh
Declaration Which Warrants Rejecting those Entries**

A number of entries in the hourly time entries attached to the 2nd Kadosh Declaration have
been redacted ("Adjusted Time" and "Adjusted Fees") (See D.E. Nos, 246-1, 246-3 & 246-5), and
it appears that Reed Smith has reduced a portion of the total hours based on the claimed activities.
Without knowing the redacted and missing overall time, Latinfood cannot evaluate whether the
*post hoc* allocation made by Reed Smith accurately reflects the amount of taxable work done.
Because Plaintiff has now had two opportunities, one at the *sua sponte* direction of the Court, to
explain those time entries and has failed to do to so, the request for those attorney hours being
reimbursed to Plaintiff should be denied.

**D.    The Kadosh Declaration Includes Reed Smith's Excessive and
Overinflated Fees in Connection with Plaintiff's Sanctions "Motion"**

Defendants object to Reed Smith's onerous 366.5 hours as facially excessive, resulting in
claimed attorneys' fees of $254,949.77 and costs of $16,054.37 in connection with their tasks.
Specifically, Mr. Kadosh claims that Reed Smith attorneys worked a total of 176.6 hours on the
sanctions motion and billed $115,704.5 in fees (see 2nd Kadosh Decl. ¶28 and D.E. 324) which is
nearly 50% of Reed Smith's overall fees. The work was delegated among the attorneys as follows:
Mr. Raymond billed 20.5 hours, Mr. Kadosh 67.8 hours, Mr. Berman 78.6 hours, and Mr. Castillo
(Paralegal) 3 hours.[7]   At the outset, the quantum of hours sought by Reed Smith for its sanction
"Motion" is excessive.  *Supplemental Saffer* Decl., at ¶¶36-38.

---

[7] The 1st and 2nd Kadosh Declarations repeatedly stated that for all the sanctioned tasks "[a]ll paralegal time for
these tasks were written off."  See 2nd Kadosh Decl., D.E. 324 at ¶¶ 17, 22, 25 & 28.

A careful and thorough review of Plaintiff's billing records plainly discloses that the overall amount billed is excessive and unreasonable. For instance, Reed Smith included fees associated with its failed spoliation motion which should be disregarded and also included fees for a "spoliation and sanction" motion which does not include any breakdown of how much time was spent on either and should also be disregarded.[8] Inexplicably, Plaintiff argued that "[v]ery little in Industria's motion for sanctions would have changed had Industria decided not to make the spoliation argument in the first place.  In any event, Industria's spoliation argument is not so distinct from its successful argument for discovery sanctions that the Court need exclude such hours."

This argument fails for the following reason.  Here, Plaintiff spent years of litigation pursuing a spoliation motion where no spoliation was found to exist and which baseless pursuit even stunned Magistrate Hammer . Dkt. No. 197.

> THE COURT:  Frankly, it left me scratching my head. I didn't know if you wanted still to make a spoliation motion. Although given that the hard drive actually is intact, I'm not sure what the basis for spoliation would be, I didn't know if it was a Rule 37 Sanctions motion. *(Id.,* Tr. 9:3-8).
>
> THE COURT: But what I just heard there though was a basis -- what I just heard was a basis for a sanctions motion. I still haven't heard a basis for a spoliation motion. (Id., Tr. 12: 19-22).  In light or the looming sanctions motion, still not quite sure I get the spoliation motion, but -- but I'll allow that perhaps there's some theory under Rule 37 that I haven't thought of that plaintiff did. *(Id.,* Tr. 14:7-11).

---

[8]The Court must "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Maldonado*, 256 F.3d at 184. The Court will exclude any hours that "were not reasonably expended" from the fee calculation. *Hensley*, 461 U.S. at 434. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Rode*, 892 F.2d at 1183. To determine whether the hours expended in this matter are reasonable, "it *is* necessary that the Court 'go line, by line, by line' through the billing records supporting the fee request." *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001).

Upon review of Plaintiff's Spoliation and Sanctions brief (Dkt. No. 207-1), the majority of which sought spoliation relief, the Court denied all spoliation relief and only granted Plaintiff limited relief for Defendants' alleged discovery abuse. Dkt. Nos. 232-233. Nevertheless, and despite Plaintiff's claim that the spoliation and sanctions motions are intertwined and cannot be separated (Dkt. No. 324-8 at 14), **the fact is they are separable and identifiable and Plaintiff should not be rewarded with fees and costs on an issue the Court rightfully denied**. Plaintiff intentionally chose to conflate the two distinct and separable issue and should not financially benefit from their deliberate fee enhancements and should be awarded a lower amount, if any, predicated on the Courts instructions.  See *Supplemental Saffer* Decl., ¶36-38.

In *Microsoft Corp. v. United Computer Res. of N.J., Inc.*, 216 F. Supp. 2d 383, 386 (D.N.J. 2002), the Court held that excessive, redundant and unnecessary attorneys' fees, "if not checked by the exercise of billing judgment or, in this case, this Court's inherent powers, will be borne unjustly by someone, be that a losing adversary, [or] a client. . . . The duty imposed by the Rules of Professional Conduct to represent a client zealously does not create a license to write a blank check for excessive legal fees." These excessive and overinflated time entries, especially in the category of Plaintiff's sanction motion should be excluded, or appropriately reduced, from any award of fees.

###### E.    The Kadosh and Flynn Declarations Ignore Numerous Deficiencies Noted by Saffer in His Initial July 18, 2022 Decl.; and Includes Vague and Ambiguous Entries

Plaintiff bears the burden of showing that the work performed falls within a recoverable category of fees and costs. The two Kadosh Declarations and the Flynn Declaration all completely ignore the following deficiencies noted by Mr. Saffer in his previous declaration:

   a.     Mr. Kadosh does not address, let alone deny, my prior observation that Reed Smith is seeking a charge for 4.5 attorney

hours for the October 15, 2020 Zuluaga deposition when the court reporter's transcript confirms that the deposition only lasted 2.5 hours.  1ˢᵗ *Saffer* Decl., ¶21.

b.  Mr. Kadosh does not address, let alone deny, that certain time entries are contrary to the Order that allowed an application to be made for fees and costs "preparing for and conducting Defendant Wilson Zuluaga's October 2020 deposition".  The time entry by Mr. Raymond on May 22, 2020 for 1.60 hours references, among other things, his review of Defendants' counsel's response to Mr. Raymond's email and his drafting an email to Juan Felipe.  Mr. Kadosh's time entry of October 19, 2020 for 1.70 hours to email a summary of the Zuluaga deposition postdates the deposition and is not compensable under the Order.  Similarly, Mr. Kadosh's time entry of October 22, 2020 for .20 hours sending emails following the Zuluaga deposition does not involve "preparing for and conducting the Zuluaga deposition" as required by the Order.  1ˢᵗ Saffer Decl., ¶25.

c.  Mr. Kadosh does not address, let alone deny, that Reed Smith utilized unnecessarily costly attorneys on the matter to perform associate level or paralegal tasks.  On October 8, 2020, Mr. Berman, a 4-year associate, spent 1.00 hour drafting a deposition notice and scheduled the "deposition with Veritext [the court reporting agency]".  These tasks are administrative in nature and are typically delegated to a paralegal or litigation secretary rather than to a 4-year litigation associate who bills his time at $535.00 per hour.  1ˢᵗ Saffer Decl., ¶26.

Because Mr. Kadosh (and Mr. Flynn) both had a full opportunity to explain and refute these observations in their current  declarations, yet decided not to do so, Reed Smith should be deemed to have not contested those observations.  Id. at ¶28.

In addition, a significant number of time entries in both Kadosh Declarations are vague and ambiguous.  For example, on February 10, 2020, an entry for timekeeper Kadosh allocated 1.0 hours for "Planning regarding Latinfood hard drive."  D.E. 246-3 at 11. Similar entries are found

on February 13, 2020 ("Emails regarding Latinfood hard drive") and February 14, 2020 ("Calls regarding Latinfood hard drive) (D.E. 246-3), for which recovery is sought in its entirety. See also, 1st Saffer Decl. at ¶40.  Courts in this District have long held that  time entries such as "Letter to Client," "Meeting with Client," and "Call to Client" are too vague. See *EEOC v. UPS*, 2009 U.S. Dist. LEXIS 91241, **14-15 (D.N.J. Sept. 30, 2009), wherein the District Court specifically found that entries such as "Tel w/ client" and "Conf. w/ client" were too vague for a fee award. Specifically, the District Court rejected the prevailing party's argument that more description could not be provided without breaching the attorney-client privilege and held that a party "must also identify the general subject matter of the communication at issue" for a claim of privilege to apply. *Id*. at *14 (citing *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1208-09 (D.N.J. 1996)).

Here, it is clear that the majority of  entries in the exhibits to the Kadosh Declarations setting forth internal "email with team" and "conference with team" are vague time entries regarding the subject matter of the communication and also account for significant fees. Additionally, Reed Smith has not provided sufficient detail to invoke the attorney-client privilege. Therefore, based on the record before the Court, Your Honor should deny a fee award based on these entries. *Warner v. Twp. of S. Harrison*, 2013 U.S. Dist. LEXIS 90411 (D.N.J. June 27, 2013).

These are but a few of many examples. Such vague and ambiguous entries preclude an ability to determine if the work performed falls within a permissible category.  Moreover, vague, and ambiguous entries preclude the ability to determine whether the amount of work performed was reasonable and necessary.

Paragraph 47 and Exhibit E to the *Supplemental Saffer Decl.* identify the entries Latinfood contests as vague and ambiguous.  These entries should be excluded from an award of fees and costs.

F.    **The Kadosh Declaration Includes Irrelevant And Excessive Fees Associated With Unrelated Discovery Disputes and Client Communications**

A number of time entries in the 2nd Kadosh Decl. should be excluded as they are at least partially directed to irrelevant discovery disputes.  For example, although Judge Hammer specifically ordered that Plaintiff may only seek fees and costs it incurred for "(ii) preparing for and conducting **Defendant Wilson Zuluaga's October 2020 deposition**;" the 2nd Kadosh Decl. is claiming 14.6 hours in their time entries for the preparation and taking the **December 18, 2019 deposition of Defendant, Wilson Zuluaga**. (D.E. 246-5).

Reed Smith, in attempting to justify its exorbitant attorney fees for the Court ordered October 2020 deposition of Mr. Zuluaga, incredulously argues for fees associated with  the "preparation for this deposition was particularly complex and time consuming because it involved reviewing and analyzing Mr. Zuluaga's two prior depositions and to compare that testimony to the information provided by Mr. Ingber and by Fronteo concerning the hard drive." This is disingenuous as Mr. Zuluaga's prior testimonies were well known to Industria.  Moreover, only Mr. Zuluaga's first deposition dated February 22, 2018 addressed the Fronteo drive and that was the genesis for Plaintiff's failed years-long pursuit of spoliation. Additionally, Mr. Zuluaga's two  prior testimonies were neither  "complex" or time-consuming as evidence by the record. See *Supplemental Saffer Decl*., ¶¶32-33.

The inclusion of fees for the review of Mr. Zuluaga's two prior depositions had nothing to do with what Plaintiff was tasked to do, namely take Mr. Zuluaga's deposition based on the contents of the document production from the Fronteo drive. Also, Plaintiff's claim that "Defendants raise issue with Mr. Kadosh and Mr. Berman billing 4.5 hours and 3.2 hours respectively on the day of the October 2020 deposition, because the deposition only lasted 2.5 hours. Opp. at 16; 1st *Saffer* Decl. ¶ 21. Industria's attorneys spent a few hours before the deposition

to prepare themselves as would be expected prior to a key (or, indeed, any) deposition witness" lacks credulity and is contradicted by their own Exhibit 1 (Dkt. No. 324-1). See excerpt from Dkt. No. 324-1 below:

| Work Date | Tkpr Name | Invoice Num | Hours | Billed Amount | Adjusted | Adjusted Fee | Narrative |
|---|---|---|---|---|---|---|---|
| 10/15/2020 | Berman Jeremy A | 3338486 | 3.20 | $535.00 | | | Virtually attend Wilson Zuluaga Deposition |
| 10/15/2020 | Kadosh Samuel | 3338486 | 4.50 | $3,420.00 | | | Take Zuluaga Deposition |

Paragraphs 23-31, and Exhibit F to the *Supplemental Saffer Decl.* identifies the entries Latinfood contests as excessive fees. These entries should also be excluded from an award of fees and costs.

Furthermore, the Order only allowed Plaintiff to recover its fees and costs for "obtaining a direct document production for Cibao, and in comparing Cibao's direct production to Defendants' indirect production." Order, at 2. Plaintiff had, however, already obtained Mr. Zuluaga's complete Cibao production long prior to Cibao's Jaline Isidor's March 7, 2019 deposition. Accordingly, **Mr. Zuluaga's December 18, 2019 deposition** and the cost and fees for Reed Smith in preparing for same is not a recoverable sanction according to the Order. Moreover, **Mr. Zuluaga's 2019 Deposition** had nothing to do with the sanctioned relief. Accordingly, all entries referencing that deposition should be excised by the Court.

Reed Smith also seeks fees for time spent five (5) months prior to Defendant Wilson Zuluaga's October 2020 deposition. Specifically, Mr. Kadosh seeks to include Reed Smith's time entries for May 22, 2020, May 26, 2020, and May 27, 2020 for reviewing emails, letters, and strategizing. These time entries, however, have no relation in time to the specific sanction cited in

25

the Order.  In fact, from the remaining time entries, it is evident that Reed Smith only began their preparation for Mr. Zuluaga's October 2020 deposition in earnest on September 23, 2020.  See 1st Saffer Decl., ¶¶25-26.

Additionally, Reed Smith's timekeeper, junior associate Jeremy Berman, overbilled by claiming 3.2 hours to "virtually attend Wilson Zuluaga Deposition" and timekeeper Kadosh overbilled **charging 4.5 hours to "Take Zuluaga deposition."** (D.E. 246-1, p. 2), even though the Court Reporter's transcript confirms that Defendant Zuluaga's entire October 15, 2020 deposition **took only 2.5 hours**.[9]  Moreover, as a non-participant in the deposition, Mr. Berman's time should be disregarded because the attendance of additional counsel representing the same interests as the attorney actually conducting the deposition "is wasteful and should not be included in a request for counsel fees from an adversary." *Halderman by Halderman v. Penhurst State Sch. & Hosp.*, 49 F.3d 939, 943 (3d Cir. 1995); *Schofield v. Trustees of the Univ. Of Penn.*, 919 F. Supp. 821, 829 (E.D. Pa. 1996).

Lastly, Plaintiff's billing records reflect excessive inter- and intra-firm communications. In particular, Reed Smith's attorneys billed for informal meetings and discussions amongst themselves, and each attorney billed separately for many of the same discussions, thereby exponentially increasing Plaintiff's attorneys' fees. In addition, Reed Smith improperly included entries for e-mail correspondence with Industria's Colombian counsel on every matter. Dkt. No. 250-1, 1st *Saffer* Decl. at ¶¶ 3(a) and (e), 30.

Paragraph 34, 39 and Exhibit F to the *Supplemental Saffer Decl.* identifies the entries that are directed to Plaintiff's irrelevant and excessive, claimed fees associated with discovery disputes

---

[9]Attached as Exhibit B to the Ingber Declaration are the relevant pages from Defendant Zuluaga's October 15, 2020 timestamped transcript.

and client communications.  These entries should be excluded, or appropriately reduced, from an award of fees and costs.

### G.    Reed Smith's Entries Include Numerous Instances of Inefficiencies and Duplication of Effort

A number of entries show duplication of effort concerning matters that could have been managed more efficiently. Work performed inefficiently should not be taxed against Defendants. *Maldonado v. Houstoun*, 256 F.3d 181, 185 (3d Cir. 2001) (noting that the "principal concern is whether the time claimed is reasonable for the services performed, a concern which is accentuated because of the many lawyers involved in behalf of the plaintiffs."); *see also Halderman by Halderman*, *supra*, at 944 (granting adversary's request for a fifty-percent reduction in the principal attorney's number of hours spent in preparation of the proposed findings of fact based on duplication of efforts).

Representative examples of inefficiencies and duplications in Reed Smith's entries include 31.9 hours by two attorneys, junior associate Jeremy Berman (25.2 hours), with a billing rate of $535/hr., and Samuel Kadosh (5.20), with a billable rate of $760/hr., for the preparation of the reply to sanctions motion in 2020 (D.E. 246-7). Peter Raymond, with a billing rate of $995/hour, added 20.5 hours, a majority of which went to "review and revise" the motion papers. *Id*. Kadosh had an additional 26.7 hours (at an increased billing rate of $810/hr.) revising the 2020 reply brief in 2021. *Id.* In total, Reed Smith attorneys billed 58.6 hours for a reply brief which by any stretch is excessive notwithstanding Affiant's claim that Reed Smith had to revise their reply brief because "Defendants changed the arguments in their opposition brief." 1st Kadosh Decl., D.E. 246, at ¶25. Further, Mr. Kadosh, as counsel, with 13 years of "extensive experience with intellectual property disputes" (2nd Kadosh Decl. ¶7) should not have been tasked with drafting and revising the 2020 Reply Brief in 2021.

The Third Circuit has repeatedly cautioned against "the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983). Also, the practice of primarily utilizing senior attorneys for drafting and reviewing briefs, lends itself to a dramatic increase in hours and redundancy. *Shelton v. Restaurant.com Inc.*, 2016 U.S. Dist. Lexis 176785, *12 (D.N.J. Dec. 21, 2016).

In *Menold*, the Court found excessive hours billed for simple tasks and that an associate or paralegal could have performed some of the work rather than three attorneys billing at high rates. 2022 U.S. Dist. LEXIS 20397 *11.

Astonishingly, 37.6 hours of the 104.5 hours (36%) Reed Smith billed for "obtaining a neutral forensic examination of the Fronteo Drive and analyzing the contents of the Fronteo Report" (D.E. 233 at 2), belongs to Peter Raymond ($995/hour). (D.E.246 at ¶6). Mr. Raymond entries are replete with inordinate, inefficient, and unnecessary amounts of daily time entries dedicated to "office conferences with team" and "emails with team." D.E. 246-3, 1st Saffer Decl., ¶30. Additionally, "a claim by a lawyer for maximum rates for telephone calls with a client, legal research, a letter concerning a discovery request, the drafting of a brief, and trial time in court is neither fair nor reasonable. Many of these tasks are effectively performed by administrative assistants, paralegals, or secretaries, and to claim the same high reimbursement rate for the wide range of tasks performed is unreasonable." *Young,* 269 F. Supp. 3d at 278.

Paragraph 48 and Exhibit H of the *Supplemental Saffer Decl*. identifies the entries Latinfood believes to be directed to duplicative or inefficient activities. These entries should be excluded, or appropriately reduced, from an award of fees and costs.

### H.     Reed Smith's Entries Include Administrative Tasks

A number of entries in the Kadosh Declarations are directed to tasks that are purely administrative in nature but were billed at a paralegal, IT, or attorney rate. "Purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Young*, 269 F. Supp. 3d at 278), quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n. 10 (1989). "It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available." *Id.* Such non-legal work may command a lesser rate or may be eliminated altogether. *Id.*

Notwithstanding the above, Samuel Kadosh of Reed Smith erroneously claims in his Declaration that Reed Smith is not seeking the reimbursement of any paralegal time associated with their attorneys' fees application because they were "written off" - "All paralegal time for these tasks was written off" (2nd Kadosh Decl., D.E. 324, ¶¶ 4, 22, 25 & 28). Despite this attestation, Mr. Kadosh is in fact seeking reimbursement for paralegal tasks. See Plt's Exhs. 7 - Sanctions - These paralegal tasks fall in the realm of administrative costs.

Examples of administrative acts in Reed Smith's entries include a December 10, 2020 entry for Jose A. Castillo, Jr. (paralegal) directed to, among other things, the filing of the reply brief; and a December 5, 2021 entry for compiling notice of motion for sanctions in anticipation for filing. D.E. 246-7 at 47, 55

Also, Plaintiff shockingly seeks to recoup as a sanction the time expended by Elias Mantzopoulos, a non-attorney, IT administrative staff at Reed Smith with an attorney-like billable rate of $445/hour, who billed for administrative tasks that include "[c]opy to network and upload to our Relativity database opposing counsel production" on 2/25/20 and 2/26/60 for a total of 1.5

hours each day who also would "[d]ownload Defendant production document from the Fronteo file site and upload to our database for case team review as per Jeremy Berman" on 9/4/20, taking 2 hours to do so.

Paragraphs 31, 39, 49 and Exhibit G to the *Supplemental Saffer Decl.* identifies other entries Latinfood believes to be directed to administrative tasks. These entries should be excluded, or appropriately reduced, from an award of fees and costs.

### I.     The Kadosh Declarations Contain Certain Expenses That Should Be Denied.

Regarding the Fronteo Report which the parties received on May 15, 2022, the Court's May 26, 2022 Order specifically limits Plaintiff to recover fees for "obtaining a neutral forensic examination of the Fronteo Drive and ***analyzing the contents of the Fronteo Report.*** " *Supplemental Saffer Decl*. ¶40-43. According to Exhibit 3 – Fronteo Report (Dkt. No. 324-3) to the 2nd Kadosh Decl., Reed Smith completed such analysis on or about May 18, 2020. *Supplemental Saffer Decl*. ¶40-43.

The Kadosh Declarations, however, went far beyond the scope of the Court's limited Order by improperly claiming post May 18, 2020 fees and costs not associated with the analysis of the Fronteo Report. *Supplemental Saffer Decl*. ¶42. Specifically, Mr. Kadosh included, among other things, non-compensable fees incurred for the review of the document production that was provided months later in September and October of 2020 which had nothing to do with the analysis of the Fronteo Report for which they were tasked.

This subsequent document review was not contemplated by the Order and Plaintiff, based on its own analysis, confirmed in a **later** submission to the Court that the Fronteo Report had "shocking results." See Plaintiff's June 9, 2020 letter to the Court (Dkt. No. 193). Therefore, Plaintiff is not entitled to any relief subsequent to their analysis on the Fronteo Report, which

according to Exhibit 3 – Fronteo Report (Dkt. No. 324-3) to the 2nd Kadosh Decl., culminated at the latest on or about May 18, 2020 with the  time entries of Peter Raymond, Samuel Kadosh and Jeremy Berman who collectively spent @ 8.8 hours on reviewing the Fronteo Report. All other time entries subsequent to May 18, 2020 totaling $20,402.06 is excessive in nature and should be rejected by the Court. *Supplemental Saffer Decl*. ¶45.

Judge Hammer also specifically Ordered that Plaintiff may only seek fees and costs it incurred for "obtaining a direct document production from Cibao, and in comparing Cibao's direct production to Defendants' indirect production;" yet Plaintiff is improperly seeking costs pertaining **the December 18, 2019** deposition of Defendant, Wilson Zuluaga. (D.E. 246-5 at 3). Reed Smith is also improperly claiming its court reporter's expenses associated with the deposition of Jaline Isidor on **March 7, 2019**  (D.E. 246-6, p.2, $1,449.50)[10] and the video deposition Defendant Wilson Zuluaga on **December 18, 2019** (D.E. 232-6, p.3-4, $5,981.90). As Plaintiff already had Defendants' Cibao document production and Cibao's production in response to Plaintiff's subpoena in their possession prior to the Jaline Isidor's March 7, 2019 Deposition, [Cibao's entire production was subsequently supplemented by April 3, 2019],  there is no basis for Reed Smith including the subsequent deposition costs associated with **Defendant Zuluaga's December 18, 2019** deposition. Accordingly, all entries referencing said deposition should be excised by Your Honor.

---

[10]The "realtime" video deposition was a construct of Reed Smith to accommodate their Colombian clients and should be their burden alone to bear.

Reed Smith is also improperly claiming the court reporter's video costs associated with the deposition of Defendant Wilson Zuluaga on October 15, 2020. as part of their request for fees and cost associated with "preparing for and conducting Defendant Wilson Zuluaga's October 2020 deposition." See, D.E. 246-2, p. 2-3. There is no basis for Reed Smith including this $738.00 cost because the video deposition is identified as being at the behest of and benefit for Plaintiff's Colombian client and their Colombian counsel.

### III.   THE INTERESTS OF JUSTICE REQUIRE THE COURT TO EXERCISE ITS' EQUITABLE POWERS AND   OFFSET FROM ANY FEE AWARDED TO PLAINTIFF, DEFENDANTS' ATTORNEYS' FEES IN HAVING TO MAKE A SECOND OPPOSITION SUBMISSION, WHICH WAS   DUE SOLELY TO INDUSTRIA'S INITIAL DEFICIENT FEE APPLICATION

The interests of justice require the Court to exercise its' equitable powers and offset from any fee award to Plaintiff, all  attorneys' fees by the undersigned and Mr. Saffer in making a supplemental fee opposition submission, which was  due solely to Industria's initial and deficient fee application.

In *Hall v. Cole*, 412 U.S. 1943, *7 (1973), the Supreme Court held that "[a]lthough the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require.  Indeed, the power to award such fees "is part of the original authority of the chancellor to do equity in a particular situation," *Sprague* v. *Ticonic National Bank*, 307 U.S. 161, 166 (1939), and federal courts do not hesitate to exercise this inherent equitable power whenever "overriding considerations indicate the need for such a recovery." *Mills* v. *Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970); see *Fleischmann Distilling Corp.* v. *Maier Brewing Co.*, 386 U.S. 714, 718 (1967).

See also, *Stokes v. Lecce*, 384 F. Supp. 1039, 1049 (E.D. Pa. Nov. 11, 1974)**;** 35B C.J.S. Federal Civil Procedure § 1387 35B C.J.S. Federal Civil Procedure § 1388 ("The decision to award attorney's fees in a particular case is discretionary and rests in the sound discretion of the federal district court due to its unique understanding of and exposure to proceedings before it.  The scope of the discretion in awarding attorney's fees is broad or wide but not unlimited.  The court's great latitude in formulating an attorney's fees award is subject to the necessity of explaining its reasoning").  After Plaintiff's failed and deficient initial fee application, the Court, in its July 27, 2022 Order (Dkt. 253), determined it to be "in the interest of fairness, and in the discretion of the Court" to grant Plaintiff "*one final opportunity* to make an appropriate submission that, among other things, addresses more complete the lodestar analysis." Similarly, in the interest of fairness, the Court should exercise its' equitable powers and offset from any fee award to Plaintiff, all  attorneys' fees and costs expended by the undersigned and Mr. Saffer in making a supplemental fee opposition submission, which was  due solely to Industria's initial and deficient fee application.[11] See also, *Supplemental Saffer Decl*. ¶49.

---

[11]Out of an abundance of caution, the same arguments submitted herein in support of a fee offset are included in a separate letter brief in support of a separate motion filed concurrently.

## IV.  **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion as unsupported. At the very least, the Court should drastically reduce and offset Reed Smith's requested award for attorneys' fees and costs expended by the undersigned and Mr. Saffer in making a supplemental fee opposition submission, which was  due solely to Industria's initial and deficient fee application.

Dated: Livingston, New Jersey     Respectfully submitted,

   December 27, 2023    THE INGBER LAW FIRM
               /s/ Mark J. Ingber

               Mark J. Ingber, Esq.
               30 W. Mt. Pleasant Ave, Suite 203
               Livingston, NJ 07078
               (973) 921-0080
               ingber.lawfirm@gmail.com