Mark J. Ingber, Esq.
THE INGBER LAW FIRM
30 W. Mt. Pleasant Ave,
Ste. 203
Tel: (973) 921-0080
ingber.lawfirm@gmail.com
*Attorney for Defendants/ Counter Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDUSTRIA DE ALIMENTOS ZENÚ S.A.S., Plaintiff, v. LATINFOOD U.S. CORP. d/b/a ZENÚ PRODUCTS CO. and WILSON ZULUAGA, Defendants/Counter Plaintiff, <br><br> LATINFOOD U.S. CORP. d/b/a ZENÚ PRODUCTS CO., Defendants/Counter Plaintiff v. INDUSTRIA DE ALIMENTOS ZENÚ S.A.S and CORDIALSA USA, INC. Counter Defendants. | Civil Action No: 2:16-CV-06576 <br><br> **SUPPLEMENTAL DECLARATION OF MICHAEL A. SAFFER, ESQ. IN FURTHER OPPOSITION TO DEFENDANTS/COUNTER PLAINTIFF'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES** |

I, **MICHAEL A. SAFFER**, make this declaration pursuant to 28 U.S.C. § 1746. I hereby state as follows:

1. I am an attorney-at-law of the States of New Jersey and New York, and am also admitted to practice before the United States Courts for the District of New Jersey, the Southern District and Eastern District of New York and the United States Court of Appeals for the Third Circuit. I am a senior partner in the law firm of Mandelbaum Barrett P.C.

("**Mandelbaum**") and I possess personal knowledge of all facts set forth herein unless otherwise stated.

2. I submit this supplemental Declaration, and I incorporate herein by reference my previously filed Declaration in this matter, to address the October 20, 2023 application by Reed Smith LLP ("**Reed Smith**"), Plaintiff's counsel, for an award of very substantial attorneys' fees and costs ("**Plaintiff's 2nd Fee Application**") in connection with decretal paragraph 4 of the May 26, 2022 Order entered in this action [D.E. 233] (the "**Order**"), a true and complete copy of which is annexed hereto as **Exhibit A**.

3. The July 27, 2022 Order (D.E. 233) held Plaintiff liable for four violations of Federal Rule of Civil Procedure 37(c) and held that:

> Plaintiff may seek fees and costs it incurred in (i) obtaining a neutral forensic examination of the Fronteo Drive and analyzing the contents of the Fronteo Report; (ii) preparing for and conducting Defendant Wilson Zuluaga's October 2020 deposition; (iii) obtaining a direct document production from Cibao, and in comparing Cibao's direct production to Defendants' indirect production; and (iv) bringing its motion for sanctions.

4. By way of background, in response to the Order, Reed Smith initially filed a June 27, 2022 Declaration of Samuel Kadosh, Esq. ("**1st Kadosh Decl.**") with exhibits annexed thereto in support of its application for an award of $254,949.77 in attorneys' fees and $16,054.37 in expenses ("**Plaintiff's 1st Fee Application**"). In response to Plaintiff's 1st Fee Application, on July 18, 2022, I submitted my Declaration addressing what I believe were serious deficiencies in the Plaintiff's 1st Fee Application that caused me to conclude that Reed Smith was entitled to, at best, an award of $99,606.95 in attorneys' fees. In that Declaration, I set forth my credentials and *Curriculum Vitae*, ¶¶ 5-11, (another copy of which is annexed hereto as **Exhibit B**) so I will not repeat them here.

2

5. On July 27, 2022, the Honorable Michael A. Hammer, U.S. Magistrate Judge, entered an Order [D.E. 253] finding Plaintiff's 1st Fee Application to be deficient ("Plaintiff's submission does little to assist the court in conduct the lodestar analysis . . . Plaintiff's application . . . frustrate(s) this court's ability to conduct the necessary lodestar analysis", and affording "Plaintiff one final opportunity to make an appropriate submission that, among other things, addresses more completely the lodestar analysis". July 27 Order, fn. 1.

6. Plaintiff's 2nd Fee Application consists of another Declaration of Samuel Kadosh, Esq. with Exhibits (the "**Kadosh 2nd Decl.**"), nearly identical to his prior Declaration, a Declaration of James P. Flynn, Esq. (the "**Flynn Decl.**"), and a Memorandum of Law.

7. In preparing this supplemental Declaration, I carefully reviewed and analyzed Plaintiff's 2nd Fee Application, considered recent updates by the applicable authorities governing the determination of market rates for the work for which Reed Smith seeks compensation, and reviewed and analyzed legal precedents that have issued since the submission of my initial Declaration on the relevant issues herein.

8. Having reviewed these new materials and based upon the materials I reviewed in connection with my prior Declaration, it remains my opinion, within a reasonable degree of professional certainty, that significant portions of the fees and costs sought in Plaintiff's 2nd Fee Application should be either completely rejected or significantly reduced because:

    a. Reed Smith's attorneys' hourly billing rates are not consistent with the prevailing rate in the community for similar-situated lawyers and are not based on average market rates;

    b. certain tasks for which Reed Smith seeks an award of fees are plainly outside the task specified in the Order to be compensable;

3

   c. certain tasks took an excessive time to perform;

   d. certain tasks involved unnecessary, duplicative work;

   e. certain intra-firm communications were excessive; and

   f. certain tasks were administrative in nature and were performed by costly counsel when they should have been performed by less expensive counsel.

9. Since the submission of Plaintiff's 2nd Fee Application, I have also reviewed again and reconsidered Reed Smith's application for an award of attorneys' fees and costs relating to its analysis of the Fronteo Report. As explained below, Reed Smith seeks reimbursement for tasks relating to the Fronteo Report that exceed the scope of tasks permitted for reimbursement pursuant to the Order. Accordingly, it is my opinion, within a reasonable degree of professional certainty, that, at most, Plaintiff's counsel is entitled to an award of $79,204.89 in attorneys' fees.

### A. The Hourly Rates that Reed Smith Charged are not Reasonable Under The Circumstances

10. The hourly rates for Plaintiff's counsel's personnel for whom Reed Smith seeks reimbursement of attorneys' fees and costs are as follows:

| Name | Title | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|
| Raymond, Peter (43 yrs exp.) | Partner | $ 995.00 | $ 995.00 | $ 995.00 | $ 995.00 |
| Kadosh, Samuel (13 yrs exp.) | Counsel | $ 710.00 | $ 760.00 | $ 760.00 | $ 810.00 |
| Berman, Jeremy A. (4 yrs. Exp.) | Associate | $ 440.00 | $ 480.00 | $ 535.00 | $ 590.00 |
| Castillo Jr., Jose A. | Sr. Paralegal | $ 170.00 | $ 185.00 | $ 200.00 | $ 215.00 |
| Mantzopoulos, Elias | Legal Tech | $ 380.00 | $ 415.00 | $ 445.00 | |

*See*, Kadosh 2nd Decl., ¶11.

4

11. In my initial Declaration, I opined that the hourly rates for which Reed Smith seek an award were not consistent with the reasonable hourly rates for attorneys in this District who perform like-work. In response, Mr. Flynn first took issue in his Declaration with my prior reliance on the survey, effective July 1, 2018, that was published by the Community Legal Services, Inc. ("**CLS**") setting forth the range of attorney, law student, Paralegal I and II, and Senior and Supervisory Paralegal rates in this area based on the experience of the particular professional. His criticism centered on the fact that my opinion in my prior Declaration utilized CLS rates effective July 1, 2018; that the Third Circuit does not endorse the use of CLS in evaluating reasonable hourly rates for attorneys in this Circuit; and that I should have utilized the 2022 Wolters Kluwer Real Rate Report (the "**Real Rate Report**") in determining reasonable attorney hourly rates for Reed Smith attorneys. I will address those criticisms, all of which I vigorously disagree, *seriatim*.

*The Utilization of the CLS Rates*

12. Mr. Flynn opines that he knows of no reported decision where a Court in our Circuit used CLS "rates to apply for a fee award in an intellectual property case . . . ." *Flynn* Decl., ¶10. I disagree with that opinion for two reasons. First, it is my opinion, within a reasonable degree of professional certainty, that there is no material difference between attorney hourly rates for an attorney working on an intellectual property matter and the hourly rates for an attorney working on what Mr. Flynn deems to be a complex litigation matter. *Flynn* Decl., ¶¶15, 16, 18, 19. Second, although Plaintiff's Memorandum of Law cites to a non-binding decision in our Circuit that applied the Real Rate Report hourly rates in connection with a fee application, Db 17, Plaintiffs ignore the **abundant** legal precedents in

5

our Circuit that have utilized the CLS rates for determining reasonable hourly attorneys' fees in our Circuit.

13. Although I will leave it to Defendants' counsel to present the legal argument on this point in his Memorandum of Law, as recently as four months ago, this Court recognized CLS rates as a benchmark for determining the reasonableness of hourly attorneys' fees in this District. *See, Ocasio v. Cnty. of Hudson*, 2023 U.S. Dist. LEXIS 137618, *6 n.2 (D.N.J. Aug. 8, 2023, where the Court noted, with specificity, that "**[w]hile the CLS fee schedule is predominantly related to the Philadelphia market, courts in the Newark vicinage of the District of New Jersey have considered it as a benchmark as well**". (Emphasis added). *See also, e.g., MCO & EA LLC v. Silver Globe Inc.*, No. CV 20-17100, 2023 U.S. Dist. LEXIS 85268, 2023 WL 3478466, at *4 (D.N.J. May 15, 2023) (Chesler, J.)"("These rates are reasonable. Courts in the Third Circuit often use the rates set by Community Legal Services in Philadelphia as a benchmark for reasonable hourly rates within the geographic bounds of the Circuit).

14. I further note that Reed Smith's Memorandum of Law chided me for using the CLS hourly rates because, it claims, "the rates for Philadelphia attorneys are of little value in this case . . . ." Pb 17. Yet, the Real Rate Report that Mr. Flynn relied upon is, as Mr. Flynn acknowledges, based on "the median rate for commercial litigation at firms of 1,000 or more lawyers in **Philadelphia, PA** . . . ." *Flynn* Decl., ¶12. This fact further supports my opinion that the far better standard for this Court to utilize in determining a reasonable hourly rate for Reed Smith's attorneys is, for the additional reasons set forth below, the CLS rates effective July 1, 2018.

6

*The Reasonableness of the CLS Rates*

15. Mr. Flynn also criticized the fact that the CLS rates I utilized in my initial Declaration are five years old (while recognizing in a footnote in his Declaration that the CLS have been updated). *Flynn* Decl., ¶8, fn.1. In fact, at the time that I submitted my initial Declaration on July 18, 2022, the only rates that were effective for CLS were those effective July 1, 2018. As Mr. Flynn noted, CLS has updated its range of hourly rates for attorneys effective January 19, 2023 as follows:

RANGE OF HOURLY RATES, Effective January 23, 2023

| | |
|---|---|
| Attorneys post-law school experience | $235-260 |
| Attorneys 2-5 year's experience | $265-315 |
| Attorneys 6-10 year's experience | $320-415 |
| Attorneys 11-15 year's experience | $420-525 |
| Attorneys 16-20 year's experience | $535-625 |
| Attorneys 21-25 year's experience | $630-715 |
| Attorneys more than 25 year's | $735-850 |
| Law Students | $140-190 |
| Paralegal 1-10 years [sic] experience | $190-240 |
| Senior and Supervisory Paralegal | $245-285 |

16. I am including these updated rates for the Court's information but, in my opinion, these updated CLS rates are not instructive in resolving the within dispute on fees and costs because the tasks for which Reed Smith seeks reimbursement were performed much closer to the time period reflected in the CLS hourly rates that were effective July 1, 2018 rather than those reflected in the CLS hourly rates that are effective January 19, 2023 (the CLS hourly rates effective July 1, 2018 were set forth in ¶16 of my prior Declaration).

17. For instance, the tasks alleged in connection with the Zuluaga deposition, referred to in ¶¶16-18 of the Kadosh 2nd Decl. and in Exhibit 1 to that document, detail tasks

7

that occurred from May 22, 2020 to October 22, 2020, which date range is much closer in time to the 2018 CLS hourly rates than to the 2023 CLS hourly rates.

18. In the same vein, the tasks alleged in connection with the Fronteo report, referred to in ¶¶20-22 of the Kadosh 2nd Decl. and in Exhibit 3 to that document, detail tasks that occurred from January 14, 2020 to October 9, 2020, which date range is much closer in time to the 2018 CLS hourly rates than to the 2023 CLS hourly rates.

19. Similarly, the tasks alleged in connection with Cibao, referred to in ¶¶24-25 of the Kadosh 2nd Decl. and in Exhibit 5 to that document, detail tasks that occurred from February 26, 2018 to December 18, 2020, which date range is much closer in time to the 2018 CLS hourly rates than to the 2023 CLS hourly rates.

20. In this regard, Mr. Flynn never explains why attorney rates effective in 2022 that he utilizes in connection with the Real Rate Report should apply to work performed by Reed Smith attorneys between February 26, 2018 to October 22, 2020.

21. For these reasons and for those reasons I expressed in my prior Declaration, I continue to believe that the following Reed Smith personnel should have their hourly rates adjusted as follows according to the 2018 CLS hourly rates:

| Name | Title | Requested Rate | CLS Rate |
|---|---|---|---|
| Raymond, Peter (43 yrs exp.) | Partner | $ 995.00 | $ 650 - 700 |
| Kadosh, Samuel (13 yrs exp.) | Counsel | $ 710.00 | $ 375.00 – 450.00 |
| Berman, Jeremy A. (4 yrs. Exp.) | Associate | $ 440.00 | $ 230.00 – 275.00 |
| Castillo Jr., Jose A. | Sr. Paralegal | $ 170.00 | $ N / A |
| Mantzopoulos, Elias | Legal Tech | $ 380.00 | $ N/A |

22. Accordingly, the value of Mr. Raymond's time of 67.2 hours, even assuming that all of his time is proper, is reduced from $66,864.00 to $44,461.00. The value of Mr.

Kadosh's time of 132.85 hours, even assuming that all of his time is proper, is reduced from $98,640.00 to $54,468.50; and the value of Mr. Berman's time of 155.75 hours, even assuming that all of his time is proper, is reduced from $82,190.50 to $38,937.50. I have eliminated the value of Messrs. Castillo and Mantzopoulos' time because: (a) Reed Smith claimed that all paralegal time has been written off; and (b) I do not interpret the Order to permit monies paid to non-attorneys' at Reed Smith to be recoverable from the Defendants.

**B.   Non-Compensable or Excessive Time Charges Referenced in the Kadosh 2nd Decl.**

23. The 1st Kadosh Decl. attempted to justify Reed Smith's time charges and expenses in connection with certain tasks. In my initial Declaration, I identified numerous tasks for which Reed Smith charged Plaintiff where it was my opinion that Mr. Kadosh and his colleagues at Reed Smith were not entitled to recover attorneys' fees and costs. Rather than address and overcome those deficiencies, however, the Kadosh 2nd Decl., ignores almost all of those deficiencies as it is, in fact, almost an exact duplicate of the 1st Kadosh Decl.

24. More specifically, the only variation between the two Kadosh declarations lies in the addition of ¶¶14-16 in the latter declaration which attempts to explain why Reed Smith spent 24.6 hours preparing for a deposition that lasted 2.5 hours. Those supplemental paragraphs claim that such extensive deposition preparation was necessary to review the two prior Zuluaga deposition transcripts and to review a certain hard drive.

25. Those supplemental paragraphs, however, never address why a review of the 361 pages of the prior Zuluaga depositions (which could have been performed by a paralegal), the review of hard drive by a paralegal (especially when Mr. Kadosh states that there was no charge for the paralegal's conversion of the emails from Spanish to English), and preparing some notes for a 2.5 hour deposition consumed almost 25 hours of attorney time.

26. It should also be noted that Mr. Kadosh never explains why four separate attorneys expended time in preparing for the Zuluaga deposition, Kadosh 2nd Decl., ¶17, which lasted only 2.5 hours.

27. It remains my opinion, within a reasonable degree of professional certainty, that these tasks should be deemed not reimbursable or should be substantially reduced.

28. In addition, the Kadosh 2nd Decl. (as does Mr. Flynn's Declaration) both completely ignore the following deficiencies in his initial declaration that I noted in my previous declaration:

    a. Mr. Kadosh does not address, let alone deny, my prior observation that Reed Smith is seeking a charge for 4.5 attorney hours for the October 15, 2020 Zuluaga deposition when the court reporter's transcript confirms that the deposition only lasted 2.5 hours. *Saffer* Decl., ¶21.

    b. Mr. Kadosh does not address, let alone deny, that certain time entries are contrary to the Order that allowed an application to be made for fees and costs "preparing for and conducting Defendant Wilson Zuluaga's October 2020 deposition". The time entry by Mr. Raymond on May 22, 2020 for 1.60 hours references, among other things, his review of Defendants' counsel's response to Mr. Raymond's email and his drafting an email to Juan Felipe. Mr. Kadosh's time entry of October 19, 2020 for 1.70 hours to email a summary of the Zuluaga deposition postdates the deposition and is not compensable under the Order. Similarly, Mr. Kadosh's time entry of October 22, 2020 for .20 hours sending emails following the Zuluaga deposition does not involve "preparing for and conducting the Zuluaga deposition" as required by the Order. *Saffer* Decl., ¶25.

    c. Mr. Kadosh does not address, let alone deny, that Reed Smith utilized unnecessarily costly attorneys on the matter to perform associate level or paralegal tasks. On October 8, 2020, Mr. Berman, a 4-year associate, spent 1.00 hour drafting a deposition notice and scheduled the "deposition with Veritext [the court reporting agency]". These tasks are administrative in nature and are typically delegated to a paralegal or litigation secretary rather than to a 4-year

10

> litigation associate who bills his time at $535.00 per hour. *Saffer* Decl., ¶26.

29. Because Mr. Kadosh (and Mr. Flynn) had a full opportunity to explain and refute these observations in his supplemental declaration, yet decided not to do so, I perceive Reed Smith not to contest those observations.

30. As to these and other deficiencies with respect to the Zuluaga deposition, I refer again to **Exhibit D** to my prior Declaration (another copy of which is annexed hereto).

31. In the same vein, in my prior Declaration I analyzed tasks in the 1st Kadosh Decl. that were inefficient or duplicative in connection with Cibao (**Exhibit J**, another copy of which is annexed hereto) and tasks in the 1st Kadosh Decl. that were administrative in nature concerning Cibao (**Exhibit K**, another copy of which is annexed hereto), Messrs. Kadosh and Flynn do not respond to those analyses.

### C.   Additional Observations on the Flynn Declaration

32. I further note that Mr. Flynn's Declaration largely rests on his belief that the tasks that Reed Smith performed for which it seeks attorneys' fees and costs were "complex". He uses that word in his Declaration to describe those tasks four separate times. *Flynn* Decl., ¶¶15, 16, 18, 19. In fact, however, Reed Smith stated to this Court in its brief in support of Plaintiff's motion for summary judgment that this action is "**a relatively straightforward infringement case.**" Pb 43.

33. Moreover, Judge Hammer's May 26, 2020 Opinion (the "**Opinion**") [D.E. 232] that accompanied the Order noted that "[t]he pleadings establish that two key issues in this matter are (i) whether Industria has enforceable marks and, (ii) if so, whether Latinfood took actions that constitute acts of infringement on those marks." *Id.* at 5. Thus, contrary to Mr. Flynn's belief,

11

Reed Smith itself does not believe, as this Court confirmed in the Opinion, that this is a complex action. This inconsistency, in my opinion, undermines Mr. Flynn's entire opinion and further supports that this action does not require particularly sophisticated legal work requiring attorneys who charge higher than usual legal fees.

34. It is also my opinion that the *Flynn* Decl. is a net opinion with respect to the reasonableness of the legal tasks that Reed Smith performed. In my initial Declaration submitted in this action, I carefully examined and addressed Reed Smith's time entries and identified specific instances where Reed Smith sought an award of fees for: (a) certain tasks outside the compensable tasks in the Order; for tasks that took an excessive amount of time to perform; (b) tasks that involved unnecessary, duplicative work; and (c) excessive intra-firm communications. Mr. Flynn, however, did not address most of those deficiencies in his Declaration and, to the extent he did so, as set forth in detail below, he did so in such a conclusionary fashion that I conclude that the *Flynn* Decl. is a net opinion on the issue of the reasonableness of the legal tasks that Reed Smith performed.

35. For instance, Mr. Flynn never addresses, and therefore, never denies that the tasks for which Reed Smith seeks an award that I identified in Paragraphs 21, 25, and 26 of my prior Declaration are non-reimbursable. Similarly, Mr. Flynn ignores all of my observations in my prior Declaration about the impropriety of Reed Smith seeking an award of attorneys' fees and costs in excess of $115,000 in bringing its motions for sanctions and spoilation.

36. As to those motions, I noted in my prior Declaration that Exhibit 7 to the 1st Kadosh Decl. failed to differentiate between time entries on the sanctions motion and the time entries on the failed spoilation motion. *Saffer* Decl., ¶42. I further noted that the Order expressly limited the sanctionable conduct to "bringing [Plaintiff's] motion for sanctions" and denied Plaintiff's motion

for spoilation sanctions. *Ibid.*, ¶42. Consequently, because there is no differentiation in Exhibit 7 between the "sanctions motion" and the "spoilation motion", Plaintiff did not meet its burden that would entitle it to a specific dollar award in connection with the sanctions motion. *Ibid.*, ¶44. Indeed, I noted in my prior Declaration that it was remarkable that Plaintiff sought an award of attorneys' fees and costs in connection with a motion that the Court denied. *Ibid.*

37. Mr. Flynn never addresses, let alone disputes, my prior observations on this issue.

38. Having pointed out that Exhibit 7 was fraught with these significant defects, I expected Messrs. Kadosh and Flynn to prepare a revised Exhibit 7 to the Kadosh 2nd Decl. or the *Flynn* Decl. revising Reed Smith's application for fees and costs limiting them solely to tasks related to the sanctions motion and not to the spoilation motion. Instead, Exhibit 7 to the Kadosh 2nd Decl. is identical to the defective Exhibit 7 that was attached to the 1st Kadosh Decl.

39. Mr. Flynn also ignores other observations about specific, significant defects in Exhibit 7 that I noted in my initial Declaration. Reed Smith's expert does not address or contest my opinion therein that Reed Smith engaged in an excessive number of intra-office conferences on various dates totaling $5,005.50. *Saffer* Decl., ¶46. Similarly, Mr. Flynn does not address or contest **Exhibit L** to my prior Declaration (another copy of which is annexed hereto) establishing that Reed Smith tasks that took an excessive amount of time or were unnecessary. *Ibid.*, ¶47. Mr. Flynn's opinions thus consist of unsupported conclusions without any effort to confront and deny the numerous defects that were identified in Defendants' initial submission. On the issue of the reasonableness of Reed Smith's request for reimbursement for these tasks, his opinion is a net opinion and should be disregarded for that reason.

40. Accordingly, I stand by my opinion in my prior Declaration that, within a reasonable degree of professional certainty, if the Court is at all inclined to award any attorneys'

13

fees and costs in connection with the sanctions motion, at best for Plaintiff, it should be 20% of the dollar value of the time entries for "spoilation and sanctions" entries and zero dollars for the time entries for "spoilation motion". *Saffer* Decl., ¶45.

**D.   Additional Observations About Reed Smith's Submissions**

41.   Regarding the Fronteo Report, which the parties received on May 15, 2022, the Court's May 26, 2022 Order specifically limits Plaintiff to fees for "obtaining a neutral forensic examination of the Fronteo Drive and ***analyzing the contents of the Fronteo Report.***"

42.   According to Exhibit 3 – Fronteo Report (D.E. 324-3) to the Kadosh 2nd Decl., Reed Smith completed its analysis of that Report on or about May 18, 2020.

43.   The 2nd Kadosh Declaration, however, goes far beyond the scope of the Court's limited Order for by including post May 18, 2020 attorneys' fees and costs that are not associated with the analysis of the Fronteo Report.

44.   Specifically, Mr. Kadosh included, among other things, non-compensable fees incurred for the review of the document production that was provided months later in September and October of 2020 which had nothing to do with the analysis of the Fronteo Report for which they were tasked. This subsequent document review was not contemplated by the Order and Plaintiff, based on its own analysis, confirmed in a **subsequent** submission to the Court that the Fronteo Report had "shocking results." See Plaintiff's, June 9, 2020 letter to the Court (D.E. 193). Therefore, Plaintiff is not entitled to any relief subsequent to their analysis of the Fronteo Report, which, according to Exhibit 3 – Fronteo Report (D.E. 324-3) to the Kadosh 2nd Decl., concluded, at the latest, on or about May 18, 2020 with the  time entries of Peter Raymond, Samuel Kadosh and Jeremy Berman who collectively spent @ 8.8 hours on reviewing the Fronteo Report. All other

time entries subsequent to May 18, 2020 totaling $20,402.06 are excessive and should be rejected by the Court.

45. To the extent that the Court will consider Plaintiff's Memorandum of Law as impacting on the reasonableness of Reed Smith's request for an award of attorneys' fees and costs, I will comment on points Defendants raised in those submissions that warrant a response, but Reed Smith never addressed in its Memorandum of Law.

46. Annexed as **Exhibit E** to my prior Declaration (another copy of which is annexed hereto) is a chart based upon my examination of Plaintiff's counsel's time entries that, in my opinion, within a reasonable degree of professional certainty, are either outside the scope of the Order or are so unreasonably vague and ambiguous that they should be rejected by this Court. Reed Smith still has not responded to those defects. Annexed as **Exhibit F** to my prior Declaration (another copy of which is annexed hereto) is a chart based upon my examination of Plaintiff's counsel's time entries that, in my opinion, within a reasonable degree of professional certainty, disclose tasks that took excessive amounts of time or were unnecessary such that they should be rejected by this Court. Neither Reed Smith nor Mr. Flynn has responded to those defects.

47. Annexed as **Exhibit G** (another copy of which is annexed hereto) to my prior Declaration is a chart based upon my examination of Plaintiff's counsel's time entries that, in my opinion, within a reasonable degree of professional certainty, were administrative in nature and should be rejected by the Court. Reed Smith still has not responded to those defects. Annexed as **Exhibit H** to my prior Declaration (another copy of which is annexed hereto) is a chart based upon my examination of Plaintiff's counsel's time entries that, in my opinion, within a reasonable degree of professional certainty, were

inefficient or duplicative in nature and should be rejected by this Court. Neither Reed Smith nor Mr. Flynn has responded to those defects. And in Defendants' initial Memorandum of Law, it set forth certain expenses that should be denied. Db 21. Reed Smith still has not responded to those defects.

48. This failure of Plaintiff's expert to address these serious defects in Reed Smith's application further supports my opinion, within a reasonable degree of professional certainty, that such expert's opinion on the issue of the reasonableness of Reed Smith's request for reimbursement for all of these tasks is a net opinion and should be disregarded.

49. I further note that Defendants herein are seeking an offset of Reed Smith's requested attorneys' fees and costs because their counsel was forced to prepare two sets of papers on Reed Smith's fee application due to that firm's failure to abide by the Order in connection with Plaintiff's 1st Fee Application. It is my opinion, within a reasonable degree of professional certainty, that it is reasonable for Defendants, consistent with the interests of justice, to have the Court exercise its equitable powers and offset from any fee award to Plaintiff, all reasonable attorneys' fees charged by the undersigned and by Defendants' counsel, in making a second fee opposition submission, which was due solely to Plaintiff's initial and deficient fee application.

### E. Conclusion

Based upon the foregoing, it remains my opinion, within a reasonable degree of professional certainty, that, as decretal paragraph 4 of the Order, an appropriate award of fees and costs, if any, would be as follows:

| | |
|---|---|
| *The Fronteo Drive Issue:* | $14,654.89 |
| *The 2020 Zuluaga Deposition:* | $ 3,094.00 |

| | |
|---|---|
| *The Ciboa Document Production:* | $22,855.00 |
| *The Motion for Sanctions:* | <u>$38,601.00</u> |
| | $79,204.89 |

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____<br>
MICHAEL A. SAFFER

Dated: Roseland, New Jersey
      December 26, 2023