## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| INDUSTRIA DE ALIMENTOS ZENU S.A.S., | : : : | Civil Action No. 16-6576 (CCC) (MAH) |
| Plaintiff, | : : | |
| v. | : : | OPINION |
| LATINFOOD U.S. CORP. d/b/a ZENÚ PRODUCTS CO., et al., | : : : | |
| Defendants. | : : | |

**HAMMER, United States Magistrate Judge**

### I.    INTRODUCTION

This matter comes before the Court on the renewed application for an award of attorney's fees and costs by Plaintiff Industria De Alimentos Zenu S.A.S. ("Plaintiff") pursuant to the Court's May 26, 2022 Order.  *See generally* Kadosh Decl. II, D.E. 324; Flynn Decl., D.E. 325.[1]

---

[1]  For clarity, certain citations to the record are abbreviated as follows:

Samuel Kadosh, Esq.'s June 27, 2022 Declaration in Support of Plaintiff's Motion for Fees and Expenses Pursuant to this Court's May 26, 2022 Order, D.E. 233 is referred to as Kadosh Decl. I, D.E. 246.

Samuel Kadosh, Esq.'s October 20, 2023 Declaration in Support of Plaintiff's Motion for Fees and Expenses Pursuant to this Court's May 26, 2022 Order, D.E. 233 is referred to as Kadosh Decl. II, D.E. 324.

James P. Flynn, Esq.'s October 20, 2023 Declaration in Support of Plaintiff's Motion for Fees and Expenses Pursuant to this Court's May 26, 2022 Order, D.E. 233 is referred to as Flynn Decl., D.E. 325.

Michael Saffer, Esq.'s December 30, 2023 Supplemental Declaration in Further Opposition to Plaintiff's Application for an Award of Fees and Expenses is referred to as Saffer Decl., D.E. 341-1.

Defendants Wilson Zuluaga and Latinfood U.S. Corp. ("Defendants") oppose Plaintiff's request. Opp'n to Fees, Dec. 30, 2023, D.E. 341. The Undersigned conducted an evidentiary hearing on September 16, 2024. The Undersigned has considered the parties' submissions as well as the record and testimony evidence presented. For the reasons set forth below, the Undersigned will grant Plaintiff's counsel an award of $180,253.77 in attorney's fees and $13,414.37 in costs, totaling $193,668.14.

## II.    BACKGROUND

This renewed application for attorney's fees and costs comes to the Court as a result of this Court's May 26, 2022 Opinion and Order on three motions: (1) Plaintiff's motion for the imposition of sanctions pursuant to Federal Rules of Civil Procedure 37(c) and (e), Pl.'s Mot. for Sanctions, Oct. 8, 2021, D.E. 224; (2) Defendants' cross-motion for sanctions pursuant to Federal Rule of Civil Procedure 37(d), Defs.' Cross-Mot., Nov. 1, 2021, D.E. 227; and (3) Plaintiff's informal letter-request to strike Defendants' cross-motion and brief in opposition to Plaintiff's sanctions motion, Pl.'s Letter-Request, Nov. 4, 2021, D.E. 228. Ultimately, the Undersigned entered an Order denying Defendants' cross-motion and Plaintiff's informal application to strike Defendants' cross-motion in their entirety. Order, D.E. 233, at 2. This

---

Mark J. Ingber, Esq.'s December 30, 2023 Supplemental Declaration in Opposition to Plaintiff's Motion for Fees and Expenses Pursuant to this Court's May 26, 2022 Order is referred to as Ingber Decl., D.E. 343.

This Court's May 26, 2022 Opinion Granting in Part and Denying in Part Plaintiff's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37 and Denying Defendants' Cross-Motion for Sanctions is referred to as Op., D.E. 232.

The Honorable Kevin McNulty's June 27, 2023 Opinion Denying Defendants' Motion Objecting to this Court's May 26, 2022 Opinion, D.E. 232, and Denying Defendants' Motion Objecting to this Court's July 27, 2022 Order, D.E. 253 is referred to as McNulty Op., D.E. 295.

Court granted in part and denied in part Plaintiff's sanctions motion in the Court's May 26, 2022 Opinion and Order.  *Id.* at 1-2.

### A.  The May 26, 2022 Opinion

As expressed in the Court's May 26, 2022 Opinion, Defendants engaged in numerous violative discovery tactics from the onset of litigation.  *See* Op., D.E. 232, at 33.  Shortly after Plaintiff filed its Complaint against Defendants, Defense counsel, Mark J. Ingber, Esq., emailed Defendant Zuluaga a litigation hold notice on February 13, 2017.  Mr. Ingber advised Defendants that "[p]ursuant to F.R.C.P. 26.1(a)(3), all parties to the lawsuit have a duty to protect and preserve all documents and information in your possession and control."  *Id.* at 5. This included all "electronic data."  *Id.*  Mr. Ingber further advised his clients that to comply with their obligations, "all parties are required to suspend all routine document deletion/destruction policies and put a 'litigation hold' in place to ensure the preservation of relevant documents and [electronically stored information]."  *Id.* at 6.

Less than a week after receiving Defense counsel's instructions, Defendants apparently experienced a hard drive malfunction.  *Id.* at 6.  According to Defendants, the hard drive "had all the electronic documents that [Zuluaga] handled, created or received, related to any matter other than [Latinfood's sales]."  *Id.* at 6.  Further complicating matters, Defendants told Plaintiff— nearly two months after the hard drive had malfunctioned—that relevant documents were lost due to Defendants' use of an "automated email deletion system," whereby emails were deleted after two weeks.  *Id.* at 7.  Despite the litigation hold notice, Defendants did not cancel the auto-deletion protocol.  Although Defendants halted the automated deletion policy in May 2017, Defendants inexplicably re-instituted it approximately two weeks later.  The loss of Zuluaga's hard drive and the auto-deletion policy significantly impaired Defendants' ability to produce

3

relevant documents responsive to Plaintiff's discovery demands. *Id.* at 7-8.

Zuluaga was initially deposed on February 22, 2018, concerning the potential "spoliation issue" of his malfunctioning hard drive. *Id.* at 8. Zuluaga testified that he told BestBuy employees to install a new hard drive and discard the defective old hard drive. *Id.* at 8. Zuluaga also testified that to recover some of the lost documents, Defendants contacted their vendors. *Id.* at 9. Zuluaga further testified that Defendants produced all relevant and responsive documents and emails Defendants received through third parties. *Id.* at 10. Among these vendors was Cibao Meat Products, Inc. ("Cibao"). *Id.* After Plaintiff received Cibao's production from Defendants, Plaintiff directly subpoenaed Cibao. *Id.* at 12. Cibao's direct production revealed that Defendants had withheld responsive and relevant documents. *Id.* at 13.

During Zuluaga's second deposition, on December 18, 2019, Plaintiff questioned Zuluaga about discoveries Plaintiff made after receiving Cibao's direct production. *Id.* Zuluaga's explanations for the withheld documents were largely unavailing. *Id.* On January 7, 2020, less than three weeks after Zuluaga's second deposition, Plaintiff learned that Defendants had not only withheld Cibao emails, but also withheld the existence of four hard drives Defendants claimed to have recently discovered. *Id.* at 13-14. Defendants expressed belief that one of the drives could be the discarded drive. *Id.* at 14. However, a forensic examination by Fronteo USA, Inc. ("Fronteo") of the hard drive determined that it was not the discarded drive (the "Fronteo Report"). *Id.*

The Fronteo Report revealed that the hard drive Defendants believed could be the discarded drive was fully functional (the "Fronteo Drive"). *Id.* Further, the Fronteo Report revealed that the Fronteo Drive contained 99,940 files and folders, which had been accessed

4

between February 18, 2017, the day after the alleged hard drive crash, and January 7, 2020, the day Defendants revealed the Fronteo Drive's existence to Plaintiff. *Id.*

On October 15, 2020, Zuluaga was deposed a third time and questioned about the Fronteo Drive and Fronteo Report's findings. *Id.* During this deposition, it became apparent that Zuluaga had personally accessed the Fronteo Drive numerous times, including just days before his first deposition. *Id.* at 15.

These discovery violations prompted the Court to conclude that Defendants were not forthcoming during discovery and "failed to timely and effectively search for and produce responsive materials to Plaintiff." *Id.* at 33. The Court found that Defendants' discovery violations were "repeated and not of the type on which reasonable minds may disagree." *Id.* at 26. Accordingly, the Court determined the imposition of monetary sanctions against Defendants under Federal Rule of Civil Procedure 37(c)(1)(A) was appropriate. *Id.* Additionally, Defendants were to reimburse Plaintiff for the cost of bringing its motion for sanctions. *Id.* The Court found fees and costs related to three delineated categories appropriate due to Defendants' obvious and apparent dilatory conduct during discovery, in addition to the Plaintiff's costs to bring the sanctions motion. *See id.*

First, as to the Fronteo Drive and the Fronteo Report, the Court found that Defendants concealed the Fronteo Drive's existence despite Defendants accessing 99,940 files on the drive between February 2017 and January 2020. *See id.* The Fronteo Drive contained hundreds of responsive documents to Plaintiff's discovery requests, yet Defendants did not reveal its existence until after Zuluaga's second deposition. *Id.* at 26. The Court concluded Defendants' concealment of the hard drive required Plaintiff to undertake additional attorney's fees and costs

to rectify Defendants shirking their discovery obligations. *Id.* at 33. Second, and relatedly, Plaintiff needed to question Zuluaga about the Fronteo Drive and the Fronteo Report, leading to his third deposition. *Id.* at 27. Had Defendants revealed the Fronteo Drive's existence prior to Zuluaga's second deposition, Plaintiff could have avoided the additional costs needed to conduct the third deposition. *Id.*

Next, the Court found that Defendants inexplicably "produced less than half of the items they had been given by their vendor, Cibao, to Plaintiff." *Id.* at 26. This violation required Plaintiff to directly subpoena Cibao for the responsive materials, as well as conduct an item-by-item comparison of Defendants' direct production of Cibao records with Cibao's direct production to Plaintiff. *See id.* at 24-26. Defendants' conduct included: (1) Defendants failing to produce plainly relevant emails they received from Cibao to Plaintiff; and (2) Defendants removing portions of email threads in their production to Plaintiff, despite those email portions containing Plaintiff's target search terms. *See id.*

Finally, and more broadly speaking, Defendants' discovery violations required several court conferences between the time when Plaintiff initially raised the hard drive crash and Defendants' auto-deletion policy during a status conference on October 30, 2017. *Id.* at 28. From there, the parties required numerous meet-and-confers to address these issues. *Id.* Further, Plaintiff had to litigate additional issues and discovery disputes due to Defendants' actions, including Defendants' ill-conceived motion to quash Plaintiff's subpoena to Cibao for relevant emails between Defendants and Cibao; issues concerning Defendant Zuluaga's first deposition, which were resolved by Court Order, *see* D.E. 170; and further issues necessitating the Court's intervention, *see* D.E. 177. Op., D.E. 232, at 28-29.

The Court thus concluded that "Defendants' conduct protracted these proceedings and caused Plaintiff to incur otherwise avoidable fees and expenses." *Id.* at 34. Accordingly, the Court specifically ordered Defendants to compensate Plaintiff for the attorney's fees and costs incurred in:

> (i) obtaining a neutral forensic examination of the Fronteo Drive and analyzing the contents of the Fronteo Report; (ii) preparing for and conducting Defendant Wilson Zuluaga's October 2020 deposition; (iii) obtaining a direct document production from Cibao, and in comparing Cibao's direct production to Defendants' indirect production; and (iv) bringing its motion for sanctions.

Order, D.E. 233, at 2. To award the aforementioned attorney's fees and costs, the Court ordered Plaintiff to submit an affidavit which "set forth a description of the services for which it seeks fees and explain how those services are related to the aforementioned Rule 37(c) violations" and to "provide proofs substantiating the total hours worked, the rates charged, any costs it seeks, and all other applicable information necessary for the Court to conduct a lodestar calculation." *Id.*

### B. Plaintiff's Application for Fees

On June 27, 2022, Plaintiff submitted its initial application for attorney's fees. Kadosh Decl. I, D.E. 246. On July 27, 2022, this Court denied, without prejudice, Plaintiff's application because its submission was lacking in several aspects "therefore frustrat[ing] this Court's ability to conduct the necessary lodestar analysis." *See* Order, July 27, 2022, D.E. 253, at 1-2 n.1. Specifically, Plaintiff failed to include evidence that established the market rates in the legal community, and how those rates compared to Plaintiff's request, and failed to include a legal brief to appropriately present its legal arguments. *Id.* The Court afforded Plaintiff "one final opportunity to make an appropriate submission" in accordance with its Order. *Id.*

On August 9, 2022, Defendants objected to the Undersigned's July 27, 2022 Order.[2]  *See generally* Objs. to July 27, 2022 Order, D.E. 259.  As a result of that appeal, the Court held in abeyance Plaintiff's time to refile its request for attorney's fees.  *See* Am. Scheduling Order, ¶ 1, D.E. 260.  On June 27, 2023, Judge McNulty denied Defendants' appeal.  *See* McNulty Op., D.E. 295; Order, June 27, 2023, D.E. 296.

On October 20, 2023, Plaintiff renewed its application for attorney's fees, seeking $254,949.77 in attorney's fees and $16,054.37 in expenses.  Kadosh Decl. II, D.E. 324, ¶ 29.  In support of its application, Plaintiff filed the declarations of Samuel Kadosh, Esq. ("Mr. Kadosh") and James P. Flynn, Esq. ("Mr. Flynn").  Each declaration attached accompanying exhibits.  *See generally* Kadosh Decl. II, D.E. 324;[3] Flynn Decl., D.E. 325.  The exhibits attached to Mr. Kadosh's declaration included: various attorney's time entries for the tasks awarded; invoices; and a legal brief in support of Plaintiff's application.  *See* Ex. 1, Time Entries Re: Zuluaga's Oct.

---

[2]  Judge McNulty has since retired.  United States District Judge Claire C. Cecchi, U.S.D.J. is now the District Court judge assigned to this matter.

[3]  For clarity, the exhibits attached to Mr. Kadosh's Second Declaration, Kadosh Decl. II, D.E. 324, are referenced herein as follows:

Ex. 1, Time Entries Re: Zuluaga's Oct. 15, 2020 Deposition, D.E. 324-1.

Ex. 2, Veritext Invoice Re: Oct. 15, 2020 Zuluaga Dep., D.E. 324-2.

Ex. 3, Time Entries Re: Fronteo Drive, D.E. 324-3.

Ex. 4, Fronteo Invoice, D.E. 324-4.

Ex. 5, Time Entries Re: Cibao Production, D.E. 324-5.

Ex. 6, Expenses Re: Cibao Production, D.E. 324-6.

Ex. 7, Time Entries Re: Sanctions Mot., D.E. 324-7.

15, 2020 Deposition, D.E. 324-1; Ex. 2, Veritext Invoice Re: Oct. 15, 2020 Zuluaga Dep., D.E. 324-2; Ex. 3, Time Entries Re: Fronteo Drive, D.E. 324-3; Ex. 4, Fronteo Invoice, D.E. 324-4; Ex. 5, Time Entries Re: Cibao Production, D.E. 324-5; Ex. 6, Expenses Re: Cibao Production, D.E. 324-6; Ex. 7, Time Entries for Sanctions Mot., D.E. 324-7; Memo. of Law in Supp. of App. for Fees and Expenses, D.E. 324-8.  Mr. Flynn attached the 2022 Wolters Kluwer Real Rate Report ("RRR"), in support of his declaration.  *See* Flynn Decl., D.E. 325; Flynn Decl., Ex. A, RRR, D.E. 325-1.

On November 3, 2023, Defendants responded.  Defendants asked the Court to strike Plaintiff's application because it was Plaintiff's "third bite of the fee application apple" and was an impermissible reply.  *See* Defs.' Letter, Nov. 3, 2023, D.E. 326.  Plaintiff opposed Defendants' position.  *See generally* Pl.'s Letter, Nov. 6, 2023, D.E. 327.  On November 8, 2023, the Undersigned held a telephone status conference between the parties on the record.  For the reasons stated therein, the Court ordered Defendants to submit any opposition to Plaintiff's fee application by December 8, 2023, and ordered Plaintiff to submit any reply by December 22, 2023.  Order, Nov. 8, 2023, D.E. 332.

On November 14, 2023, Defendants filed a motion for reconsideration of the Court's November 8, 2023 Order.  Defs.' Mot. for Reconsideration, Nov. 14, 2023, D.E. 333.  Plaintiff opposed Defendants' motion and cross-moved for sanctions pursuant to 28 U.S.C. § 1927.  Pl.'s Opp'n to Mot. for Reconsideration, Dec. 4, 2023, D.E. 336; Pl.'s Cross-Motion for Sanctions, Dec. 4, 2023, D.E. 337.  On December 6, 2023, this Court denied Defendants' motion for reconsideration, as well as Plaintiff's cross-motion for sanctions.  Order, Dec. 6, 2023, D.E. 338. Further, the Court set an updated schedule for Defendants' opposition to Plaintiff's renewed

application and for Plaintiff's reply.  *Id.* at 4-5.

On December 30, 2023, Defendants opposed Plaintiff's fee application.  Defendants challenge the reasonableness and sufficiency of Plaintiff's requested fees, and ask the Court to offset Plaintiff's award by Defendants' incurred costs from submitting their second opposition.  *See generally* Opp'n to Fees, Dec. 30, 2023, D.E. 341.  In support, Defendants have included the Declaration of Michael Saffer, Esq., ("Mr. Saffer"), as well as specific objections to Plaintiff's submitted time entries.  *See* Saffer Decl., D.E. 341-1; Attach. to Saffer Decl., D.E. 341-2; Decl. of Mark J. Ingber, Esq., Dec. 30, 2023, D.E. 343.[4]  On January 22, 2024, Plaintiff filed its reply. *See* Reply, D.E. 348.[5]

On September 16, 2024, this Court conducted an evidentiary hearing concerning the reasonableness of Plaintiff's counsel's proposed hourly rate.  Mr. Flynn, on behalf of Plaintiff, and Mr. Saffer, on behalf of Defendants, were questioned about their respective declarations and

---

[4]  Attached to the Ingber Declaration were specific entries Defendants challenge in Plaintiff's fee application, which shall be referenced herein as follows:

Ex. B, Vague and Ambiguous, D.E. 343-2.

Ex. C, Pages of Zuluaga's Oct. 15, 2020 Dep., D.E. 343-3.

Ex. D, Duplicative or Inefficient, D.E. 343-4.

Ex. E, Irrelevant and Excessive, D.E. 343-5.

Ex. F, Administrative Tasks, D.E. 343-6.

[5]  On December 30, 2023, Defendants filed a separate motion for attorney's fees for having to oppose Plaintiff's renewed application.  *See* Defs.' Mot. for Attorney's Fees, Dec. 30, 2023, D.E. 342.  The parties later stipulated to Defendants withdrawing the motion, without prejudice, and allowing Defendants to include their arguments within their opposition for the instant application.  Stipulation, Jan. 18, 2024, D.E. 345.  The Court addresses those arguments within this Opinion.

Plaintiff's counsel's proposed hourly rates.

### III.   DISCUSSION

#### A.  Lodestar Standard

Having decided in its May 26, 2022 Opinion and Order that an award of attorney's fees and costs is appropriate in this matter, the Court must determine the reasonableness of the amounts requested by Plaintiff.  "The starting point for determining the amount of a reasonable fee is the lodestar, which courts determine by calculating the 'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  Once determined, the lodestar is presumed to be the reasonable fee.  *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  When calculating the lodestar amount, courts undertake three steps:  (1) decide a reasonable hourly rate, (2) multiply that rate by the number of hours reasonably expended by counsel, and (3) alter the total amount, if adjustment is necessary.  *J & J Snack Foods, Corp. v. Earthgrains Co.*, No. 00-6230, 2003 WL 21051711, at *6 (D.N.J. May 9, 2003).

The party seeking a fee award has the initial burden of proving "that the claimed rates and number of hours are reasonable."  *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)).  Although courts have considerable discretion to award fees, courts cannot decrease fee awards "based on factors not raised at all by the adverse party."  *J & J Snack Foods, Corp.*, 2003 WL 21051711, at *6 (quoting *Rode*, 892 F.2d at 1183).  A party challenging a fee award must "object 'with sufficient specificity' to the request."  *Wachtel v. Health Net, Inc.*, No. 01-4183, 2007 WL 1791553, at *2 (D.N.J. June 19, 2007) (quoting *Interfaith Cmty. Org. v. Honeywell*

11

*Int'l*, 426 F.3d 694, 703 (3d Cir. 2005)).  "The law in this Circuit is very clear that a court cannot *sua sponte* decrease an attorney's fee award absent direct and specific objections by opposing counsel."  *Red Roof Franchising LLC, Inc. v. AA Hosp. Northshore, LLC*, 937 F. Supp. 2d 537, 563 (D.N.J. 2013) (collecting cases), *aff'd sub nom. Red Roof Franchising, LLC v. Patel*, 564 F. App'x 685 (3d Cir. 2014); *see also Interfaith Cmty. Org.*, 426 F.3d at 711.

### B.  Whether Plaintiff's Offered Hourly Rates Are Reasonable

### i.      Parties' Arguments

Plaintiff's counsel's proposed hourly rates are as follows:

| Name | Title | 2018 | 2019 | 2020 | 2021 |
|------|-------|------|------|------|------|
| Peter Raymond | Partner | $995.00 | $995.00 | $995.00 | $995.00 |
| Samuel Kadosh | Counsel | $710.00 | $760.00 | $760.00 | $810.00 |
| Jeremy A. Berman | Associate | $440.00 | $480.00 | $535.00 | $590.00 |
| Jose A. Castillo, Jr. | Sr. Paralegal | $170.00 | $185.00 | $200.00 | $215.00 |
| Elias Mantzopoulos | Legal Technology Specialist | $380.00 | $415.00 | $445.00 | N/A |

Relying on both Mr. Flynn's declaration and testimony at the September 16, 2024 hearing, Plaintiff's counsel argues their rates are reasonable and consistent with other rates that Courts in this District have determined are reasonable.  Memo. of Law in Supp. of App. for Fees and Expenses, D.E. 324-8, at 15-16; *see also* Flynn Decl., D.E. 325, ¶ 6.  Plaintiff also argues that the Court should reject Defendants' proposition that the Court apply the rates that Community Legal Services of Philadelphia's ("CLS") uses as a prevailing party in its litigation. Memo. of Law in Supp. of App. for Fees and Expenses, D.E. 324-8, at 17; Reply, D.E. 348, at 2-

4.  According to Plaintiff, even if this Court were to find Philadelphia to be the proper market, a more accurate tool would be the Wolters Kluwer Real Rate Report, because it is a "more accurate measure of reasonable rates for Philadelphia law firms of Plaintiff's counsel's size." Memo. of Law in Supp. of App. for Fees and Expenses, D.E. 324-8, at 17.

During the September 16, 2024 hearing, Mr. Flynn on behalf of the Plaintiff and in supplement to his declaration.  Mr. Flynn testified that his familiarity with billing rates in the northern New Jersey area is the result of his experience as a managing partner of Epstein Becker & Green, P.C.'s ("EBG") Newark office, and his current role as the managing partner of the firm's twenty-one offices nationwide.  Evidentiary Hearing, Sept. 16, 2024, D.E. 365, at 14:24-15:22.  He also described that billing rates differ based on firm size, specialty, and geography. *Id.* at 15:23-16:19.  Specifically, he stated that northern New Jersey is likely to have higher billing rates than central or southern areas of the state. *Id.* at 20:1-16.  Mr. Flynn explained that northern New Jersey is more likely to be influenced by New York City billing rates than, for example, Philadelphia billing rates.  And, although Newark, New Jersey would have lower billing rates than New York City, the difference is not substantial. *Id.* at 20:24-21:17.  Mr. Flynn also explained the materials he reviewed to reach his opinion that Plaintiff's counsel's rates were reasonable. *Id.* at 22:19-23:11.  These included the briefing, Mr. Saffer's declaration, the CLS rates, and the RRR. *Id.*

When questioned about the RRR versus the CLS rates, Mr. Flynn stated that he found the RRR to be a more accurate reflection of what would constitute reasonable rates. *See id.* at 29:9-24.  According to Mr. Flynn, CLS rates do not distinguish between practice areas and firm size. Flynn Decl., D.E. 325, ¶¶ 8-10.  Mr. Flynn declared that the RRR includes a breakdown of rates

13

based on specialty and firm size. *Id.* ¶¶12-13; *see* Evidentiary Hearing, Sept. 16, 2024, D.E. 365, at 29:9-24. Mr. Flynn explained that he disagrees with any analogizing the northern New Jersey market with the Philadelphia market. Evidentiary Hearing, Sept. 16, 2024, D.E. 365, at 50:24-51:4. However, if there would be any analogy to Philadelphia, the analogy should consider the RRR over the CLS rates. *Id.* at 51:5-7. Thus, his inclusion of the RRR, despite reflecting the Philadelphia market, was to rebut Defendants' reliance on the CLS and to illustrate why the RRR is a more reliable barometer of the billing rates for the instant fee application.

Relying on Mr. Saffer's declaration and testimony, Defendants counter that Plaintiff's counsel's hourly rates are unreasonable. Opp'n to Fees, Dec. 30, 2023, D.E. 341, at 9-18; *see* Saffer Declar., D.E. 341-1. Defendants further argue that the Flynn Declaration should be disregarded because Mr. Flynn "rubberstamped" Plaintiff's counsel's hourly rates. *Id.* at 10. Defendants urge the Court to be guided by the rates in the CLS, arguing it "is widely recognized and adopted as a benchmark standard for evaluating reasonable hourly rates in the Third Circuit." *Id.* at 13. Further, Defendants contend that Plaintiff's cited cases as to the reasonableness of their rates are inapposite because those cases relate to class action suits where the parties did not contest the reasonable hourly rate. *Id.* at 15-16.

Mr. Saffer explained his experience with billing rates based on his role in setting rates for his department at the northern New Jersey law firm Mandelbaum Barrett P.C. Evidentiary Hearing, Sept. 16, 2024, D.E. 365, at 68:17-70:2. In forming his opinion that Plaintiff's proposed rates are unreasonable, Mr. Saffer reviewed the briefing and Mr. Flynn's declaration, as well as publicly available literature such as the New Jersey Law Journal. *See id.* at 110:2-111:7. Mr. Saffer opined that there is a stark difference between billing rates in New Jersey and

14

New York, even in northern New Jersey markets. *Id.* at 71:25-72:19. Specifically, he asserted that New York rates are much higher, and that Plaintiff's counsel was attempting to bill at a New York rate as opposed to New Jersey. *Id.* Mr. Saffer opined that the CLS rates were more accurate, and explained those rates tend to be more indicative of average market rates in this District. *Id.* at 77:5-11. However, Mr. Saffer conceded that the CLS did not account for firm size, or specialty, and would not likely be used to determine fees in an intellectual property or complex commercial litigation matter. *Id.* at 98:8-99:3.

### ii.    Analysis

"A reasonable hourly rate is calculated according to the prevailing market rates in the community," which the requesting party bears the burden of establishing. *AT & T Corp. v. JMC Telecom, LLC*, No. 99-2578, 2005 WL 2086194, at *3 (D.N.J. Aug. 26, 2005) (citing *Washington v. Phila. Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996)). Although the beginning point in determining a reasonable hourly rate is the attorney's usual billing rate, it is not dispositive. *Machado v. Law Offices of Jeffrey H. Ward*, No. 14-7401, 2017 WL 2838458, at *2 (D.N.J. June 30, 2017). The requesting party may establish that an hourly rate is reasonable "by submitting the affidavits of other attorneys in the relevant legal community, attesting to the range of prevailing rates charged by attorneys with similar skill and experience." *Id.*

If the requesting party has met its burden, the party opposing the fee award can rebut the reasonableness of the proffered hourly rate with record evidence. *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). If hourly rates are disputed with actual evidence rather than mere argument, the court must conduct a hearing to determine the reasonable market rates. *Id.*

A district court may not set attorney's fees based upon "a generalized sense of what is usual and proper, but must rely upon the record." *Evans v. Port Auth.*, 273 F.3d 346, 362 (3d Cir. 2001) (internal quotations omitted).  Generally, unless the special expertise of distant counsel is necessary or local counsel is unwilling to accept the case, "the relevant rate is the prevailing rate in the forum of the litigation."  *See Interfaith Cmty. Org.*, 426 F.3d at 705.

Plaintiff's counsel has presented competent record evidence that establishes their rates are reasonable.  First, Plaintiff's counsel submitted the Flynn declaration, attesting to the reasonableness of the proposed rates.  *See generally* Flynn Decl., D.E. 325; *see also Warren Distrib. Co. v. InBev USA, LLC*, No. 07-1053, 2011 WL 770005, at *13 (D.N.J. Feb. 28, 2011) ("Generally, '[a]n affidavit attesting to the reasonableness of the requested fee by an attorney familiar with the practice area and community is adequate to establish a prima facie case, shifting the burden to the opposing party to produce contradictory evidence.'"  (quoting *Jefferson v. City of Camden*, No. 01-4218, 2006 WL 1843178, at *16 (D.N.J. June 30, 2006))).  The Court is satisfied Mr. Flynn's declaration provides adequate support that Plaintiff's counsel's proposed rates are reasonable.  That declaration explains Mr. Flynn's thirty-year experience in the New Jersey State Bar, as well as his experience litigating intellectual property disputes in federal court.  *Id.*  ¶ 3.  Mr. Flynn's declaration also describes his knowledge of billing practices in New Jersey, based on his experience as the former manager of the firm EBG's Newark office, as well as his current role as manager of the entire firm.  *Id.* ¶ 4.  This experience allowed Mr. Flynn to conclude that the proposed rates of Plaintiff's counsel are reasonable.

The Court cannot find any credence to Defendants' argument that Mr. Flynn "rubberstamped" Plaintiff's counsel's proposed rate. Opp'n to Fees, Dec. 30, 2023, D.E. 341, at

10.  In fact, Mr. Flynn's testimony buttressed his declaration.  At the September 16, 2024 hearing, Mr. Flynn persuasively testified about the various geographic market rates, the demand for attorneys specialized in intellectual property, and the difference in rates based on that specialization.  Evidentiary Hearing, Sept. 16, 2024, D.E. 365, at 15:23-16:19, 20:24-21:17.  For example, Mr. Flynn explained that usually attorneys who specialize in intellectual property bill at a higher rate than general commercial litigation attorneys, and that an attorney's hourly rate tends to increase based on the size of the firm as well.  *Id.* at 16:16-17:9.  Mr. Flynn's testimony is particularly compelling because it is based on his experience as EBG's managing partner.  *Id.* at 14:24-15:22.  Indeed, this role provides Mr. Flynn significant knowledge of the billing practices and rates of different locations nationwide, and his role as former manager of EBG's Newark office supports his understanding of the northern New Jersey market for fees associated with federal intellectual property matters.  Further, Mr. Flynn's reliance on the RRR is persuasive, and ultimately made his opinion on the proposed hourly rate more credible.  Although the RRR, as submitted by Plaintiff, relies on the Philadelphia market, Mr. Flynn's testimony detailed that the RRR's proposed median rates for partners and counsel that specialize in commercial litigation at firms of Reed Smith's size fall squarely within Plaintiff's counsel's proposed rates.[6]  *See* Flynn Decl., D.E. 325, ¶ 12.  While the Court does not adopt the RRR, the Court concludes that the RRR provides a backstop to show that Plaintiff's counsel's rates, taking

---

[6]  At least two courts within the District of New Jersey have found the RRR to be a reliable measure when evaluating a reasonable hourly rate in a lodestar analysis.  *See Sabinsa Corp v. Herbakraft, Inc.*, No. 14-4738, 2022 WL 1166581, at *8 (D.N.J. Apr. 20, 2022) ("Here the Court adopts the Real Rate Report's regional fee schedule for patent litigation, as it is the only reliable evidence submitted by either party regarding the prevailing market rate."), *report and recomm. adopted* 2022 WL 17446485, at *5 (D.N.J. Dec. 5, 2022); *see also D'Ottavio v. Slack Techs.*, No. 18-9082, 2022 WL 17976822, at *3 (D.N.J. Dec. 28, 2022).

into consideration geography, firm size, and specialty, are aligned with the appropriate legal market. For example, Peter Raymond's rate of $995 per hour is essentially in the median range for partners in firms with more than 1000 lawyers. Flynn Decl., Ex. A, D.E. 325-1, at 7. Additionally, Jeremy Berman's rates, which ranged from $440 in 2018 to $535 in 2020, fall well below the median rate of $624 for associates in firms with more than 1000 lawyers. *Id.*

Based on the record evidence and testimony, the Court is satisfied that Plaintiff's counsel has met its burden and demonstrated a prima facie case that its proposed hourly rates are reasonable. Accordingly, the Court must now determine if Defendants have successfully rebutted those rates. The Court concludes Defendants have not.

Defendants principally argue that Plaintiff's counsel's rates are unreasonable and that this Court should be guided by the CLS rates. However, neither Mr. Saffer's declaration nor his testimony convince this Court that the CLS rates are an appropriate metric in the instant matter. Mr. Saffer is a highly experienced and sophisticated litigator, and an esteemed member of this State's bar. But the Court simply cannot find that the CLS should determine the reasonable hourly rates for this complex trademark-infringement matter. First, it is important to put the CLS rates in their appropriate context. The Community Legal Services of Philadelphia posts its rates to delineate the fees it will seek to recover in cases where its client is a prevailing party in a fee-shifting case.[7] *See* Community Legal Services of Philadelphia, *Attorney Fees*,

---

[7] Per its website, "CLS provides free civil legal advice and representation to low-income Philadelphians." *See* Community Legal Services of Philadelphia, *Highlights*, https://clsphila.org/highlights/cls-is-open-for-live-legal-help/ (last visited Sept. 30, 2024). The services that CLS offers include cash assistance, child-care subsidies, criminal records and public benefits, home and community-based services for seniors, identity documents, liheap (heat assistance), Medicaid, Medicare, nursing homes, personal care homes, snap (food stamps), SSI/social security, and WIC. *See* Community Legal Services of Philadelphia, *Services*,

https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited Sept. 30, 2024). This is not a fee-shifting case. Further, the CLS rates do not distinguish based on practice area or firm size. Additionally, per CLS's description of the services it provides, CLS does not appear to engage in intellectual-property or complex commercial litigation. Even Mr. Saffer conceded in his testimony that the CLS rates are unlikely to contemplate complex commercial litigation or intellectual property matters, which constitute the underlying claims in this case.

It is true that courts in the District of New Jersey have relied on the CLS rates. But that simply highlights that this Court possesses broad discretion to determine what constitutes a reasonable hourly rate, and to determine the appropriate benchmarks to determine the rate. *See Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 137 (3d Cir. 2018) ("Rather, our case law provides district courts with substantial discretion to determine what constitutes reasonable attorney's fees because they are better informed than an appellate court about the underlying litigation and an award of attorney fees is fact specific[.]" (internal quotations omitted)). In fact, if this Court were to accept Defendants' position that CLS rates must be accepted absolutely, this Court would have to disregard relevant case law and consideration of the traditional factors such as the customary billing rate, level of skill and experience of attorneys, and the billing practices in similar locations. *See Machado*, 2017 WL 2838458, at *2.

The cases on which Defendants rely concerning the applicability of CLS rates, both in their briefing and at the evidentiary hearing, are readily distinguishable. For example, in the trademark infringement case, *MCO & EA LLC v. Silver Globe Inc.*, No. 20-17100, 2023 WL 3478466, at *1 (D.N.J. May 15, 2023), the defendants made a Rule 68 offer of judgment to the

---

https://clsphila.org/services/ (last visited Sept. 30, 2024).

plaintiff, after the Court had granted plaintiff partial summary judgment.  The offer of judgment consisted of "$50,000, plus costs and attorneys' fees."  *Id.*  Plaintiff accepted the offer.  When the plaintiff submitted its motion for attorney's fees, the Court conducted a lodestar analysis.  In determining the rate was reasonable, the Court noted that because the plaintiff's lawyers billed within or below the CLS rates, and because the Third Circuit had previously used the CLS rates when evaluating the reasonableness of hourly rates, the CLS rates were "persuasive."  *Id.* at *4. Therefore, the Court approved the plaintiff's rate.  *Id.*  Put another way, the Court simply utilized the CLS standard to endorse the very rates the firm was already billing, and found the rates billed were not too high.

Further, for other cases that utilized the CLS rates, the reasoning the Court took is telling. Most of those cases involved fee applications by a prevailing party pursuant to a fee-shifting statute.  The Court simply validated rates that were in-line with the CLS rates and that were unopposed.  For example, in *Ocasio v. County of Hudson*, No. 14-811, 2023 WL 5035289, at *1 (D.N.J. Aug. 8, 2023), plaintiff brought claims under the New Jersey Civil Rights Act, and 42 U.S.C. § 1983, and therefore subject to a fee-shifting application for the prevailing party.  The Court found the CLS rates simply bolstered the reasonableness of plaintiff's counsel's proposed hourly rate.  *Id.* at *3.  Notably, the rates were uncontested.  *Id.*  Similarly, *Arku-Nyadia v. Legal Sea Foods, LLC*, No. 18-1089, 2022 WL 958465, at *2 (D.N.J. Mar. 2022), was a discrimination case where the Court had entered default judgment against the defendant.  Plaintiff's proposed rates, which defendant did not oppose, were consistent with the CLS rates.  The Court therefore concluded that the plaintiffs' proposed rates were reasonable because they were consistent with the CLS rates.  The Court specifically noted its reliance on the CLS rates was based on the

publication's purpose for "use in fee-shifting cases." *Id.* at \*8.  In *Qureshi v. OPS 9, LLC*, No. 14-1806, 2020 WL 1910344, at \*3 (D.N.J. Apr. 20, 2020), a Fair Debt Collection Practices Act case, the rates charged in the fee application were not in dispute.  The Court cited the CLS rates solely to demonstrate that the rates the plaintiff sought were in fact lower than the CLS rates.  *Id.* at \*4.  The Court did not rely on the CLS rates to reduce or deny the plaintiff's proposed hourly rates.  Finally, in *Renna v. County of Union*, No. 11-3328, 2015 WL 93800, at \*1 (D.N.J. Jan. 7, 2015), the principal issue was whether the plaintiff constituted a prevailing party, not the reasonableness of the hourly rate.  The opinion does not discuss or mention the CLS rates, and the hourly rate was uncontested.  *Id.* at \*9.  At bottom, these cases highlight the perils of applying the CLS rates to this fee application.

Moreover, the hourly rates sought by Plaintiff's counsel are the rates that Plaintiff has already paid to its attorneys.  Indeed, Plaintiff has already paid its counsel for the litigation tasks for which Plaintiff seeks the fee award.  Although the existing rate is not dispositive of its reasonableness, caselaw instructs that it should be afforded significant consideration.  *See Trucksess v. Thompson Auto. Grp., Inc.*, No. 10-4313, 2011 WL 6415047, at \*10 (E.D. Pa. Dec. 14, 2011) ("The best evidence of the reasonable rate for an attorney's time is the customary billing rate for clients.").  Plaintiff paying its counsel's rates coupled with the record provides the Court further evidence that the proposed rates are reasonable.

Plaintiff has met its burden that the hourly rates it proposes are reasonable market rates.  Mr. Flynn convincingly testified that similar firms in size, location, and expertise bill at rates within the ranges that Plaintiff proposes.  Moreover, Mr. Flynn's testimony regarding the RRR and it more squarely reflecting this type of matter was equally persuasive.  Defendants'

21

contention and Mr. Saffer's testimony that the CLS is more appropriate is unavailing.  The CLS does not contemplate the underlying claims in this case, a fact that is evident from CLS's own description of the services it offers and which Mr. Saffer conceded in his testimony.  Defendants have thus failed to rebut the reasonableness of Plaintiff's proposed hourly rate.  Therefore, the Court has determined the below hourly rates to be applicable in the lodestar analysis:

| Name | Title | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|
| Peter Raymond | Partner | $995.00 | $995.00 | $995.00 | $995.00 |
| Samuel Kadosh | Counsel | $710.00 | $760.00 | $760.00 | $810.00 |
| Jeremy A. Berman | Associate | $440.00 | $480.00 | $535.00 | $590.00 |
| Jose A. Castillo, Jr. | Sr. Paralegal | $170.00 | $185.00 | $200.00 | $215.00 |
| Elias Mantzopoulos | Legal Technology Specialist | $380.00 | $415.00 | $445.00 | N/A |

### C.  Whether Plaintiff's Time is Reasonably Expended

In addition to identifying a reasonable forum rate, courts must also review hours expended and exclude billed hours that are "excessive, redundant, or otherwise unnecessary." *McKenna*, 582 F.3d at 455 (quoting *Hensley*, 461 U.S. at 434).  Lodestar calculations contemplate burden-shifting analyses in which parties opposing the awarding of fees make specific objections.  "The court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party."  *See Interfaith Cmty. Org.*, 426 F.3d at 711 (citing *Bell v. United Princeton Props.*, Inc., 884 F.2d 713, 719 (3d Cir. 1989)); *see also Virtua Health, Inc. v. Diskriter, Inc.*, No. 19-21266, 2020 WL 4282752, at *5 (D.N.J. July 27, 2020) (noting that the opposing party failed to address the reasonableness of the fees sought and

thus the court was not obligated to review the proponent's billing records "line by line"); *N.V.E., Inc. v. Palmeroni*, No. 06-5455, 2012 WL 3961342, at *5 (D.N.J. Sept. 10, 2012) (declining to reduce time entries, despite the court's belief that they were excessive, finding that the "Court cannot, of its own accord, reduce time entries to which [the opponent] did not specifically object"). Thus, the Court may consider only the objections Defendants made in opposition to Plaintiff's application for fees and costs.

Plaintiff seeks fees for approximately 374 hours for work by Plaintiff's counsel support staff. *See* Kadosh Decl. II, D.E. 324, ¶¶ 17, 22, 25, 28. Plaintiff contends its counsel's hours were reasonably expended. Memo. of Law in Supp. of App. for Fees and Expenses, D.E. 324-8, at 9-14; Reply, D.E. 348, at 5-8. The Court has reviewed Plaintiff's documentation supporting its request for attorney's fees, line-by-line, as it must. *See Evans*, 273 F.3d at 362; *see also* Ex. 1, Time Entries Re: Zuluaga's Oct. 15, 2020 Deposition, D.E. 324-1; Ex. 2, Veritext Invoice Re: Oct. 15, 2020 Zuluaga Dep., D.E. 324-2; Ex. 3, Time Entries Re: Fronteo Drive, D.E. 324-3; Ex. 4, Fronteo Invoice, D.E. 324-4; Ex. 5, Time Entries Re: Cibao Production, D.E. 324-5; Ex. 6, Expenses Re: Cibao Production, D.E. 324-6; Ex. 7, Time Entries for Sanctions Mot., D.E. 324-7.

Defendants argue Plaintiff's counsel's fees are unreasonable for five reasons: (i) Plaintiff's counsel improperly redacted submitted entries; (ii) Plaintiff's counsel included irrelevant and excessive entries, unrelated to the Court's May 26, 2022 Order; (iii) Plaintiff's counsel's entries were vague and ambiguous; (iv) Plaintiff's counsel included entries which were inefficient and duplicative; and (v) Plaintiff's counsel improperly attempt to recoup fees for administrative tasks. This Court addresses each argument in turn.

23

### i.    Redacted Entries

Defendants argue that several entries have been redacted by way of Plaintiff's designation as "Adjusted Time" and "Adjusted Fees."  *See* Opp'n to Fees, Dec. 30, 2023, D.E. 341, at 19.  Because Defendants are unable to "evaluate whether the post hoc allocation" made by Plaintiff accurately reflects the work that has been completed, Defendants contend those entries should be excluded.  *Id.*

The Court does not find that these entries should be excluded based on "redaction" alone. The time entries provide a detailed description of the hours and tasks sought to be included in Plaintiff's award.  Further, it appears to the Court that these time entries were not "post hoc allocations," but rather self-imposed reductions Plaintiff's counsel made when billing and invoicing their fees.  *See, e.g.*, Ex. 1, Time Entries Re: Zuluaga's Oct. 15, 2020 Deposition, D.E. 324-1, at 1.  Accordingly, the Court sees no reason to unilaterally exclude the entries because they contain sufficient information both for Defendants to object and for the Court to consider the included description.  *See Americans for Prosperity v. Grewal*, No. 19-14228, 2021 WL 1153194, at *4 (D.N.J. Mar. 26, 2021) (excluding fees attributed to completely redacted invoice entries because the moving party "fail[ed] to meet its burden to prove the reasonableness of the attorney's fees as to the redacted entries" and left the Court "no basis to ascertain the nature of the billed activities").

### ii.    Irrelevant and Excessive

Defendants argue that several entries should be excluded from Plaintiff's fee award because they are irrelevant to the Court's May 26, 2022 Order or are excessive.  *See* Ex. E, Irrelevant & Excessive Time Entries, D.E. 343-5.  The Court specifically ordered four categories

24

of fees for which Defendants shall compensate Plaintiff:

> (i) obtaining a neutral forensic examination of the Fronteo Drive and analyzing the contents of the Fronteo Report; (ii) preparing for and conducting Defendant Wilson Zuluaga's October 2020 deposition; (iii) obtaining a direct document production from Cibao, and in comparing Cibao's direct production to Defendants' indirect production; and (iv) bringing its motion for sanctions.

Order, D.E. 233, at 2.

Defendants contend many of Plaintiff's entries are outside the scope of the Order.  For example, Defendants take issue with Plaintiff's counsel's inclusion of time entries that relate to preparation for the 2019 Deposition of Zuluaga, as well as the inclusion of time spent months before the October 2020 Zuluaga deposition.  *See* Opp'n to Fees, Dec. 30, 2023, D.E. 341, at 24-25.  According to Defendants, these entries cannot be recouped based on the Court's May 26, 2022 Order.  *Id.*  Defendants also claim many time entries are excessive, such as Mr. Kadosh billing 4.5 hours for a deposition that lasted 2.5 hours.  *Id.* at 26.  Further, Defendants argue because Plaintiff's counsel concluded its analysis on the Fronteo Drive on May 18, 2020, any entries following that date in reference to the drive are excessive.  *Id.* at 30.

### a.  October 2020 Zuluaga Deposition

First, the Court finds most contested time entries related to the October 2020 Zuluaga deposition to be completely appropriate.  Zuluaga is a named Defendant in this action and therefore it is expected that a large amount of time would be allocated to his deposition.  Further, the amount of time billed by Plaintiff's counsel is reasonable considering the circumstances by which the October 2020 Zuluaga deposition took place.  Plaintiff needed to conduct the deposition because Defendants withheld the existence of the Fronteo Drive for nearly three years.

The Court is mindful of the added time Plaintiff's counsel needed to expend to correct Defendants' misconduct.  It is not unreasonable to expect that Plaintiff's counsel's preparation required him to sift through hundreds of responsive documents, the Fronteo Report's findings, and Zuluaga's previous depositions to prepare for a deposition that was necessitated solely by Defendants' failure to timely disclose the existence of the Fronteo Drive.  However, the Court concludes that some entries related to this deposition are irrelevant or excessive.

Plaintiff deposed Zuluaga on October 15, 2020 and the deposition lasted 2.5 hours. Entries characterized as "preparing for and conducting" the 2020 deposition should not include entries that postdate the deposition.  *See* Order, D.E. 233.  Thus, Mr. Kadosh's entry for emailing a summary following the deposition could not have entailed preparation for the deposition, and is not appropriate for shifting to Defendants.  Further, the Court concludes that any entry for attending or taking the Zuluaga deposition should be limited to 2.5 hours.  *See* Ex. C, Pages of Zuluaga's Oct. 15, 2020 Dep., D.E. 343-3.  Thus, Mr. Kadosh's October 15, 2020 entry for 4.5 hours to "Take Zuluaga deposition" will be reduced.  The Court notes that for Mr. Berman's entry for the Zuluaga deposition, it appears to the Court that Plaintiff's counsel already reduced the billed amount to $535.00, so that entry will not be reduced.  The Court will reduce or exclude the following entries:

| Entry Date[8] | Billing Attorney | Total Billed Amount | Amount After Deduction |
|---|---|---|---|
| 10/15/2020 | Mr. Kadosh | $3,420 | $1,900 (reduced by 2 hours) |
| 10/19/2020 | Mr. Kadosh | $1,292.00 | $0.00 |
| 10/22/2020 | Mr. Kadosh | $152.00 | $0.00 |

[8]  *See* Ex. 1, Time Entries Re: Zuluaga's Oct. 15, 2020 Deposition, D.E. 324-1.

### b. Fronteo Drive

The Court's May 26, 2022 Order allowed Plaintiff's counsel to recover the attorney's fees and costs associated with obtaining a neutral forensic examination of the Fronteo Drive and analyzing the contents of the Fronteo Report. Order, May 26, 2022, D.E. 233. However, many entries in the application are outside the scope of that Order or are excessive. These entries fall into three general categories, all of which were unnecessary: (1) emails to the client providing updates of production*; (2) emails regarding additional production sought from Defendants and Defendants' withholding of relevant documents**; or (3) extraneous other issues with Defendants' discovery unrelated to the Fronteo Drive and Fronteo Report***.[9] By way of example, the September 14, 15, and 16, 2020 entries indicate an email to Mr. Ingber "requesting non-confidential documents," which required 5.9 hours to complete. Ex. 3, Time Entries Re: Fronteo Drive, D.E. 324-3, at 5. Plaintiff's counsel does not meet their burden to explain how these activities were necessary to obtain a neutral forensic examination of the Fronteo Drive or analyze the contents of the Fronteo Report. *See Keenan v. City of Philadelphia*, 983 F.2d 459, 472 (3d Cir. 1992) ("[A] fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'").

Further, multiple entries contain a mix of relevant and irrelevant tasks. For example, on March 19, 2020, Mr. Raymond drafted emails to his client regarding the status of discovery and emails to replacement forensic experts regarding the hard drive. *See* Ex. 3, Time Entries Re: Fronteo Drive, D.E. 324-3. Although the emails regarding procuring a Fronteo Report were within the scope of the May 26, 2022 Order, Mr. Raymond emailing his client regarding

---

[9]  The Court identifies each category by asterisks in the corresponding chart.

discovery in general was not.  The Court will thus reduce the entries below to exclusively reflect the time spent working on tasks related to analyzing and obtaining the Fronteo Report.  The Court will also exclude entries that are wholly outside the scope of the Order.

| Entry Date[10] | Billing Attorney | Total Billed Amount | Amount After Deduction |
|---|---|---|---|
| 2/18/2020*** | Mr. Raymond | $796.00 | $398.00 (reduced .4) |
| 2/24/2020** | Mr. Raymond | $995.17 | $0.00 |
| 2/24/2020** | Mr. Berman | $749.00 | $0.00 |
| 2/25/2020** | Mr. Raymond | $1,194.20 | $796.13 (reduced .4) |
| 2/25/2020** | Mr. Berman | $160.50 | $107.00 (reduced .1) |
| 2/26/2020** | Mr. Raymond | $796.13 | $597.00 (reduced .2) |
| 3/18/2020** | Mr. Raymond | $1,194.20 | $995.00 (reduced .2) |
| 3/19/2020* | Mr. Berman | $963.00 | $749.00 (reduced .4) |
| 4/2/2020* | Mr. Raymond | $796.13 | $0.00 |
| 4/13/2020** | Mr. Raymond | $896.50 | $696.50 (reduced .2) |
| 5/18/2020*** | Mr. Berman | $1,123.50 | $802.50 (reduced .6) |
| 9/14/2020** | Mr. Berman | $481.50 | $0.00 |
| 9/15/2020** | Mr. Berman | $1,016.50 | $0.00 |
| 9/16/2020** | Mr. Berman | $1,123.50 | $0.00 |

The Court is satisfied that the remainder of the time entries comply with its May 26, 2022 Order.  These time entries appropriately detail selection of hard drive experts, conferencing and communications regarding questions counsel sought to ask such experts, as well as continued disputes between the parties as to search terms for the expert review.  The entries also outline counsel's review of the Fronteo Report, as permitted and compelled by this Court.  Accordingly, the Court will not exclude or reduce any other entries based on irrelevance or excessiveness.

### c.  Cibao Production

The Court finds it appropriate to exclude several entries because Plaintiff has not

---

[10]  *See* Ex. 3, Time Entries Re: Fronteo Drive, D.E. 324-3.

adequately explained their relevance to the Cibao Production. These include entries that detail preparation for the 2019 Zuluaga Deposition. This Court's May 26, 2022 Order made clear that Plaintiff is entitled to attorney's fees and costs related to "(3) obtaining direct document production from Cibao and comparing that production to Defendants' indirect production." Op., D.E. 232, at 34. These entries must obviously be excluded from Plaintiff's award. The purpose of the Order was to address the efforts Plaintiff expended in subpoenaing Cibao and undertaking a comparison of Defendants' indirect production and Cibao's direct production. *See id.* at 24 (stating Defendants had only produced fractions of the documents they received from Cibao).

Further, there is an excessive entry related to Jaline Isidor's ("Isidor") deposition.[11] Mr. Berman, Mr. Raymond, and Mr. Kadosh all billed for attending the Isidor deposition. *See* Ex. 5, Time Entries Re: Cibao Production, D.E. 324-5, at 2. The Court finds the need for three attorneys to attend one deposition unnecessary. *See Jefferson*, 2006 WL 1843178, at *9 (finding a partner was not entitled to the presence of a second partner to participate at proceedings, but "was entitled to the assistance of an associate at Solomon's deposition, the pretrial conference, the mediation, and the settlement conferences"). The Court will exclude Mr. Berman's March 7, 2019 entry for purely attending Isidor's deposition. *See* Ex. 5, Time Entries Re: Cibao Production, D.E. 324-5, at 2. The Court will not exclude Mr. Kadosh's or Mr. Raymond's entries. Mr. Kadosh took the deposition and Mr. Raymond's entry includes tasks beyond deposition attendance that are relevant to the Cibao production.

Thus, the Court will exclude (1) entries related to preparation and taking of the 2019

---

[11]  Jaline Isidor is Cibao's marketing handler. Op., D.E. 232, at 10. Plaintiff deposed Isidor on March 7, 2019. *Id.* at 12.

Zuluaga deposition*; and (2) Mr. Berman's entry for attending the Isidor deposition**.[12]  Thus, the Court will exclude the following entries:

| Entry Date[13] | Billing Attorney | Total Billed Amount | Amount After Deduction |
|---|---|---|---|
| 3/7/2019** | Mr. Berman | $1,200.00 | $0.00 |
| 12/11/2019* | Mr. Kadosh | $4,940.00 | $0.00 |
| 12/12/2019* | Mr. Kadosh | $1,900.00 | $0.00 |
| 12/14/2019* | Mr. Kadosh | $760.00 | $0.00 |
| 12/16/2019* | Mr. Kadosh | $3,496.00 | $0.00 |
| 12/18/2019* | Mr. Kadosh | $1,520.00 | $0.00 |

### d.  Sanctions Motion

The Court finds that the amount of time billed for Plaintiff's counsel's work on the sanctions motion is excessive.  Here, Plaintiff's counsel billed 169.3[14] hours for this task.  *See* Ex. 7, Time Entries Re: Sanctions, D.E. 324-7, at 4.  Defendants broadly claim the time spent is plainly excessive; however, Defendants do not specify what entries are excessive in light of the work performed.  *See* Opp'n to Fees, Dec. 30, 2023, D.E. 341, at 19-21.  The Court agrees with

---

[12]  The Court identifies each category by asterisks in the corresponding chart.

[13]  *See* Ex. 5, Time Entries Re: Cibao Production, D.E. 324-5.

[14]  The Court notes a discrepancy.  Mr. Kadosh's declaration states Plaintiff's counsel worked 176.6 hours on the tasks for the sanctions motion; however, the attached spreadsheet with time entries states that only 169.1 hours were billed.  *Compare* Kadosh Decl. II, D.E. 324, ¶¶ 28-29 *with* Ex. 7, Time Entries Re: Sanctions, D.E. 324-7, at 4.  Upon the Court's calculation, however, the entries total 169.3 hours billed.  Also, Plaintiff indicates that Mr. Raymond billed 20.5 hours, Mr. Kadosh 67.8 hours, Mr. Berman 78.6 hours, and Mr. Castillo 3 hours.  There appears to be an error in Plaintiff's calculations as these hours totaled together would equate to 169.9 hours, which is neither the hours reflected in Mr. Kadosh's declaration, nor the time entries for the sanctions motion.  The Court will thus not consider the declaration's representations for the hours billed, and instead will rely upon the time entries and the Court's own calculations of hours billed for each attorney.

Defendants' contentions regarding the sanctions motion and concludes that 169.3 hours billed is unreasonable.

The Court acknowledges that Plaintiff's sanctions motion was factually complex, and the Court does not fault Plaintiff's counsel in zealously advocating for their client. However, outside of a complex factual background, the motion itself did not present particularly novel or complex legal issues to necessitate such a large expenditure of time by any of the counsel. Indeed, according to Plaintiff's counsel's time entries, in drafting the motion and reply, counsel billed the following: Mr. Berman (76 hours); Mr. Kadosh (57.1 hours); and Mr. Raymond (7.1 hours). This totals 140.2 hours billed split among an associate, a counsel, and a partner. Further, for additional work related to the motion, Plaintiff's counsel billed as such: Mr. Berman (2.6 hours); Mr. Kadosh (7.7 hours); Mr. Raymond (15 hours); and Mr. Castillo (2.8 hours). *See* Ex. 7, Time Entries Re: Sanctions, D.E. 324-7.

The time Plaintiff's counsel expended on the sanctions motion raises several issues. First, it is difficult to square Mr. Kadosh expending 57.1 hours on a motion that Mr. Berman already expended 76 hours writing. *See Employers Ins. Co. of Wausau v. Harleysville Ins. Co. of New Jersey*, No. 05-4900, 2008 WL 5046838, at *2 (D.N.J. Nov. 20, 2008) (reducing hours for being excessive considering work already performed by a more junior attorney). Second, Mr. Berman expending 76 hours on researching and drafting briefs for a sanctions and spoliation motion with no novel legal issues is excessive. *See, e.g.*, *Microsoft Corp. v. United Computer Res. of New Jersey, Inc.*, 216 F. Supp. 2d 383, 392-93 (D.N.J. 2002) (concluding two senior associates expending 100.5 hours "researching and drafting briefs on a routine contempt motion with no novel issues . . . is excessive"). The Court acknowledges that new factual and

procedural issues had to be included in the motion; however, the Court cannot find that justifies the hours billed here.  Third, and finally, Mr. Kadosh's time spent on the second reply brief is particularly concerning.[15]  The Court understands that given the circumstances, including the changes in Defendants' papers, Mr. Kadosh may have believed it necessary to expend time drafting and revising the reply brief.  However, it appears that a fair amount of this work could have been delegated to an associate, and then reviewed by Mr. Kadosh or Mr. Raymond, particularly considering how much work Mr. Berman had already invested in the moving papers. *See Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) (cautioning against "the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates").  This is especially true given that, according to the time entries, there was already a draft reply brief written.

With this in mind, the Court turns to the reductions necessary.  This District has utilized various approaches for excessive time spent in drafting motion papers.  *See, e.g.*, *Microsoft Corp.*, 216 F. Supp. 2d at 392-93 (finding 100.5 hours billed for a motion for contempt to be excessive and therefore reducing the time billed by fifty percent); *Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F. Supp. 2d 480, 491 (D.N.J. 1998) (applying a fifty percent reduction where fourteen hours were expended in drafting and editing a contempt motion in light of a senior

---

[15]  On June 27, 2022, Plaintiff submitted its initial application for fees.  Kadosh Decl. I, D.E. 246.  Defendants opposed.  Defs.' Opp'n, July 18, 2022, D.E. 250.  Plaintiff failed to include a legal brief and failed to include evidence establishing the appropriate counsel rates.  *See* Order, July 27, 2022, D.E. 253, at 1-2 n.1.  The Court afforded Plaintiff an opportunity to correct its application and resubmit the application.  *See* Kadosh Decl. II, D.E. 324.  Defendants again opposed.  Defs.' Opp'n, July 18, 2022, D.E. 343.  Plaintiff contends that it needed to revise its reply brief because Defendants' changes to their opposition brief.  Kadosh Decl. II, D.E. 324, ¶ 27.

associate expending 66 hours in writing the motion); *Shelton v. Restaurant.com Inc.*, No. 10-824, 2016 WL 7394025, at *11-18 (D.N.J. Dec. 21, 2016) (reducing time entries by twenty-five percent to fifty percent). Considering the 140.2 hours billed for purely drafting the motion papers, the Court is satisfied that a fifty percent reduction to Mr. Berman's and Mr. Kadosh's time is appropriate. The Court will not reduce the time Mr. Raymond spent drafting the brief and reply papers. Mr. Raymond only expended 8.1 hours drafting the motion. This was an appropriate use of Mr. Raymond's time given the time Mr. Kadosh and Mr. Berman spent.

The Court will reduce the time spent as follows:

| Billing Attorney (Rate)[16] | Time Expended | Revised Time | Amount After Deduction |
|---|---|---|---|
| Mr. Berman (2020: $535.00) | 76.00 | 38.00 | $20,330.00 |
| Mr. Kadosh (2020: $760.00) | 36.90 | 18.45 | $14,022.00 |
| Mr. Kadosh (2021: $810.00) | 20.20 | 10.10 | $8,181.00 |

The remaining entries also require reductions and exclusions. For example, numerous entries include reviewing Defendants' opposition papers multiple times, each for 2.5 hours, or repeatedly discussing deadlines. Ex. 7, Time Entries Re: Sanctions, D.E. 324-7. While the Court understands strategy sessions or re-reading an adversary's papers may be necessary, at times, the extent to which Plaintiff's counsel engaged in these types of actions was excessive. The Court shall reduce and exclude the following entries as excessive:

---

[16]  *See* Ex. 7, Time Entries Re: Sanctions Mot., D.E. 324-7.

| Entry Date[17] | Billing Attorney | Total Billed Amount | Fees After Deduction |
|---|---|---|---|
| 10/1/2021 | Mr. Raymond | $2,487.50 | $2,089.50 (reduced .4) |
| 10/5/2021 | Mr. Raymond | $796.00 | $398.00 (reduced .4) |
| 10/12/2021 | Mr. Raymond | $696.50 | $497.50 (reduced .2) |
| 10/13/2021 | Mr. Raymond | $298.50 | $0.00 |
| 11/1/2021 | Mr. Raymond | $2,487.50 | $0.00 |
| 11/8/2021 | Mr. Raymond | $995.00 | $597.00 (reduced .4) |
| 11/9/2021 | Mr. Raymond | $796.00 | $597.00 (reduced .2) |
| 11/11/2021 | Mr. Raymond | $1,492.00 | $1,094.50 (reduced .4) |

### iii.    Vague & Ambiguous

Defendants argue several time entries should be excluded from Plaintiff's fee award because they are too vague and ambiguous.  Opp'n to Fees, Dec. 30, 2023, D.E. 341, at 21-23; Ex. B, Vague & Ambiguous Time Entries, D.E. 343-2, at 11-14.  For example, Defendants allege that entries which generally refer to topics should be excluded, such as "[p]lanning regarding Latinfood hard[ d]rive,"or "[c]all regarding hard drive analysis." *see id.* at 1.

Attorneys seeking compensation must document the hours for which payment is sought "with sufficient specificity." *Washington*, 89 F.3d at 1037-38 (quoting *Keenan v. City of Philadelphia*, 983 F.2d 459, 472 (3d Cir. 1992)).  "[A] fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'" *Keenan*, 983 F.2d at 472 (citing *Rode*, 892 F.2d at 1190).  However, specificity is required only to the extent necessary for the court "to determine if the hours claimed are unreasonable for the work performed." *Washington*, 89 F.3d at 1037-38 (quoting *Rode*, 892 F.2d at 1190).  The Third Circuit has explained that a fee petition should include

---

17  Ex. 7, Time Entries Re: Sanctions Mot., D.E. 324-7.

"some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." *Id.*  But "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Id.* (quoting *Rode,* 892 F.2d at 1190).

Defendants challenge dozens of time entries, each of which the Court has reviewed.  The Court finds these entries are not so vague or ambiguous to require exclusion from our analysis.  For example, Defendants challenge Plaintiff's billing entries which state "[c]all regarding hard drive analysis"; "emails regarding hard drive"; "email follow up regarding deposition of Cibao Meats"; and "[c]all with M. Inger re: Zuluaga deposition."  Vague & Ambiguous Entries, Ex. B, D.E. 343-2, at 1-3.  The Court finds these entries to be specific enough for the Court to understand what Plaintiff's counsel was accomplishing during those times.  *Washington*, 89 F.3d at 1037-38.  Accordingly, the Court will not reduce its award from these entries.

### iv.    Inefficient & Duplicative

Defendants argue that several of the entries are "replete with inordinate, inefficient, and unnecessary amounts of daily entries," which include Mr. Raymond's billing rate for conferring with colleagues. Opp'n to Fees, Dec. 30, 2023, D.E. 341, at 27-28; *see also* Ex. E, Inefficient & Duplicative, D.E. 343-3.  Defendants claim that these entries could have been delegated to a lower-level associate or paralegal.  Opp'n to Fees, Dec. 30, 2023, D.E. 341, at 27-28.  Defendants also take issue with the fact that Mr. Berman attended the 2020 Zuluaga deposition with Mr. Kadosh.  *Id.* at 27.

"A reduction for duplication 'is warranted only if the attorneys are unreasonably doing

the same work.'"  *See Rode*, 892 F.2d at 1187 (quoting *Jean v. Nelson*, 863 F.2d 759, 773 (11th Cir. 1988)).  When there is exact overlap in entries task and time, the Court may exclude that time, determining it was unreasonable for the services performed.  *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 943 (3d Cir. 1995).

The Court has reviewed the contested time entries and does not find any entries to be duplicative or an inefficient use of time.  For example, Defendants object to Plaintiff's counsel's communications with one another.  However, the court cannot find these intraoffice communications excessive.  *See Citibank, N.A. v. Hicks*, No. 3-2283, 2004 WL 1895189, at *6 (E.D. Pa. Aug 24, 2004) (finding 111.4 hours for attorney conferencing to be excessive).  Indeed, the Court concludes that the number of hours dedicated to strategizing and meeting was reasonable where, as here, Plaintiff's counsel was confronted with overcoming Defendants' purposeful withholding of evidence and vague explanations for the elusive materials.  Nor can the Court find that Mr. Berman's attendance at Zuluaga's deposition was unduly duplicative.  Mr. Kadosh is entitled to be accompanied by a younger associate to assist in a deposition, especially one as significant as a named defendant.  *See Jefferson*, 2006 WL 1843178, at *9.  Accordingly, the Court will not reduce Plaintiff's award for these objections.

### v.    Administrative Tasks

Defendants argue that several entries should be stricken because they are administrative in nature but were billed at either a paralegal, IT, or attorney rate.  Opp'n to Fees, Dec. 30, 2023, D.E. 341, at 29; Administrative Tasks, D.E. 343-6.  Defendants also take issue with any entries billed by paralegals because Mr. Kadosh's declaration states that "paralegal tasks were written off."  Opp'n to Fees, Dec. 30, 2023, D.E. 341, at 29.

36

"As a general rule, time that would not be billed to a client cannot be imposed on an adversary . . . [t]hus administrative tasks, which are not the type normally billed to a paying client, may not be recovered by a party through a fee petition." *Levy v. Global Credit & Collection Corp.*, No. 10-4229, 2011 WL 5117855, at \*6 (D.N.J. Oct. 27, 2011). Such tasks usually include, but are not limited, to "opening a file in a database, entering case updates in a management system, mailing letters, copying documents, calendaring deadlines, confirming contact information, and talking with a process server or court clerk." *Bilazzo v. Portfolio Recovery Assocs., LLC*, 876 F. Supp. 2d 452, 472 (D.N.J. 2012). Budgeting is also considered an administrative function because it is a part of a law firm's overhead and not usually billed to clients. *See United Rentals Inc. v. Liberty Mut. Fire Ins. Co.*, No. 19-17169, 2022 WL 7997043, at \*8 (D.N.J. Oct. 14, 2022).

The Court finds that several of Plaintiff's submitted entries related to the Cibao Production and Fronteo Report are problematic. For example, numerous entries regarding the Fronteo Drive and Report involved copying documents to Reed Smith's network, or downloading document production to Reed Smith's database. *See* Ex. 3, Time Entries Re: Fronteo Drive, D.E. 324-3, at 2, 5-6. These entries clearly fall into what has been found to be administrative tasks and are therefore excluded from Plaintiff's award. *See Scanno v. F.H. Cann & Assocs., Inc.*, No. 16-5943, 2018 WL 4522075, at \*3 (D.N.J. Sept. 5, 2018) (excluding entries which included "downloading, filing, and calendaring" because they "are administrative tasks"). The Court also will exclude an entry that describes Mr. Berman's communications about costs. *See* Ex. 3, Time Entries Re: Fronteo Drive, D.E. 324-3, at 5. It clearly relates to budgeting and Defendants should not be expected to pay for it. *United Rentals Inc.*, 2022 WL 7997043, at \*8.

37

Additionally, Mr. Berman partially billed for scheduling the deposition with a third-party vendor. *See*, Ex. 1, Re: Zuluaga's Oct. 15, 2020 Deposition, D.E. 324-1, at 2. This is an administrative task. *See Bilazzo*, 876 F. Supp. 2d at 472. The Court will reduce this entry to exclude the time spent calling to schedule the deposition. Several of the entries for the sanctions motions squarely relate to the clerical task of filing the motion, and therefore will not be included in Plaintiff's award. *See Scanno*, 2018 WL 4522075, at *3. Thus, the Court shall exclude all administrative tasks contained in the entries for: (1) the Fronteo Report and Fronteo Drive*; (2) the October 15, 2020 Zuluaga Deposition**; and (3) the sanctions motion***.[18]

| Entry Date[19] | Billing Attorney | Total Billed Amount | Amount After Deduction |
|---|---|---|---|
| 2/25/2020* | Mr. Mantzopoulos | $667.50 | $0.00 |
| 5/20/2020* | Mr. Berman | $481.50 | $0.00 |
| 9/4/2020* | Mr. Mantzopoulos | $890.00 | $0.00 |
| 10/2/2020* | Mr. Mantzopoulos | $222.50 | $0.00 |
| 10/2/2020* | Mr. Mantzopoulos | $445.00 | $0.00 |
| 10/8/2020** | Mr. Berman | $535.00 | $374.50 (reduced .3) |
| 12/10/2020*** | Mr. Castillo | $80.00 | $0.00 |
| 10/6/2021*** | Mr. Castillo | $215.00 | $0.00 |
| 10/7/2021*** | Mr. Castillo | $129.00 | $0.00 |
| 10/8/2021*** | Mr. Castillo | $172.00 | $0.00 |

### vi.    Related Costs

Defendants argue that certain related expenses that Plaintiff's counsel seeks to recoup should be denied. Opp'n to Fees, Dec. 30, 2023, D.E. 341, at 31-32. Specifically, Defendants

---

[18] The Court identifies each entry by asterisks in the corresponding chart.

[19] *See* Ex. 1, Time Entries Re: Zuluaga's Oct. 15, 2020 Deposition, D.E. 324-1; Ex. 3, Time Entries Re: Fronteo Drive, D.E. 324-3; Ex. 7, Time Entries for Sanctions Mot., D.E. 324-7.

contend Plaintiff's counsel improperly seeks the court reporter costs of Jaline Isador's Deposition. *Id.* at 31. Further, Defendants argue they should not bear the costs of Zuluaga's December 18, 2019 deposition, or the video costs of the October 2020 Zuluaga Deposition. *Id.* at 31-32.

The Court declines to award Plaintiff's counsel's costs for a portion of the court reporter cost for Isador's deposition and for Zuluaga's 2019 deposition. Plaintiff's counsel aver they seek only a portion of these costs because only discrete sections of the depositions addressed discrepancies between Cibao's direct and production and Defendants' indirect production. Kadosh Decl. II, D.E. 324, ¶ 24. However, Plaintiff's counsel has failed to specify or identify the portion of the depositions to which they refer, or how they came to their proposed amount. Plaintiff's counsel's failure to do so inhibits the Court from awarding them these costs. This omission is especially true because both depositions are lengthy, and this is Plaintiff's counsel's second application for attorney's fees.

Defendants' objection regarding the video deposition of the 2020 Zuluaga Deposition is overruled, and Defendants shall incur those costs. It is irrelevant if the request for video deposition was Plaintiff's counsel's design. The May 26, 2022 Order clearly states that Plaintiff's award shall include the costs to prepare and conduct the October 2020 deposition. Accordingly, the Court will award Plaintiff's counsel $13,414.37 in related expenses.[20]

### D.  Overall Reduction in the Award

Defendants argue that any entries which include time for both Plaintiff's "spoliation and

---

[20]  This amount includes the 2020 Zuluaga deposition expenses and the cost of the Fronteo Report.

sanctions" motion should be disregarded because these entries fail to delineate the time spent on either section of the motion.  Opp'n to Fees, Dec. 30, 2023, D.E. 341, at 20.  Defendants contend that the spoliation and sanctions motions are "separable and identifiable and Plaintiff should not be rewarded with fees and costs on an issue the Court rightfully denied."  *Id.* at 21. Accordingly, Defendants argue that the Court should "drastically reduce Plaintiff's counsel's fees" because Plaintiff's spoliation motion was unsuccessful.  *Id.*

Once the lodestar is determined, downward adjustments may be applied.  *Rode*, 892 F.2d at 1183.  However, because "[t]he lodestar is presumed to be the reasonable fee," the party seeking a downward adjustment of the fee has the burden of "proving that an adjustment is necessary."  *Id.*  Courts can make such adjustments if the "lodestar is not reasonable in light of the results obtained." *Id.*; *see also Pa. Env'tl Def. Foun. v. Canon-Mcmillian Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998) ("Once the court has calculated the lodestar it may adjust that amount, primarily based on the degree of success that the plaintiff obtained.").

Here, the Court declines to downwardly adjust its lodestar determination.  First, this fee application is not akin to prevailing party fee-shifting applications such as those brought under federal or state civil rights statutes.  Those are such cases where there is a more searching evaluation if the Court should adjust fees based on the success of the plaintiff's claims.  Rather, this application comes following this Court granting in part Plaintiff's motion for sanctions under Rule 37, and the May 26, 2022 Order's specific delineation of the tasks for which Plaintiff could seek fees.  Although the Court possesses the ability to reduce a lodestar determination when awarding attorney's fees under Rule 37, the Court refuses to do so here.  *See Ganoe v. Austin*, No. 20-00663, 2023 WL 4029871, at *2 (M.D. Pa. June 15, 2023); *Gittins v. Gateway Clipper*

*Inc.*, 16-00757, 2021 WL 1232421, at \*14 (W.D. Pa. Mar. 12, 2021).  The Court cannot find that the lodestar determination qualifies as unreasonable, particularly given the reductions that the Court has already applied above.

Even if the Court were to consider Defendants arguments, it would still find that it is not appropriate to reduce Plaintiff's award based on the Court's denial of spoliation.  When a fee award is reduced because of unsuccessful claims, the reduction is only to the extent where the unsuccessful claims "were 'distinct in all respects from' claims on which the party did succeed." *Rode*, 892 F.2d at 1183 (quoting *Institutionalized Juveniles v. Sec. of Pub. Welfare*, 758 F.2d 897, 919 (3d Cir. 1985)).  "[W]here a plaintiff's claims involve 'a common core of facts' or are based on 'related legal theories, . . . [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.'" *McKenna*, 582 F.3d at 47.  However, "where a party brings claims that do not depend on the same sets of facts and legal theories as the claims on which the party has succeeded, fees should not be awarded for work on those unrelated claims because the work 'cannot be deemed to have been expended in pursuit of the ultimate result achieved.'"  *Id.* (quoting *Hensley*, 461 U.S. at 435).

Here, the issues raised in Plaintiff's motion seeking sanctions for spoliation and discovery abuses rested on identical facts and principally the same legal theories.  Indeed, although the May 26, 2022 Opinion concluded that Plaintiff had not established actual deprivation of discovery to sustain a spoliation finding under Rule 37(e), it detailed Defendants' sanctionable conduct of withholding evidence, such as concealing the existence of the Fronteo Drive and producing only a fraction of evidence produced by their vendor Cibao.  *See* Op., D.E.

41

232, at 25-26.  Put a different way, the issues raised were "not 'distinct in all respects' from the sanctionable conduct ultimately identified by the Court."  *Wachtel*, 2007 WL 1791553, at *1 n.2 (quoting *Rode*, 892 F.2d at 1183).  Accordingly, the Court declines to reduce Plaintiff's award based on the success of its arguments regarding spoliation, and this Court's ultimate decision.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's counsel's application for attorney's fees and costs in the reduced amount of $193,668.14, consisting of: $180,253.77 in attorney's fees; and $13,414.37 in costs.[21]  An appropriate Order accompanies this Opinion.

---

[21]  Defendants offer a final argument in their request to reduce Plaintiff's award.  Specifically, Defendants request the Court exercise its equitable powers in the interests of justice, and decrease any amount awarded to Plaintiff for the cost incurred from Defendants' second opposition.  Opp'n to Fees, Dec. 30, 2023, D.E. 341, at 32-33.  The Court declines to do so and will not address Defendants' arguments at length.  Defendants have failed to offer any citation to any analogous case law where a Court reduced a party's award of attorney's fees due to a party having to submit opposition to a renewed application or motion.  *See Combustion Syss. Servs., Inc. v. Schuykill Energy Resources, Inc.*, 1993 WL 496946, at *2 (E.D. Pa. Nov. 19, 1993) (noting that the Court lacks the time to "undertake legal research to support the moving party's positions").  Rather, Defendants cite to several cases that broadly reference the court's inherent equitable power in asserting attorney's fees.  *See Hall v. Cole*, 41 U.S. 1, 5 (1973) ("[F]ederal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require."); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970) (stating that the attorney's fees are generally not recoverable but exceptions can be made for "situations in which overriding considerations indicate the need for such recovery"); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164 (1939) ("Allowance of [attorney's fees] in appropriate situations is part of the historic equity jurisdiction of the federal courts."); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967) ("[Attorney's fees] have been sanctioned by this Court when overriding considerations of justice seemed to compel such a result."); *Stokes v. Lecce*, 384 F. Supp. 1039 (E.D. Pa. 1974).  The Court does not find the circumstances before it in this case warrant an exercise of its inherent powers.

_/s Michael A. Hammer_
**Hon. Michael A. Hammer,**
**United States Magistrate Judge**

**Dated:**       **October 2, 2024**