IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

INDUSTRIA DE ALIMENTOS ZENÚ S.A.S.,
Plaintiff,

v.

LATINFOOD U.S. CORP. d/b/a ZENÚ PRODUCTS CO. and WILSON ZULUAGA,
Defendants

Civ. No. 16-cv-06576 (KM) (MAH)

---

**EXPERT DECLARATION OF
MARGARITA CASTELLANOS**

---

## Introduction

1.  I was retained on behalf of Defendant Latinfood U.S. Corp. d/b/a Zenú Products Co. ("Latinfood") to independently review some of the electronically filed documents and provide my analysis under Colombian law as it relates to the above captioned case.

2.  Specifically, I was asked to review Docket Entries ("DE"): 31, 81, 297, 298, 304, 316, 319, and 359.[1] After concluding my review of the above, I was asked to evaluate the evidence submitted by Plaintiff Industria De Alimentos Zenu S.A.S. ("Plaintiff") regarding the ZENU and RANCHERA Colombian trademark registrations and Judge Kevin McNulty's Summary Judgment Opinion and Order (DE 297-298).

---

[1] The DE numbers listed above refer to both the main documents and all exhibits associated with those numbers.

**Qualifications**

3.   I am currently a Senior Partner at the Castellanos law firm.  Castellanos is a leading firm specializing in Intellectual Property (IP) law in Colombia and is ranked 9th in trademark filers for international clients before the PTO of Colombia.

4.   I have almost 30 years of experience advising both national and foreign clients on issues relating to IP law in Colombia.

5.   I received my law degree from Pontificia Universidad Javeriana, in Bogotá, Colombia in 1992.

6.   I also received a Diploma in Intellectual Property Law from Franklin Pierce Law Center, at the University of New Hampshire in 1994.

7.   I have received numerous other specialization certificates and am a member of several IP organizations as detailed in my attached CV.

8.   Based on my education and experience I consider myself an expert in trademark law in Colombia

9.   I am being compensated at my standard hourly rate of $350/hour.  My compensation does not depend on the outcome of this suit.  Prior to this engagement I had no contact with either party or their counsel.

**Summary of Opinions**

10.  Plaintiff did not provide the Court with certified and authenticated Colombian Registration Certificates for all of the Zenu and Ranchera marks Plaintiff identified in the Amended Complaint (DE 31).

11.  Of the 5 Zenu and 5 Ranchera marks Plaintiff identified in the Amended Complaint, Plaintiff only provided certified and authenticated certificates for 3 Zenu marks: 173308, 67829, and 435990.

12.  Zenu Registration 173308 is not relevant since it is for the following goods: Rice, tapioca, sago, artificial coffee; flours and cereal preparations, bread, pastry, and confectionery, edible ices; honey, treacle, yeast, baking-powder; salt, mustard; vinegar, sauces (condiments); spices; ice (class 30). These goods do not relate to goods at issue in the above captioned case. That registration makes no claim for the meat products at issue.

13.  Zenu Registration 67829 was registered in the name of INDUSTRIAS ALIMENTICIAS NOEL S.A., a different entity than the Plaintiff.   Upon reviewing the National Trademark Office's database in Colombia, there is no record of a trademark transfer to INDUSTRIA DE ALIMENTOS ZENÚ S.A.S., nor is there any assignment document that would result in the ownership of this trademark by the latter company. Therefore, while

- 2 -

the database shows INDUSTRIA DE ALIMENTOS ZENÚ S.A.S. as the holder of the trademark registration, there is no record of when this company became the holder of the registration, nor whether the trademark was indeed transferred to this company. Consequently, the Plaintiff company has not demonstrated if it is the owner of the registration, and if it is, the date on which it became the owner of the registration. Therefore, the Plaintiff has not demonstrated that it owned the registration prior to the trademark registration application made by the defendant company in the United States.

14. Zenu Registration 435990 was registered in the Colombian trademark office on June 3, 2011, which is after the January 1, 2011 first use date claimed in Defendant's U.S. Federal Trademark Registration No. 4,402,942 for Zenu as used in connection with Bologna; Canned cooked meat; Canned fish; Chorizo; Hot dogs; Preserved meats and sausages; Processed meat; Sausages; Tuna fish (class 29).

15. Plaintiff did not provide certified and authenticated certificates for any of the Colombian Ranchera marks that Plaintiff had identified in the Amended Complaint.

16. In fact, all of the Ranchera marks that Plaintiff identified in the Amended Complaint are expired.

17. The certificates that Plaintiff did provide to the Court with regard to the Ranchera mark were either owned by Plaintiff after the January 15, 2012 first use date identified in Defendant's US trademark for Ranchera Serial No. 86196974, or for logos that were never mentioned in the Amended Complaint or alleged to have been used by Defendant.

18. Article 18 of the Inter American Convention for Trademark and Commercial Protection ("IAC"), is limited to commercial names as opposed to trademarks. Commercial names in this context refer to the owner's name of the merchant. Commercial name is not another expression for trade mark. In my opinion, Judge McNulty erred by comparing Defendant's use of certain Zenu and Ranchera marks with Plaintiff's trademarks instead of comparing Defendant's use of Zenu and Ranchera marks with Plaintiff's commercial name. DE 297 at Pg. 29.

19. I understand that on July 13, 2023, Judge McNulty entered an Order extending the stay of his Summary Judgment Order pending resolution of the motion for reconsideration. DE 304.

20. Based on my findings and opinions above and throughout this Declaration, I believe Judge McNulty's Summary Judgment Opinion and Order was entered based at least in part on erroneous facts, missing information, and an erroneous construction of the IAC. DE 297-298.

**Background on Colombian Trademark Law**

21. Colombian trademark law is codified in Decision 486 of the year 2000. This Decision is a communitarian legislation of the Andean Pact and contains the general ruling of Industrial Property applicable in Colombia. The General Interamerican Convention for Trademark and Commercial Protection (IAC) is an International Treaty in force for the countries of Colombia and the United States among others and shall be applied also in conjunction with Colombian trademark legislation contained in Decision 486, where needed and expressly established by the International Treaty IAC.

22. The Decision 486, containing the current and valid trademark legislation was adopted in the year 2000, entered into force on December 1st of 2000 and has been in use for 24 years and 2 months.

23. In Colombia, there are registered the world's largest brands, e.g. Coca-Cola, Apple, Intel, Microsoft, Nike ,etc.

24. Colombian trademark law is very similar to US trademark law but with some important distinctions. In Colombia, the exclusive rights over a trademark are acquired by its registration only. There are no prior use valid rights, except in the case of famous trademarks declared as such by the Colombian Trademark Office and in exceptional situations. Therefore, as a general rule, when there is no trademark registration, there are no trademark rights.

25. Another difference to be taken into consideration in this case, is that assignments of trademark rights are only valid after their registration in the National Trademark Office of Colombia. A trademark assignment must be in writing and be registered to be valid before third parties. Trademark registrations and trademark transfers are public information that can be accessed at the National Trademark Office database of Colombia.

**Background on the IAC**

26. The IAC was subscribed by the parties in Washington on February 20, 1929. It entered into force in Colombia on the 22 of July of 1936 and in the United States on the 2nd of April of 1930

27. I regularly work with the IAC as part of my work in Colombia, as I represent American clients in Colombia who benefit from the Convention's rules. I also have knowledge of the jurisprudence of the National Trademark Office in application of the IAC.

28. The purpose of the IAC is to articulate the agreement among the Member States, regarding the protection of Commercial names, trademarks, the repression of unfair competition and false indications of origin. The Convention was largely based on the Paris Union Convention for the Protection of Industrial Property.

29. Considering that the IAC regulates the protection of different Industrial Property rights, including trademarks, Commercial names, and designations of origin, various rules apply differently to each of these rights. Articles 7 and 8 refer to trademark protection, while Articles 17 and 18 are aimed at the protection of Commercial names. Under the IAC these are two different Industrial Property rights.

30. Articles 7 and 8, although aimed at the protection of trademark rights, contemplate different possibilities. Article 7 refers to the possibility of opposing the registration of a trademark that is identical or similar to another protected in a contracting state, while Article 8 addresses the possibility of canceling or annulling a trademark registration based on a protected trademark in another State of the Convention. Therefore, Article 7 contemplates the possibility of an opposition while a trademark is pending of registration, but cannot be applied, when there is already a valid trademark registration. In such a case, only Article 8 is applicable and directed exclusively at the cancellation or annulment of the said trademark registration.

31. With regard Articles 17 and 18 of the IAC, it should be noted that they do not protect trademarks but rather commercial names (the name of the merchant). Article 17 contemplates the possibility of opposing the use or registration of a trademark that violates commercial name rights, and Article 18 contemplates the possibility of canceling or invalidating a trademark registration that violates the said commercial name rights. Therefore, this is not about comparing trademarks or product names from different owners, but rather comparing a commercial name protected in one contracting State with a trademark registration obtained in another contracting State. As set forth in the prior paragraph referring to Articles 7 and 8, when there is a valid trademark registration, Article 17 is not applicable. Only Article 18 is available and directed at the cancellation or annulment of the trademark registration. In addition, to enforce the provisions of Article 18, prior rights over a commercial name must be proven, and it must also be proven that the trademark registration violates upon that commercial name, facts that were neither alleged nor analyzed by Judge McNulty in this case.

## Detailed Findings

32.    On April 21, 2017, Plaintiff filed an Amended Complaint and Jury Demand.  DE 31.

33.    The Amended Complaint alleges that Plaintiff owns several Colombian trademark registrations for the marks ZENU and RANCHERA.

34.    Paragraph 36, and the chart that follows, identifies the Colombian registrations identified in the Amended Complaint and is reproduced below.

|  | MARK | REGISTRATION NO. | REGISTRATION DATE | GOODS |
|---|---|---|---|---|
| 1 | ZENÚ | 244440 | July 18, 2001 | Coffee tea, cocoa, sugar, rice, tapioca, sago, artificial coffee; flours and cereal preparations, bread, pastry and confectionery, edible ices; honey, golden syrup; yeasts, raising powder; salt, mustard; vinegar, sauces (condiments); spices; ice |
| 2 | ZENÚ | 118651 | August 24, 2002 | Meat, fish, poultry and game; meat extracts; fruits and preserved vegetables dry and cooked; jellies, marmalade fruit sauces; eggs, milk, and milk products; oils and edible fats |
| 3 | ZENÚ | 173308 | January 18, 2005 | Rice, tapioca, sago, artificial coffee; flours and |

|   |   |   |   | cereal preparations, bread, pastry, and confectionery, edible ices; honey, treacle, yeast, baking-powder; salt, mustard; vinegar, sauces (condiments); spices; ice |
|---|---|---|---|---|
| 4 | ZENÚ | 67829 | May 28, 2009 | Meat, fish, poultry and game; meat extracts; fruits and preserved vegetables dry and cooked; jellies, marmalades, and fruit sauces; eggs, milk, and milk products; oils and edible fats |
| 5 | ZENÚ and Design | 435990 | June 3, 2011 | Meat, fish, poultry and game; meat extracts; fruits and preserved vegetables frozen, dry and cooked; jellies, jams, compotes; eggs, milk and milk products; oils and edible fats |
| 6 | RANCHERA HAMBURGUESA PREASADA ZENÚ and Design | 455844 | August 28, 2012 | Meat, fish, poultry and game; meat extracts; preserved, frozen, dried and cooked fruits and |

| | | | | vegetables; jellies, jams, compotes; eggs, edible oils and fats. |
|---|---|---|---|---|
| 7 | RANCHERA HOT ZENÚ and Design | 455846 | August 28, 2012 | Meat, fish, poultry and game; meat extracts; preserved, frozen, dried and cooked fruits and vegetables; jellies, jams, compotes; eggs, edible oils and fats. |
| 8 | RANCHERA MINI ZENÚ and Design | 455849 | August 28, 2012 | Meat, fish, poultry and game; meat extracts; preserved, frozen, dried and cooked fruits and vegetables; jellies, jams, compotes; eggs, edible oils and fats. |
| 9 | RANCHERA SANDUCHE ZENU and Design | 455820 | August 28, 2012 | Meat, fish, poultry and game; meat extracts; preserved, frozen, dried and cooked fruits and vegetables; jellies, jams, compotes; eggs, edible oils and fats. |
| 10 | RANCHERA SUPER ZENU and Design | 454073 | July 31, 2012 | Meat, fish, poultry and game; meat extracts; preserved, |

| | | | frozen, dried and cooked fruits and vegetables; jellies, jams, compotes; eggs, edible oils and fats. |
|---|---|---|---|

35.    In his Summary Judgment Opinion and Order DE 297-298, Judge McNulty stated that:

Latinfood argues that it, not Industria, is entitled to summary judgment because Industria has "failed to proffer any certificate of registration documents either in its pleadings or through discovery demonstrating its alleged ownership of any relevant, current Colombian registrations";

DE 297 Pg 22.

36.    The Opinion and Order then explains:

Latinfood notes that the copies of Industria's registration documents are not properly authenticated as foreign records. … I will treat Industria's proffer as a representation that such evidence of foreign registration could be produced at trial in admissible, authenticated form. …I will stay my ruling and require that Industria make a sufficient showing of authenticity of these documents before granting it judgment on this issue, which is also relevant to other claims.

DE 297 Pg 23 FN 18.

37.    I have personally reviewed the official Colombian trademark office records for each of the trademarks shown in the chart above.  I have also reviewed the Docket Entries identified above to determine if any information regarding these registrations was submitted to the Court pursuant to Judge McNulty's Order.  My findings follow with each of the numbers below corresponding to the row of the chart shown in Paragraph 36 on page 6 above.

1. **ZENÚ**
   **244440**

Authenticated records for Registration 244440 were NOT included in Plaintiff's Submission DE 316.

My review of the records of the Colombian trademark office show that this Registration is <u>EXPIRED</u>–In addition it is not relevant to this case as the goods and services that were covered by the Registration are limited to non-alcoholic beverages and fruit juices and preparations for making beverages of international class 32. The registration did not cover meat or meat products.

**2. ZENÚ**
   **118651**

Authenticated records for Registration 118651 were NOT included in Plaintiff's Submission DE 316.

My review of the records of the Colombian trademark office show that this Registration is <u>EXPIRED</u> – and presumably not relevant to this case as the mark is for the following ZENU logo which was not shown or alleged infringed in the Amended Complaint DE 31 The following is the logo for this registration:



**3. ZENÚ**
   **173308**

Authenticated records for Registration 173308 were included in Plaintiff's Submission DE 316.

My review of the records of the Colombian trademark office show that this Registration is ACTIVE – but presumably <u>not relevant</u> to this case as the goods and services covered by the Registration are limited to the products comprised in class 30 and do NOT cover meat or meat products.

**4.  ZENÚ**
   **67829**

Authenticated records for Registration 67829 were included in Plaintiff's Submission DE 316.

My review of the records of the Colombian trademark office show that this Registration is ACTIVE –but it was granted in the name of Industrias Alimenticias Noel S.A. ("Noel").  I note that the Amended Complaint identifies Noel as a "sister company" that had previously granted some assignments of some marks to Plaintiff. DE 31 at 2.  My review of the official records at the Colombian trademark office show that no assignment was recorded for this mark, from Noel to Plaintiff.

I also specifically requested a certification from the National Trademark Office with regard to the existing Records of assignment of the registration No. 67829, and the certification only shows one assignment (transference) from INDUSTRIAS ALIMENTICIAS NOEL S.A. to INDUSTRIAS ALIMENTICIAS NOEL S.A. The National Trademark Office was <u>unable</u> to certify an assignment between Noel and the Plaintiff.

The relevant part of the certification reads as follows:



**Superintendencia de Industria y Comercio**

Ref. Solicitud N° IT2025/0000184

LA SECRETARIA GENERAL AD-HOC

**Apoderado** MAURICIO JARAMILLO CAMPUZANO Calle
67 No. 7-35 Of 1204
BOGO
TÁ
D.C.
COLO
MBIA

**TRANSFERENCIAS**

**No. Caso:** 9229182529002000
**Fecha de Radicación:** 18 de febrero de 2003
**DE:** INDUSTRIAS ALIMENTICIAS NOEL  S.A.
**A:** INDUSTRIAS ALIMENTICIAS NOEL S.A.
**Estado:** Inscrita

I have also reviewed the Colombian Commercial Database of corporate entities and have found that Plaintiff and Noel are listed as separate entities.  Considering that the registration was obtained in the name of a company different from the Plaintiff, the Plaintiff had to prove when the registration was transferred to its name, in order to determine when it could exercise rights as the holder of the trademark registration. However, after reviewing the database and the documents submitted as evidence of the registration of this trademark, there is no reference to any transfer, no written assignment document is shown, nor is there any certification from the National Trademark Office certifying the date of registration of any transfer between Noel and the Plaintiff.

Original registration No. 67.829:

- 12 -

23



**República de Colombia**

**Ministerio de Fomento**  93

# División de Propiedad Industrial

Certificado de
Número          REGISTRO DE MARCA,                    Expediente número
Fecha de expedición   62.829                                105.173.
Fecha de vencimiento       10 de sepbre de 1968.
                           10 de sepbre de 1978.

## El Ministerio de Fomento

# División de Propiedad Industrial

### Hace constar

Que por resolución de fecha_____. vista la solicitud
                    2 de los corrientes,
presentada por el doctor_____
                    Alberto Arias Gutiérrez,
el _____ se ha concedido
    17 de agosto de 1967.
a favor de _____
         la sociedad INDUSTRIAS ALIMENTICIAS NOEL S.A.,

domiciliad__ (s) en_____
         a        Medellín,Colombia,

por el término_____ desde el _____
         de DIEZ (10) AÑOS ,              10 de sepbre de 1968,

_____ el Registro de la MARCA   DE   FABRICA   Y DE   COMERCIO,

consistente en_____
         la denominación de fantazía Z E N U , sin distintivos espe-

ciales. Marca que se empleará conforme con la solicitud y con el modelo



- 13 -

anexo, para distinguir: " galletas, dulces, bombones, cereales elabo-
rados, aceite de oliva y otros aceites comestibles, mantecas de ori-
gen animal o vegetal, frutas secas o en consérva, harinas, féculas,
té, café, sagú, chocolate, café, conservas de carnes, sal, frutas, es-
pecias, condimentos, yerbas aromáticas, azúcares, sal, mieles, produc-
tos de panadería, pastelería y confitería, productos de lechería, cua-
jos, carnes, pescados, mariscos, aves y animales de caza en estado
fresco o en conserva, huevos, pastas alimenticias, achicoria, sustan-
cias para bebidas e infusiones calientes, sustancias alimenticias para
animales", productos comprendidos en la clase 22a. del decreto 1707
de 1931.

ley 31                    25

la sociedad antes nombrada,

Para los efectos de la referida marca, de 19 ___ y las demás disposiciones sobre
protección de la Propiedad Industrial, se reconoce usarla

como propietari___ de _____.
y se le reconoce así mismo el derecho exclusivo de _____ en el territorio
de la República con el objeto indicado en el presente certificado y por el término legal.

                                                           10
Este registro tiene validez por el término ya indicado y caduca en las condiciones
estipuladas por la Ley de Propiedad Industrial.
POR EL MINISTRO, el SRIO. GENERAL
Para constancia de lo anterior, se expide en Bogotá, D. E., a los _____ días
del mes de 89 _____ 20.bis _____ marcas,lt.z.            CARLOS ENRIQUE BOTERO.

                                         PROPIEDAD INDUSTRIAL
Inscrito al folio_____ del Libro_____ de Registro de _____

                           El Jefe de _____ REINALDO MOSQUERA GUZMAN

                                                                    MH/mb.

5.  **ZENÚ and Design (logo mark)**
    **435990**

    Authenticated records for Registration 435990 were included in Plaintiff's Submission DE 316.

    My review of the records of the Colombian trademark office show that this Registration is ACTIVE – however, I note that the mark was only Registered in Colombia as of November 30, 2011, which is <u>after</u> the January 1, 2011 first use date claimed in Defendant's United States Registration No. 4,402,942 for Zenu.

6.  **RANCHERA**
    **HAMBURGUESA**
    **PREASADA ZENÚ and**
    **Design**
    **455844**

    Authenticated records for Registration 455844 were NOT included in Plaintiff's Submission DE 316.

    My review of the records of the Colombian trademark office show that this Registration is <u>EXPIRED</u>.

7.  **RANCHERA HOT ZENÚ**
    **and Design**
    **455846**

    Authenticated records for Registration 455846 were NOT included in Plaintiff's Submission DE 316.

    My review of the records of the Colombian trademark office show that this Registration is <u>EXPIRED.</u>

8.  **RANCHERA MINI ZENÚ**
    **and Design**
    **455849**

    Authenticated records for Registration 455849 were NOT included in Plaintiff's Submission DE 316.

- 15 -

My review of the records of the Colombian trademark office show that this Registration is <u>EXPIRED.</u>

**9.  RANCHERA**
**SANDUCHE ZENU and**
**Design**
**455820**

Authenticated records for Registration 455820 were NOT included in Plaintiff's Submission DE 316.

My review of the records of the Colombian trademark office show that this Registration is <u>EXPIRED.</u>

**10. RANCHERA SUPER**
**ZENU and Design**
**454073**

Authenticated records for Registration 454073 were NOT included in Plaintiff's Submission DE 316.

My review of the records of the Colombian trademark office show that this Registration is <u>EXPIRED.</u>

**Plaintiff's Submission of Ranchera Certificates for Marks NOT Referenced in the Amended Complaint**

38.    The above analysis addresses all of the marks identified in the Amended Complaint.  I have also conducted analysis on the following additional marks that Plaintiff submitted to the Court.

39.    Trademark 104218 for Ranchera was not included in the Amended Complaint DE 31 but was submitted to the Court by the Plaintiff in its supplemental filings DE 316 in connection with Judge McNulty's Opinion and Order requiring proof of Colombian registrations. DE 297-298. This mark was first assigned to the Plaintiff in 2016 which I note is <u>after</u> the January 15, 2012 first use date identified in Defendant's US trademark for Ranchera Serial No. 86196974 and after the February 18, 2014 filing date of that application.

40.    Trademark 207613 for Ranchera and Design was not included in the Amended Complaint DE 31 but was submitted to the Court by the Plaintiff in its supplemental filings DE 316 in connection with Judge McNulty's Opinion and Order requiring proof of Colombian registrations. DE 297-298.  This mark was first assigned to the Plaintiff in 2003. This Registration is also for the wordmark and design shown below and is presumably not relevant to this case as the design was not shown or alleged infringed in the Amended Complaint.



41.    Trademark 307615 for Ranchera and Design was not included in the Amended Complaint DE 31 but was submitted to the Court by the Plaintiff in its supplemental filings in connection with Judge McNulty's Opinion and Order requiring proof of Colombian registrations. DE 316.  This Registration is also for the wordmark and design shown below and is presumably not relevant to this case as the design was not shown or alleged infringed in the Amended Complaint.



42.    Trademark 437955 for Ranchera and Design was not included in the Amended Complaint DE 231 but was submitted to the Court by the Plaintiff in its supplemental filings DE 316 in connection with Judge McNulty's Opinion Order requiring proof of Colombian registrations. DE 297-298. This mark was first registered to the Plaintiff in December 28,

2011.  This Registration is also for the wordmark and design shown below and is presumably not relevant to this case as the design was not shown or alleged infringed in the Complaint.



43.    Trademark 452043 for Ranchera and Design was not included in the Amended Complaint DE 31 but was submitted to the Court by the Plaintiff in its supplemental filings in connection with Judge McNulty's Opinion and Order requiring proof of Colombian registrations.  This mark and design shown below is presumably not relevant to this case as it is limited to Restoration services (feeding); temporary accommodation and does not include meat or meat products.



## Judge McNulty's Summary Judgment Opinion and Order and Article 18 of the IAC

44.    Judge McNulty begins his discussion of Article 18 of the IAC on Page 29 of his Opinion.  DE 297.  Judge McNulty correctly identifies the test for analyzing whether a party has proved a claim under this Article of the IAC.

To prove a claim under Article 18 of the IAC, Industria must show that: (1) it is a "manufacturer, industrialist, merchant or agriculturalist domiciled or established in any of the Contracting States";

- 18 -

(2) it has acted in accordance with U.S. law and procedure;

(3) Latinfood's interfering name or trademark is "identical with or deceptively similar to" Industria's **commercial name** "already legally adopted and previously used in [Colombia] in the manufacture, sale or production of Articles of the same class"; and

(4) prior to Latinfood's use or adoption of the name or mark, Industria used and continues to use the "commercial name adopted and previously used" for the "same products" in Colombia. IAC, Ch. III, Art. 18.

DE 297 Pg 29 (emphasis added).

45.   In the next paragraph of his Opinion (reproduced in its entirety below), Judge McNulty attempts to apply the test he correctly described but appears to confuse the difference between "Industria's commercial name" and Industria's alleged trademark.

> As discussed above, there is no genuine dispute that Industria is a "manufacturer, industrialist, merchant or agriculturalist domiciled or established in any of the Contracting States"; that it has acted in accordance with U.S. law and procedure; that it previously used, and continues to use, the Zenú and Ranchera marks in Colombia for the "same products"; or that **Latinfood's Zenú and Ranchera names are identical to Industria's Zenú and Ranchera names**.

DE 297 Pg 29 (emphasis added).

46.   Judge McNulty compares the accused product names (Zenú and Ranchera) with the alleged product names of the Plaintiff (Zenú and Ranchera) instead of comparing the accused product names (Zenú and Ranchera) with the commercial name of the Plaintiff (Industria De Alimentos Zenu S.A.S.). It is my opinion that the difference between the correct application of the analysis of Article 18 of the IAC and the way that it was applied by Judge McNulty is significant and that a correct application of the analysis may yield a different conclusion.

Signed:_

_____

Date: February 18, 2025